UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
JOSIAH GALLOWAY,

                                  Plaintiff,                           **COMPLAINT**

                -against-                             (Plaintiff Demands Trial by
                                                          Jury)

COUNTY OF NASSAU;
NASSAU COUNTY POLICE DEPARTMENT;
INCORPORATED VILLAGE OF HEMPSTEAD;
P.O. STEVEN HOROWITZ (Shield # 144);
DETECTIVE MATTHEW ROSS (Shield # 834);
DETECTIVE CHARLES DECARO (Shield # 1047);
DETECTIVE THOMAS BISCHOFF (Shield # 1001);
DETECTIVE RONALD LIPSON (Shield # 1296);
DETECTIVE THOMAS D'LUGINSKI (Shield # 7900);
DETECTIVE GEORGE DARIENZO (Shield # 1038);
DETECTIVE KEVIN CUNNINGHAM (Shield # 112);
KATHLEEN RICE;
ASSISTANT DISTRICT ATTORNEY JOSEPH LaROCCA;
ASSISTANT DISTRICT ATTORNEY ROBERT SCHALK;
JOHN DOE and JANE DOE #s 1 - 20 being and intended to
be other parties from the County of Nassau, Nassau County
Police Department, Incorporated Village of Hempstead and
Incorporated Village of Hempstead Police Department whose
names are presently unknown, all jointly and severally,

                                 Defendants.
---------------------------------------------------------------------------X

       Plaintiff, **Josiah Galloway**, by his attorneys, the Law Offices of Thomas F. Liotti, LLC,

and co-counsel Joseph F. DeFelice, Esq., as and for his complaint, alleges as follows:

**JURISDICTION**

       1.  Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil

actions involving a federal question arising under the Constitution, laws or treaties of the United

1

States and this action is based upon a cause or causes of action arising under 42 U.S.C. §1983 (Civil action for deprivation of rights).

2.  The Plaintiff further invokes the supplemental jurisdiction of this Court over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

3.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York, as this is the judicial district in which the claims herein alleged arose.

## JURY DEMAND

4.  Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

5.  Plaintiff, **Josiah Galloway** is a United States citizen, and at all relevant times was, and still is, a resident of the County of Nassau, State of New York, except for those years when he was wrongfully detained, to wit: 10 years, 3 months and 8 days.

6.  Defendant, **County of Nassau** was and still is a municipality, duly organized and existing under and by virtue of the laws of the State of New York, was the employer of the individual police defendants, to wit: Detective Matthew Ross (Shield # 834), Detective Charles DeCaro (Shield # 1047), Detective "Oscar" Olie, first name "Oscar" is fictitious and unknown to Plaintiff, Detective Thomas Bischoff (Shield # 1001), Detective Ronald Lipson (Shield # 1296), Detective Thomas D'Luginski (Shield # 7900) and Detective George Darienzo (Shield # 1038), and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Nassau County Police Department ("NCPD").

2

7.  Defendant, **Nassau County Police Department** was and still is a departmental agency of the Defendant, County of Nassau, and has the individual police defendants, to wit: Detective Matthew Ross (Shield # 834), Detective Charles DeCaro (Shield # 1047), Detective Thomas Bischoff (Shield # 1001), Detective Ronald Lipson (Shield # 1296), Detective Thomas D'Luginski (Shield # 7900) and Detective George Darienzo (Shield # 1038), in its employ and under its supervision and control.

8.  Defendant, **Incorporated Village of Hempstead** was and still is a municipality organized and existing under and by virtue of the laws of the State of New York and located within the County of Nassau.

9.  At all relevant times herein, Defendant, **P.O. Steven Horowitz (Shield # 144)** was a duly appointed and acting police officer of the Defendant, Incorporated Village of Hempstead, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the Incorporated Village of Hempstead, County of Nassau and the State of New York.

10.  At all relevant times herein, Defendant, **Detective Matthew Ross (Shield # 834)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

11.  At all relevant times herein, Defendant, **Detective Charles DeCaro (Shield # 1047)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of

3

employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

12.  At all relevant times herein, Defendant, **Detective Thomas Bischoff (Shield # 1001)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

13.  At all relevant times herein, Defendant, **Detective Matthew Ross (Shield # 834)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

14.  At all relevant times herein, Defendant, **Detective Ronald Lipson (Shield # 1296)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

15.  At all relevant times herein, Defendant, **Detective Thomas D'Luginski (Shield # 7900)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

4

16.  At all relevant times herein, Defendant, **Detective George Darienzo (Shield # 1038)** was a duly appointed and acting police detective of the Defendant, Nassau County Police Department, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Nassau and the State of New York.

17. At all relevant times herein, Defendant, **Detective Kevin Cunningham (Shield # 112)** was a duly appointed and acting police detective of the Defendant, Incorporated Village of Hempstead, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the Incorporated Village of Hempstead, County of Nassau and the State of New York.

18. At all relevant times herein, Defendant, **Kathleen Rice** was the elected and acting District Attorney of the County of Nassau prior to and at the time of the Plaintiff's erroneous prosecution, trial, conviction and incarceration in the criminal action commenced against the Plaintiff.

19.  At all relevant times herein, Defendant, **ADA Joseph LaRocca** was an employee of the Defendant, County of Nassau and an Assistant District Attorney assigned to and/or involved in the Plaintiff's erroneous prosecution, trial, conviction and incarceration in the criminal action commenced against the Plaintiff.

20.  At all relevant times herein, Defendant, **ADA Robert Schalk** was an employee of the Defendant, County of Nassau and an Assistant District Attorney assigned to and/or involved in the Plaintiff's erroneous prosecution, trial conviction and incarceration in the criminal action commenced against the Plaintiff.  Mr. Schalk acted as the Trial Assistant in the criminal action.

21. At all times relevant herein and upon information and belief, Defendants, **John Doe and Jane Doe #s 1 - 20**, whose names are presently unknown, were and/or still are agents, servants and/or employees of the defendants, County of Nassau, Nassau County Police Department, Incorporated Village of Hempstead and Incorporated Village of Hempstead Police Department.

## INTRODUCTION

22. The Plaintiff herein was wrongfully arrested on June 5, 2008, in connection with crimes committed on May 28, 2008, consisting of assault in the first degree [PL §120.10(1)]; attempted murder [PL § 125.25(1)]; assault in the first degree [PL § 120.10(2)]; criminal possession of a weapon in the second degree [PL § 265.03 (1b)]and criminal possession of a weapon in the second degree [PL § 265.03(3)]. Thus the Plaintiff was wrongfully charged with four (4) B felonies and two (2) C felonies.

23. That on May 15, 2008, the victim of the crime, Jorge Anyosa, for which the plaintiff was charged, was seated in his cab awaiting customers near a train and bus terminal. Mr. Anyosa was speaking to another cab driver and friend, Wilmer Hernandez, when a vehicle approached and a dispute arose because the cab drivers were blocking the roadway. The individual in the car exited his vehicle and engaged in an argument with both Mr. Hernandez and Mr. Anyosa and was face to face with them as they stood outside their respective vehicles. Mr. Anyosa later stated that this same individual returned to the location some 20 minutes later and at that time shot him. The person was described as a male black with medium skin tone, dark hair cut close to the scalp, about 5'10" to 5'11" with an accent. The plaintiff herein was arrested with his friend, Robert Ogletree, on June 5, 2008, for charges ostensibly regarding a difference offense for which

6

a no true bill was subsequently found by a Grand Jury. The plaintiff was continuously held in custody as the police questioned him and Mr. Ogletree and the police eventually elicited statements from Mr. Ogletree which implicated the plaintiff in the shooting of the cab driver, Jorge Anyosa. At the trial of this matter, Mr. Ogletree testified that the statements the police obtained were false and that the police had coerced him into implicating plaintiff in the shooting of Jorge Anyosa. As a result of the improper conduct of the police and prosecutors, the plaintiff was convicted of charges involving the shooting of Mr. Anyosa and served 10 years 3 months and 8 days in jail before he was released as a result of new evidence showing that he, in fact, was not involved in the crime and that the actual perpetrator was someone, who at the time of Plaintiff's release from prison, was incarcerated on unrelated charges and could not be prosecuted due to the Statute of Limitations.

24. The Plaintiff was indicted by a Nassau County Grand Jury on June 16, 2008 (Indictment No.: 1315N-08). Following a jury trial in February and March, 2009, the Plaintiff was convicted of all charges. On November 23, 2009, the Plaintiff was sentenced to a 25 year term of imprisonment.

25. The Plaintiff was incarcerated in the Nassau County Correctional Facility from June 5, 2008, until January 22, 2010, at which time he was transferred to the New York State Department of Corrections (DOCS) where he remained until September 13, 2018.

26. The Plaintiff was wrongfully incarcerated and deprived of his life and liberty for a total of ten (10) years, three (3) months and eight (8) days.

27. On September 13, 2018, the Plaintiff was released from custody on the prosecutor's motion, joined in by the defense, pursuant to CPL § 440.10(1)(g), in the interests of justice. The

7

charges were then dismissed pursuant to CPL § 440 in that the Plaintiff was actually innocent of the charges. The identity of the actual assailant is not yet known by the Plaintiff or his counsel but the Nassau County District Attorney's Office is aware of the name and location of the actual perpetrator but has not released his name.

28. As a direct result of the defendants' intentional and/or deliberately indifferent acts and omissions, the Plaintiff was deprived of his state and federal Constitutional rights, was robbed of more than ten (10) years of his life and freedom and sustained severe physical, emotional and monetary damages.

29. What follows is a summary of police, prosecutorial and judicial misconduct taken from the defendant's post-verdict motion, pursuant to CPL § 210.20 and 330.30; and the trial record. From the record, the following was also revealed (numbered references are from the trial record):

- The arrest by Police of the Claimant, Josiah Galloway followed a number of overly suggestive and grossly improper identification and line-up procedures. More specifically, the alleged victim, Jorge Anyosa saw the distinct characteristics of the assailant and provided a detailed description of the assailant, which clearly did not match the description of Mr. Galloway. Nevertheless, the evidence shows that the Police Officers that investigated this matter, engaged the witnesses in several improper identification procedures which caused the witnesses to provide a circumstantial identification of Mr. Galloway as the alleged assailant.

- Mr. Anyosa also gave a description of the assailant - being between five foot ten inches and to five foot eleven inches. Mr. Anyosa described that the assailant had a short hair cut (*Id.* at 218:17-19) and further described the assailant as a male black, 25 - 30 years of age (*Id.* at 461:1-3) and further described that the assailant spoke with an accent (*Id.* at 461:15-17).

- On or about June 6, 2008, Mr. Galloway was arrested in connection with the alleged shooting by the Hempstead Police Department. *Infra.* The Nassau County Police then appeared at the Hempstead Police Department to process the arrest of Mr. Galloway. (*Id.* at 440:9-24). During that time they conducted two photo

8

arrays containing photos that depicted Mr. Galloway with a hair style different from that which he possessed at the instant time and in May of 2008.

● After observing that Mr. Galloway's hairstyle at that time did not match the description given by the alleged victim, the detective declined to go forward with the lineup (*Id.* at 451:21 - 452:1). Detective Lipson, the lead Detective in the investigation, noticed that Mr. Galloway's hair was different than the description given by the victim/witness as well as the witness. (*Id.* at 517:5). Nevertheless, the detective did not discuss this obvious and exculpatory information with the other officers. (*Id.* at 518 and 520).

● On August 14, 2008, the second day that the detectives sought to place Mr. Galloway in a lineup, Mr. Galloway's hair was still long, as it had been in May of 2008. However, on this occasion, Mr. Galloway's hair was braided and/or in "cornrows." (*Id.* at 475). The detective agreed that Mr. Galloway's hairstyle never matched the description given by the victim/witness. (*Id.* at 476:9-17), that the arrest of Mr. Galloway was only approximately 21 days from the date of the shooting and it was impossible that his hair could have grown from haircut tight to the scalp to hair that was long enough to form braids or an Afro.

● The witness/victim, Mr. Anyosa, was never shown any photographs of Mr. Galloway with braids or an afro - which were the hairstyles that Mr. Galloway actually had or could have had on the date of the shooting. (*Id.* at 244:23 - 245:9; *see also,* 254:5-15). Indeed, every photograph or viewing of Mr. Galloway that was shown to the witness/victim by the police featured Mr. Galloway with short hair or wearing a baseball cap. More specifically, any and all characteristics of Mr. Galloway that were exculpatory and/or did not match the description of the alleged assailant were intentionally covered up or hidden from the victim and the witness during the identification procedures of the police. (*Id.* at 245).

● During the lineup, the subjects, including Mr. Galloway, were instructed to wear baseball caps to cover up their hair. *Infra.* Mr. Anyosa testified that the police instructed him to ignore the subjects' hair. (*Id.* at 250:21 - 251:8). Mr. Anyosa was told to "look at the face, that's all." (*Id.*).

● The victim/witness Mr. Anyosa and the other eyewitness, Mr. Hernandez, both confirmed that the alleged assailant did not have an afro or cornrows on the night of the shooting. (*Id.* at 278 - 287). After indicating their familiarity with the hairstyles, both of the aforementioned witnesses testified that they would have been easily able to identify if the assailant had an afro or cornrows. (*Id.*). Both of the aforementioned witnesses confirmed that they were never shown Mr. Galloway's hair and/or hair style as it was in May of 2008 (which was an afro and/or cornrows) at anytime. (*Id.*). In fact, during the lineups in which both

witnesses participated, the witnesses were not allowed to see Mr. Galloway's hair. (*Id.*). Thus, Mr. Galloway was deprived of his right to be viewed in a non-suggestive process.

● In sum, following the suggestion by the Hempstead Police Department that Mr. Galloway was the suspect in the shooting, Mr. Galloway became just that - the prime, and indeed the only, suspect. Following this information from the Hempstead Police, the arresting police officers unreasonably attempted to make Mr. Galloway fit the description of the suspect. The suggestive nature of the police's identification procedures are apparent as described above. Likewise, the fact that Mr. Galloway did not have access to the type of car driven by the perpetrator and would need to wear glasses in order to drive at night, were likewise factors that set Mr. Galloway apart.

● Still, when faced with the identification of Mr. Galloway in the lineup and in the photo array, Mr. Galloway's distinguishing and exculpatory characteristics were covered up and/or made absent from the identification process. Thus, the identification process was tainted in all ways possible against Mr. Galloway.

● During his summation, the prosecutor, ADA Robert Schalk, made statements to the jury that were not based upon the facts or evidence of the case and sought to cause the jury to assume the role of community defenders and avengers, which was clearly prejudicial and improper as a matter of law.

● The Prosecutor, ADA Robert Schalk, also Improperly Vouched For The Credibility Of The Prosecution's Witnesses While Impermissibly Prejudicing The Defense's Witnesses.

● The People, by ADA Robert Schalk, improperly impeached the credibility of their own witness - Robert Ogletree. (*Id.* at 89:25 - 90.3). In addition, the improper statements made by the prosecutor in an attempt to persuade the jury that Mr. Galloway had allegedly altered his appearance during trial in order to mislead the jury panel directly, the prosecutor then went further and insinuated that Mr. Galloway and his defense counsel doubted each individual jury member's ability to make rational determinations of fact.

● The Prosecutor, ADA Robert Schalk, Wrongfully and Continually Shifted The Burden On Defendant To Produce Evidence And Improperly Asked The Jury To Draw Negative Inferences From Defendant's Purported Failures To Produce Said Evidence.

● The Court Abused Its Discretion By Forcing The Jury To Continue To Deliberate Despite Their Repeated Notices To The Court Of The Fact That They

Were Hopelessly Deadlocked.

● The People's Solicitation Of Testimony From the Witnesses During The People's Direct Case Regarding Photo Identification Of Mr. Galloway Was Unduly Prejudicial To The Defendant.

● Detective Thomas Bischoff, Shield # 1001, was a forensic artist.  He was called by the defense and he met with the complainant in the hospital four (4) days after the crime. (820).  The victim gave a description of someone who was 25 to 30 years old, 5 foot 10 inches to 5 foot 11 inches and driving a 2001 or 2002 gray or silver Toyota Corolla. (828).  The face of the perpetrator was shaven with no visible scars or tattoos and the hair was shaven. (828 - 829). In particular, when shown photos of hair for the sketch, the victim did not pick out any photo with braids. (837). The victim, Mr. Anyosa, signed the back of the sketch to confirm the provided information. (825 - 826).  The police had this description at the time Mr. Galloway was stopped and interviewed.  Mr. Galloway did not match this description as he is approximately 5'5" - 5'6" tall, nor did he have an accent (something the complainant said the perpetrator had).  Mr. Galloway does have a missing tooth (F #9) which came out from the dentist who testified.

● Detective Ronald Lipson (Shield # 1001) used a photo of the plaintiff from September, 2007, which showed the plaintiff with short hair and which was shown to the two (2) witnesses, even though plaintiff's hair was very long at the time of his arrest on June 5, 2008, only three (3) weeks after the crime for which he was eventually charged. Detective Lipson knew at the time he saw plaintiff that his hair was not cut tight to his head.  Yet, Detective Lipson never relayed that information to his colleagues.

● Robert Ogletree, the People's first witness, who was arrested with Mr. Galloway on June 5, 2008,was a friend of Mr. Galloway. The police showed Mr. Ogletree a sketch, which the police said looked like Mr. Galloway even though it showed a person with short hair and Mr. Galloway had long hair. In fact on June 5, 2008, Mr. Galloway had an afro with little twists or dreads. (301 - 302). The arrest happened while they were in a Honda owned by Ogletree's girlfriend. (273 - 274).  Mr. Ogletree said on the witness stand that the police had coached and coerced him into making the statement and had put bits and pieces of his story together and the final product was false. (270 - 272, 299 - 300, 319 -320). In reference to Mr. Galloway saying it was hot up in Nassau, Mr. Ogletree said that referred to Mr. Galloway wanting to leave the area because Mr. Galloway had been shot at by someone (270) and not because of the cab driver incident.  The police kept Mr. Ogletree for hours threatening him with all kinds of charges while they sought to get him to implicate Mr. Galloway. (303). This testimony demonstrates how the police were seeking to put this crime on Mr. Galloway and

got Mr. Ogletree to sign a statement implicating the Plaintiff, which statement he testified had only been seen by him a week prior to his testimony. While testimony like this can sometimes be written off as a friend of the defendant recanted. The fact that Mr. Galloway is innocent, as now admitted by the prosecution, can only lead this Court to believe that Mr. Ogletree's testimony about the police misconduct in getting statements from him to pin the case on Mr. Galloway is true!

● Police Officer Steven Horowitz, Shield # 144, acknowledged that the initial report included a composite sketch describing the assailant as 5 feet 10 inches to 5 feet 11 inches with hair "tight to the head" (564 - 565) and described the car the assailant drove as a 2001/2002 Toyota Corolla (565) with a missing front driver side hubcap. (574 - 575). Police Officer Horowitz showed Mr. Anyosa and the other witness, Hernandez (who was present when the assailant first had the argument with them but not present during the shooting) a Mazda belonging to Mr. Galloway's girlfriend both said it looked like the car but they weren't sure. (576 - 577). Police Officer Horowitz noted the composite sketch did not show braids and Mr. Galloway had braids on June 5, 2008. (584). Officer Horowitz had also showed the witness a photo of Mr. Galloway portrayed without any braids and with short hair - this was an approximately year-old photo. (553 - 554). Officer Horowitz had been involved in the stop of Mr. Galloway on June 5, 2008 for an unrelated crime which was eventually a "no true bill." Officer Horowitz said at the time of the stop that Mr. Galloway appeared to be 5 feet 8 inches to 5 feet 10 inches tall with cornrows that were messy and appeared to be coming out. (539). Mr. Galloway later testified that he is 5 feet 5 inches tall. Police Officer Horowitz, who was with the anti-gun task force, never read the description on the composite sketch which would have shown that the plaintiff herein was not as tall as described in the sketch and some five (5) to six (6) inches shorter than the person who was described as the perpetrator. It would have also shown Police Officer Horowitz that unlike the description provided, the plaintiff herein did not have an accent. Nevertheless, Police Officer Horowitz claimed the plaintiff matched the sketch despite plaintiff's hair being long and in braids as opposed to the description of short hair cut close to the scalp. Police Officer Horowitz never bothered to verify information on the composite sketch to see that the height was different, that plaintiff had no accent and had long hair.

● The aforesaid witness, Police Officer Steven Horowitz noted the police information from the sketch had the assailant much taller than Mr. Galloway with hair tight to the head and that the car was not positively identified. He also showed a photograph of Mr. Galloway, which was approximately one (1) year old, with short hair. Also the two (2) cars the witnesses were shown were the Mazda, which was a grayish-green color, and the Honda, which was a grayish-blue color, and the Mazda, which the witnesses said looked like the car, did not have a

missing hubcap, which was part of the description of the car driven by the actual perpetrator. (575 - 576). The cars also did not have dark tinted windows which was another description of the car driven by the actual perpetrator of the crime.

• Detective Matthew Ross, Shield # 834, testified that while Mr. Galloway was in the cell prior to a scheduled lineup, he saw Mr. Galloway doing cornrows on his own hair (802 - 804) and he admitted that Mr. Gallowy had no grease or comb to do this. Also because Mr. Galloway was so short, Detective Ross had him sit on two (2) telephone books during the lineup so that Mr. Galloway would appear to be the same height as the fillers who were all police officers. (787).

• Detective Ross's testimony is significant in that he gave the jury the impression that Mr. Galloway changed his hair for the lineup. The implication to the jury was that Mr. Galloway was guilty and wanted to change his appearance. Further, having Mr. Galloway sit on two (2) telephone books to make it appear that he is taller than he really is gave the impression to the witnesses of a taller person. As previously stated, Mr. Galloway is only 5 feet 5 inches tall, which is not the height given to the sketch artist or in the initial description. The police had the information of the description in front of them on June 5/6, 2008 and knew that Mr. Galloway did not match the description.

• Detective Charles DeCaro (Shield # 1047) knew that the hair description of the true perpetrator of the crime was that the person had hair cut tight to his head and when he saw plaintiff, he readily saw that the plaintiff's hair was braided and had cornrows.

• Detective Thomas D'Luginski knew that the plaintiff's hair style was different and that his long hair and braids did not match the description but, nevertheless, he did not tell his colleagues.

• Detective Kevin Cunningham (Shield # 112) of the Village of Hempstead, assisted Police Officer Steven Horowitz in the stop and arrest of plaintiff and in holding the plaintiff in continuous custody while questioning was continued despite the fact that the plaintiff did not match the description of the composite sketch. Further, plaintiff was known to Detective Cunningham for a number of years and Detective Cunningham had personal knowledge as to plaintiff's short height and that plaintiff did not have an accent.

• That the plaintiff was made to sit on two (2) telephone books in a lineup despite a court order dated June 30, 2008, directing that plaintiff submit to, stand in and participate in physical lineup. By seating the plaintiff on two (2) telephone books and having him seated rather than standing, plaintiff's true height was concealed from the identifying witnesses.

● Mr. Jorge Anyosa was the complainant and noted that the perpetrator was a male with light black skin.  At trial, he first noted a description of 5' 9" (375 - 376).  He acknowledged that the person was so close to him during their first encounter that the person slapped his hand.  Upon questioning at trial, Mr. Anyosa admitted that the assailant was described by him to the police as having a height of 5 feet 10 inches/5 feet 11 inches and that he looked directly at his face and never noticed a missing tooth (419 - 421, 434 - 435).  Significantly, Mr. Anyosa said the assailant had an accent (421, 433), that the car had dark tinted windows which the Mazda, the car the police implied was driven by the assailant, did not have (431 - 432).  Mr. Anyosa indicated that he never said that the Mazda was on the scene that evening of May 15, 2008.  Mr. Anyosa admitted that the person did not have cornrows or an afro (442).  Mr. Anyosa admitted to telling the sketch artist that the person was 5 feet 10 inches/5 feet 11 inches tall, with short hair and that he never mentioned cornrows or an afro (418).  Mr. Anyosa also admitted that the person who shot him did not have braids (447).  Mr. Anoysa's descriptions for the hair and car were much different than plaintiff's hair or the car plaintiff was alleged to have driven on the evening of the shooting (442 - 447).

● Mr. Galloway does not have an accent.  Mr. Anyosa had described the shooter as being 5 feet 10 inches/5 feet 11 inches tall and then appears in court and stated at first that the shooter was 5 feet 9 inches tall until he was confronted with his prior description.  There was no way that this shooter was 5 feet 5 inches or even 5 feet 6 inches as Mr. Anyosa argued with the shooter face to face.  Also, the assailant's car had dark tinted windows while the Mazda, which was the car Mr. Galloway's girlfriend had, did not.

● Wilmer Hernandez, who is a cab driver and was present at the time of the first altercation,  was the friend of the complainant.  He argued with the assailant at close range standing next to each other and said the assailant was 5 feet 9 inches or 5 feet 10 inches with black, short hair and a black male. (463 - 464, 482).  When shown photos of the Honda and Mazda by the police, Mr. Hernandez said the Mazda was "more like" the car driven by the assailant (467 - 470).  Mr. Hernandez described the assailant as having a light complexion and about 26 to 30 years old.  Mr. Galloway was approximately 21 years old at the time.  Mr. Hernandez said the person did not have braids and was approximately 160 - 170 pounds (485 - 487).

● The height is not that of Mr. Galloway nor does the hair style match.  Also, Mr. Hernandez only said the Mazda was "more like" the car the assailant drove and not that it was the car.  Mr. Galloway did testify that he doesn't have a license and due to his eyesight can't drive at night.  The defense also presented Mr. Galloway's girlfriend and his mother as alibi witnesses, who both stated they were

with Mr. Galloway watching TV. The defense called ADA Joseph LaRocca, who stated the defense had given him names of alibi witnesses and did not put any restrictions on him as to whether he could speak to them but the District Attorney's Office never did speak to the witnesses. (898 - 900).

●Josiah Galloway testified in his own defense. He testified to being at home watching TV and noted that was 5 feet 5 inches tall and 22 years old. (997 -998). Mr. Galloway testified that he had cornrows on June 5, 2008, which was the same hairstyle that he had on the date of the crime. (1004). Mr. Galloway stated that he cannot do his own hair, contrary to Detective Ross's testimony (1005) implying that Mr. Galloway was doing his own hair to look different for the lineup. Mr. Galloway also testified that he cannot drive at night as he cannot see well due to glares. (1008). Neither the Honda nor the Mazda had tinted windows and neither of those cars were missing a hubcap. (1009 - 1010). Mr. Galloway testified that he did not have a Driver's License or Lerner's Permit (1027 - 1028)., that he had no accent and weighed approximately 145 - 150 pounds. (1036).

● This failure to speak to alibi witnesses and the differences in the description of the assailant as compared to Mr. Galloway, the facts that Mr. Galloway does not have an accent and the cars had no tinted windows or missing hubcap, that Mr. Galloway cannot do his own hair, all lead to the conclusion that there was a rush to judgment and the police just wanted to pin this crime on Mr. Galloway.

● Nassau County Assistant District Attorney Joseph LaRocca was given information concerning alibi witnesses which would show that the plaintiff had been elsewhere at the time of the crime but he never sought to speak to or interview any of said witnesses despite the fact of the obvious differences between the description of the perpetrator and of the plaintiff.

● Nassau County District Attorney Kathleen Rice failed to conduct a proper review of the facts of this matter and to monitor the prosecution of the case against the plaintiff herein.

## NOTICES OF CLAIM

31. Pursuant to New York General Municipal Law § 50, on or about September 21, 2018, Plaintiff caused a written, **joint** Notice of Claim to be served upon: (a) the County of Nassau and its departments, to wit: Nassau County Police Department and Office of the Nassau County District Attorney, and (b) the Incorporated Village of Hempstead and its department, to

wit: Incorporated Village of Hempstead Police Department, which said **joint** Notice of Claim set forth the name and post office address of the claimant, to wit: the plaintiff herein; the name, address and telephone number of the claimants attorneys; the nature of the claim; the time when, the place where and the manner in which the claim herein sued upon arose and the item of damages or injuries claimed to have been sustained, so far as then practicable. A copy of the said **joint** Notice of Claim is annexed as Exhibit **"A."**

32. On November 1, 2018, pursuant to New York General Municipal Law § 50-h, the Incorporated Village of Hempstead, on behalf of itself and the Incorporated Village of Hempstead Police Department, conducted an examination under oath of the Plaintiff.

33. On December 20, 2018, pursuant to New York General Municipal Law § 50-h, the County of Nassau, on behalf of itself, the Nassau County Police Department and the Office of the Nassau County District Attorney, conducted an examination under oath of the Plaintiff.

34. That more than thirty (30) days have elapsed since the service of the aforesaid respective Notices of Claim upon the Defendants, **County of Nassau and Incorporated Village of Hempstead**, their agents, servants and/or employees, and that adjustment or payment of the Plaintiff's claim has been neglected or refused by the County of Nassau and Incorporated Village of Hempstead.

35. More than one (1) year and ninety (90) days have not elapsed since the Plaintiff was exonerated and released from incarceration.

### CLAIM AGAINST THE STATE OF NEW YORK

36. On September 21, 2018, the Plaintiff has filed a Verified Claim against the State of New York (Claim No.: 132020), pursuant to the New York State Court of Claims Act, Article II,

Section 8-b, "Claims for unjust conviction and imprisonment." That matter has been assigned to the Honorable Gina M. Lopez Summa. The State of New York has filed a motion to dismiss the Plaintiff's claim and a decision is currently pending on the State's motion and the Plaintiff's cross-motion for summary judgment together with a proposed amended claim. A copy of the proposed amended claim is annexed as Exhibit **"B."**

## DAMAGES

37. The actions of the defendant deprived Plaintiff of his civil rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York.

38. The unlawful, intentional, willful, deliberately indifferent, negligent, reckless and/or bad-faith acts and omissions of the defendants caused Josiah Galloway to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted and forced to serve ten (10) years, three (3) months and eight (8) days in jail and prison for a crime he did not commit.

39. The unlawful, intentional, willful, deliberately indifferent, negligent, reckless and/or bad-faith acts and omissions of the defendants caused the Plaintiff the following injuries and damages, which continue to date and will continue into the future: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family relationships, including the total loss of relationships with children that he might have had; severe psychological damage; damage to business and property; loss of income; costs of defense; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restriction on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational

opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and expression for which he is entitled monetary relief.

40. All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

41. These defendants had a duty to act fairly and justly toward the Plaintiff. The defendants breached that duty and as a result, they proximately caused the Plaintiff to sustain severe, permanent and irreparable injuries.

## COUNT I

### 42 U.S.C. § 1983 4th and 14th Amendment Claims for False Arrest, Malicious Prosecution and False Imprisonment

42. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

43. Defendants, despite knowing that probable cause did not exist to arrest and prosecute the Plaintiff for the shooting of Mr.Anyosa, with malice, acted individually and in concert to cause the Plaintiff to be arrested, charged and prosecuted for that crime, thereby violating the Plaintiff's rights pursuant to the Fourth and Fifth Amendments of the United States Constitution to be free of unreasonable searches and seizures; unlawful arrests and deprived of life, liberty and property without due process of law.

44. On September 13, 2018, the prosecution terminated in the Plaintiff's favor when the Nassau County District Attorney dropped the charges against him.

45. The Plaintiff's causes of action for false arrest, malicious prosecution and false imprisonment were unavailable to him until September 13, 2018, upon the favorable termination of the criminal proceedings against him. Furthermore, these claims are tolled as defendants concealed from the Plaintiff - and still are concealing to this day - the facts vitiating probable cause to arrest and prosecute him.

46. But for defendants' conduct, the Plaintiff would not have been arrested and/or prosecuted for the shooting and attempted murder of Mr. Jorge Anyosa.

47. The defendants' actions deprived the Plaintiff of his liberty without probable cause and were in violation of clearly established Constitutional Law, including *Franks v. Delaware,* 438 U.S. 154 (1978), and no reasonable police officer in 2008 would have believed that the defendants' actions were lawful.

48. As a direct and proximate result of the defendants' actions, the Plaintiff was wrongly convicted and imprisoned for ten (10) years, three (3) months and eight (8) days and suffered the other grievous and continuing injuries and damages as set forth above.

### COUNT II

**42 U.S.C. § 1983 14th Amendment Claims for Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material, Exculpatory and Impeachment Evidence, Coercion and Deliberately Failing to Conduct a Constitutionally Adequate Investigation**

49. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

50. Defendants, acting individually and in concert, coerced witnesses, fabricated evidence, and withheld material, exculpatory and impeachment evidence from prosecutors,

19

thereby depriving the Plaintiff of his clearly established Constitutional rights, pursuant to the

Fourteenth Amendment, to a fair trial.

51. Specifically, defendants, deliberately and with reckless disregard for the

Constitutional rights of the Plaintiff, coerced and fabricated statements from witnesses, by using

physical and psychological force, in a manner that shocks the conscience, to procure those

statements, and by falsely representing in police reports, in pretrial conversations with

prosecutors and during the Plaintiff's trial that the facts recounted by those witnesses originated

with witnesses when in fact they had been fed to the witnesses or otherwise fabricated by the

defendant police officers.

52. Defendants also intentionally planted or deliberately falsified the identification of the

Plaintiff, thereby fabricating forensic evidence and failing to disclose exculpatory evidence to the

prosecution **and to the plaintiff during his underlying criminal case.  The defendants failed**

**in their obligations to exercise "due diligence" to uncover and turnover to the plaintiff and**

**his counsel any and all exculpatory evidence. See, *Brady v. Maryland,* 373 U.S. 83 (1963);**

**and *Kyles v. Whitley,* 514 U.S. 419 (1995).**

53. Furthermore, the defendants deliberately and with reckless disregard for the

Constitutional rights of the Plaintiff failed to disclose to the prosecution their coercion and

fabrication and attempted coercion and fabrications, as well as other material, exculpatory and

impeachment evidence, including but not limited to witness statements, forensic evidence and

investigative misconduct on the part of the defendants and others. Had this evidence been

documented and/or disclosed it would have tended to prove the Plaintiff's innocence, cast doubt

on the entire police investigation of the shooting, impeached the trial testimony of critical

witnesses and undermined confidence in the verdict against the Plaitniff. But for defendants'

actions, the Plaintiff would not have been indicted for or convicted of the shooting and related

charges involving Mr. Anyosa.

54. In their drive to secure the wrongful conviction of the plaintiff, defendants

deliberately failed to investigate leads pointing toward other suspects and corroborating the

plaintiff's innocence, including but not limited to intentionally failing to interview alibi and other

witnesses whose knowledge tended to disprove the plaintiff's guilt and failing to investigate

exculpatory and potentially exculpatory forensic evidence. The defendants purposefully failed to

conduct a thorough and adequate criminal investigation into the shooting of Mr. Anyosa because

they knew or should have known that such an investigation would have exonerated the plaintiff.

55. The plaintiff's causes of action for denial of his liberty without due process of law and

for denial of his right to a fair trial were unavailable to him until September, 2018, upon the

favorable termination of the criminal proceedings against him. Furthermore, these claims are

tolled as defendant concealed from the plaintiff - and still are concealing to this day - the

coercion of witnesses, fabrication of evidence, withholding of material exculpatory evidence,

deliberate failure to investigate, and other facts giving rise to these claims.

56. The conduct of the defendants violated the plaintiff's clearly established

constitutional rights to a fair trial and not to be deprived of liberty without due process of law as

guaranteed by the Fourteenth Amendment. No reasonable police officer in 2008 would have

believed that the actions taken by the defendants in coercing suspects and witnesses, fabricating

evidence, failing to document and disclose material exculpatory evidence to prosecutors and

failing to conduct a constitutionally adequate investigation were lawful.

57.  As a direct and proximate result of defendants' actions, the plaintiff was wrongly convicted and imprisoned for more than ten (10) years and suffered the other grievous and continuing injuries and damages as set forth herein.

## COUNT III

### 42 U.S.C. § 1983 Civil Rights Conspiracy Claim

58. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

59. Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals, to act in concert in order to deprive criminal law suspects, including the plaintiff of their clearly established Fourth, Fifth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law and to a fair trial.

60. Defendants' conspiracy to deprive criminal law suspects of their basic constitutional rights was not limited to this case.

61. In furtherance of the conspiracy, each defendant engaged in and facilitated numerous overt acts, including, without limitation, the following: false arrest; assault; battery; defamation; false imprisonment; intentional infliction of emotional distress; negligent infliction of emotional distress; wrongful prosecution; trial; conviction and sentencing evidencing a pattern of violating the civil rights of defendants, particularly minorities such as the plaintiff herein who is African-American.  See also, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694,

98 S. Ct. 2018, 2037 (1978); *Restivo, et al v. Nassau County.,* Docket No. 2:206 cv 06720, 2014

U.S. Dist. Lexis 188474 (EDNY, J. Seybert); *Restivo v. Hessemann*, No. 14-4662 (2d Cir. 2017).

See also, *Roy H. Maxwell, as Administrator of the Estate of Paul Anthony Maxwell (deceased) v.*

*Incorporated Village of Hempstead,* U.S.D.C., E.D.N.Y., Case No.: CV 99 074 (ADS) (ARL)

and *Reina Carrillos v. Incorporated Village of Hempstead,* U.S.D.C., E.D.N.Y., Docket No.: 11-

CV-5775 (JFB) (SIL). **See also, News 12 story at: http://longisland.news12.com:**

**"Investigators: Hempstead police chief, 3 others part of ticket fixing scandal," May 1, 2019.**

62. As a direct and proximate result of the defendants' conspiracy and actions in

furtherance of that conspiracy, the plaintiff was wrongly convicted and imprisoned for more than

ten (10) years and suffered the other grievous and continuing injuries and damages as set forth

herein.

## COUNT IV

### 42 U.S.C. § 1983 1st, 5th and 14th Amendments - Loss of Familial Association Claim

63. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

64. Defendants, through their misconduct against the plaintiff, recklessly or deliberately

violated the First, Fifth and Fourteenth Amendments rights to be free from unwarranted

government interference with his familial relationships to plaintiff without due process of law.

65. These acts caused the plaintiff to suffer the damages set forth herein.

## COUNT V

### Defamation

66. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

67. These defendants knowing and having reason to know that the plaintiff was innocent of the underlying criminal charges, nonetheless wrongfully and maliciously disseminated to the media and others false information about the plaintiff which was then reported and which has permanently and irreparably damaged his name and reputation and further causing, as a result, loss of educational and career opportunities. Due to the span of time since the defendant's arrest, the specific words, *in haec verba,* of defamation, pursuant to CPLR § 3016(a), must await discovery but will be alleged in a subsequent amendment once that information is available.

68. As a direct and proximate result of defendants' actions, the plaintiff was wrongly convicted and imprisoned for more than ten (10) years and suffered the other grievous and continuing injuries and damages as set forth herein.

WHEREFORE, the plaintiff, Josiah Galloway, prays as follows:

> A. That the Court award compensatory damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;
>
> B. That the Court award punitive damages to him and against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;
>
> C. For a trial by jury;

D. For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1981 claims; and

E. For such other relief to which he may be entitled and as to which this Court seems just and proper.

Dated::  Garden City, New York
August 27, 2019

LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL 4471)
Attorneys for Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
JOSIAH GALLOWAY,

                                        Plaintiff,                          VERIFICATION

                    -against-

COUNTY OF NASSAU;
NASSAU COUNTY POLICE DEPARTMENT;
INCORPORATED VILLAGE OF HEMPSTEAD;
P.O. STEVEN HOROWITZ (Shield # 144);
DETECTIVE MATTHEW ROSS (Shield # 834);
DETECTIVE CHARLES DECARO (Shield # 1047);
DETECTIVE THOMAS BISCHOFF (Shield # 1001);
DETECTIVE RONALD LIPSON (Shield # 1296);
DETECTIVE THOMAS D'LUGINSKI (Shield # 7900);
DETECTIVE GEORGE DARIENZO (Shield # 1038);
DETECTIVE KEVIN CUNNINGHAM (Shield # 112);
KATHLEEN RICE;
ASSISTANT DISTRICT ATTORNEY JOSEPH LaROCCA;
ASSISTANT DISTRICT ATTORNEY ROBERT
SCHALK;
JOHN DOE and JANE DOE #s 1 - 20 being and intended to
be other parties from the County of Nassau, Nassau County
Police Department, Incorporated Village of Hempstead and
Incorporated Village of Hempstead Police Department whose
names are presently unknown, all jointly and severally,

                                        Defendants.
----------------------------------------------------------------------------X

STATE OF NEW YORK   )
                                        ss.:
COUNTY OF NASSAU   )


        I, **Josiah Galloway**, being duly sworn, depose and say:  I am the plaintiff in the above-

captioned action; I have read the foregoing **Complaint** and know the contents thereof; the same

                                        1

is true to my own knowledge, except as to the matters therein stated to be alleged on information

and belief, and as to those matters I believe it to be true.


JOSIAH GALLOWAY

Sworn to before me this

27th day of August, 2019.


Notary Public

THOMAS F. LIOTTI
Notary Public, State of New York
No. 02LI6080933
Qualified in Nassau County
Commission Expires Sept. 23, 20 22.

2