# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSIAH GALLOWAY, <br><br>                         Plaintiff, <br><br>         -against- <br><br> NASSAU COUNTY; THE INCORPORATED VILLAGE OF HEMPSTEAD; Police Officer STEVEN HOROWITZ, Shield No. 144; Detective MATTHEW ROSS, Shield No. 834; Detective CHARLES DECARO, Shield No. 1047; Detective RONALD LIPSON, Shield No. 1296; Detective THOMAS D'LUGINSKI, Shield No. 7900; Detective GEORGE DARIENZO, Shield No. 1038; Detective KEVIN CUNNINGHAM, Shield No. 112; Detective Sergeant RICHARD DORSI; Detective CHARLES OLIE, Shield No. 1047; JOHN and JANE DOE 1-20, <br><br>                     Defendants. | **FIRST AMENDED COMPLAINT** <br><br> Jury Trial Demanded <br><br> 19 CV 5026 (AMD) (JO) |

Plaintiff Josiah Galloway, by and through his attorneys, the law firm of Elefterakis, Elefterakis & Panek, alleges as follows:

## INTRODUCTION

1.     Plaintiff Josiah Galloway spent over 10 years incarcerated on attempted murder and related charges in connection with the shooting of taxi driver Jorge Anyosa in Hempstead, New York on May 15, 2008.

2.     It is undisputed, however, that Mr. Galloway is innocent and was wrongfully convicted.

3.     This injustice was not an accident but resulted from a series of intentional acts by the individual defendants, outlined herein, with participation and knowing approval of supervisors up the chain of command, and as a direct consequence of unconstitutional policies, practices and customs maintained by defendants County of Nassau and the Incorporated Village of Hempstead.

## NATURE OF THE ACTION

4.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

6.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## NOTICE OF CLAIM

8.      Within ninety days after the claim alleged in this complaint arose, written notices of claim were duly served upon defendants.

9.      At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

10.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

## JURY DEMAND

11.     Plaintiff demands a trial by jury in this action.

## PARTIES

12.     Plaintiff Josiah Galloway is a resident of Nassau County in the State of New York.

13.     Defendant County of Nassau is a county within the State of New York. It operates the Nassau County Police Department ("Nassau PD" or "NCPD"), a department or agency of defendant County responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including several of the individually named defendants herein.

14.     Defendant Incorporated Village of Hempstead ("Hempstead") is a village in the town of Hempstead within the County of Nassau. Hempstead operates the

Village of Hempstead Police Department ("Hempstead PD"), a department or agency of defendant Hempstead responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including several of the individually named defendants herein.

15.    The individual defendants, at all times relevant herein, were officers, employees and agents of the NCPD or Hempstead PD. The individual defendants are sued in their individual and official capacities.

16.    At all times relevant defendants John and Jane Doe 1 through 20 were police officers, detectives or supervisors employed by the NCPD or Hempstead PD. Plaintiff does not know the real names of defendants John and Jane Doe 1 through 20.

17.    At all times relevant herein, defendants John and Jane Doe 1 through 20 were acting as agents, servants and employees of the County of Nassau or Hempstead. Defendants John and Jane Doe 1 through 20 are sued in their individual and official capacities.

18.    At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

### The Crime and Initial Investigation

19.     At approximately 1:30 a.m. on May 15, 2008, in the vicinity of 99 West Columbia Street in Hempstead, New York, a taxi driver named Jorge Anyosa was shot in the face following a dispute with a motorist.

20.     The victim and a witness, Wilmer Hernandez, closely observed the perpetrator, describing him as a black male, 25-30 years old, 5'10"-5'11" tall, with close-cropped or shaved hair, an accent and no glasses or distinguishing facial features.

21.     The shooter's vehicle was described as a dark gray late model Toyota Corolla with a missing front driver-side hubcap and dark tinted windows.

22.     Plaintiff Josiah Galloway is a black man with no accent standing approximately 5'5" tall. In May 2008, Mr. Galloway was 21 years old and had long hair and a missing front tooth. Due to poor vision, Mr. Galloway wore glasses to drive and did not drive at night. He also had no access to the type of vehicle used in the crime.

23.     Indeed, at the time of the Anyosa shooting, Mr. Galloway was home watching a movie with his family.

24.     On May 19, 2008, four days after the crime, a sketch artist met with the victim, who was still in the hospital, and a composite rendering of the perpetrator was generated using Anyosa's detailed description.

25.    The composite does not resemble Mr. Galloway.

## Josiah Galloway and Robert Ogletree are Arrested on Unrelated Charges

26.    On the evening of June 5, 2008, plaintiff and a friend, Robert Ogletree, were arrested at gunpoint by defendants including Horowitz and Cunningham.

27.    The purported arrest charges were unrelated to the Anyosa shooting and concerned allegations later dismissed in their entirety.

28.    At a Hempstead police station known as the Armory, defendants – including Horowitz, Cunningham, DeCaro, Darienzo, Lipson and D'Luginski – coercively interrogated plaintiff for hours and accused him of involvement in the Anyosa shooting, despite plaintiff's appearance ruling him out as a suspect.

29.    Mr. Galloway, who also possessed an ironclad alibi and was in fact innocent, truthfully, consistently and credibly denied any involvement.

## Defendants Manufacture Inculpatory Evidence and Suppress Exculpatory Evidence

30.    During the same period, defendants including DeCaro, Lipson, D'Luginski and Olie coerced plaintiff's friend Mr. Ogletree into signing a statement written and manufactured by the officers that purported to implicate plaintiff in the Anyosa shooting.

31.    With plaintiff present in the precinct and available for identification procedures, defendants instead constructed suggestive photo arrays using an old, outdated photograph of plaintiff with short hair.

32.    Defendants used the misleading photograph of plaintiff to secure false identifications from the victim and witness.

33.    Defendants purposely withheld Mr. Galloway's true, exonerating appearance from the witnesses.

34.    Ignoring clear evidence of plaintiff's innocence, defendants falsely charged Mr. Galloway with attempted murder and related charges. He was remanded without bail.

35.    Having conducted no investigation of plaintiff's true and verifiable alibi, defendants intentionally withheld key exculpatory information – including vital aspects of plaintiff's appearance and their own misconduct – from the grand jury, and fraudulently described evidence of plaintiff's guilt, resulting in plaintiff's indictment on June 16, 2008.

36.    On June 30, 2008, the criminal court issued an order requiring plaintiff to "stand in" a lineup procedure and prohibiting the alteration or removal of "any scalp or facial hair."

37.    On August 5, 2008, Mr. Galloway was brought to the precinct for a court-ordered line-up; his hair was plainly incompatible with the shaved head of the perpetrator:



38.    Inside the precinct, defendants including Ross brandished a hair trimmer and, in defiance of the lineup order, demanded to shave plaintiff's head so that he could artificially be made to appear to resemble the description.

39.    When plaintiff refused, the lineup was cancelled and rescheduled for August 14, 2008.

40.    On that date, pursuant to official policies, contrary to the plain language of the lineup order and in a calculated effort to frame plaintiff, defendants including Ross, D'Luginski and Dorsi concealed Mr. Galloway's long hair under a hat and disguised his diminutive stature using a seated lineup with Mr. Galloway sitting on two phone books:



41.     The fillers were older police officers.

42.     Knowing that he was innocent and having purposefully deprived plaintiff of his distinguishing and exonerative characteristics, proceeding in the absence of even arguable probable cause, defendants caused plaintiff to be falsely identified by the victim and witness.

## Defendants Ignore Plaintiff's Alibi and the Actual Perpetrator

43.     Plaintiff's criminal defense attorney served an alibi notice on June 23, 2008.

44.     Plaintiff's girlfriend, mother and cousin were all watching a movie with plaintiff at his house at the time of the shooting and could attest to his whereabouts.

45.     Defendants, who knew plaintiff was innocent and were aware of his alibi, made no effort to investigate it or confirm its veracity.

46.     Moreover, information identifying the true perpetrator was, upon information and belief, available to the defendants but never investigated.

47.     Defendants' misbegotten effort to frame Josiah Galloway also left the true perpetrator, a clear threat to society, free to commit untold additional crimes.

## Deprived of a Fair Trial, Josiah Galloway is Wrongfully Convicted

48.     Following hearings, the trial court ruled all of the manufactured evidence admissible and permitted the prosecution to advance improper arguments and capitalize on defendants' unconstitutional conduct.

49.     At trial, Robert Ogletree, the State's first witness, explained that defendants had coached and coerced his statement using threats and that it was false.

50.     Plaintiff, his girlfriend and his mother each took the stand and consistently testified to plaintiff's true alibi defense.

51.     Over the objections of plaintiff's criminal defense counsel, the prosecutor was permitted to improperly and disingenuously suggest on cross-examination that plaintiff's alibi witnesses were less than forthcoming and dilatory, a theory controverted by plaintiff's timely notice and the inexcusable failure of police to investigate plaintiff's alibi. Such argument lacked a good faith basis and should have been precluded.

52.     Consistent with the practices of Nassau County, the trial prosecutor capitalized on this improper line of questioning in his summation, stating, for example:

> Isn't it a coincidence... that every witness called on the People's case have given a statement, multiple statements, testimony, paperwork, every witness that testified had to sit on that witness stand and be cross examined on everything

> that they have said before? Cheryl Johnson [plaintiff's mother] and Amanda Mariana [plaintiff's girlfriend] never gave statements in this case and they came before you nine months later. You got to hear it for the first time.
>
> \*     \*     \*
>
> If this story was true, it would have taken a pack of wild dogs to keep Cheryl Johnson [plaintiff's mother] from the police department, from telling the district attorneys everything that she had to say. But she waited nine months to tell it to you the first time.

53.    The trial prosecutor also advanced in summation, consistent with official policies and practices, a number of other improper lines of argument, seeking to weaponize the officers' unduly suggestive conduct in the identification process:

> The defendant made an effort over the past nine months and over the past two weeks to prevent witnesses from identifying him and it didn't work. It didn't work at a lineup, and it didn't work in this courtroom. Ask yourselves, are those the actions of "an innocent man"? I submit they are not. It shows his guilty conscience, ladies and gentlemen.

54.    Likewise, the prosecutor made derogatory statements in summation that attacked plaintiff's character, bolstered the State's witnesses and encouraged the jury to reach findings beyond the case at hand, stating, for example: "Ladies and gentlemen, every time that this defendant's interest and those of society come into conflict, he chooses himself every single time."

55.    Such improper argument, at odds with the record, caused the jury to expand its role from factfinder to community defender and avenger, further depriving Mr. Galloway of a fair trial.

56.    Despite the efforts of defendants and prosecutors, some jurors remained convinced of plaintiff's innocence. Deliberations lasted several days in March 2009, with jurors repeatedly indicating deadlock in notes to the court. For example: "We are still Deadlocked. One juror has stated 'we are going to be here til Christmas…I am not changing my mind.' Just wanted to update you."

57.    Instead of declaring a mistrial, the court administered an *Allen* charge, with the jury returning a verdict of conviction two hours later, along with a note: "As of 1:45 p.m. on March 9, 2009, we the jury have reached a verdict. May we meet with you (please) after the verdict is read?"

58.    The court accepted the verdict but declined to meet with jurors, leaving the meaning of their final note a mystery.

59.    Following his conviction, Mr. Galloway filed a motion to set aside the conviction. The motion was denied in all respects and, in November 2009, Mr. Galloway was sentenced to twenty-five years.

## Plaintiff's Innocence Comes to Light and He is Exonerated

60.     In early July 2018, after Mr. Galloway had been wrongfully incarcerated over a decade as a result of defendants' misconduct, a woman contacted the Nassau County District Attorney's office stating that she could no longer remain silent regarding plaintiff's wrongful conviction.

61.     The Nassau County Conviction Review Unit ("CRU") investigated the matter and confirmed that plaintiff was innocent, identifying the true perpetrator.

62.     On September 13, 2018, Mr. Galloway was brought to a courtroom where the CRU moved to vacate the conviction and dismiss the indictment pursuant to N.Y.C.P.L. § 440.10(1)(g).

## DEFENDANTS' MALICE AND DELIBERATE INDIFFERENCE

63.     As described above, defendants manufactured inculpatory evidence, withheld exculpatory evidence, corruptly influenced witnesses and concealed the misconduct that pervaded the investigation.

64.     Defendants knew or should have known that they did not have probable cause to prosecute plaintiff because they deliberately used constitutionally impermissible practices to manufacture evidence against him that they knew to be false, and that was contradicted by withheld exculpatory evidence. There was no physical, circumstantial or credible testimonial evidence linking plaintiff to the crime and clear and convincing

evidence of his innocence. Nevertheless, defendants caused plaintiff to be charged with and convicted of the shooting of Jorge Anyosa.

65. Defendants procured an indictment against plaintiff in bad faith and conspired to charge him with attempted murder and other crimes, also in bad faith.

66. Plaintiff is innocent and has maintained his innocence from the inception of the criminal prosecution against him.

## UNCONSTITUTIONAL POLICIES

67. The unconstitutional and tortious acts of the defendant officers were not isolated incidents. Upon information and belief, there was a custom, policy, pattern and practice beginning years before the unjust conviction of Mr. Galloway and continuing throughout his incarceration, of intentionally concealing the appearance of criminal suspects to obtain identifications and convictions.

68. This included the routine use of seated lineups and phone books to artificially alter the height of criminal suspects in spite of court orders and even where, as here, there was a dramatic, exculpatory discrepancy between the height of the suspect and the description provided by witnesses.

69. It was also a matter of policy to cover and disguise the hairstyle of criminal suspects even where, as here, the suspect's hair was an important distinguishing characteristic and its concealment, as here, resulted in misidentification.

-14-

70.    The Nassau County District Attorney, as delegee of the defendant Nassau County, has a custom and practice not to internally investigate, reprimand, sanction or discipline prosecutors for misconduct.

71.    This custom and practice encourages, condones and ratifies the prosecutors' deliberate and reckless disregard of their constitutional and ethical duties.

72.    As a result of this practice and custom, trial district attorneys and supervisors, including but not limited to the prosecutor at plaintiff's trial, engaged in prosecutorial misconduct in a climate of impunity.

## PLAINTIFF'S INJURIES AND DAMAGES

73.    Mr. Galloway suffered severe emotional and mental anguish and pain as a result of being punished for crimes he did not commit. He was denied effective treatment for his emotional injuries while incarcerated and continues to suffer mental anguish to this day. For example, plaintiff fears police contact and his everyday activities are limited and disrupted by the traumas he has suffered in this case.

74.    Plaintiff was also denied the opportunity to pursue normal relationships with, and to enjoy the companionship of, family members and friends.

75.    Plaintiff was denied gainful employment and income. His earning power and ability to support himself have been permanently hampered by the years of productive work experience his wrongful imprisonment denied him.

76.     Plaintiff has been publicly shamed, disgraced, ridiculed, and humiliated, in the most extreme manner possible. He was a figure of outrage and disdain for events in which he had no part. Nothing can undo the reputational damage he has sustained.

77.     Plaintiff and his family incurred legal fees seeking to defend himself and prove his innocence.

78.     Additionally, Mr. Galloway claims, *inter alia*, loss of liberty; loss of enjoyment of life; continuing pain and suffering, including post-incarceration psychological issues; post-incarceration mental health treatment costs; lost earnings while incarcerated; impaired earning capacity and limitations on future employment opportunities; emotional distress; humiliation; indignities; embarrassment; degradation; physical injuries and lack of access to health care while incarcerated; attorneys' fees, and other pecuniary losses; and past pain and suffering; loss of family relationships; and loss of reputation.

<u>FIRST CLAIM</u>
§ 1983 Malicious Prosecution
(against Horowitz, Cunningham, DeCaro, Darienzo, Olie, Lipson and D'Luginski)

79.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

80.     Defendants, acting deliberately and with malice, initiated and took steps to continue the criminal prosecution of Mr. Galloway without probable cause

or other legal justification by fabricating and coercing Robert Ogletree into falsely implicating plaintiff, orchestrating intentional misidentifications using unconstitutional lineup procedures and failing to disclose key exculpatory *Brady* material, including their own misconduct, in knowing disregard of Mr. Galloway's constitutional rights.

81. There was not even arguable probable cause to arrest or prosecute Mr. Galloway, and no reasonable officer would have believed there was.

82. The failure to investigate plaintiff's true and verifiable alibi or to identify the actual perpetrator from available information is further evidence of the lack of probable cause.

83. Defendants were obligated to, but did not, disclose *Brady* material.

84. Defendants corruptly influenced witnesses in support of the prosecution.

85. The prosecution ultimately terminated in Mr. Galloway's favor when the District Attorney, explicitly acknowledging plaintiff's innocence, moved to vacate the conviction and dismiss the indictment.

86. As a direct and proximate result of defendants' misconduct, Mr. Galloway was wrongfully convicted and suffered the injuries and damages described above.

## SECOND CLAIM
### § 1983 Fabrication of Evidence, Denial of Fair Trial & *Brady*
### 14th Amendment Violations
### (against all individual defendants)

87. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

88. Defendants deliberately fabricated evidence by manufacturing a statement and forcing Mr. Ogletree to adopt it in written form and then misrepresenting to prosecutors, in conjunction with their own perjurious testimony, that the statements had originated with Mr. Ogletree.

89. The coercion of Ogletree and concealment of that misconduct violated plaintiff's right to a fair trial and defendants' *Brady* obligations.

90. Defendants also intentionally orchestrated misidentifications of plaintiff by altering his appearance to make it seem as though he resembled the description of the perpetrator, including by using an outdated picture in photo arrays and disguising plaintiff's hair and concealing his height in lineups.

91.    Defendants also tampered with witness testimony in their effort to frame and falsely convict plaintiff.

92.    Such fabrication of evidence violated Mr. Galloway's clearly established Fourteenth Amendment rights to a fair trial and not to be deprived of liberty without due process of law.

93.    As a direct and proximate result of the individual defendants' misconduct, Mr. Galloway was wrongfully convicted and suffered the injuries and damages described above.

## THIRD CLAIM
### § 1983 Supervisory Liability
(against Dorsi and unidentified supervisors)

94.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

95.    The supervisory defendants, including Dorsi and unidentified others, were personally involved in both the deprivation of Mr. Galloway's constitutional rights and in condoning the misconduct of their subordinates.

96.    The supervisors were reckless in their failure to supervise the subordinate defendants, and either knew or should have known that defendant officers were maliciously prosecuting Mr. Galloway, deliberately failing to investigate evidence pointing to other leads or suspects, fabricating and coercing

identifications and inculpatory statements, suppressing exculpatory evidence, perjuring themselves as witnesses, and depriving Mr. Galloway of due process of law.

97.    The failure of the supervisory defendants to train, supervise and discipline the subordinate defendants amounted to gross negligence, deliberate indifference or intentional misconduct, which directly caused the injuries and damages set forth above.

## FOURTH CLAIM
### *Monell*
(against Nassau County and Village of Hempstead)

98.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

Unconstitutional Identification Practices

99.    The County of Nassau and Village of Hempstead had in force and effect during the Anyosa shooting investigation and for years beforehand, a policy, practice or custom of altering or concealing criminal suspects' distinguishing characteristics for the purpose of obtaining identifications and convictions.

100.    This policy and practice includes, *inter alia*, the use of outdated photographs, seated lineups and phone books, hats and hair trimmers, as in this case.

101.   This policy or practice was a moving force behind plaintiff's wrongful conviction.

Summation Misconduct Practices

102.   As described above, the Nassau County District Attorney's office, as a matter of policy and practice, encouraged its trial prosecutors to use inflammatory and improper arguments in summation to obtain victory at all costs, as in this case.

103.   Such policies and practices was a moving force behind plaintiff's wrongful conviction and resulted in the damages hereinbefore alleged.

**FIFTH CLAIM**
**False Imprisonment and Malicious Prosecution under New York State Law**
(against Nassau County and Village of Hempstead, by *respondeat superior*)

104.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

105.   Defendants, lacking probable cause, nonetheless intentionally, recklessly, and with malice, caused Mr. Galloway to be arrested, prosecuted, and convicted of attempted murder and related charges. Mr. Galloway was conscious of his confinement and did not consent to it.

106.   Defendants initiated and commenced the prosecution and took steps to ensure that it continued.

107.   Furthermore, the defendant officers intentionally withheld and misrepresented facts vitiating probable cause against Mr. Galloway, including, *inter alia*, that they had coerced Robert Ogletree and manipulated the identification process.

108.   As Mr. Galloway has maintained from the outset and is now conceded, he is innocent of any wrongdoing and had no knowledge of or participation in the charged crimes.

109.   The prosecution finally terminated in Mr. Galloway's favor when his conviction was vacated and the indictment against him dismissed.

110.   As a direct and proximate result of defendants' actions, Mr. Galloway was wrongly arrested, prosecuted, convicted and imprisoned for over ten years, and suffered other grievous and continuing damages and injuries set forth above.

**SIXTH CLAIM**
**Intentional or Negligent Infliction of Emotional Distress**
(against Nassau County and Village of Hempstead, by *respondeat superior*)

111.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

112.   The deliberate conduct of the defendants in coercing and fabricating a false statement against Mr. Galloway and corruptly causing his false identification, their ensuing refusal to investigate the matter properly, and their cover-up of the truth, perpetuated in public statements constitutes the intentional infliction of

emotional distress.

113. In the alternative, defendants' conduct in coercing and fabricating a false statement against Mr. Galloway, corruptly causing his false identification and covering up the truth breached a duty of care owed to Mr. Galloway as a citizen and as a criminal suspect, which unreasonably endangered his physical safety and caused him to fear for his own safety, constituting the negligent infliction of emotional distress.

114. Defendants' conduct, falsely implicating Mr. Galloway in the Anyosa shooting and subjecting him to public stigma to this day notwithstanding the dismissal of charges against him, caused Mr. Galloway to suffer ongoing, unimaginable emotional distress and traumatic psychological *sequelae*.

<u>SEVENTH CLAIM</u>
§ 1983 Conspiracy
(against all individual defendants)

115. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

116. The Nassau County and Hempstead defendants agreed to violate provisions of the state and federal constitution and cause the wrongful conviction of

Josiah Galloway.

117.   The individual defendants took several overt acts in furtherance of their agreement, including manufacturing the statement of Robert Ogletree and coercing him to sign it, manipulating the identification process and suppressing exculpatory evidence, tampering with witnesses, offering false documents and testimony and concealing the truth.

118.   This conspiracy resulted in a violation of plaintiff's rights to due process and to be free from unlawful search and seizure. Mr. Galloway was wrongfully convicted and spent over a decade in prison as a consequence.

119.   Accordingly, defendants violated the Fourth, Fifth, Sixth and Fourteenth Amendments because they conspired to deprive Mr. Galloway of his rights.

120.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>EIGHTH CLAIM</u>
Failure to Intervene
(against all individual defendants)

121.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

122.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to

prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

123.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:       October 24, 2019
             New York, New York


                                Elefterakis, Elefterakis & Panek


                                _____
                                Gabriel P. Harvis
                                Baree N. Fett
                                80 Pine Street, 38th Floor
                                New York, New York 10005
                                (212) 532-1116
                                gharvis@eeplaw.com

                                *Attorneys for plaintiff*