1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     ------------------------------x
3                                        19-CV-5026(AMD)
     JOSIAH GALLOWAY,
4                                        United States Courthouse
             Plaintiff,                  Brooklyn, New York
5
             – versus –                  March 10, 2020
6                                        3:00 p.m.
     COUNTY OF NASSAU, ET AL.,
7
             Defendants.
8
     ------------------------------x
9

10        TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
              BEFORE THE HONORABLE ANN M. DONNELLY
11                 UNITED STATES DISTRICT JUDGE

12

13

     APPEARANCES
14
     Attorney for Plaintiff:   ELEFTERAKIS ELEFTERAKIS & PANEK
15                             80 Pine Street
                               38th Floor
16                             New York, New York 10005
                               BY:  GABRIEL PAUL HARVIS, ESQ.
17                                  BAREE N. FETT, ESQ.

18
     Attorney for Defendant:   SOKOLOFF STERN LLP
19   County of Nassau          179 Westbury Place
                               Carle Place, New York 11514
20                             BY:  BRIAN S. SOKOLOFF, ESQ.
                                    ALEXANDER J. ELEFTHERAKIS, ESQ.
21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

2

1    APPEARANCES (CONTINUED)

2

     Attorney for Defendant:  BEE READY FISHBEIN HATTER
3    Village of Hempstead      & DONOVAN, LLP
                               170 Old Country Road
4                              Suite 200
                               Mineola, New York 11501
5                              BY:  MICHAEL PAUL SIRAVO, ESQ.
                                        (Via teleconference)
6

7

     Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
8                             Phone:  718-613-2330
                              Fax:    718-804-2712
9                             Email:  LindaDan226@gmail.com

10

11

12

     Proceedings recorded by mechanical stenography.  Transcript
13   produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                          3

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Hi.  Everybody can have a seat.

4              THE COURTROOM DEPUTY:  This is civil cause for a

5     premotion conference, Docket Number 19-CV-5026, Galloway

6     versus County of Nassau.

7              Counsel, state your appearance, plaintiff first.

8              MR. HARVIS:  Gabriel Harvis of Elefherakis

9     Eleferakis & Panek for the plaintiff.

10             Good afternoon, Your Honor.

11             THE COURT:  Hi.

12             MS. FETT:  Good afternoon, Your Honor.

13             Baree Fett for the plaintiff.

14             THE COURT:  Hi.

15             MR. SOKOLOFF:  Brian Sokoloff, Sokoloff Stern LLP,

16    for the Nassau County defendants.

17             THE COURT:  Hi.

18             MR. ELEFTHERAKIS:  Alexander Eleftherakis, Sokoloff

19    Stern LLP, also for the Nassau County defendants.

20             THE COURT:  Hi.

21             And we've got somebody on the phone, right?

22             MR. SIRANO:  Yes, Your Honor.

23             Michael Sirano from Bee Ready law for the Village of

24    Hempstead, Police Officer Horowitz and Detective Cunningham.

25             Your Honor, I apologize for not being there in

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    4

1   person, somehow we inadvertently had this entered in Central

2   Islip in a hearing, which I did not discover until I was

3   leaving at 2 p.m.

4              THE COURT:  That's okay.  That's okay.

5              I'm going to ask you to do me a favor, though,

6   actually do all of us a favor.

7              If you could just speak slowly, because the thing

8   about telephone appearances, it makes it sort of hard to hear

9   sometimes, and it's a little hard on the court reporter.  So

10  I'm just going to ask you to slow down just a little bit.  All

11  right.

12             MR. SIRANO:  I will, Judge.

13             THE COURT:  Great.

14             So this is a premotion conference on an intended

15  motion to dismiss.  I guess my first question is:

16             Have you thought about settling this case?  And have

17  you talked by it or?

18             MR. HARVIS:  I think we mentioned it --

19             THE COURT:  You can stay seated.  Just move the

20  microphone.

21             MR. HARVIS:  There's been some discussion but

22  nothing that's gone anywhere, Your Honor.

23             MR. SOKOLOFF:  Yeah, I'm not aware of any even

24  casual discussion of it, so...

25             THE COURT:  Well, I mean you're one of the people

PROCEEDINGS                          5

1   who would be having the casual discussion, so if you're not

2   aware of it, I mean...

3           Do you think it might be a good idea?

4           MR. SOKOLOFF:  I wouldn't say no to a discussion.

5           THE COURT:  Okay.

6           And who's our magistrate judge here?

7           THE COURTROOM DEPUTY:  Judge Orenstein.

8           THE COURT:  Oh, it's Judge Orenstein.  Okay.

9           I don't know, I think in a case like this it might

10  not be a bad idea.  Surely we're going to go through all of

11  the issues that have been raised, but I think it's worth

12  talking about.  Maybe you'll be too far apart, I don't know,

13  but it's something I would consider.

14          Do you have a conference coming up?

15          MR. HARVIS:  Well, it was a little weird, but I

16  think we do, and I think it's towards the end of the month,

17  Your Honor, our initial conference.

18          THE COURT:  With Judge Orenstein.

19          MR. HARVIS:  That's right.

20          THE COURT:  Just hold on for a second.

21          (Pause.)

22          THE COURT:  Back on the record.

23          All right, so I guess in no particular order, this

24  is a motion to dismiss, which makes me wonder how I could

25  consider the transcript of the trial on a motion to dismiss.

PROCEEDINGS                                    6

1          MR. HARVIS:  May I be heard on that, Your Honor?

2          THE COURT:  Sure.

3          MR. HARVIS:  Thank you so much.

4          So there was a decision from the Second Circuit five

5   days ago in a case called *Lynch versus City of New York*, and

6   in that Judge Kearse discusses when extrinsic material may be

7   considered, and it has to be -- it has to be relied upon in

8   the drafting of the complaint, usually it's an exhibit.

9          THE COURT:  I don't think that's new law.

10         MR. HARVIS:  Right.

11         THE COURT:  I think that's the way it's always been.

12         I mean that might be a relevant consideration in a

13  motion for summary judgment, but it also might be -- I mean,

14  I'm going to suggest that there are some of these claims you

15  might want to amend your complaint on some.

16         MR. HARVIS:  Part of our presentation today was

17  going to be to ask for the opportunity to leave to amend.

18         THE COURT:  Granted.

19         MR. HARVIS:  Thank you very much, Your Honor.  I

20  will do that.

21         THE COURT:  I just think it's better to cut to the

22  chase on these things rather than litigate it.

23         So let me just suggest a few areas where I'm

24  confused, and that's probably my own fault.

25         It's possible that looking at those minutes might

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    7

1    make you rethink some of this because -- so just beginning

2    with the *Monell* claims.

3              I take the point about what -- and I'll ask you some

4    questions about this sort of -- I'm trying to do this in some

5    order from malicious prosecution to fair trial -- false arrest

6    and malicious prosecution, but I don't think you can do a

7    respondeat superior claim on a *Monell*.

8              MR. HARVIS:  That's right.

9              THE COURT:  Okay.  Because in your letter you say

10   you can.

11             MR. HARVIS:  No.  What we wanted to point out is

12   that we have properly pled respondeat claims, which goes to

13   the question of personal involvement under Section 1983.

14             THE COURT:  I see.

15             MR. HARVIS:  Because those claims don't require a

16   showing of personal involvement, and so it's somewhat academic

17   at this stage to try to figure out exactly who did what.

18   Because at the end of the day, the municipal employers will be

19   responsible for the tortious conduct of their employees, even

20   if we don't identify them specifically.

21             THE COURT:  I think I understand that.

22             Do you have anything you want to say about that?

23             MR. SOKOLOFF:  Not really.

24             THE COURT:  Okay.

25             And maybe this is not necessary to talk about this

PROCEEDINGS                                8

1    because I think that some of the *Brady* claims were the things

2    with the lineup and all that.

3              We might want to wait on that until after you've had

4    a chance to read it.

5              MR. HARVIS:  Yes.  And I think -- you know,

6    atmospherically I think that those are important for

7    understanding how something like this happened.

8              But we will be removing the emphasis in terms of

9    liability from those because we don't -- in another -- to put

10   it simply, we don't need to reach that far here, because now

11   we have evidence that was clearly outside of the trial record.

12             THE COURT:  The lady, the witness who testified at

13   the trial.

14             MR. HARVIS:  Exactly.

15             Well, this is actually the lady, if I understand

16   what Your Honor's saying, we're on the same page, is the head

17   of the Nassau County Conviction Integrity Unit.

18             THE COURT:  That's not the lady I was talking about.

19             MR. HARVIS:  Who's the lady?

20             THE COURT:  Maybe it's not a woman.

21             I thought you showed notes -- oh, it is a man.

22   Sorry about that.  It's Jorge.

23             MR. HARVIS:  Exactly, the victim, Jorge Anyosa.

24             THE COURT:  I see.  He felt he was pressured.

25             MR. HARVIS:  That's right, Your Honor.

PROCEEDINGS                                    9

1          THE COURT:  So -- okay.  So maybe some of these

2     questions don't matter.

3          You know, so one of the lineup claims was that they

4     changed the appearance, and my recollection, it's been a while

5     since I thought about state court lineups, but the

6     recollection is that sometimes the police will put everybody

7     in a particular kind of hat or sit them down so that the

8     suspect doesn't stand out.

9          But what you're alleging is that they used this

10    practice to hide his features that would show that he couldn't

11    have been the guy.

12         MR. HARVIS:  And even more than that, Your Honor, we

13    have a statement that's in the letter, our second letter, that

14    had his height been disclosed to the eyewitness, he would have

15    immediately said that's not the guy.

16         THE COURT:  But I take it a judge heard all of this

17    in the *Wade* hearing.

18         MR. HARVIS:  Yes.

19         The aspect of the case that relates to the evidence

20    that was presented at trial, is in our view, an extremely

21    narrow little slice of the case.

22         And we would agree that to the extent those

23    allegations were completely exposed at the trial, it will

24    neither form of the basis of a *Brady* claim nor a due process

25    claim.

1          THE COURT:  Okay.  And then another question I had

2     was just about the trial itself.

3               I guess there was alibi notice that was filed, and

4     then it sounds like, although it's not entirely clear to me,

5     it sounds like the prosecutor cross-examined the alibi

6     witnesses.  I think the case is called *Dawson*, some state

7     court case that you can establish four different things.

8               Did the judge sustain or overrule objections to

9     those questions, and does that matter?

10          MR. HARVIS:  That's a very good question.  And I

11     think that, you know, it matters depending on which of the

12     claims we're evaluating.

13               And I think the answer is there were objections made

14     on the record, and I think that the court permitted the

15     cross-examination that would -- we would allege it was

16     improper.

17          THE COURT:  So when there are objections that are

18     overruled and a judge, like in a summation, is it more the

19     judge's actions that you're complaining about then the --

20     well, ultimately you're complaining about the judge's actions.

21     I don't think they do that here.

22          MR. HARVIS:  Right.  And I just want to be clear.

23     We're not suing any judges or prosecutors here.

24          THE COURT:  You can if you want.  Well, you can't

25     actually.

PROCEEDINGS                              11

1              I just want to make sure that I'm understanding what

2    the context is.  Is it fair to say that these things that

3    you've put in the complaint are just to show that everybody

4    was --

5              MR. HARVIS:  Well, we're --

6              THE COURT:  -- the forces were conspiring against

7    him?

8              MR. HARVIS:  We're trying to piece together all the

9    strings that created this injustice, including those that are

10   actionable, and those that are just atmospheric.

11             THE COURT:  Okay.

12             MR. SOKOLOFF:  Judge, if I may.

13             THE COURT:  I was going to get to you.

14             MR. SOKOLOFF:  Oh, okay.

15             THE COURT:  I just wanted to make sure I understood

16   some of these claims.  I think I'm getting it now.

17             Go ahead.

18             MR. SOKOLOFF:  As I see the complaint, these

19   allegations against the prosecutor are not just there for

20   atmospherics, they form the basis of a *Monell* claim.

21             THE COURT:  Well, that's what I thought.

22             MR. SOKOLOFF:  Well, that's what I thought, too.

23             THE COURT:  I thought -- that's what I was curious

24   about.  But I thought the *Monell* was you're going to show a

25   history of prosecutor saying terrible things and Appellate

PROCEEDINGS                                    12

1   Court telling them to stop saying it.

2              MR. HARVIS:  That's *Bellamy*.  Right, Your Honor.

3              THE COURT:  I'm quite familiar with it, yes.

4              Except in *Bellamy* there were no objections and it

5   was never the -- it was never the point of an appeal.

6              So I'm just curious about does the judge play any

7   role in ruling on the objections, and whether that's a *Monell*

8   claim?

9              MR. HARVIS:  Well, our *Monell* claim, as I see it, is

10  not the type of questions that the prosecutor was allowed to

11  ask, but the way he was permitted to characterize the evidence

12  in summation.

13             THE COURT:  So we're not talking about the cross.

14             MR. HARVIS:  No.  Except to the -- I apologize, Your

15  Honor.  Except to the extent that the cross was where the

16  evidence derived that the prosecutor argued.

17             THE COURT:  All right.  So I haven't seen this

18  transcript, so he makes these arguments that are based on?

19             MR. HARVIS:  Probably *Dawson*.  It sounds like it.

20             I'm not a criminal practicer, and I think that he

21  may have had a better -- Mr. Galloway may have a slightly

22  better lawyer at the criminal trial than Mr. Bellamy.  I'm

23  guessing.  It sounds like.

24             THE COURT:  No, no, actually, no.  Therein lies a

25  tale.  But that's a totally different kind of case.

PROCEEDINGS                              13

1          But if a judge overrules an objection and then let's

2     the prosecutor make the argument, and I don't know what

3     happened in a case on appeal, but if this case was -- that was

4     the argument that was made on appeal, and the judge and the

5     Appellate Division denied it, I don't if that happened.

6          MR. HARVIS:  There was no appeal.  The DA came in

7     and exonerated him before the appeal was even filed.

8          THE COURT:  Ten years?

9          MR. HARVIS:  It was being perfected.  What can I

10    tell you.

11         THE COURT:  That's something else.

12         All right, so let's just take -- let's say that the

13    judge doesn't agree that these are improper questions.

14         Can that be the basis of a *Monell* claim?  And I'm

15    just wondering if the prosecutors -- if someone's been telling

16    you you're doing a terrible job, you've got to stop this

17    practice, but the judge before whom you're trying the case

18    sends you the message that it's okay, how -- I just -- I don't

19    quite understand how that works.

20         MR. HARVIS:  I think it's an interesting argument,

21    and I think it's a little bit, if I may, in the weeds from

22    where we view the sort of real crux of the case.

23         THE COURT:  Right.

24         MR. HARVIS:  But I would say -- I would say, no, I

25    don't think it's legally significant what a given criminal

PROCEEDINGS                              14

1   court judge rules.  I think we look at it against the

2   constitution.

3          And if the policy is to make improper summation

4   arguments that are violative of the due process clause then

5   that it's irrelevant, in my view, whether a particular judge

6   presiding in a particular trial thinks that's the case or not.

7          THE COURT:  Okay.  All right, I think I get it.

8          Do you have something you want to say about that?

9          MR. SOKOLOFF:  Yes.

10          THE COURT:  Just take it easy.  Talk.  We're just

11   talking.  Go ahead.

12          MR. SOKOLOFF:  So you can't have a *Monell* claim

13   unless you have an underlying constitutional violation.

14          First you have to prove that what's done was

15   unconstitutional, and then as *Monell*, you have to show that it

16   resulted from a policy, practice, custom or procedure of the

17   municipality.

18          Here, the fact that this very issue was argued

19   before the judge, the judge made a ruling, the judge found

20   that the question was proper.

21          Under the *Wray* case, that severs the causation.

22   It's an independent act by an external party between the

23   wrongdoing and the claimed damages.

24          So in answering your question, the fact that the

25   judge ruled on this, and I believe the judge actually

1    referenced the state court case that you mentioned, *Dawson*, in

2    evaluating this, that -- that cuts the chain and that's the

3    *Wray* case.

4              THE COURT:  Well, I guess -- I'm getting ahead of

5    myself a little bit here.

6              I'm just a little curious about it because I'm

7    always curious of how you try one of these cases in front of

8    the jury and who tells them -- you know, I guess we get some

9    expert to talk about what happens at a trial.

10             But I think it's very -- I wonder what juries think

11   about it.  And this doesn't go to your claim at all, but, you

12   know, most juries watch a lot of TV, and they think that

13   people can say whatever they want in summation.

14             And so if some professor gets up there and says

15   you're not allowed to say, I don't know, whatever things

16   you're not allowed to say now, I'm just -- I just don't know

17   what juries do with it.  And I wonder how many of these cases

18   have been tried.

19             MR. HARVIS:  Not many, I think.

20             Can I just say one thing, Your Honor?

21             THE COURT:  Sure.

22             MR. HARVIS:  So the *Wray* case did not involve a

23   *Monell* claim, it involved a due process claim.  And *Wray* and

24   *Towns*, which *Wray* relies on, were both summary judgment

25   decisions.

PROCEEDINGS                                           16

1          THE COURT:  Right.

2          MR. HARVIS:  And they both involved cases where

3     there was substantial evidence of guilt aside from the

4     evidence at issue.

5          Our facts are much more like the *Bermudez* case from

6     2015, where you also had an admittedly innocent man, and you

7     had the allegation that the evidence as it was presented from

8     the officer to the ADA was -- they misled the ADA about the

9     quality of the evidence and that resulted in defective

10    presentation before the grand jury, and then also taint at the

11    trial, which the trial judge knew nothing about.

12         And so our view is that both procedurally and

13    substantively this case is just very distinguishable from

14    *Wray*.

15         THE COURT:  Well, obviously when we're talking about

16    the standard for a complaint, I think some of these things are

17    more appropriately discussed in a motion for summary judgment.

18         The only thing I was going to try to get you to

19    think about was whether you're going to come in second on

20    summary judgment on some of this any way because of this, just

21    in terms of drafting another complaint, if you had these very

22    strong arguments that have come up since the time you drafted

23    your complaint.  It's just something to keep in mind.

24         And, you know, I do always encourage litigants to

25    think about what the jury's going to do with certain claims,

1   and they sound so appealing to us lawyers when you get, you

2   know, a regular group of citizens they have no idea what we're

3   talking about.

4          So it's neither here nor there in terms of -- in

5   terms of legal sufficiency.

6          I do just -- and, again, maybe this is a failure of

7   imagination on my part.

8          I think *McDonough* takes out the time bar claims.

9   *McDonough* pretty clearly says for a fair trial fabrication of

10  evidence claims that they -- that favorable termination is the

11  point at which the claim -- the time starts running.

12         I don't -- maybe I shouldn't admit this -- I have no

13  idea what you're talking about with the intracorporate

14  conspiracy.  I don't think that matters.

15         I think the clear lesson of *McDonough*, it's usually

16  municipal defendants like is that favorable termination is an

17  element of the fair trial fabricated evidence claim, and

18  that's when the claim starts.

19         So I don't think that that is going to work.  Like I

20  said, maybe it's because I don't know -- I didn't get what was

21  it, the Intracorporate Conspiracy Doctrine?

22         I just don't think that -- I'm being a little

23  facetious, I get what that is, I just don't know how it --

24  what it could possibly have to do with favorable termination.

25         MR. HARVIS:  Well, the point that we were making,

PROCEEDINGS                                    18

1    Your Honor, is that we think it's the explicit holding on

2    *McDonough* that this claim did not accrue until this case was

3    over.

4              But just reaching the actual substantive argument

5    that's normally raised in the 1983 conspiracy context, we just

6    wanted to point out to the Court that we would not be blocked

7    based on that doctrine.  That was all.

8              THE COURT:  I see.  But I do think *McDonough* is -- I

9    think that time bar is not going to work on this one.

10             MR. SOKOLOFF:  It weakens our argument

11   significantly, I grant that.  But *McDonough* didn't deal with a

12   conspiracy claim.

13             THE COURT:  I don't think it cared, though.

14             I mean, I think most of the courts that have

15   considered the favorable termination in this district have

16   said -- have read it, I think to the dismay of some on the

17   plaintiff's side, as saying that it's an element -- it's

18   always been an element of a malicious prosecution claim.

19             And just as the decisions that I've read, I think

20   there might be one exception, but most district courts in our

21   district and in the Southern District are saying favorable

22   termination, regardless of the charge, is an element of a fair

23   trial claim.

24             And maybe the Circuit will straighten one of us out

25   on this, so...

PROCEEDINGS                         19

1            MR. HARVIS:  As an aside, Your Honor.  I had the

2    privilege of going to watch the argument in the Supreme Court

3    on *McDonough*.  It was awesome.

4            And I just want to point Your Honor to footnote 10

5    of the opinion which says that:  Perhaps a more capacious

6    understanding of favorable termination is appropriate in the

7    fair trial context.

8            That's the only point I wanted to make.

9            THE COURT:  I saw that.  But any way...

10           MR. HARVIS:  I agree with Your Honor, though.

11           THE COURT:  I don't think it's a bar.  I mean, it's

12   quite clear that that's a deadline at the time it's favorably

13   terminated.

14           So I mean I think -- I'm just trying to think is

15   there anything else in terms -- because I am going to permit

16   you to amend your complaint, because I think it's a good idea.

17           I think you say that you're not going to sue those

18   retired cops in their official capacity.

19           MR. HARVIS:  That's right.  We'll fix that, Your

20   Honor.

21           THE COURT:  All right.  And then --

22           MR. HARVIS:  And we'll take a close look at the

23   *Monell* claim.

24           THE COURT:  Take a look at it and see what you

25   think.

PROCEEDINGS                          20

1          I just want to make sure I understand that the --

2     we've got the witness -- I understood you to be saying in your

3     complaint that the defendants misled the grand jury.

4          MR. HARVIS:  Correct.

5          THE COURT:  Okay.  Not the -- but you were looking

6     at the *Monell* claim anyway, so okay.

7          I think that's what we'll do.  So how much time do

8     you need to file an amended complaint?

9          MR. HARVIS:  We're -- I'm supposed to be flying

10    tomorrow, but I'm like so on the fence about it, and she's

11    supposed to be flying the following week, and so I don't think

12    either of those things are going to happen.

13         THE COURT:  I'll give you some extra time.

14         MR. HARVIS:  How about three weeks, Your Honor.

15         THE COURT:  All right, so where does that take us?

16         THE COURTROOM DEPUTY:  To the 31st.

17         THE COURT:  March 31st?  Okay.

18         All right, so then when we get the amended

19    complaint, then you'll see where -- I do encourage you to try

20    to settle this, if you can.

21         I mean, the guy clearly was exonerated, spent ten

22    years in jail, so it's worth a shot any way.

23         MR. SOKOLOFF:  Your Honor, he -- the plaintiff has a

24    court of claims action going.

25         THE COURT:  Well, that does not mean that he can't

PROCEEDINGS                                    21

1    have -- I mean, my view is that maybe people should try to

2    coordinate.

3              The state legislature should maybe -- there should

4    be some kind of a rule that if you get one you don't get the

5    other, but that's not what the law is, so...

6              MR. SOKOLOFF:  I would ask, though, if they're going

7    to amend by March 31st, this -- so --

8              THE COURT:  You're talking about the John Does?

9              MR. SOKOLOFF:  I'm talking about that, but I'm also

10   thinking in terms of discovery.

11             So if the complaint is going to be switched up --

12             THE COURT:  Yes.

13             MR. SOKOLOFF:  -- I think we should wait to begin

14   discovery until we see which complaint we have.

15             THE COURT:  I think you would agree to that;

16   wouldn't you?

17             MR. HARVIS:  Oh, I don't mind waiting until the end

18   of the month to move forward, but we're going to be appearing

19   before Judge Orenstein at the end of the month anyway, so that

20   would be a good time to discuss the schedule.

21             THE COURT:  Right.  I'll talk to him, too.  I'll let

22   him know that there's going to be an amendment.

23             MR. SOKOLOFF:  And one of the things we were going

24   to ask is to stay *Monell* discovery.

25             THE COURT:  I don't think anybody's going to start

PROCEEDINGS                          22

1   *Monell* discovery --

2              MR. HARVIS:  That's fine.

3              THE COURT:  -- so I'll stay that.  Okay.

4              All right.  Anything else?

5              MR. SOKOLOFF:  One last issue, and it's a very tiny

6   issue --

7              THE COURT:  Okay.

8              MR. SOKOLOFF:  -- is the defendant that's named in

9   the caption, Charles Olie, O-L-I-E.

10             We've had back and forth with the plaintiff.  This

11  person doesn't exist.  It's a misreading of a name.  And we

12  had written to the magistrate judge to ask that his name be

13  dropped.

14             THE COURT:  You can work that out.

15             MR. HARVIS:  We're going to work that out.

16             Just one thing.  He brings up a good point, Your

17  Honor, which is, as long as we're going to amend, for the sake

18  of efficiency, I think it might make sense if we just exchange

19  initial disclosures so we can find out if there are any other

20  officers that were involved in this rather than doing a whole,

21  you know, round of motion practice and then getting initial

22  disclosures.

23             For the sake of efficiency, if there are people with

24  knowledge, we might be able to work that out.

25             MR. SOKOLOFF:  They have a lot of the documents.

PROCEEDINGS                                    23

1    They have the trial transcript.  We may get a complaint that

2    we want to move to dismiss, so...

3            THE COURT:  I think that -- there's a pretty

4    significant record here.  So you have -- in terms of the

5    arrest and malicious prosecution cases, you have the

6    detectives who were involved in taking the statements, correct

7    so far?

8            MR. HARVIS:  Right.

9            THE COURT:  Just a question of curiosity.

10           What was he arrested for that got dismissed?

11           MR. HARVIS:  It was like a drug deal, slash -- it

12   was a drug deal gone bad where I think someone got shot in the

13   foot.

14           THE COURT:  So how long did that case stick around

15   before it got dismissed?

16           MR. HARVIS:  A couple months maybe.  And then the

17   victim recanted and there was a written statement provided.

18           THE COURT:  All right.  And so was there bail set on

19   that case?

20           MR. HARVIS:  I don't want to speak out of turn.  I

21   realize it may be a little bit of a wrinkle.  I can found out.

22           But it was a much lower case than this second degree

23   homicide, and this was as serious a charge as you can get.

24           THE COURT:  So he was probably remanned on the

25   murder.

PROCEEDINGS                                    24

1          MR. HARVIS:  Oh, for sure.

2          THE COURT:  But you don't know what the bail status

3    was on the other case?

4          MR. HARVIS:  Well, it's a good question.  I think

5    that he was arraigned on them together, because he was

6    arrested on the other case and then it becomes this case while

7    he's in custody.  I'll look at that, though.

8          THE COURT:  It may not matter.  It may not matter.

9    It's just something that struck me.

10         All right.  Anything else?

11         MR. HARVIS:  Not from plaintiff.

12         MR. SOKOLOFF:  Thank you, Your Honor.

13         THE COURT:  I guess I will give you a decision on

14   that exchange in discovery.  I still think you can work it

15   out.

16         MR. HARVIS:  We have the main people.  We're

17   always -- we're well within the statute, so if we need to work

18   that out later, we will.  No problem.

19         THE COURT:  All right.  Thank you.

20         MR. HARVIS:  Thank you very much, Your Honor.

21

22         (Whereupon, the matter was concluded.)

23   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
24        s/ Linda D. Danelczyk                March 24, 2020

25

          LINDA D. DANELCZYK                        DATE

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*