## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSIAH GALLOWAY,<br><br>                    Plaintiff,<br><br>        -against-<br><br>NASSAU COUNTY; THE INCORPORATED VILLAGE OF HEMPSTEAD; Police Officer STEVEN HOROWITZ, Shield No. 144; Detective MATTHEW ROSS, Shield No. 834; Detective CHARLES DECARO, Shield No. 1047; Detective RONALD LIPSON, Shield No. 1296; Detective THOMAS D'LUGINSKI, Shield No. 7900; Detective GEORGE DARIENZO, Shield No. 1038; Detective KEVIN CUNNINGHAM, Shield No. 112; Detective Sergeant RICHARD DORSI; Detective RENE B. YAO; Detective CARL STRANGE, Shield No. 1225; JOHN and JANE DOE 1-20,<br><br>                    Defendants. | **SECOND AMENDED COMPLAINT**<br><br>Jury Trial Demanded<br><br>19 CV 5026 (AMD) (JO) |

Plaintiff Josiah Galloway, by and through his attorneys, the law firm of Elefterakis, Elefterakis & Panek, alleges as follows:

## INTRODUCTION

1.    Plaintiff Josiah Galloway spent over 10 years incarcerated on attempted murder and related charges in connection with the shooting of taxi driver Jorge Anyosa in Hempstead, New York on May 15, 2008.

2.     It is undisputed, however, that Mr. Galloway is innocent and was wrongfully convicted.

3.     This injustice was not an accident but resulted from a series of intentional acts by the individual defendants, outlined herein, with participation and knowing approval of supervisors up the chain of command, and as a direct consequence of unconstitutional policies, practices and customs maintained by defendants County of Nassau and the Incorporated Village of Hempstead.

## NATURE OF THE ACTION

4.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

6.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## NOTICES OF CLAIM

8.      Within ninety days after the claim alleged in this complaint arose, written notices of claim were duly served upon defendants.

9.      At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.

10.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

## JURY DEMAND

11.     Plaintiff demands a trial by jury in this action.

## PARTIES

12.     Plaintiff Josiah Galloway is a resident of Nassau County in the State of New York.

13.     Defendant County of Nassau is a county within the State of New York. It operates the Nassau County Police Department ("Nassau PD" or "NCPD"), a department or agency of defendant County responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including several of the individually named defendants herein.

14.     Defendant Incorporated Village of Hempstead ("Hempstead") is a village in the town of Hempstead within the County of Nassau. Hempstead operates the

Village of Hempstead Police Department ("Hempstead PD"), a department or agency of defendant Hempstead responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including several of the individually named defendants herein.

15.    The individual defendants, at all times relevant herein, were officers, employees and agents of the NCPD or Hempstead PD. The individual defendants are sued in their individual capacities.

16.    At all times relevant defendants John and Jane Doe 1 through 20 were police officers, detectives or supervisors employed by the NCPD or Hempstead PD. Plaintiff does not know the real names of defendants John and Jane Doe 1 through 20.

17.    At all times relevant herein, defendants John and Jane Doe 1 through 20 were acting as agents, servants and employees of the County of Nassau or Hempstead. Defendants John and Jane Doe 1 through 20 are sued in their individual capacities.

18.    At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

### The Crime and Initial Investigation

19.    At approximately 1:30 a.m. on May 15, 2008, in the vicinity of 99 West Columbia Street in Hempstead, New York, Kenton Sherwood, a motorist, shot Jorge Anyosa, a taxi driver, in the face following a dispute.

20.    The victim and a witness observed Mr. Sherwood, describing him as a black male, 25-30 years old, approximately 5'10"-5'11", with close-cropped or shaved hair, an accent and no glasses or distinguishing facial features.

21.    Mr. Sherwood, who has admitted to perpetrating the heinous crime, matches the description and has a Jamaican accent.

22.    Witnesses described the vehicle Sherwood drove that night as a 2002-2005 gray Toyota Corolla with a missing front driver-side hubcap and dark tinted windows.

23.    Indeed, Mr. Sherwood's girlfriend at the time, Natasha Cheney, then owned a gray 2003 Toyota Corolla.

24.    After Sherwood committed the crime, his girlfriend Ms. Cheney helped him clean up the blood.

25.    In addition to Ms. Cheney, other civilians, including, upon information and belief, among others, Nadine and Vashtine Johnson, knew that Kenton Sherwood was responsible for the Anyosa shooting.

26.     According to records of the Nassau County District Attorney, on the day after the crime was committed a civilian, believed to be either Vashtine Johnson or Nadine Johnson, called the police tip line to report Mr. Sherwood as the shooter.

27.     Upon information and belief, neither Nassau County nor Hempstead Police took any steps to investigate the lead or apprehend Mr. Sherwood, who was never charged or prosecuted.

28.     On May 19, 2008, four days after the crime, a sketch artist met with the victim, who was still in the hospital, and a composite rendering of the perpetrator was generated.

29.     The composite sketch resembles Kenton Sherwood and includes Sherwood's demographics.

30.     Plaintiff Josiah Galloway is a 5'5" black man with no accent. In May 2008, Mr. Galloway was 21 years old and had long hair and a missing front tooth. Due to poor vision, Mr. Galloway wore glasses to drive and did not drive at night. He also had no access to the type of vehicle used in the crime.

31.     In fact, at the time of the Anyosa shooting, Mr. Galloway was home watching a movie with his family.

32.     The composite sketch, moreover, does not resemble Mr. Galloway.

## Josiah Galloway and Robert Ogletree are Arrested on Unrelated Charges

33.     On the evening of June 5, 2008, plaintiff and a friend, Robert Ogletree, were arrested at gunpoint by defendants including Horowitz and Cunningham.

34.     The purported arrest charges were unrelated to the Anyosa shooting and concerned allegations later dismissed in their entirety for lack of evidence.

35.     At a Hempstead police station known as the Armory, defendants – including Horowitz, Cunningham, DeCaro, Darienzo, Lipson, Yao and D'Luginski – coercively interrogated plaintiff for hours and accused him of involvement in the Anyosa shooting, despite plaintiff's appearance ruling him out as a suspect.

36.     Mr. Galloway, who also possessed an ironclad alibi and was in fact innocent, truthfully, consistently and credibly denied any involvement.

## Defendants Manufacture Inculpatory Evidence and Suppress Exculpatory Evidence

37.     During the same period, defendants including DeCaro, Lipson and D'Luginski, under the supervision of John Doe supervisors, coerced plaintiff's friend Mr. Ogletree into signing a statement written and manufactured by the officers that purported to implicate plaintiff in the Anyosa shooting.

38.     With plaintiff present in the precinct and available for identification procedures, defendants instead constructed suggestive photo arrays using an old, outdated photograph of plaintiff with short hair.

-7-

39.     Meeting with victim Anyosa, defendants Lipson and Horowitz pressured and misled him into selecting plaintiff as the perpetrator from the photo array.

40.     Among other corruptive acts, these defendants told Anyosa that he had selected the "right guy" and that his friend had picked the same person.

41.     The corruption of Anyosa, the sole eyewitness to the crime, was withheld from prosecutors, the trial judge and Josiah Galloway and proximately caused plaintiff's wrongful conviction.

42.     Defendants purposely withheld Mr. Galloway's true, exonerating appearance from the witnesses in order to secure plaintiff's wrongful conviction.

43.     Ignoring clear evidence of plaintiff's innocence and Kenton Sherwood's guilt, defendants falsely charged Mr. Galloway with attempted murder and related charges. He was remanded without bail.

44.     Defendants conducted no investigation of plaintiff's true and verifiable alibi and intentionally withheld key exculpatory information – including vital aspects of plaintiff's appearance and their own misconduct – from the grand jury, and fraudulently described evidence of plaintiff's guilt, resulting in plaintiff's indictment on June 16, 2008.

45.     On June 30, 2008, the criminal court issued an order requiring plaintiff to "stand in" a lineup procedure and prohibiting the alteration or removal of "any scalp or facial hair."

46.     On August 5, 2008, Mr. Galloway was brought to the precinct for a court-ordered line-up; his hair was plainly incompatible with the shaved head of the perpetrator:



47.     Inside the precinct, defendants including Ross brandished a hair trimmer and, in defiance of the lineup order, demanded to shave plaintiff's head so that he could artificially be made to appear to resemble the description.

48.     When plaintiff refused, the lineup was cancelled and rescheduled for August 14, 2008.

49.     On that date, pursuant to official policies, contrary to the plain language of the lineup order and in a calculated effort to frame plaintiff, defendants including Ross, D'Luginski and Dorsi concealed Mr. Galloway's long hair under a hat and

disguised his diminutive stature using a seated lineup with Mr. Galloway sitting on two phone books:



50.    The fillers were older police officers.

51.    Knowing that he was innocent and having purposefully deprived plaintiff of his distinguishing and exonerative characteristics and proceeding in the absence of even arguable probable cause, defendants including Ross, D'Luginski, Dorsi, Darienzo and Strange caused plaintiff to be falsely identified by the victim and witness.

<u>Defendants Ignore Plaintiff's Alibi and the Actual Perpetrator</u>

52.    Plaintiff's criminal defense attorney served an alibi notice on June 23, 2008.

53.    Plaintiff's girlfriend, mother and cousin were all watching a movie with plaintiff at his house at the time of the shooting and could attest to his whereabouts.

54.    Defendants, who knew plaintiff was innocent and were aware of his alibi, made no effort to investigate it or confirm its veracity.

55.    Moreover, information identifying the true perpetrator, Kenton Sherwood, was, upon information and belief, presented to the defendants immediately after the crime but never investigated.

56.    As a result of defendants' failure to investigate or apprehend Mr. Sherwood, Sherwood was never brought to justice in connection with the Anyosa shooting and remained free to commit other serious violent crimes while Josiah Galloway sat in prison as an innocent man.

57.    For example, in February 2013 Sherwood was at a party with his wife when they began to argue. Sherwood allegedly threw his wife to the ground, punched her in the face, stepped on her head, kicked her, threw her against a car, banged her head against the hood of the car and continued to kick her, causing her to sustain serious injuries.

## Deprived of a Fair Trial, Josiah Galloway is Wrongfully Convicted

58.    Following hearings, the trial court, having been misled about key evidence including the purported Anyosa identifications, ruled all of the manufactured evidence admissible and permitted the State to advance improper arguments and capitalize on defendants' unconstitutional conduct.

-11-

59.     At trial, Robert Ogletree, the State's first witness, explained that defendants had coerced him to sign a false statement inculpating plaintiff that had been prepared by police.

60.     Defendants never disclosed their coercion of Ogletree.

61.     Plaintiff, his girlfriend and his mother each took the stand and consistently testified to plaintiff's true alibi defense.

62.     Despite the concerted efforts of defendants, jurors remained convinced of plaintiff's innocence.

63.     Deliberations lasted several days in March 2009, with jurors repeatedly indicating deadlock in notes to the court. For example: "We are still Deadlocked. One juror has stated 'we are going to be here til Christmas…I am not changing my mind.' Just wanted to update you."

64.     Instead of declaring a mistrial, the court administered an *Allen* charge, with the jury returning a verdict of conviction two hours later, along with a note: "As of 1:45 p.m. on March 9, 2009, we the jury have reached a verdict. May we meet with you (please) after the verdict is read?"

65.     The court accepted the verdict but declined to meet with jurors, leaving the meaning of their final note a mystery.

66.     Following his conviction, Mr. Galloway filed a motion to set aside the conviction. The motion was denied in all respects and, in November 2009, Mr. Galloway was sentenced to twenty-five years.

## Plaintiff's Innocence Comes to Light and He is Exonerated

67.     In early July 2018, after Mr. Galloway had been wrongfully incarcerated over a decade as a result of defendants' misconduct, a woman contacted the Nassau County District Attorney's office stating that she could no longer remain silent regarding plaintiff's wrongful conviction.

68.     The Chief of the Nassau County Conviction Integrity Unit ("CIU"), ADA Sheryl H. Anania, reinvestigated plaintiff's conviction and declared him innocent.

69.     In the course of the reinvestigation, ADA Anania spoke to the only eyewitness in the case, victim Jorge Anyosa.

70.     The following are excerpts of Ms. Anania's notes:







71.     The CIU investigation confirmed that Kenton Sherwood was the actual perpetrator and uncovered the 2008 tip identifying Sherwood that defendants had failed to investigate.

72.     On September 13, 2018, Mr. Galloway was brought to a courtroom where the CIU moved to vacate the conviction and dismiss the indictment pursuant to N.Y.C.P.L. § 440.10(1)(g).

## DEFENDANTS' MALICE AND DELIBERATE INDIFFERENCE

73.     As described above, defendants manufactured inculpatory evidence, withheld exculpatory evidence, corruptly influenced witnesses and concealed the misconduct that pervaded the investigation.

74.     Defendants knew or should have known that they did not have probable cause to prosecute plaintiff because they deliberately used constitutionally impermissible practices to manufacture evidence against him that they knew to be false, and that was

contradicted by withheld exculpatory evidence. There was no physical, circumstantial or credible testimonial evidence linking plaintiff to the crime and clear and convincing evidence of his innocence. Nevertheless, defendants caused plaintiff to be charged with and convicted of the shooting of Jorge Anyosa.

75.    Defendants procured an indictment against plaintiff in bad faith and conspired to charge him with attempted murder and other crimes, also in bad faith.

76.    Plaintiff is innocent and has maintained his innocence from the inception of the criminal prosecution against him.

## PLAINTIFF'S INJURIES AND DAMAGES

77.    Mr. Galloway suffered severe emotional and mental anguish and pain as a result of being punished for crimes he did not commit. He was denied effective treatment for his emotional injuries while incarcerated and continues to suffer mental anguish to this day. For example, plaintiff fears police contact and his everyday activities are limited and disrupted by the traumas he has suffered in this case.

78.    Plaintiff was also denied the opportunity to pursue normal relationships with, and to enjoy the companionship of, family members and friends.

79.    Plaintiff was denied gainful employment and income. His earning power and ability to support himself have been permanently hampered by the years of productive work experience his wrongful imprisonment denied him.

80.     Plaintiff has been publicly shamed, disgraced, ridiculed, and humiliated, in the most extreme manner possible. He was a figure of outrage and disdain for events in which he had no part, including through the publication of defamatory news articles and press releases describing him as responsible for vicious Anyosa shooting. Nothing can undo the reputational damage he has sustained.

81.     Plaintiff and his family incurred legal fees seeking to defend himself and prove his innocence.

82.     Additionally, Mr. Galloway claims, *inter alia*, loss of liberty; loss of enjoyment of life; continuing pain and suffering, including post-incarceration psychological issues; post-incarceration mental health treatment costs; lost earnings while incarcerated; impaired earning capacity and limitations on future employment opportunities; emotional distress; humiliation; indignities; embarrassment; degradation; loss of consortium; physical injuries and lack of access to health care while incarcerated; attorneys' fees, and other pecuniary losses; and past pain and suffering; loss of family relationships; and loss of reputation.

## FIRST CLAIM
### § 1983 Malicious Prosecution
(against Horowitz, Cunningham, DeCaro, Darienzo, Lipson and D'Luginski)

83.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

84.     Defendants, acting deliberately and with malice, initiated and took steps to continue the criminal prosecution of Mr. Galloway without probable cause or other legal justification by fabricating and coercing Robert Ogletree into falsely implicating plaintiff, orchestrating intentional misidentifications and pressuring and misleading Jorge Anyosa, using unconstitutional lineup procedures and failing to disclose key exculpatory *Brady* material and pre-trial evidence, including their own misconduct, in knowing disregard of Mr. Galloway's constitutional rights.

85.     There was not even arguable probable cause to arrest or prosecute Mr. Galloway, and no reasonable officer would have believed there was.

86.     The failure to investigate plaintiff's true and verifiable alibi or to identify the actual perpetrator from available information is further evidence of the lack of probable cause.

87.     Defendants were obligated to, but did not, disclose *Brady* material.

88.     Defendants corruptly influenced witnesses in support of the prosecution.

89.     The prosecution ultimately terminated in Mr. Galloway's favor when the District Attorney, explicitly acknowledging plaintiff's innocence, moved to vacate the conviction and dismiss the indictment.

90.     As a direct and proximate result of defendants' misconduct, Mr. Galloway was wrongfully convicted and suffered the injuries and damages described above.

## SECOND CLAIM
### § 1983 Fabrication of Evidence/Denial of Fair Trial and *Brady* Violations
(against all individual defendants)

91.     Plaintiff repeats and realleges each and every allegation as if fully set forth

herein.

92.     Defendants deliberately fabricated evidence by manufacturing a statement

and forcing Mr. Ogletree to adopt it in written form and then misrepresenting to

prosecutors, in conjunction with their own perjurious testimony, that the statements

had originated with Mr. Ogletree.

93.     The coercion of Ogletree and concealment of that misconduct violated

plaintiff's right to a fair trial and defendants' *Brady* obligations.

94.     Defendants intentionally orchestrated misidentifications of plaintiff by

altering his appearance to make it seem as though he resembled the description of the

perpetrator, including by using an outdated picture in photo arrays and disguising

plaintiff's hair and concealing his height in lineups.

95.     Defendants also tampered with witness testimony in their effort to frame

and falsely convict plaintiff.

96.     Defendants pressured Jorge Anyosa to misidentify plaintiff as the

perpetrator, telling him he had picked "the right guy" and that plaintiff had already

been identified by another witness.

97.    Based on defendants' false assurances that Anyosa had picked the right guy and their manipulation of him, Anyosa misidentified plaintiff before the Grand Jury and at trial.

98.    Such fabrication of evidence violated Mr. Galloway's clearly established constitutional rights to a fair trial and not to be deprived of liberty without due process of law.

99.    As a direct and proximate result of the individual defendants' misconduct, Mr. Galloway was wrongfully convicted and suffered the injuries and damages described above.

<u>THIRD CLAIM</u>
<u>§ 1983 Supervisory Liability</u>
(against Dorsi and unidentified supervisors)

100.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

101.    The supervisory defendants, including Dorsi and unidentified others, were personally involved in both the deprivation of Mr. Galloway's constitutional rights and in condoning the misconduct of their subordinates.

102.    The supervisors were reckless in their failure to supervise the subordinate defendants, and either knew or should have known that defendant officers were maliciously prosecuting Mr. Galloway, deliberately failing to investigate evidence

pointing to other leads or suspects, fabricating and coercing identifications and inculpatory statements, suppressing exculpatory evidence, perjuring themselves as witnesses, and depriving Mr. Galloway of due process of law.

103.    The failure of the supervisory defendants to train, supervise and discipline the subordinate defendants amounted to gross negligence, deliberate indifference or intentional misconduct, which directly caused the injuries and damages set forth above.

<u>FOURTH CLAIM</u>
**False Imprisonment and Malicious Prosecution under New York State Law**
(against Nassau County and Village of Hempstead, by *respondeat superior*)

104.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

105.    Defendants, lacking probable cause, nonetheless intentionally, recklessly, and with malice, caused Mr. Galloway to be arrested, prosecuted, and convicted of attempted murder and related charges. Mr. Galloway was conscious of his confinement and did not consent to it.

106.    Defendants initiated and commenced the prosecution and took steps to ensure that it continued.

107. Furthermore, the defendant officers intentionally withheld and misrepresented facts vitiating probable cause against Mr. Galloway, including, *inter alia*,

that they had coerced Robert Ogletree and manipulated the identification process with respect to Jorge Anyosa.

108.   As Mr. Galloway has maintained from the outset and is now conceded, he is innocent of any wrongdoing and had no knowledge of or participation in the charged crimes.

109.   The prosecution finally terminated in Mr. Galloway's favor when his conviction was vacated and the indictment against him dismissed.

110.   As a direct and proximate result of defendants' actions, Mr. Galloway was wrongly arrested, prosecuted, convicted and imprisoned for over ten years, and suffered other grievous and continuing damages and injuries set forth above.

**FIFTH CLAIM**
**Intentional or Negligent Infliction of Emotional Distress**
(against Nassau County and Village of Hempstead, by *respondeat superior*)

111.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

112.   The deliberate conduct of the defendants in coercing and fabricating false statements against Mr. Galloway and corruptly causing his false identification, their ensuing refusal to investigate the matter properly, and their cover-up of the truth, perpetuated in public statements constitutes the intentional infliction of emotional distress.

113.   In the alternative, defendants' conduct in coercing and fabricating false statements against Mr. Galloway, corruptly causing his false identification and covering up the truth breached a duty of care owed to Mr. Galloway as a citizen and as a criminal suspect, which unreasonably endangered his physical safety and caused him to fear for his own safety, constituting the negligent infliction of emotional distress.

114.   Defendants' conduct, falsely implicating Mr. Galloway in the Anyosa shooting and subjecting him to public stigma to this day notwithstanding the dismissal of charges against him, caused Mr. Galloway to suffer ongoing, unimaginable emotional distress and traumatic psychological *sequelae*.

## SIXTH CLAIM
### § 1983 Conspiracy
(against all individual defendants)

115.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

116.   The Nassau County and Hempstead defendants agreed to violate provisions of the state and federal constitution and cause the wrongful conviction of Josiah Galloway.

117.   The individual defendants took several overt acts in furtherance of their agreement, including manufacturing the statement of Robert Ogletree and coercing him to sign it, manipulating the identification process with respect to Jorge Anyosa and

suppressing exculpatory evidence, tampering with witnesses, offering false documents

and testimony and concealing the truth.

118. This conspiracy resulted in a violation of plaintiff's rights to due process

and to be free from unlawful search and seizure. Mr. Galloway was wrongfully convicted

and spent over a decade in prison as a consequence.

119. Accordingly, defendants violated the Fourth, Fifth, Sixth and Fourteenth

Amendments because they conspired to deprive Mr. Galloway of his rights.

120. As a direct and proximate result of this unlawful conduct, plaintiff

sustained the damages hereinbefore alleged.

**SEVENTH CLAIM**
Unlawful Pre-Trial Detention
In Violation of the 4th Amendment and
*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007)
(against all individual defendants)

121. Plaintiff repeats and realleges each and every allegation as if fully set forth

herein.

122. Defendants' failure to disclose exculpatory material, including the

coercion of Ogletree, the corruption of the Anyosa identifications and the 2008 tip

regarding Kenton Sherwood, resulted in a pre-trial deprivation of plaintiff's liberty in

violation of the Fourth Amendment.

123. As a direct and proximate result of this unlawful conduct, plaintiff

-23-

sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Failure to Intervene
(against all individual defendants)

124.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

125.    Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

126.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:          March 31, 2020
                New York, New York


Elefterakis, Elefterakis & Panek

_____
Gabriel P. Harvis
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116
gharvis@eeplaw.com

*Attorneys for plaintiff*