# EXHIBIT D

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

COUNTY COURT: STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

**ORIGINAL**

-against-

**NOTICE OF
DEFENDANT'S POST-TRIAL
MOTION**

Indictment No. 01315N-2008

JOSIAH GALLOWAY,

Defendant.
-----------------------------------------------------------X

PERSONS:

**PLEASE TAKE NOTICE,** that upon the annexed affirmation of **FREDERICK K. BREWINGTON** an attorney duly admitted to practice law before the Courts of the State of New York, the annexed exhibits and the prior proceedings herein, the undersigned will move this Court at the Criminal Part before the one of the Honorable Judges of this Court on the 27TH day of May, 2009 at 9:30 A.M., or as soon thereafter as counsel can be heard for an order:

1.    Setting aside the jury's guilty verdict pursuant to CPL §§ 210.20(h) and 330.30;

2.    Setting aside the verdict and/or for a mistrial based upon prosecutorial misconduct and prejudicial statements made by the People during trial;

3.    Setting aside the verdict and/or for a mistrial based upon abuse of judicial discretion related to matters concerning jury deliberations;

4.    And for such other relief as this Court may deem just and proper.

C - 335

AM 0335

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

DATED:    Hempstead, New York
          March 26, 2009

                        Yours, etc.

                        LAW OFFICE OF
                        FREDERICK K. BREWINGTON
                        Attorney for the Defendant
                        50 Clinton Street, Suite 501
                        Hempstead, New York 11550
                        (516) 489-6959

                        By: _____
                            GREGORY CALLISTE, JR.
                            FREDERICK K. BREWINGTON

**BY HAND DELIVERY TO:**

        Office of the Nassau County District Attorney
        262 Old Country Road
        Mineola, New York 11501

        CLERK OF THE COURT
        262 Old Country Road
        Mineola, New York 11501

COUNTY COURT: STATE OF NEW YORK
COUNTY OF NASSAU
---------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

**DEFENDANT'S**
**AFFIRMATION IN SUPPORT**

-against-

**Indictment No. 01315N-2008**

JOSIAH GALLOWAY,

Defendant.
---------------------------------------------------------------X

**FREDERICK K. BREWINGTON** an attorney duly admitted to practice law before the

Courts of the State of New York, affirms, under penalty of perjury that:

1.      I am the Principal of The Law Offices of Frederick K. Brewington, attorneys of record

for JOSIAH GALLOWAY, the Defendant herein.  I am familiar with the facts of this case and make

this affirmation in support of Defendant's instant post-trial motion to set-aside the verdict because

the conviction herein was clearly against the weight of the evidence presented by the People, among

other things.

2.      This affirmation is also made in support of Defendant JOSIAH GALLOWAY's motion

for  such other relief as may be appropriate.

3.      Unless otherwise specified, all allegations of fact are based upon inspection of the

record of this case, upon research, upon conversations with Assistant District Attorneys, Defendant,

and  counsel's own  investigations,  and  evidence  revealed  (or  not  revealed)  during  the  trial

proceedings in this matter.

4.      The jury was asked to determine the facts with respect to the charges of 110/125.25,

Attempted Murder int the Second Degree; 120.10(1), Assault in the First Degree; 120.10(2), Assault

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
CLAIM NO. 132020
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 12/11/2018

in the Second Degree; 265.09(1), Criminal Use of a Firearm in the First Degree; 265.03, Criminal Possession of a Weapon in the Second Degree; and 265.03(3), Criminal Possession of a Weapon in the Second Degree.

5.      Following a full jury trial, the Jury found Defendant guilty of all counts. The finding of the Jury was contrary to the weight and import of the credible evidence.

6.      Defendant Josiah Galloway now moves to set-aside the jury's verdict, pursuant to CPL §§ 210.20, 330.30 because, following a full trial on the merits and based upon evidence obtained therefrom in addition to evidence obtained prior to the trial, there exists jurisdictional and legal impediment to the conviction of the defendant for the offenses charged. Indeed, following trial in the instant matter, Defendant reasserts and maintains that the evidence of Defendant's guilt is against the weight of the evidence for the reasons stated below.


### POINT I.
### THE CHARGES SHOULD BE DISMISSED AS A MATTER OF FACT AND LAW BECAUSE THE PEOPLE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT COMMITTED THE ALLEGED CRIMINAL ACTS AT ISSUE AND THE IDENTIFICATION OF MR. GALLOWAY WAS UNDULY SUGGESTIVE.

7.      In short, the People allege that Mr. Galloway is guilty of the above-mentioned crimes because they assert that on or about May 15, 2008, Mr. Galloway was present at the scene of the crime, *inter alia*, allegedly possessed a weapon and used said weapon to assault and attempt to murder the alleged victim, Jorge Anyosa. *(See Indictment, Exhibit A)*.

8.      The Polices' arrest of Mr. Galloway followed a number of overly suggestive and grossly improper identification and line-up procedures. More specifically, the alleged victim, Mr. Anyosa, saw the distinct characteristics of the assailant and provided a detailed description of

2

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

CLAIM NO. 132020

NYSCEF DOC. NO. 27                                                                    RECEIVED NYSCEF: 12/11/2018

the assailant, which clearly did not match the description of Defendant Mr. Galloway. Nevertheless, the evidence shows that the Police officers that investigated this matter, engaged the witnesses in several improper identification procedures which caused the witnesses to provide a circumstantial identification of Mr. Galloway as the alleged assailant.

9.     The Witness, Mr. Anyosa, testified that the police officers visited him at the hosptial wherein he laid in the bed, four (4) days following the alleged incident. (*Exhibit B*, Trail Transcr. 216:19). Mr. Anyosa testified that at that time, the description of the person that shot him was clear in his mind. (*Id*. at 217:1-4). Mr. Anyosa assisted a composite sketch artist in rendering an image of the alleged assailant. (*Id* at 217).

10.     Also, Mr. Anyosa gave a description of the assailant - being between five foot ten inches to five foot eleven inches. Mr. Anyosa described that the assailant hand a short hair cut. (*Id* at 218:17-19). Mr. Anyosa described that the assailant was a male black, 25 - 30 years of age. (*Id*. 461:1-3). Mr. Anyosa also described that the assailant spoke with an accent (*Id* at 461:15-17).

11.     With the assistance from the description given to the police by Witness/Victim Mr. Anyosa, a composite sketch was prepared by the police at the request of Detective Dluginski. (*Id* at 463:17-23; and 513:13). The composite sketch was then placed on an "intelligence bulletin" and forwarded to other police departments within five (5) days of the alleged shooting. (*Id* at 472:19-25).

12.     On or about June 6, 2008, Defendant Mr. Galloway was arrested in connection with the alleged shooting by the Hempstead Police Department. *Infra*. The Nassau County Police then appeared at the Hempstead Police Department to process the arrest of Mr. Galloway (*Id* at 440:9-24). During that time they conducted two photo arrays containing photos that depicted Mr. Galloway with a hair style different from that which he possessed at the instant time and in May of 2008.

3

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

13.    After taking Mr. Galloway into custody, the Nassau County Police then attempted to conduct two seperate lineups with the alleged victim/witness wherein Mr. Galloway was one of the subjects. (*Id* at 446:18). According to the People's witness, Detective Dluginski, on the first occassion that Mr. Galloway was brought in to the precinct for purposes of engaging in a lineup, the Detective noticed that Mr. Galloway **looked different from the desription** that was given to the police by the alleged victim. (*Id* at 449).

14.    According to the detective, the initial lineup wherein Mr. Galloway was a subject did not go forward because Mr. Galloway's "hair had changed." (*Id* at 450:15). This testimony of course begs the question is, "changed" from what? Clearly the change about which the detective was most concerned about was from the description given by the witnesses and nothing else.  More specifically, though the detective never saw Mr. Galloway on the date of the incident or any other day before the date of this first lineup attempt, Detective Dluginski was readily able to recognize that Mr. Galloways' features were different from the description given by the victim (*Id* at 450:9-20). More specifically, Mr. Galloway's hairstyle clearly did not match the description of the assailant given by the witness/victim. (*Id at* 475). On June 6, 2008, a few days following the incident, Mr. Galloway's hairstyle was an Afro - not close-cut  as described by the victim/witness or the other witness. (*Id at* 475).

15.    After observing that Mr. Galloway's hairstyle at that time did not match the **description given** by the alleged victim, the detective declined to go forward with the lineup. (*Id* at 451:21 - 452:1). Detective Lipson, the lead Detective in the investigation, noticed that Mr. Galloway's hair was different that the description given by the victim/witness as well as the witness (*Id* at 517:5). Nevertheless, the detective did not discuss this obvious and exculpatory information

4

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM          CLAIM NO. 132020
NYSCEF DOC. NO. 27                                      RECEIVED NYSCEF: 12/11/2018

with the other officers. (*Id* at 518; and 520).

16.     On August 14, 2008, the second day that the detectives sought to place Mr. Galloway in a lineup,  Mr. Galloway's hair was still long, as it had been in May of 2008. However, on this occassion, Mr. Galloway's hair was braided and/or in "cornrows." (*Id* at 475). The detective agrees that Mr. Galloway's hairstyle never matched the description given by the victim/witness (*Id* at 476:9-17).

17.     Indeed, the victim, Mr. Anyosa agreed the he was able to get a close look at the assailant that shot him and the assailant did not have cornrows or a big afro (*Id* at 219 - 221). Mr. Anyosa confirmed that at the time that he gave the police information for their composite sketch, Mr. Anyosa had the option, and could have, advised the artist that the assailant had cornrows and/or an Afro. However, Mr. Anyosa did not advise the artist that the assailant had cornrows and/or an afro because he was **certain that the assailant's hair was short** on the date of the shooting. (*Id* at 242).

18.     The witness/victim Mr. Anyosa was never shown any photographs of Mr. Galloway with braids or and afro - which were the hairstyles that Mr Galloway actually had or could have had, on the date of the shooting. (*Id at* 244:23 -245:9; *see also*, 254:5-15). Indeed, every photograph or viewing of Mr. Galloway that was shown to the witness/victim by the police featured Mr. Galloway with short hair or wearing a baseball cap (*Id*). More specifically, any and all charateristics of Mr. Galloway that were exculpatory, and/or did not match the description of the alleged assailant, were intentionally covered-up or hidden from the victim and the witness during the polices' identification procedures (*Id at* 245). Needless to say even the lineup photos take of the lineup fail to properly preserve all the suggestive aspects of the lineups as they are in part impossible to discern any aspects of some of the fillers and the total lack of quality of the photograph is in itself an impediment to Mr.

5

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM          CLAIM NO. 132020

NYSCEF DOC. NO. 27                                    RECEIVED NYSCEF: 12/11/2018

Galloway challenging his prosecution.

19.    While viewing a photograph of Mr. Galloway during trial, which depicted Mr. Galloway's hair as it was on the date of the alleged incident, the Mr. Anyosa agreed that Mr. Galloway's hairstyle was "completely different" (*Id at* 246:11-14) from the man that shot him.

20.    Mr. Anyosa had already viewed photographs of Mr. Galloway before the date that Mr. Anyosa was called to view the lineup wherein Mr. Galloway was a subject. (*Id at* 250:7-9).

21.    During the lineup, the subjects, including Mr. Galloway, was instructed to wear baseball caps to cover up their hair. *Infra*. Mr. Anyosa testified that the police instructed him to ignore the subjects' hair. (*Id at* 250:21 - 251:8). Mr. Anyosa was told to "look at the face, thats all." *Id*. In manufacturing this circumstance, making this suggestion and giving this instruction, Mr. Galloway was deprived of a factor that was his to have available for his benefit to prove his innocence.

22.    Both the victim witness Mr. Anyosa and an the other eyewitness Mr. Hernandez both confirmed that the alleged assailant did not have an afro or cornrows on the night of the shooting. (*Id at* 278-287). After indicating their familiarity with the hairstyles, both of the aforementioned witnesses testified that they would have been easily able to identify if the assailant had an afro or cornrows. *Id*. Both of the aforementioned witnesses confirmed that they were never shown Mr. Galloway's hair and/or hair style as it was in May of 2008 (which was an afro and/or corn rows) at anytime. *Id*. In fact, during the lineups in which both witnesses participated, the witnesses were not allowed to see Mr. Galloways hair. *Id*. Thus, Mr. Galloway was deprived of this right to be viewed in a non suggestive process.

6

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

23.   Based upon the view of Mr. Galloway as shown to the witnesses on the dates of the

lineups (wherein Mr. Galloway was asked to cover all of his his distinguishing and exculpatory

features), the victim and the eye witness allegedly identified Mr. Galloway.

24.   In the matter of Manson v. Brathwaite, 432 U.S. 98, 111-14, 97 S.Ct. 2243, 53

L.Ed.2d 140 (1977), the Supreme Court adopted a totality of the circumstances approach to

determining reliability and held that identification evidence will be admissible if the procedures were

not suggestive or if the identification has independent reliability. Id.,see also Neil v. Biggers, 409

U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 [1972] ). If a court finds that unnecessarily suggestive

identification procedures were employed, it then determines whether it can nevertheless be shown

that the proposed identification is based on the witness's independent recollection of the incident

itself and not on the suggestive procedure. Manson, 432 U.S. at 113, 97 S.Ct. 2243; People v.

Rodriguez, 64 N.Y.2d at 740, 485 N.Y.S.2d 976; People v. Williams, 222 A.D.2d at 152, 646

N.Y.S.2d 665; People v. Foster, 200 A.D.2d at 199, 613 N.Y.S.2d 616).

25.   In sum, following the suggestion by Hempstead Police Department that Mr.

Galloway was the suspect in the shooting, Mr. Galloway became just that - the prime, and indeed

the only suspect. Following this information from the Hempstead Police, the arresting police officers

unreasonably attempted to make Mr. Galloway fit the description of the suspect. The suggestive

nature of the police's identification procedures are apparent as described above.  Likewise, the fact

that Mr. Galloway did not have access the to type of car driven by the perpetrator and would need

to wear glasses in order to see were likewise factors that set Mr. Galloway apart.

26.   The description provided by the witnesses (before the identification and lineup and

during the trial in this matter) specified height, hair type,  facial features and speech type. Indeed,

7

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

the witnesses were able to testify as to a lack of distinguishing facial features on the alleged assailant - including a missing front tooth. When asked specific questions about those identifying factors present in Mr. Galloway, each of the indentifying witnesses supported Mr. Galloway's innocence.

27.     Indeed, when Mr Galloway's hairstyle, whether five inch afro or cornrows, were pointed-out to each of the witnesses, the witnesses unequivocally testifed that the person who committed this crime had neither of these material chararctreristics. Still, when faced with the indentificaton of Mr. Galloway in the lineup and in the photo array, Mr. Galloway's distiguishing and exculpatory charateristics were covered up and/or made absent from the identifaction process. Thus, the identification process was tainted in all ways possible against Mr. Galloway.

28.     Further, based upon the testimony of the witnesses Messrs. Anyoas and Hernadez, said witnesses were certain that the alleged assailant did not possess the distinguishing features that Mr. Galloway possessed on the date of the alleged incident. Therefore, the witnesses' in-court identification could not provide an independent reliable basis on which to declare that the out-of-court identification, being tainted and/or suggestive, was harmless error.

29.     This fact was also conceded by the testimony of detective Dluginski, who admitted that by placing the baseball cap on Mr Galloway, as well as the other lineup participants, the characteristics which could proven Mr. Galloway's innocense were concealed and excluded. While caselaw speaks clearly to not creating a lineup or identification process which would make a defendant standout, very little case law, if any, exists on the question of concealing an accused's features and other distinguishing factors that would help to prove and/or support his innocence.

30.     Accordingly, the Court must apply the most liberal interpretation and reasoning to its consideration in this case when evaluating what it was that Mr. Galloway was deprived of. The

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM   CLAIM NO. 132020

NYSCEF DOC. NO. 27                                                      RECEIVED NYSCEF: 12/11/2018

compelling factors of which Mr. Galloway was deprived during these lineup and identification

procedings should have rendered his identification and the trial to be unsupportable by law.

Likewise, no reasonable jury viewing and hearing this evidence could have come to the conclusion

reached here.  Without doubt, the finding of the Jury was against the weight of the reasonable and

credible evidence.


## POINT II.
### THE PROSECUTOR'S IMPROPER AND/OR INFLAMATORY STATEMENTS MADE DURING SUMMATIONS - OVER THE OBJECTIONS OF THE DEFENSE - WAS UNDULY PREDJUDICIAL TO MR. GALLOWAY AND WARRANTS A MISTRIAL

**A.     The Prosecutor Caused The Jury To Expand Its Role From Fact Finder To That Of A Community Defender And Avenger:**

31.     During his summation, the prosecutor made statements to the jury that were not

based upon the facts or evidence of the case and sought to cause the jury to assume the role of

community defenders and avengers, which was clearly prejudicial and improper as a matter of law.

32.     For example, during his summation, the prosecutor stated:

[1]     At the end of the night, Jorge Anyosa is at Winthrop University Hospital fighting for
his life and left with permanent disfiguring injuries that you saw in this case, all
because this defendant wanted to end the argument his way, *show Jorge Anyosa and
Wilmer Hernandez who he was, what he was all about* . . . before he shot that bullet
that sent Jorge Anyosa to Winthop University Hospital fighting for his life. (*Exhibit
G, summation*, 65:12-23); and

[2]     *Ladies and gentlemen, every time that this <u>Defendant's interest and those of
society come into conflict, he chooses himself every single time. I submit to you
that's exactly what he did when he took the witness stand. He put his interest above
everybody else's</u>. (Id at* 75:20-25);

33.     The prosecutor then sought to prejudice the minds of the jury further by giving the

jury an improper hypothetical which required the jurors to make themselves the victims of a

9

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
CLAIM NO. 132020
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 12/11/2018

shooting. More specifically, over the objection of the Defense, the prosecutor stated:

> Let's take for example, thatif you were to go shopping at a store, your local grocery store, you go there all the time, you get to the checkout counter and you get into an argument with the cashier. They are overcharging you, that's what you think. The cashier says, no, I'm not. You begin arguing. It's heated. It's embarrassing. Other people from the neighborhood are around and you decide to leave.
>
> Every single time you go back to that grocery store, you're going to remember that person's face. You are going to walk past that cashier and mumble to yourself, that's the person who overcharged me. ***Imagine for one second that, during the course of the argument, that cashier pulled out a loaded handgun and shot you in the face . . . And you lived to talk about it, lived to see that person again. That is a face, ladies and gentlemen, that you would never ever forget.***

(*Id at* 95:17 - 96:13)

34. In addition, though the Complaining Witness Mr. Anayosa never testified to the following, the People continued to improperly appeal to the sympathy of jury by asserting:

> There's not a day that goes by that Jorge doesn't remember the face of the man that shot him. Every time he tries to talk, everytime he tries to eat food, everytime he has to look at the scars in the mirror on his face, everytime he touches his right chin, he see's this man's face.
>
> That's exactly what Jorge Anyosa has seen for the last nine months. He sees the face of the man that last week he saw in the courtroom and pointed out as the man who shot him.

(*Id at* 96:14-23).

35. Further, though the alleged Eye-Witness Mr. Hernandez never testified to the following, the People continued to improperly appeal to the sympathy of jury by asserting:

> Wilmer Hernandez won't forget that man's face either. He had only seen it fifteen minutes prior during that argument. When he came back and saw his friend, saw the carnage that was created and his friend holding his face together, Wilmer Hernandez won't forget that face either.

10

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
CLAIM NO. 132020
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 12/11/2018

(*Id at* 97:7)

36.     "A prosecutor '[a]bove all ... should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant." Collins, *supra, citing*, People v. Ashwal, 383 N.Y.S.2d 204, 347 N.E.2d 564.

37..     Much like the prosecutor in Collins, "here, as well as going beyond the evidence, the [P]rosecutor 'sought to have the jury expand its role from that of a fact finder in this case to that of a community defender and avenger'." Collins, *citing*, People v. Miller, 149 A.D.2d 439, 440, 539 N.Y.S.2d 782 (1989). These actions of the prosecutor herein were unduly prejudicial to Mr. Galloway.

38..     These are the exact kind of inflamatory statements made by prosecutors that the Appellate Courts condemn. *Infra*. For example, in People v. Smith, 288 A.D.2d 496, 733 N.Y.S.2d 237 (2 Dept.,2001) the Appellate Division reversed the conviction and ordered a new trial because the prosecutor in that case "improperly appealed to the sympathy of the jury by commenting that the victim was 'courageous' for going to the police and for 'coming before [the jury]' and that the victim was 'ill' but still came to court. Likewise, in the case at bar, the prosecutor's unsupported continuous references to Jorge Anyosa's facial injuries, which allegedly reminded Mr. Anyosa of Mr. Galloway's face "everyday,"was an improper plea to the symathy of the jurors. (*See* People v. Smith, *supra; citing,* People v. Robinson, 260 A.D.2d 508, 689 N.Y.S.2d 163).

11

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM   CLAIM NO. 132020

NYSCEF DOC. NO. 27                                            RECEIVED NYSCEF: 12/11/2018

**B.    The Prosecutor Also Improperly Vouched For The Credibility Of The Prosecutions'**
**Witnesses While Impermissibly Prejudicing The Defense's Witnesses:**

39..    Also, during his summation, the Prosecutor impermissibly vouched for the credibility
of the People's witnesses - while referring to the Defense's witnesses in a light that projected them
as unsavory and unbelieveable. More specifically, during his summations, the Prosecutor stated, *inter*
*alia*:

[1]    The defense put before you the testimony of a ***biased mother*** who knows that her son
was home, although she didn't see him at that time (*Id at* 68:11-13);

[2]    the defendant testified, ***the most interested witness in this case. The most biased***
***witness in this courtroom*** (*Id* at 17-19*);*

[3]    The defense argued that the witnesses are credible, ***that their story - - and that's***
***exactly what it is, it's a story - - is to be believed over the credible testimony of***
***Jorge Anyosa and Wilmer Hernadez?*** (*Id* at 68:20 - 24)

[4]    ***Each defense witness*** has a reason to come before you and be ***less than truthful*** with
you; (Id at 69:1)

[5]    [Mr. Galloway] got to ***tailor his testimony*** to what every person testified about (*Id*
at 69:1-7);

[6]    Regarding Defense Witness, Ms.Mariana, the prosecutor stated: "thats her boyfriend
of four years, and she has reason, based upon that personal relationship, to come in
here and be less truthful with you." (*Id* at 74:9-12);

[7]    And then the Defendant testified . . . ***If you were to look up interested witness in the***
***dictionary, his picture would be there***. (*Id* at 74:16-22);

[8]    ***All of a sudden*** [Defendant Mr. Galloway] ***is truthful*** because the defense attorney
told you he was . . . (Id at 75:16).

40.    The Prosecutor even went so far as to attack the credibility of their witness, Robert
Ogletree, which the People elected to place on the stand as their first witness. The People improperly
impeached the credibility of thier own witness - Robert Ogletree. (*Id at* 89:25 - 90:3). While

12

CLAIM NO. 132020

improperly impeaching their own witness, Mr. Ogletree, the People also impermissibly mentioned that Mr. Galloway and this witness (who was not a Co-Defendant in this case and was not alleged to have committed any of the alleged acts at issue in this trial) were allegedly *"__arrested__"* and "__taken into custody__" together on June 5, 2008. *Id*. Clearly, the People's intention was to improperly prejudice Mr. Galloway through evidence of an arrest and alleged criminal activity of the People's witness, Mr. Ogletree. *Id*.

41.    Further, while voching for the credibility of their own witnesses and disparaging the people who testified for Mr. Galloway and the Defense, the Prosecutor even impermissibly advised the Jury that Mr. Galloway was intentionally attempting to mislead and confuse the jury by changing his appearance during the weeks that the trial was in progress. *Infra*. More specifically, the prosecutor stated:

> *__The defendant made an effort__* over the past nine months *__and over the past two weeks__* to prevent witnesses from identifying him and it didn't work. It didn't work at a lineup, and *__it didn't work in this courtroom__*.
>
> Ask yourselves, are those the actions of an innocent man? I submit they are not. *__It shows his guilty conscience, ladies and gentlemen__*.

(*Id at* 82:1-6)

These statements are overly prejudicial since there was no evidence presented by the People that Mr. Galloway did anything to make his hair grow five inches in two weeks or removed his front tooth after this crime was committed. In fact the testimony of Mr. Galloway's dentist and the person that cared for his hair support the contrary. These were that facts by which the People were bound.

42.    In addition to the above improper statements made by the prosecutor in an attempt to persuade the jury that Mr. Galloway was allegedly alterring his appearance during trial in order

13

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
CLAIM NO. 132020
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 12/11/2018

to mislead the jury panel directly, the prosecutor then went further and insinuated that the Defendant and his Defense Counsel doubted the each individual jury member's ability to make rational determinations of fact. In this regard, the prosecutor attempted to persuade the jury that Defendant questioned the doubted their mental abilities individually and collectively. More specifically, while directly addressing the jury and essentially asking the jurors to be the victim, the prosecutor stated:

> Under the Defendant's theory of this case, that means that *each and every one of you is wrong*, that *you can't* identify [a] person, that *if you were shown* a picture of that person, *you wouldn't* be able to say who it was.

(*Id at* 83:18-22)

43.     Mr. Galloway now, as he did at the time that the above-statements were made, maintains that the prosecutor's s above-cited statements robbed Mr. Galloway of a fair trial. Indeed, the prosecutor's above statements are of the type which the Court of Appeals and Appellate Divisions repeatedly frown upon. *Infra*. Indeed, "*this practice has been condemned* and in the interests of presenting a balanced view of this evidence, prosecuting attorneys should steadfastly avoid this tactic." People v. Dowdell, 88 A.D.2d 239, 453 N.Y.S.2d 174 (2nd Dept.,1982); *citing*, People v Ortiz, 51 AD2d 710.

44.     For example, in the case of People v. Collins, 12 A.D.3d 33, 784 N.Y.S.2d 489 (1 Dept.,2004), the Appellate Division reversed the conviction of the defendant and remanded the case for a new trial when "the prosecutor referred to defendant's testimony, by turns, as 'unbelievable,' 'ridiculous,' 'absurd,' 'fantastical,' 'made up' and 'unbelievable'." *Id* at 36. In reversing the conviction in Collins, the Appellate Division stated:

> The public prosecutor is a "quasi-judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should

14

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
CLAIM NO. 132020
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 12/11/2018

characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sympathy or resentment" ( People v. Fielding, 158 N.Y. 542, 547, 53 N.E. 497 [1899] ). Thus, as a practical matter, "although counsel is to be afforded the widest latitude by way of comment, denunciation or appeal in advocating his cause[,] summation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command. There are certain well defined limits" ( People v. Ashwal, 39 N.Y.2d 105, 109, 383 N.Y.S.2d 204, 347 N.E.2d 564 [1976]

People v. Collins, 12 A.D.3d 33, 36 (1 Dept.,2004)

45.    As such, "a prosecutor exceeds the bounds of legitimate advocacy by resorting to name calling, such as characterizing the defendant as a liar" Id., citing, (People v. Shanis, 36 N.Y.2d 697, 699, 366 N.Y.S.2d 413, 325 N.E.2d 873 [1975]; People v. Dowdell, 88 A.D.2d 239, 247, 453 N.Y.S.2d 174 [1982] ["in the interests of presenting a balanced view of this evidence, prosecuting attorneys should steadfastly avoid this tactic"] ).

46.    "In addition, the prosecutor repeatedly gave his personal opinion as to the truth of the testimony of the People's witnesses and as to the defendant's guilt." People v. Jamal, 307 A.D.2d 267, 761 N.Y.S.2d 874 (2 Dept. 2003); citing, People v. Bailey, 58 N.Y.2d 272, 460 N.Y.S.2d 912, 447 N.E.2d 1273). "[A] prosecutor may not, either in the course of closing argument or even in a less argumentative trial context, 'express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence'." People v. Bailey, 58 N.Y.2d 272, 447 N.E.2d 1273 (1983).

47.    In the case of People v. Smith, 288 A.D.2d 496, 733 N.Y.S.2d 237 (2 Dept.,2001) the Appellate Division reversed the conviction of the defendant because "[d]uring summation, the prosecutor improperly and repeatedly stated unqualified pronouncements of the defendant's guilt,

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

often inappropriately injecting [his] personal views . . . [stating], for example, that, 'of course he did it. This isn't an issue of who did it'." People v. Smith, *supra*.

48.     In the case at bar, the Prosecutor asserted that the Defendant Mr. Galloway was attempting to fool the witnesses and jurors individually while offering his personal opinion that ***"The defendant made an effort"*** over the course of the trial "to prevent witnesses from identifying him and it didn't work . . . It didn't work at a lineup, and ***it didn't work in this courtroom***." (*Id at* 82:1-6) Also, the Prosecutor injected his own personal opinion of the Defendant's alleged "guilty conscience" to the jury when he stated "[a]sk yourselves, are those the actions of an innocent man . . . I submit they are not. ***It shows his guilty conscience, ladies and gentlemen***." (*Id at* 82:1-6). Clearly, the Prosecutor's statements herein were improper as a matter of law.

49.     "A prosecutor may not vouch for the credibility of the People's witnesses" or bolster the credibility or prestige of police departments. People v. Bailey, 58 N.Y.2d 272, 277, 460 N.Y.S.2d 912, [1983] ["the weight of the prestige of the office and its image of disinterestedness may impose upon a defendant's right to an impartial trial"]). Throughout the trial and in his closing this is exactly what the Assistant District Attorney did.

**C.     The Prosecutor Wrongfully and Continually Shifted The Burden On Defendant To Produce Evidence And Improperly Asked The Jury To Draw Negative Inferences From Defendant's Purported Failures To Produce Said Evidence:**

50.     During his closing, the prosecutor improperly placed the burden upon the Defendant on numerous occasion, and more importantly shed a false light on the defense witnesses by claiming they failed to meet an obligation which he created. For example, during his summations, the prosecutor stated, *inter alia*:

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM          CLAIM NO. 132020

NYSCEF DOC. NO. 27                                                    RECEIVED NYSCEF: 12/11/2018

[1]   Now, the defense has no obligation to put on a case. The burden is always on the People. **They have no obligation to call witnesses, _but they did_.** They called witnesses in this case, and let's take a look at who they called for you to hear from (*Exhibit G, summation*, 68:6-10);

[2]   There was one final witness, Mr. Rayford Johnson - - _oh, on second thought, you didn't hear from him_. You did hear about the important alibi information that he possessed, the information that his cousin couldn't have done this, _because he wasn't called to that witness stand . . . He was called to that witness stand and you heard nothing. That's very important. A missing witness is something that leaves a huge hole in their defense_ (*Id* at 69:8-19);

[3]   Isn't it a coincidence . . . that _every witness called on the People's case_ have given a statement, multiple statements, testimony, paperwork, every witness that testified had to sit on that witness stand and be cross examined on everything that they have said before? _Cheryl Johnson and Amanda Mariana never gave statements in this case and they came before you nine months later. You got to hear it for the first time_ (*Id* at 70:10-19);

[4]   Regarding the alibi testimony provided by Defendants' mother, Cheryl Johnson, the People stated: "if this story was true, it would have taken _a pack of wild dogs to keep Cheryl Johnson from the police department, from telling the district attorneys everything that she had to say. But she waited nine months to tell it to you the first time_. (*Id* at 71:17-22);

[5]   With respect to Witness Amanda Mariana, the prosecutors stated: "Three weeks prior to this trial up until now, the phone number, disconnected, doesn't work. [Amanda Mariana is] available all right. [Ms. Mariana was] _available to come in here and tell you a story, but she's not available to telling anybody else_" (*Id* at 72:12-16);

[6]   Again, the prosecutor attacked the wintess Amanda Mariana because she did not provide a written statement or handwritten notes to the police before trial - with which the prosecution could cross examine Ms. Mariana (*Id* at 73:17-23);

[7]   _Lastly, the person who you were told so proudly you would be hearing from, Rayford Johnson, was called to the witness stand. He walked in the door, passed the jury box and took that stand, and all you heard was silence._ He's not going to testify . . . But wait a minute, the defendant, Amanda, Cheryl Johnson, they all told you the important information he possessed. _I submit to you that the minute he walked from the witness stand back out that door, their alibi walked out with him. You must consider why you didn't hear from that wintess._ (*Id* at 78:1-10);

[8]   [Rayford Johnson] has such valuable information that exonerates this defendant and you heard nothing, _that fact alone leaves you dismissing their story all together_. (*Id* at 78:13-16);

17

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020
RECEIVED NYSCEF: 12/11/2018

51.     "The defendant's conviction . . . must be reversed based on the prosecutor's improper comments during his . . . closing statements which, inter alia, shifted the burden of proof, inflamed the jury, and denigrated the defense." People v. Ni, 293 A.D.2d 552, 742 N.Y.S.2d 61 (2 Dept. 2002); citing, People v. Smith, 288 A.D.2d 496, 733 N.Y.S.2d 237; and People v. Dombrowski, 163 A.D.2d 873, 558 N.Y.S.2d 401).

52.     "[D]uring summation, the prosecutor attempted to shift the burden of proof from the People to the defendant by referring to the defendant's failure to call [Defense witnesses]." People v. Grice, 100 A.D.2d 419, 474 N.Y.S.2d 152 (4 Dept.,1984). *"It is, of course, absolutely improper for a prosecutor to suggest that a defendant has an obligation to call witnesses on his own behalf, or that he failed to call certain witnesses because their testimony would have been unfavorable"* [emphasis ours] Id., citing, People v. Carborano, 301 N.Y. 39, 42, 92 N.E.2d 871; and People v. Webb, 68 A.D.2d 331, 334, 417 N.Y.S.2d 92).

53.     "The prosecutor's remark about the defendant's failure to call [a particular Defense witness] was particularly egregious because it reflected on a primary issue of the case regarding [Defendant's asserted alibi defense]." Id. As such, "Because the instances of prosecutorial misconduct were flagrant and were closely related to the credibility issues presented at trial, they substantially prejudiced the defendant's case" [emphasis ours] Id., citing, People v. Calabria, 94 N.Y.2d 519, 706 N.Y.S.2d 691; People v. Elder, 207 A.D.2d 498, 615 N.Y.S.2d 915; People v. Dombrowski, supra. See also, People v. Carborano, 301 N.Y. 39, 92 N.E.2d 871 (1950) [prosecutor's statement warranted reversal where he stated that the defendant had deliberately refrained from calling witnesses because he realized that their testimony would implicate him]; see also, People v. Sharp, 107 N.Y. 427, 465, 14 N.E. 319, 343; and People v. Manning, 278 N.Y. 40, 43, 15 N.E.2d 181, 183.

18

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM    CLAIM NO. 132020
NYSCEF DOC. NO. 27                                          RECEIVED NYSCEF: 12/11/2018

54.    The Court's failure to control the abusive speech of the prosecutor, and refusing to admonsih the jury, was reversable error. *Infra*. Even if the Court finds that the evidence against Mr. Galloway  was sufficient, each prejudicial statement taken alone were harmless, the cumulative effect of the collective statements cannnot be ignored by this Court because they deprived Mr. Galloway of a fair trial. People v. Goldstein 196 Misc.2d 741, 763 N.Y.S.2d 390 (N.Y.Sup. 2003); citing, People v Calabria, 94 NY2d 519, 523 [2000]; People v Smith, 288 AD2d 496 [2001]; People v Dowdell, 88 A.D.2d 239, 248, 453 N.Y.S.2d 174 (1st Dept.1982).

55.    Indeed, "the harmless error analysis is not unlimited." *Infra*. "Even if any one or a combination of the statements at issue could be considered harmless, "ultimately, sufficient harmless errors must be deemed 'harmful'" (People v Dowdell, *supra; see* People v Nevedo, 202 AD2d at 186).

## POINT III.
### THE COURT ABUSED ITS DISCRETION BY FORCING THE JURY TO CONTINUE TO DELIBERATE DESPITE THEIR REPEATED NOTICES TO THE COURT OF THAT THEY WERE HOPELESSLY DEADLOCKED

56.    Reversal of the jury's verdict is also warranted herein because after informing the Court that they were hopelessly Deadlocked on numerous occasions, the Court nevertheless forced the jury to continue to deliberate over their apparent non-unanimous and unwavrrering opinions regarding the facts. By doing so, the jury was caused to haphazardly render a guilty verdict against Mr. Galloway. The relevant events surrounding the jury's deliberations are provided in detail below.

57.    The Jury began its deliberations on March 4, 2009. At 12:08 on March 5, 2009 - the second day of deliberations - the Jury provided the following note to the Court, in pertinent part:

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

> I know we are having deliberations and I'd like to get this over with
> and be finished, but in case we don't finish today - is there anyway we
> can be let out by 5 p.m.?

(*Exhibit C*, jury note no. 5, 3/5/09, 10:00 a.m.)

58.     On March 6, 2009 at 4:15 p.m., - the third day of deliberations - the Jury provided the

following note to the Court, in pertinent part:

> I cannot attend jury deliberations after Friday March 6, 2009.
> I must return to my responsibilities at Adelphi. I must observe my 8
> student teachers teaching prior to March 13, 2009 as they leave their
> current placements that day.
>
> ***Right now, the jury is deadlocked with 2 jurors say [sic] they
> will not change their minds*** (opposite opinions) [*emphasis added*]

(*Exhibit D*, jury note no. 6, 3/6/09, 4:15 p.m.)

59.     On March 9, 2009 at 10:58 a.m. - the fourth day of deliberations, the Jurors provided

the following note:

> [*first juror*] In the event that the jury is still deliberating on
> Wednesday, would it be possible to dismiss by 3:00 p.m. so that juror
> #6 can go to class and Juror #5 can go to work? We would appreciate
> it greatly.
>
> [*second juror*] I'm not receiving pay from my boss for being
> here. Yet my bills are both late and accumulating/ I can not
> financially be able [sic] to continue to be here. I do not know what I
> can do about this. My wifes [sic] pay does not cover our bills. I live
> week to week. # week [sic] without pay is effecting [sic] my life. If
> I can get the juror $40 a day released would help a little.
>
> [*third juror*] ***I just want to update you on our status. We are
> still Deadlocked. One juror has stated "we are going to be here til
> Christmas . . . I'm not changing my mind." Just wanted to update
> you.***

(*Exhibit E*, jury note # 11, 3/9/09, 10:58 a.m.)

60.     Following the above note from the Jury, and despite Defense Counsel's call for a

mistrial due to the deadlocked jury, the Court refused to discontinue deliberations. Instead, the Court

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020
RECEIVED NYSCEF: 12/11/2018

read the *Allen* Charge to the jury. Then, after four (4) days of deliberations wherein the jury indicated

that it was hopelessly deadlocked, all of a sudden, **just two hours** following their receipt of the *Allen*

charge from the Court, the jury provided the following note, which was most curious and will forever

remain a mystery:

> **As of 1:45 p.m. on March 9, 2009, we the jury have reached a
> verdict.** May we meet with you (please) after the verdict is read?
> (*Exhibit F,* jury note # 12, 1:45 p.m., 3/9/09)

61.     Not only did the Court refuse to meet with the Jury, as the Court is aware, the jury

returned a guilty verdict against Mr. Galloway. Again, this verdict was rendered only two hours after

the Court refused to disband the jury and declare mistrial due to the deadlock. In addition, this was

after four (4) full days of deliberations wherein the jurors advised the Court that it could not reach

a unanimous decision. The haste of the jury's verdict, immediately after the Court read the *Allen*

charge, can only lead to the inference that the Jury was coerced and/or forced into rendering its

verdict because of concerns that were not related to the criminal trial. (*See above-cited Exhibits C -*

*F*).

62.     As a direct result of the Court's refusal to declare a mistrial, the jury unreasonably

and hastily altered its deadlocked position and rendered a guilty verdict. Of course, the juror who

asserted that *"we are going to be here til Christmas . . . I'm not changing my mind"* as seen in

*Exhibit E,* altered his or her position immediately and obviously did so way before Christmas. (*See,*

*Exhibit E,* jury note # 11, 3/9/09, 10:58 a.m.). the only conclusion left to infer is that the Jury was

persuaded by the *Allen* charge, the prospect of several more days of deliberations, and their other

personal affairs, such as employment, doctor's appointments, and their bills (among other things)

(*See Exhibits C - F*), **not the guilt or innocence of the Defendant.**  Clearly, Mr. Galloway's

21

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020
RECEIVED NYSCEF: 12/11/2018

entitlement to a fair verdict was hindered as a direct result.

63.    Mr. Galloway is aware that "[t]he decision to declare a mistrial necessarily rests in the broad discretion of the trial judge who is best situated to take all the circumstances into account and determine whether a mistrial is in fact required in a particular case." Plummer v. Rothwax, 63 N.Y.2d 243, 471 N.E.2d 429 (N.Y.,1984); *citing*, Hall v. Potoker, 49 N.Y.2d 501, 505, 427 N.Y.S.2d 211, 403 N.E.2d 1210; People v. Michael, 48 N.Y.2d 1, 9, 420 N.Y.S.2d 371.

64.    However, failure of reviewing courts to accord great deference to a Trial Judge's decision-and, instead, to bar retrial whenever the facts are viewed somewhat differently on appeal-might well encourage *a needless waste of judicial resources and time by requiring further deliberation of juries that are hopelessly deadlocked . . . and more drastically, might similarly encourage the employment of 'untoward pressure' upon juries or, simply, their eventual exhaustion to break deadlocks at the risk of unjust verdicts*" [*emphasis added*] *Id.*, *citing*, People v. Pagan, 45 N.Y.2d 725, 727, 408 N.Y.S.2d 473; People v. Carter, 40 N.Y.2d 933, 934, 389 N.Y.S.2d 835; *and* People v. Faber, 199 N.Y. 256, 259, 92 N.E. 674.

65.    "[T]here are some identifiable factors which are helpful in determining the "necessity" of discharging an apparently deadlocked jury. *Id.* "Those factors, which should be considered by the trial court before exercising discretion, include the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation." *Id.*, *citing*, United States v. Horn, *supra*, at p. 1127; Arnold v. McCarthy, *supra*, at pp. 1386-1387.

66.    In the case at bar, based upon the facts and circumstances including the timing until the Jury's verdict, it is clear that a mistrial was warranted and necessary in this case. *First,* this trial

22

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM

NYSCEF DOC. NO. 27

CLAIM NO. 132020

RECEIVED NYSCEF: 12/11/2018

continued for three (3) weeks.

67.     *Second*, the top count being considered by the jury, attempted murder in the first degree (B Felony), is undoubtably serious and carries a sentence that my continue for decades.

68.     *Third*, the jury deliberated for four days. By the third day of deliberations, the jury advised the Court that it was deadlocked. (*See Exhibit C - F*). Further, by the fourth and final day of deliberations, the jury advised the Court that they would not change its deadlocked position. *(Id.)* One of the jurors actually indicated that they would be there "until Christmas" - which was 9 months away. (*Id.*)

69.     Fourth, within the four-day period, the jury sent 12 notes to the Court wherein they asked for everything from read-backs of the full testimony of several witnesses, evidence, as well as a full rereading of the Court's jury charge. (It is important note that one of the key read-backs of Det. Lipson was requested by never given to the Jury). There can be no doubt that the Jury carefully considered all of the evidence. Nevertheless, by the fourth day of deliberations, the jury was still hopelessly deadlocked and willing to remain deadlocked "until Christmas." (*Exhibit E*). It was only *after* the Court read the *Allen* charge that the jury quickly and unreasonably altered its deadlocked status. (*See, Exhibit F*). As such, evidence of the coercive effect of the *Allen* charge upon this jury is apparent.

70.     As the Court of Appeals stated in the matter of People v. Baptiste, 72 N.Y.2d 356, 530 N.E.2d 377 (1988.), "the court's power to declare a mistrial must be exercised with the 'greatest caution, under urgent circumstances, and for very plain and obvious causes." People v. Baptiste, *supra*. "The authority to discharge the jury is limited to those situations where, 'taking all the circumstances into consideration, there is a manifest necessity for the act'." *Id, citing*, United States

23

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM          CLAIM NO. 132020

NYSCEF DOC. NO. 27                                          RECEIVED NYSCEF: 12/11/2018

v. Perez, 9 Wheat 22 U.S. 579, 580, 6 L.Ed. 165).  All the signals of a time strapped jury were

apparent.  As indicted by the notes from the jurors about their time and other pressing life concerns,

giving an *Allen* charge should have given way to a finding that at that stage Mr. Galloway could not

be afforded a fair trial and that a mistrial was warranted.

71.     Given the jury's apparent contradictory and swift change of position following the

Court's *Allen* charge, it is clear that a mistrial should have been declared here and that the verdict

was manifestly unjust. For these reasons, the jury's verdict must be set-aside in the interest of justice

and in order to protect Mr. Galloway's inalienable constitutional right to a fair trial.


## POINT IV
### THE PEOPLE'S SOLICITATION OF TESTIMONY FROM THE WITNESSES DURING THE PEOPLE'S DIRECT CASE REGARDING PHOTO IDENTIFICATION OF THE DEFENDANT WAS UNDULY PREJUDICIAL TO THE DEFENDANT

72.     During direct testimony of the alleged complaining witness, Mr. Anyosa, the People,

over objections by the Defense (*Exhibit B*, 192 - 196) were allowed to introduce testimony of the

complaining witness regarding his viewing of photographs of the Defendant. (*Id* at 109 - 192) The

Complaining witness testified that the detective visited his house "with pictures," which were

actually shown to the witness months before an actual lineup was conducted. (*Id at* 191).

73.     During his direct testimony, the witness stated that he viewed the pictures provided

by the detectives and was able to recognize and identify "Number four" and/or Mr. Galloway during

this photo identification procedure. (*Id*.). This testimony, during the People's direct case, was

impermissible as a matter of law. *Infra*.

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM
NYSCEF DOC. NO. 27

CLAIM NO. 132020
RECEIVED NYSCEF: 12/11/2018

74.    "The generally accepted rule is that a witness may not testify on the People's direct case regarding a photographic identification of the defendant; such testimony constitutes impermissible bolstering" People v. Osgood, 89 A.D.2d 76, 454 N.Y.S.2d 734 (2nd Dept 1982); citing, People v. Griffin, 29 N.Y.2d 91, 93, 323 N.Y.S.2d 964; People v. Johnson, 32 N.Y.2d 814, 345 N.Y.S.2d 1011; *and* People v. Baskerville, 32 A.D.2d 555, 300 N.Y.S.2d 124, affd. 27 N.Y.2d 966, 318 N.Y.S.2d 499, 267 N.E.2d 274).

75.    "It has been held that error of this type may be considered harmless only where the evidence of identity is so strong that there is no substantial issue on the point or where an identification has been attacked as a recent fabrication" *Id. Citing,* People v. Favreau, 77 A.D.2d 696, 429 N.Y.S.2d 507).

76.    In the case at bar, "logical and real conclusion to be drawn is that the witness identified that photo as well [as the other alleged identifications made during other times]" *Id* at 83. Accordingly, this testimony, which was allowed to be heard by the jury, warrants mistrial because the subject of the identification was the central issue during the trial and the People's solicitation of testimony regarding a prior photo identification that took place in addition to an actual lineup improperly bolstered the People's case - to the detriment of Mr. Galloway's right to a fair trial.

FILED: NYS COURT OF CLAIMS 12/11/2018 12:45 PM     CLAIM NO. 132020
NYSCEF DOC. NO. 27                                                          RECEIVED NYSCEF: 12/11/2018

WHEREFORE: for all of the above-stated reasons, the Court should set-aside the jury's

determination of guilt and/or declare a mistrial.


DATED:        Hempstead, New York
              May 27, 2009

                                          Yours, etc.

                                          LAW OFFICE OF
                                          FREDERICK K. BREWINGTON
                                          Attorney for the Defendant
                                          50 Clinton Street, Suite 501
                                          Hempstead, New York 11550
                                          (516) 489-6959

                               By:   _____
                                     FREDERICK K. BREWINGTON


          **BY HAND DELIVERY TO:**
          Office of the Nassau County District Attorney
          262 Old Country Road
          Mineola, New York 11501

          CLERK OF THE COURT
          262 Old Country Road
          Mineola, New York 11501

26