UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSIAH GALLOWAY,

                     Plaintiff,

     -against-

NASSAU COUNTY, THE INCORPORATED VILLAGE
OF HEMPSTEAD, Police Officer STEVEN HOROWITZ,
Shield No. 144, Detective MATTHEW ROSS, Shield No.
834, Detective CHARLES DECARO, Shield No. 1047,
Detective RONALD LIPSON, Shield No. 1296, Detective
THOMAS D'LUGINSKI, Shield No. 7900, Detective
GEORGE DARIENZO, Shield No. 1038, Detective
KEVIN CUNNINGHAM, Shield No. 112, Detective
Sergeant RICHARD DORSI, Detective RENE B. YAO,
Detective CARL STRANGE, Shield No. 1225, JOHN and
JANE DOE 1-20,

                  Defendants.

19-cv-5026 (AMD) (JO)


**MEMORANDUM OF LAW IN SUPPORT OF THE COUNTY DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**


SOKOLOFF STERN LLP
*Attorneys for County Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 190164

Of Counsel:
  Brian S. Sokoloff
  Alexander J. Eleftherakis

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT ................................................................................................................ 8

    I.  THE COURT SHOULD DISMISS ALL CLAIMS AGAINST ROSS, DECARO, DLUGINSKI, DARIENZO, DORSI, YAO, AND STRANGE FOR LACK OF ALLGED PERSONAL INVOLVEMENT IN A CONSTITUTIONAL VIOLATION.......................................................................................................... 8

        A. Detectives Yao, Strange, and Darienzo ................................................ 9

        B. Detective DeCaro.................................................................................. 10

        C. Detectives Ross, Dluginski, and Dorsi ............................................... 11

    II. PLAINTIFF FAILS TO STATE A SUPERVISORY LIABILITY CLAIM................... 14

    III. PLAINTIFF'S INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL ................................................... 15

    IV. PLAINTIFF'S UNLAWFUL DETENTION CLAIM FAILS......................................... 18

    V. PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS ....................................... 20

CONCLUSION............................................................................................................ 22

i

# TABLE OF AUTHORITIES

## Cases

*Adamou v. Cty. Of Spotsylvania, Va.*,
  No. 12-cv-7789 (ALC), 2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ............................... 8, 10

*Amissah v. Wells Fargo*,
  No. 219CV04624AMDCLP, 2020 WL 868599 (E.D.N.Y. Feb. 20, 2020) ............................... 5

*Anderson v. Branen*,
  17 F.3d 552 (2d Cir. 1994) .................................................................................................... 20

*Antonious v. Muhammad*,
  250 A.D.2d 559, 673 N.Y.S.2d 158 (2d Dep't 1998) .............................................................. 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 2, 7, 8, 14

*Atuahene v. City of Hartford*,
  10 Fed. App'x. 33 (2d Cir. 2001) ............................................................................................. 8

*Ball v. Miller*,
  83 N.Y.S.3d 169 (N.Y. App. Div. 2018) .................................................................................. 16

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*,
  652 F. Supp. 2d 463 (S.D.N.Y. 2009) ....................................................................................... 3

*Bejaoui v. City of New York*,
  No. 13-CV-5667 NGG RML, 2015 WL 1529633 (E.D.N.Y. Mar. 31, 2015) .................... 12, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 7

*Bouche v. City of Mount Vernon*,
  No. 11 Civ. 5246(SAS), 2012 WL 987592 (S.D.N.Y. Mar. 23, 2012) ..................................... 21

*Brady v. Maryland*,
  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ............................................................... 10

*Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*,
  No. 1:18 CV 05892 (AMG)(SMG), 2019 WL 8501338 (E.D.N.Y. July 2, 2019) ................... 16

*Casaccia v. City of Rochester*,
  No. 6:17-CV-06323-MAT, 2018 WL 324420 (W.D.N.Y. Jan. 8, 2018) .................................. 17

ii

*Clay v. County of Clinton*,
  No. 8:10-CV-00239 (LEK/RFT), 2012 WL 4485952 (N.D.N.Y. Sept. 27, 2012) ................... 20

*Colon v. Coughlin*,
  58 F.3d 865 (2d Cir. 1995) ..................................................................................... 15

*Cooper v. City of New York*,
  No. 17CV1517NGGRLM, 2019 WL 3642996 (E.D.N.Y. Aug. 5, 2019) .................................. 8

*County of Sacramento v. Lewis*,
  523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ......................................... 18

*Delamota v. City of New York*,
  683 F. App'x 65 (2d Cir. 2017) ................................................................................ 19

*Dunn v. Brown*,
  690 N.Y.S.2d 81 (2d Dep't 1999) ............................................................................ 16

*Ellis v. Gannon*,
  No. 10–CV–1373, 2011 WL 5513184 (E.D.N.Y. Nov.10, 2011)............................................. 17

*Garnett v. Undercover Officer C0039*,
  838 F.3d 265 (2d Cir. 2016) ............................................................................ 10, 13

*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir.2006) ..................................................................................... 3

*Hardy v. City of New York*,
  No. 12 Civ. 17(RJS), 2013 WL 5231459 (S.D.N.Y. July 9, 2013)............................................ 20

*Harris v. Town of Islip Hous. Auth.*,
  No. 10-CV-0843 ADS GRB, 2012 WL 1155804 (E.D.N.Y. Apr. 5, 2012) ....................... 16, 17

*Henry-Lee v. City of New York*,
  746 F. Supp. 2d 546 (S.D.N.Y. 2010) ....................................................................... 20

*Hicks v. Marchman*,
  719 F. App'x 61 (2d Cir. 2018) ................................................................................. 20

*Hubel v. Madison Mut. Ins. Co.*,
  No. 2001-5404, 2003 WL 21435624 (N.Y. Sup. Ct. May 16, 2003)........................................ 16

*Isaac v. City of New York*,
  No. 16-CV-4729 (KAM), 2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018)................................... 20

iii

*Jimenez v. City of New York*,
   No. 14 CIV. 02994 SAS, 2014 WL 5089392 (S.D.N.Y. Oct. 9, 2014) .................................... 16

*Johnson v. City of New York*,
   No. 1:15-CV-8195-GHW, 2017 WL 2312924 (S.D.N.Y. May 26, 2017)................................ 19

*Jones v. City of N.Y.*,
   988 F. Supp. 2d 305 (E.D.N.Y. 2013).................................................................................. 16

*Jordan v. Verizon Corp.*,
   No. 08 Civ. 6414, 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008) ........................................... 3, 4

*Kuar v. Mawn*,
   No. 08-CV-4401 JFBETB, 2011 WL 838911 (E.D.N.Y. Mar. 4, 2011) ................................. 3, 4

*King v. City of New York*,
   No. 12-CV-2344 NGG RER, 2013 WL 2285197 (E.D.N.Y. May 23, 2013) ........................... 16

*Kyles v. Whitley*,
   514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ......................................................... 11

*Leka v. Portuondo*,
   257 F.3d 89 (2d Cir. 2001) ....................................................................................................... 11

*Leneau v. Ponte*,
   No. 1:16-CV-776-GHW, 2018 WL 566456 (S.D.N.Y. Jan. 25, 2018)................................ 8, 10

*Manson v. Brathwaite*,
   432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) .......................................................... 11, 12

*McNamee v. Clemens*,
   762 F. Supp. 2d 584 (E.D.N.Y. 2011)..................................................................................... 18

*McSween v. Edwards*,
   91 F.Supp.2d 513 (E.D.N.Y.2000) .......................................................................................... 17

*Myers v. Moore*,
   326 F.R.D. 50 (S.D.N.Y. 2018)................................................................................................. 8

*Nabatkhorian v. Cty. of Nassau*,
   No. 12-CV-1118 JS, 2013 WL 1233247 (E.D.N.Y. Mar. 27, 2013)........................................ 15

*Neil v. Biggers*,
   409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) ................................................................ 12

*Nolan v. Cty. of Erie*,
  No. 1:19-CV-01245, 2020 WL 1969329 (W.D.N.Y. Apr. 24, 2020) ....................................... 15

*Perez v. Annucci*,
  No. 18 CV 147 (VB), 2019 WL 1227801 (S.D.N.Y. Mar. 15, 2019)........................................ 15

*Perkins v. City of New York, et al.*,
  No. 17-CV-423 (RRM) (PK), 2019 WL 4736950 (E.D.N.Y. Sept. 27, 2019) ......................... 12

*Ricciuti v. N.Y.C. Transit Auth.*,
  124 F.3d 123 (2d Cir. 1997)................................................................................................... 20

*Rojas v. Berryhill*,
  368 F. Supp. 3d 668 (S.D.N.Y. 2019)...................................................................................... 7

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)................................................................................................... 5

*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007)........................................................................................ 6, 18, 19

*Santoro v. Town of Smithtown*,
  40 A.D.3d 736, 835 N.Y.S.2d 658 (2d Dep't 2007) ................................................................ 17

*Stamile v. Cty. of Nassau*,
  No. CV 10-2632 AKT, 2014 WL 1236885 (E.D.N.Y. Mar. 25, 2014) ................................... 15

*Stancati v. Cty. of Nassau*, No. 14-CV-2694 JS,
  No. 14-CV-2694 JS ARL, 2015 WL 1529859 (E.D.N.Y. Mar. 31, 2015) .............................. 15

*Thomas v. Venditto*,
  925 F. Supp. 2d 352 (E.D.N.Y. 2013)..................................................................................... 9

*Townes v. City of N.Y.*,
  176 F.3d 138 (2d Cir.1999)................................................................................................... 12

*U.S. v. LeRoy*,
  687 F.2d 610 (2d Cir. 1982)................................................................................................... 11

*Wolkstein v. Morgenstern*,
  275 A.D.2d 635, 713 N.Y.S.2d 171 (1st Dep't 2000)............................................................. 17

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007)............................................................................................ 12, 14

*Wray v. Johnson*,
  202 F.3d 515 (2d Cir. 2000) ................................................................................ 11

*Wright v. Belafonte*,
  687 F. App'x 1 (2d Cir. 2017) ............................................................................ 17

*Wright v. Smith*,
  21 F.3d 496 (2d Cir.1994) .................................................................................... 8

*Ying Li v. City of New York*,
  246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................................................ 20

**Statutes**

42 U.S.C. § 1983 ....................................................................................... 8, 12, 14

**Rules**

Fed. R. Civ. P. 8 ............................................................................................ 7, 8

Fed. R. Civ. P. 12 ....................................................................................... 1, 2, 7

## PRELIMINARY STATEMENT

Defendants County of Nassau, Det. Matthew Ross, Det. Charles DeCaro, Det. Ronald Lipson, Det. Thomas Dluginski, Det. George Darienzo, Det. Sgt. Richard Dorsi, Det. Rene Yao, and Det. Carl Strange (the "County Defendants") submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(c) to dismiss portions of Plaintiff's Second Amended Complaint ("SAC").

Each defendant in a multimillion dollar lawsuit deserves to have the claims against him scrutinized as though he were the only defendant. While some of the assumed-as-true claims against some of the defendants in the SAC merit an answer and not a motion, this is not true for all claims against all defendants. Several of Plaintiff's claims overreach legally and/or factually and deserve dismissal.

Plaintiff sues people without adducing facts showing what they did wrong, invokes multiples theories of liability inapplicable to the facts, and seeks damages absent the missing link of causation.

As laid out in this motion, the Court should scrutinize the claims Plaintiff asserts in light of the facts he uses to support them, and it should reduce substantially the scope of this case by dismissing defendants and claims with no business being dragged into it.

## STATEMENT OF FACTS[1]

On May 15, 2008, Jorge Anyosa was shot in the face while in Village. ¶ 19.[2] The day after the shooting, a civilian called "the police tip line" to report an individual, who was not Plaintiff, as the shooter. ¶ 26. On May 19, 2008, a sketch artist met with Anyosa and generated a composite rendering of the shooter. ¶ 28. Plaintiff claims the sketch did not resemble him. ¶ 32.#

On June 5, 2008, Village police officers arrested Plaintiff and his friend Robert Ogletree on charges "unrelated to the Anyosa shooting." ¶ 33–34. Plaintiff claims these unrelated charges were "later dismissed in their entirety," but he does not allege when. ¶ 34. Plaintiff does not—and cannot—allege a lack of probable cause for the arrest on those charges.

While Plaintiff was in police custody at a Village police station, "defendants – including Horowitz, Cunningham, DeCaro, Darienzo, Lipson, Yao and Dluginski – coercively interrogated plaintiff for hours and accused him of involvement in the Anyosa shooting." ¶ 35. Plaintiff does not—and cannot—allege this interrogation caused a coerced confession to the Anyosa shooting or was otherwise unconstitutional. Indeed, despite the alleged coercion, Plaintiff denied any involvement in the Anyosa shooting. ¶ 36.

"During the same period, defendants including DeCaro, Lipson and Dluginski, under the supervision of [unidentified] supervisors, coerced plaintiff's friend Mr. Ogletree into signing a statement written and manufactured by the officers that purported to implicate plaintiff in the Anyosa shooting." ¶ 37. Unidentified "defendants" also constructed photo arrays "using an old, outdated photograph of plaintiff." ¶ 38. In the presence of Lipson and Horowitz, Anyosa selected

---

[1] Defendants base the statement of facts on the allegations of the SAC. As Fed. R. Civ. P. 12 requires, Defendants assume the truth of well-pleaded, non-conclusory factual allegations for this motion only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[2] All citations to "¶" refer to the allegations of the SAC.

plaintiff as the perpetrator from the photo array." ¶ 39. Lipson and Horowitz "told Anyosa that he had selected the 'right guy' and that his friend has picked the same person." ¶ 40.

On June 16, 2008, a grand jury indicted Plaintiff for the attempted murder of Anyosa. ¶ 44. On August 14, 2008, Plaintiff appeared for a court-ordered lineup. ¶¶ 48–49. "[D]efendants including Ross, Dluginski and Dorsi concealed [plaintiff]'s long hair under a hat and disguised his diminutive stature using a seated lineup with [plaintiff] sitting on two phone books." ¶ 49. Anyosa and Hernandez separately identified plaintiff as the perpetrator. ¶ 51. Plaintiff alleges "defendants including Ross, Dluginski, Dorsi, Darienzo and Strange caused" Anyosa and Hernandez to identify Plaintiff, but offers no facts to support this claim. *Id.*

Plaintiff moved pretrial to suppress, *inter alia*, testimony relating to the lineup identifications because, among other things, Plaintiff's hair and height were concealed. ¶ 58; Ex. A.[3] At the hearing, Det. Ross described the procedures he used organizing and conducting the lineup. Ex. A at 213:12–216:6. He testified that all the subjects of the lineup were seated, "covered with sheets," and wore "the same hat." *Id.* at 215:2–6, 18–20. Plaintiff's criminal defense counsel cross-examined Det. Ross on the lineup procedures. *Id.* at 230:15–248:5, 249:10–19. Plaintiff's criminal defense counsel argued the lineup was unduly suggestive, *id.* at 261:5–266:5, claiming it "robbed [Plaintiff] of his ability to defend himself in his lineup by taking away the distinguishing factor that didn't match the description [of the perpetrator] but set him apart." *Id.* at 265.

---

[3] Exhibit A is the transcript of the second day of Plaintiff's pre-trial hearing, during which he moved to suppress evidence of the lineup. The Court may take judicial notice of this transcript because it is a public document. *See Kuar v. Mawn*, No. 08-CV-4401 JFBETB, 2011 WL 838911, at *4 (E.D.N.Y. Mar. 4, 2011). Defendants ask the Court to consider the statements contained in this transcript only "to prove that such statements were made" and not "to prove the truth of the matters asserted therein." *Id.*; *see also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006) (testimony in other proceedings is a public record that court may take judicial notice of for purposes of establishing the "existence of the opinion"); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) ("The Court may properly 'rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial decisions.'") (*quoting Jordan v. Verizon Corp.*, No. 08 Civ. 6414, 2008 WL 5209989, at *5 (S.D.N.Y. Dec. 10, 2008)).

The criminal court denied Plaintiff's motion to suppress testimony relating to the lineup identifications. ¶ 58. *Id*. Specifically, the court ruled:

> Now, with regard to the court ordered lineup, the Court finds, according to the testimony and the evidence it was fair, in compliance with the defendant's constitutional and statutory rights. As a matter of fact, he had an attorney present.
>
> Neither he nor his attorney objected in any way to any of the procedures. The defendant was allowed to pick the spot that he was to occupy. He was allowed to change the spot if he wanted to do so. He declined to do so.
>
> The Court finds that the use of the hats was an attempt to protect the defendant's rights and to ensure fairness. Furthermore, there was certainly no objection rendered by either the defendant or the attorney who was present.
>
> Similarly, having the individuals sit was also in an attempt to keep things fair, as well as the use of the sheet.
>
> There was nothing that was said or done to coerce or pressure or overly suggest to the individuals who viewed the lineup that they should in any way be unduly directed toward the defendant. And there was nothing unduly suggestive about the procedure of the lineup, the people that were used in the lineup, or any interaction that police personnel had with regard to the civilians who viewed the lineup.
>
> The motion to suppress testimony with regard to the lineup at trial is denied.

Ex. A at 280:24–282:2.

At Plaintiff's criminal trial, Plaintiff's friend Ogletree testified. ¶ 59. He told the jury his statement inculpating plaintiff was "coerced." *Id*.

The jury also heard all about Plaintiff's lineup. Det. Ross testified about the lineup procedures. Ex. B.[4] The jury heard the lineup subjects were seated and covered with a sheet, *id*. at 756:16–20, such that the viewing witnesses could not discern Plaintiff's height, which Plaintiff's

---

[4] Exhibit B is the transcript of Det. Ross' testimony at Plaintiff's criminal trial. As discussed, the Court may take judicial notice of this public document "to prove that such statements were made." *Kuar*, 2011 WL 838911, at *4.

criminal defense counsel described as a "distinguishing factor." *Id*. at 777:9–778:6. The jury heard Det. Ross had Plaintiff sit on two phone books. *Id*. at 787:6–8. The jury heard Plaintiff's hair was different from the other subjects seated in the lineup. *Id*. at 786:13–25. The jury heard the lineup subjects each wore the same hat. *Id*. at 757:1–10, 768:15–16, 789:3–11.

During his summation, Plaintiff's criminal defense attorney argued to the jury that the lineup procedures were improper because Plaintiff's hair and height were concealed, among other reasons. Ex. C.[5] at 1087:21–1097:9; 1100:19–1101:10.

On March 9, 2009, the jury returned a guilty verdict. ¶ 64. Plaintiff moved to set aside the verdict. ¶ 66; Ex. D.[6] Plaintiff argued the lineup was unduly suggestive because Plaintiff's hair and height were concealed. Ex D at 4–9. The court denied Plaintiff's motion in its entirety. ¶ 66.

In early July 2018, "a woman contacted the Nassau County District Attorney's office stating that she could no longer remain silent regarding plaintiff's [alleged] wrongful conviction." ¶ 67. The Nassau County Conviction Integrity Unit ("CIU) reinvestigated plaintiff's conviction. ¶ 68. On September 13, 2018, the CIU moved to vacate Plaintiff's conviction pursuant N.Y. C.P.L. § 440.10(1)(g). ¶ 72.

Plaintiff filed this action on September 4, 2019. ECF No. 1. He filed a first amended complaint on October 24, 2019, ECF No. 9, and the SAC followed on March 31, 2020. ECF No. 53. He sues the County Defendants along with the Village and two Village police officers. Against the County Defendants, he asserts eight causes of action: i) a § 1983 malicious prosecution claim against Detectives DeCaro, Darienzo, Lipson, and Dluginski; ii) a § 1983 "Fabrication of

---

[5] Exhibit C is the transcript of Plaintiff's criminal defense counsel summation at Plaintiff's criminal trial.

[6] Ex. D is Plaintiff's motion to set aside the verdict in his criminal trial. The Court may consider this document because the SAC incorporates it by reference (¶ 66), *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), and as a matter of public record. *Amissah v. Wells Fargo*, No. 219CV04624AMDCLP, 2020 WL 868599, at *1, n.3 (E.D.N.Y. Feb. 20, 2020).

Evidence/Denial of Fair Trial and Brady Violations" claim against all individual defendants; iii) a § 1983 supervisory liability claim against Det. Dorsi; iv) state law false imprisonment and malicious prosecution claims against the County; v) intentional or negligent infliction of emotional distress claims against the County; vi) a § 1983 conspiracy claim against all individual defendants; vii) an "Unlawful Pre-Trial Detention In Violation of the 4th Amendment and Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir. 2007)" claim against all individual defendants; and viii) a failure to intervene claim against all individual defendants. The County Defendants answered the SAC on April 15, 2020. ECF No. 60.

## STANDARD OF REVIEW

"The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019). Fed. R. Civ. P. 12(b)6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. (*citing* Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

I.   **THE COURT SHOULD DISMISS ALL CLAIMS AGAINST ROSS, DECARO, DLUGINSKI, DARIENZO, DORSI, YAO, AND STRANGE FOR LACK OF ALLGED PERSONAL INVOLVEMENT IN A CONSTITUTIONAL VIOLATION**

"To sustain a claim under Section 1983, a plaintiff must allege facts showing the named defendants' personal involvement in the alleged violations." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted).

In 42 U.S.C. § 1983 cases, "complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" *Leneau v. Ponte*, No. 1:16-CV-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (quoting *Adamou v. Cty. Of Spotsylvania, Va.*, No. 12-cv-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Atuahene v. City of Hartford*, 10 Fed. App'x. 33, 34 (2d Cir. 2001) (Fed. R. Civ. P. 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct")); *Cooper v. City of New York*, No. 17CV1517NGGRLM, 2019 WL 3642996, at *7 (E.D.N.Y. Aug. 5, 2019) ("the PSAC does not plead facts demonstrating which Defendant is responsible for the alleged malicious prosecution of Plaintiff. Instead, it engages in group pleading, discusses the seven Individual Defendants and ten John Doe Defendants together without pleading facts demonstrating what each did that makes him liable for malicious prosecution."); *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (granting motion to dismiss

for failure to allege personal involvement); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]." (alterations in original) (internal quotation marks and citation omitted)).

### A.  Detectives Yao, Strange, and Darienzo

Yao and Strange each appear only once in the SAC's statement of facts. Plaintiff alleges Yao "coercively interrogated plaintiff for hours and accused him of involvement in the Anyosa." ¶ 35. And Strange only allegedly "caused plaintiff to be falsely identified by the victim and witness" during the lineup. ¶ 51. Darienzo appears only twice; Plaintiff lumps him into both of these same naked allegations. ¶¶ 35, 51.

Plaintiff fails to allege Yao, Strange, or Darienzo violated his constitutional rights. While he claims in the most conclusory way that Yao and Darienzo "coercively interrogated" him, Plaintiff offers no facts to suggest how the detectives' actions were coercive, much less that the interrogation caused any constitutional harm. He does not claim the interrogation produced a false confession to the Anyosa shooting or that it produced any other statement used against him in the Anyosa trial. Indeed, despite the detectives' alleged coercion, Plaintiff "denied any involvement" in the shooting. ¶ 36.

Similarly, Plaintiff offers no factual support for his baseless allegation that Strange and Darienzo "caused plaintiff to be falsely identified by the victim and witness" during the lineup. ¶ 51. He does not—and cannot—allege these defendants participated in the decisions to "conceal" the lineup subjects' hair and height (which, in any event, did not cause a constitutional injury, *see* Point I(C) *infra*). Because Plaintiff fails to allege facts to suggest Yao, Strange, or Darienzo violated his constitutional rights, the Court should dismiss these defendants from this lawsuit.#

### B.  Detective DeCaro

DeCaro appears twice in the SAC; he allegedly "coercively interrogated" Plaintiff and "coerced plaintiff's friend Mr. Ogletree into signing a statement written and manufactured" by "defendants including DeCaro, Lipson and Dluginski." ¶¶ 35–36. Neither allegation is sufficient to state a claim.

As discussed, Plaintiff offers no facts to support his claim that he was "coercively interrogated," much less that the interrogation created a constitutional violation. *See* Point I.A *supra*.

Regarding the alleged Ogletree coercion, Plaintiff fails plausibly to allege how any defendant—including DeCaro—was personally involved. He references "defendants including DeCaro, Lipson and Dluginski," but offers no facts to support any detective's personal involvement. This is exactly the type of "group pleading" the law disallows. *Leneau*, 2018 WL 566456, at *15 ("complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'") (quoting *Adamou*, 2016 WL 1064608, at *11)).

In any event, Plaintiff fails to claim the alleged coercion of Ogletree caused a constitutional injury. Plaintiff appears to rely on this allegation to support his fair trial claim. To state a fair trial claim based on fabricated evidence, a plaintiff must allege "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016).

Alternatively, a fair trial claim can arise when police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. *See Brady v. Maryland*, 373 U.S. 83, 87,

10

83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To prevail on a *Brady* claim, a plaintiff must demonstrate that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State; and (3) prejudice ensued. *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001). "Evidence is not 'suppressed' if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). The question in addressing a *Brady* claim is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Plaintiff's fair trial claim regarding the alleged coercion of Ogletree fails because he cannot allege evidence of this coercion was suppressed. When he testified at the start of Plaintiff's criminal trial, Ogletree—"the State's first witness"—told the jury his statement inculpating plaintiff was "coerced." ¶ 59. Plaintiff thus had the opportunity at trial to take advantage of this "evidence" by examining Ogletree and the detectives allegedly involved in his coercion. As a result, Plaintiff cannot allege the alleged coercion deprived him of a fair trial.

### C. Detectives Ross, Dluginski, and Dorsi

Plaintiff alleges Detectives Ross, Dluginski,[7] and Dorsi "concealed" Plaintiff's hair and height during the court-ordered lineup. However, Plaintiff fails to allege these actions produced a constitutional injury caused by any County Defendant.

"[A] suggestive [identification] procedure 'does not in itself intrude upon a constitutionally protected interest.'" *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) (quoting *Manson v.*

---

[7] Plaintiff also alleges Det. Dluginski coercively interrogated him and coerced Ogletree. As discussed above, these conclusory allegations are insufficient to state a claim. *See* Points I(A), (B) *supra*.

*Brathwaite,* 432 U.S. 98, 113 n. 13, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Rather, "it is the admission of testimony" at trial concerning the identification that violates a criminal defendant's constitutional rights. *Id*. (*citing Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)); *see also Perkins v. City of New York, et al.*, No. 17-CV-423 (RRM) (PK), 2019 WL 4736950, at *5 (E.D.N.Y. Sept. 27, 2019) ("it is not a suggestive identification alone that violates the Constitution; 'rather, the constitutional violation is that [the criminal defendant's] right to a fair trial was impaired by the *admission* of testimony regarding the unreliable identification.'") (quoting *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007)).

"[A] section 1983 action, 'like its state tort analogs, employs the principle of proximate causation.'" *Bejaoui v. City of New York*, No. 13-CV-5667 NGG RML, 2015 WL 1529633, at *11 (E.D.N.Y. Mar. 31, 2015) (quoting *Townes v. City of N.Y.,* 176 F.3d 138, 146 (2d Cir.1999)). "It is well settled that the chain of causation between a police officer's unlawful [conduct] and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment …. in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Townes*, 176 F.3d at 147 (collecting cases).

Thus, an officer cannot be liable for the admission at trial of a suggestive identification absent evidence the officer misled or pressured the prosecutor or trial judge. *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) ("In the absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill–considered acts and decisions of the prosecutor and trial judge.").

Here, Plaintiff does not—and cannot—allege the lineup procedures produced a constitutional violation caused by any County Defendant. Even if it were true that "concealing"

12

Plaintiff's hair and height caused the lineup to be unduly suggestive—an argument Plaintiff raised and the criminal court rejected pre-, during, and post-trial—it was the admission at trial of the lineup evidence that violated Plaintiff's constitutional rights. No County Defendant can be held liable for the admission of such evidence.

Plaintiff also does not—and cannot—allege any County Defendant misled the prosecutor or trial court regarding the lineup procedures used. Indeed, Plaintiff was fully aware of these procedures and attacked them throughout his prosecution based on the same alleged misconduct contained in the SAC. He moved pretrial to suppress testimony relating to the lineup identifications because Plaintiff's hair and height were concealed. ¶ 58; Ex. A. At the hearing, Det. Ross described the procedures he used in organizing and conducting the lineup. *Id*. at 213:12–216:6. He testified that all the subjects of the lineup were seated, "covered with sheets," and wore "the same hat." *Id*. at 215:2–6, 18–20. Plaintiff's criminal defense counsel cross-examined Det. Ross on the lineup procedures. *Id*. at 230:15–248:5, 249:10–19. Plaintiff's criminal defense counsel argued the lineup was unduly suggestive, *id*. at 261:5–266:5, claiming that it "robbed [Plaintiff] of his ability to defend himself in his lineup by taking away the distinguishing factor that didn't match the description [of the perpetrator] but set him apart." *Id*. at 265. The court denied Plaintiff's motion to suppress testimony relating to the lineup identifications, ¶ 58, finding the challenged procedures were "an attempt to protect the defendant's rights and to ensure fairness." Ex. A at 280:24–282:2.

At trial, Det. Ross testified again regarding the lineup procedures. Ex. B. The jury heard the lineup subjects were seated and covered with a sheet, *id*. at 756:16–20, such that the viewing witnesses could not discern Plaintiff's height, which Plaintiff's criminal defense counsel described as a "distinguishing factor." *Id*. at 777:9–778:6. The jury heard Det. Ross had Plaintiff sit on two phone books. *Id*. at 787:6–8. The jury heard Plaintiff's hair was different from the other subjects

seated in the lineup. *Id*. at 786:13–25. The jury heard the lineup subjects each wore the same hat. *Id*. at 757:1–10, 768:15–16, 789:3–11. During his summation, Plaintiff's criminal defense attorney argued to the jury that the lineup procedures were improper because, *inter alia*, Plaintiff's hair and height were concealed. Ex. C at 1087:21–1097:9; 1100:19–1101:10. Having the benefit of all this evidence and argument, the jury still returned a guilty verdict. ¶ 64.

Plaintiff moved to set aside the verdict, arguing the lineup was unduly suggestive because Plaintiff's hair ad height were concealed. ¶ 66; Ex. D at 4–9. The court denied Plaintiff's motion in its entirety. ¶ 66.

Thus, even if the lineup was unduly suggestive, no County Defendant can be liable for any resulting constitutional injury. *See Wray*, 490 F.3d at 193 ("In the absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill–considered acts and decisions of the prosecutor and trial judge."); *Bejaoui v. City of New York*, No. 13-CV-5667 NGG RML, 2015 WL 1529633, at *12 (E.D.N.Y. Mar. 31, 2015) (Dismissing § 1983 claim where "Complaint is silent regarding how the unnamed officers' misled or pressured the prosecutors or supervising judge, who could be expected to exercise independent judgment.").

## II.   PLAINTIFF FAILS TO STATE A SUPERVISORY LIABILITY CLAIM

Under 42 U.S.C. § 1983, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Rather, "a [§ 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*.

"To state a Section 1983 claim for supervisory liability, a plaintiff must plausibly allege the defendant (i) directly participated in a constitutional violation, (ii) failed to remedy a constitutional violation of which the defendant learned through a report or appeal, (iii) created a

policy or custom under which a constitutional violation occurred, (iv) acted with gross negligence in supervising subordinates, or (v) 'exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.'" *Perez v. Annucci*, No. 18 CV 147 (VB), 2019 WL 1227801, at *3 (S.D.N.Y. Mar. 15, 2019) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Conclusory allegations do not suffice. *See Stancati v. Cty. of Nassau*, No. 14-CV-2694 JS ARL, 2015 WL 1529859, at *3 (E.D.N.Y. Mar. 31, 2015); *Stamile v. Cty. of Nassau*, No. CV 10-2632 AKT, 2014 WL 1236885, at *5 (E.D.N.Y. Mar. 25, 2014); *Nabatkhorian v. Cty. of Nassau*, No. 12-CV-1118 JS GRB, 2013 WL 1233247, at *6 (E.D.N.Y. Mar. 27, 2013).

Plaintiff fails to allege a supervisory liability claim. The SAC contains only one remotely specific factual claim against an alleged supervisor, *i.e.*, that Det. Dorsi personally "concealed" Plaintiff's hair and height during the lineup. ¶ 49. However, as discussed above, Plaintiff fails to allege this action caused a constitutional injury. *See* Point I(C) *supra*. The remaining allegations of supervisory misconduct are entirely conclusory. Plaintiff does not plausibly allege any supervisor failed to remedy a constitutional violation of which the supervisory (i) learned through a report or appeal, (iii) created a policy or custom under which a constitutional violation occurred, (iv) acted with gross negligence in supervising subordinates, or (v) 'exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Perez*, 2019 WL 1227801, at *3. With no specific factual allegations to support it, Plaintiff's supervisory liability claim fails as a matter of law.

## III.   PLAINTIFF'S INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL

"[U]nder New York law, "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity[.]" *Nolan v. Cty. of Erie*, No. 1:19-CV-01245,

2020 WL 1969329, at *12 (W.D.N.Y. Apr. 24, 2020) (quoting *Ball v. Miller*, 83 N.Y.S.3d 169, 172 (N.Y. App. Div. 2018), *leave to appeal denied*, 115 N.E.3d 630 (2018); *see also Jones v. City of N.Y.*, 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013) (dismissing intentional infliction of emotional distress claims against city and district attorney's office on this basis); *King v. City of New York*, No. 12-CV-2344 NGG RER, 2013 WL 2285197, at *10 (E.D.N.Y. May 23, 2013) ("it is well-settled that public policy bars intentional infliction of emotional distress claims against government entities.").

Based on this well-established public policy, the Court should dismiss Plaintiff's intentional infliction of emotion distress claim against the County.

Plaintiff purports to assert a claim of negligent infliction of emotional distress against the County "[i]n the alternative." ¶113. However, "the Court need not 'accept [the plaintiff's] legal characterization of the causes of action alleged in the complaint.'" *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:18 CV 05892 (AMG)(SMG), 2019 WL 8501338, at *4 (E.D.N.Y. July 2, 2019) (quoting *Hubel v. Madison Mut. Ins. Co.*, No. 2001-5404, 2003 WL 21435624, at *6 (N.Y. Sup. Ct. May 16, 2003)). "Instead, 'the Court must look to the facts alleged to determine the nature of the claim.'" *Id.* (quoting *Hubel*, 2003 WL 21435624, at *6). Where a Plaintiff alleges only intentional conduct, negligence claims based on the same conduct fail as a matter of law. *Harris v. Town of Islip Hous. Auth.*, No. 10-CV-0843 ADS GRB, 2012 WL 1155804, at *6 (E.D.N.Y. Apr. 5, 2012); *see also Jimenez v. City of New York*, No. 14 CIV. 02994 SAS, 2014 WL 5089392, at *4 (S.D.N.Y. Oct. 9, 2014) ("However, 'allegations of intentional conduct cannot form the basis of a claim founded in negligence.'") (quoting *Dunn v. Brown,* 690 N.Y.S.2d 81, 81 (2d Dep't 1999)). Because the SAC contains no allegations of negligent conduct, Plaintiff's negligent infliction of emotional distress claims fails.

Even if the Court considers Plaintiff's negligence claim, public policy bars it. "It is a well-settled principle that '[f]or claims seeking damages based upon a purportedly unlawful arrest and prosecution, a plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution and cannot recover under the broader principles of negligence.'" *Harris*, 2012 WL 1155804, at *5 (quoting *Ellis v. Gannon,* No. 10–CV–1373, 2011 WL 5513184, at *6 (E.D.N.Y. Nov.10, 2011); *see also McSween v. Edwards,* 91 F.Supp.2d 513, 525 (E.D.N.Y.2000) ("New York law prohibits recovery under a general theory of negligence when the traditional remedies of false arrest and imprisonment are available." (internal quotations and citations omitted)); *Santoro v. Town of Smithtown,* 40 A.D.3d 736, 738, 835 N.Y.S.2d 658, 661 (2d Dep't 2007) ("The fifth cause of action alleging gross negligence was properly dismissed because the plaintiffs seek damages for injury resulting from false arrest and detention, and, therefore, they cannot recover under broad general principles of negligence but, instead, must proceed by way of the traditional remedy of false arrest."); *Antonious v. Muhammad,* 250 A.D.2d 559, 559, 673 N.Y.S.2d 158, 159 (2d Dep't 1998) ("The remaining respondents are entitled to the dismissal of the complaint insofar as asserted against them, as there is no cause of action in the State of New York sounding in negligent prosecution.").

Public policy considerations notwithstanding, the Court should dismiss Plaintiff's intentional and negligent infliction of emotional distress as duplicative of his other causes of action. "In general, NIED and IIED claims are 'not allowed if essentially duplicative' of another cause of action." *Wright v. Belafonte*, 687 F. App'x 1, 2 (2d Cir. 2017) (summary order) (quoting *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637, 713 N.Y.S.2d 171 (1st Dep't 2000). Here, Plaintiff's emotional distress claims duplicate his other claims. *See Casaccia v. City of Rochester*, No. 6:17-CV-06323-MAT, 2018 WL 324420, at *8 (W.D.N.Y. Jan. 8, 2018) ("because the

traditional torts of false arrest, malicious prosecution, and battery encompass the conduct Plaintiff complains of, Plaintiff's claim for intentional infliction of emotional distress must be dismissed."); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608–09 (E.D.N.Y. 2011).

## IV.   PLAINTIFF'S UNLAWFUL DETENTION CLAIM FAILS

The Fourth Amendment protects against "a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence." *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007). "To prevail on this claim, [Plaintiff] must establish (1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id*. at 205 (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

In *Russo*, the plaintiff-appellant was arrested for and charged with a gas station robbery, and was detained for 217 days before the charges against him were dismissed. 479 F.3d at 199–203. The crime had been recorded on videotape by a security camera. *Id.* at 199-200. The security camera footage, which was in the exclusive possession of the police, showed the assailant's left and right forearms, both of which were free of tattoos. *Id.* Russo had "prominent tattoos on his forearms" that pre-dated his arrest. *Id.* at 200. However, the officers falsely told Russo the footage showed the assailant had tattoos. *Id*. Russo's attorneys repeatedly sought production of the videotape. *Id.* at 201. An officer "actively hid" it. *Id*. at 210. After the videotape was finally produced to Russo's attorney, the prosecutor viewed the footage and saw the assailant clearly had no tattoos. *Id.* at 201. The next day, after verifying with a probation officer that Russo's tattoos pre-dated the robbery, the prosecutor requested a *nolle prosequi*, and the court dismissed the case against Russo. *Id.*

18

The Second Circuit reversed the district court's grant of summary judgment to the defendant-officers involved in the above events. The court concluded the officers' misrepresentation of the assailant's tattoos, improper storage and active hiding of the security camera footage, and failure to watch the footage to see if it was exculpatory–even while it was in their exclusive possession–"shocked the conscience" and amounted to a violation of the duty owed to a detainee. *Id.* at 210.

Plaintiff's allegations do not rise to the level of conscience-shocking conduct necessary to state an unlawful detention claim. He does not allege any defendant refused to investigate readily available, plainly exculpatory evidence similar to the video in *Russo*. Instead, he claims only that defendants failed to disclose "the coercion of Ogletree" and "the corruption of the Anyosa identifications." ¶ 122. These allegations do not give rise to an inference that any defendant withheld exculpatory evidence. *See Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) (summary order) ("Here, Delamota has alleged only that Detective Koch withheld information from the District Attorney's office and the grand jury regarding (1) the suggestive nature of the photo array, (2) the fact that Juan Jr. interpreted for his father, and (3) the likelihood that Juan Jr. may have known the plaintiff. As the District Court properly concluded, none of these allegations give rise to an inference that Detective Koch withheld exculpatory evidence.")

Plaintiff's claim that unidentified "defendants" failed to investigate "the 2008 tip" is similarly unavailing. Initially, "by lumping all of the defendants together as 'defendants' and failing to specify or distinguish between them as to the alleged conduct, Plaintiff fails to satisfy the personal-involvement requirement." *See Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *15 (S.D.N.Y. May 26, 2017) (dismissing unlawful detention claim). Besides, Plaintiff does not allege any defendant even knew of this alleged call to "the police tip

19

line," ¶ 26, much less that any defendant deliberately suppressed it. *See Hicks v. Marchman*, 719

F. App'x 61, 64 (2d Cir. 2018) (summary order) (no constitutional right "to have the police conduct

an adequate investigation.") Moreover, Plaintiff does not even identify the "tip line."

## V.   PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS

"[L]aw enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "To establish a claim for failure

to intervene, a plaintiff must show (1) the officer's failure 'permitted fellow officers to violate

[plaintiff's] clearly established statutory or constitutional rights,' and (2) it was 'objectively

unreasonable for him to believe that his fellow officers' conduct did not violate those rights.'" *Ying

Li v. City of New York*, 246 F. Supp. 3d 578, 619 (E.D.N.Y. 2017) (quoting *Ricciuti v. N.Y.C.

Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). "In order for liability to attach, there must have

been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d

at 557. "An underlying constitutional violation is an essential element of a failure to intercede

claim under § 1983." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010).

Conclusory allegations cannot withstand dismissal. *See e.g., Isaac v. City of New York*, No. 16-

CV-4729 (KAM), 2018 WL 5020173, at *14 (E.D.N.Y. Aug. 6, 2018), *report and

recommendation adopted*, No. 16CV4729KAMRLM, 2018 WL 4583481 (E.D.N.Y. Sept. 24,

2018) (dismissing vague failure to intervene claim); *Hardy v. City of New York*, No. 12 Civ.

17(RJS), 2013 WL 5231459, at *4 (S.D.N.Y. July 9, 2013) (dismissing failure to intervene claim

where the pleading "fails to explain whether any of [the officers] was in another's presence at the

time of the submission of false evidence"); *Clay v. County of Clinton*, No. 8:10-CV-00239

(LEK/RFT), 2012 WL 4485952, at *14 (N.D.N.Y. Sept. 27, 2012) ("vague and conclusory

allegations" with respect to three defendants did not suffice to "plausibly suggest their liability"

for failure to intervene); *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246(SAS), 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (dismissing "vague and conclusory" failure to intervene claim).

The Court should dismiss Plaintiff's half-hearted failure to intervene claim—an apparent attempt to cure Plaintiff's fatal failure to show any County Defendant's direct, personal involvement in a constitutional violation. As discussed above, the vast majority of Plaintiff's factual allegations—the alleged coercive interrogation of plaintiff, the alleged Ogletree coercion, the lineup, and the alleged failure to investigate—do not amount to a plausible constitutional violation by any County Defendant. And, while Plaintiff alleges Det. Lipson "told Anyosa that he had selected the 'right guy' [in the photo array] and that his friend has picked the same person," ¶ 40, he does not allege any County Defendant knew of this alleged statement, much less had a realistic opportunity to intervene to prevent it from occurring.

**CONCLUSION**

The County Defendants request that this court grant their motion dismissing portions of

the Seconded Amended Complaint with such other relief as this Court may deem just, equitable,

and proper.

Dated: Carle Place, New York
      May 14, 2020

SOKOLOFF STERN LLP
*Attorneys for County Defendants*

Brian S.
Sokoloff

Digitally signed by Brian S. Sokoloff
DN: cn=Brian S. Sokoloff, o=Sokoloff
Stern LLP, ou,
email=bsokoloff@sokoloffstern.com,
c=US
Date: 2020.05.14 15:50:25 -04'00'

Brian S. Sokoloff
Alexander J. Eleftherakis
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 190164

22