UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSIAH GALLOWAY,

                              Plaintiff,

         -against-

NASSAU COUNTY; THE INCORPORATED VILLAGE
OF HEMPSTEAD; Police Officer STEVEN HOROWITZ,
Shield No. 144; Detective MATTHEW ROSS, Shield No.
834; Detective CHARLES DECARO, Shield No. 1047;
Detective RONALD LIPSON, Shield No. 1296; Detective
THOMAS D'LUGINSKI, Shield No. 7900; Detective
GEORGE DARIENZO, Shield No. 1038; Detective
KEVIN CUNNINGHAM, Shield No. 112; Detective
Sergeant RICHARD DORSI; Detective RENE B. YAO;
Detective CARL STRANGE, Shield No. 1225; JOHN and
JANE DOE 1-20,

                              Defendants.

19-cv-5026 (AMD) (ARL)


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND**

**SOKOLOFF STERN LLP**
*Attorneys for County Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No.: 190164

*Of Counsel:*
    Brian S. Sokoloff
    Alexander J. Eleftherakis

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

STANDARD OF REVIEW .......................................................................................................... 9

ARGUMENT ............................................................................................................................... 11

    Point I: Plaintiff's Proposed Amendment Is Futile ................................................................ 11

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Amissah v. Wells Fargo,*
   2020 WL 868599 (E.D.N.Y. Feb. 20, 2020) ............................................................ 7

*Amnesty Am. v. Town of W. Hartford,*
   361 F.3d 113 (2d Cir.2004) ............................................................................ 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 9

*Bah v. City of New York,*
   2017 WL 435823 (S.D.N.Y. Jan. 31, 2017) ................................................. 1, 17

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,*
   520 U.S. 397 (1997) .......................................................................... 1, 13, 14, 15

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.,*
   652 F. Supp. 2d 463 (S.D.N.Y. 2009) ............................................................. 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 9

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York,*
   678 F.3d 184 (2d Cir. 2012) ........................................................................... 10

*Bliven v. Hunt,*
   478 F. Supp. 2d 332 (E.D.N.Y. 2007) ............................................................ 12

*Brogan v. Tunkhannock Twp.,*
   2017 WL 8288087 (M.D. Pa. Mar. 13, 2017) ................................................ 17

*Chepilko v. City of New York,*
   2012 WL 398700 (E.D.N.Y. Feb. 6, 2012) ................................................ 14, 18

*City of Canton v. Harris,*
   489 U.S. 378 (1989) ...................................................................................... 13

*City of Oklahoma City v. Tuttle,*
   471 U.S. 808 (1985) ..................................................................... 1, 14, 15, 16, 20

*Cleveland Board of Education v. LaFleur,*
   414 U.S. 632 (1974) ...................................................................................... 13

ii

*D'Alessandro v. City of New York,*
   713 F. App'x 1 (2d Cir. 2017)...................................................................... 9

*Dawson v. Cty. of Westchester,*
   351 F. Supp. 2d 176 (S.D.N.Y. 2004) ....................................................... 15

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
   282 F.3d 83 (2d Cir. 2002)........................................................................... 9

*Droz v. McCadden,*
   580 F.3d 106 (2d Cir. 2009) ...................................................................... 16

*Global Network Commc'ns, Inc. v. City of New York,*
   458 F.3d 150 (2d Cir.2006)........................................................................... 3

*Henry-Lee v. City of New York,*
   746 F. Supp. 2d 546 (S.D.N.Y. 2010) ....................................................... 16

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,*
   22 F.3d 458 (2d Cir. 1994).......................................................................... 9

*Johnson v. City of New York,*
   2017 WL 2312924 (S.D.N.Y. May 26, 2017)............................................ 18

*Jones v. Town of E. Haven,*
   691 F.3d 72 (2d Cir. 2012).......................................................................... 15

*Jordan v. Verizon Corp.,*
   2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008)............................................. 3

*Khan v. City of Lodi,*
   2020 WL 2556797 (E.D. Cal. May 20, 2020)............................................ 18

*Kiernan v. Town of Southampton,*
   2015 WL 1258309 (E.D.N.Y. Mar. 17, 2015) ........................................... 10

*Kimble v. Kingston City Sch. Dist.,*
   792 F. App'x 80 (2d Cir. 2019)................................................................. 10

*Kramer v. Time Warner Inc.,*
   937 F.2d 767 (2d Cir. 1991)........................................................................ 3

*Kuar v. Mawn,*
   2011 WL 838911 (E.D.N.Y. Mar. 4, 2011) ............................................. 3, 6

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ........................................................................................ 10

*Manson v. Brathwaite*,
432 U.S. 98 (1977) ..................................................................................... 1, 17

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) .............................................................................. 9

*McDonough v. Smith*,
139 S. Ct. 2149 (2019) .................................................................................... 16

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) .................................................................................. 11, 13

*Neil v. Biggers*,
409 U.S. 188 (1972) ........................................................................................ 17

*Nieves v. Fahmy*,
2016 WL 6804926 (E.D.N.Y. Nov. 16, 2016) ................................................. 11

*People v. Perkins*,
61 A.D.3d 780, 876 N.Y.S.2d 517 (2d Dep't 2009) ......................................... 2

*Perkins v. City of New York, et al.*,
2019 WL 4736950 (E.D.N.Y. Sept. 27, 2019) ................................................ 17

*Plair v. City of N.Y.*,
789 F.Supp.2d 459 (S.D.N.Y. 2011) ............................................................... 10

*Reid v. City of New York*,
2019 WL 1573370 (E.D.N.Y. Apr. 11, 2019) ............................................ 11, 13

*Roberts v. Williams*,
2018 WL 5777291 (E.D. Pa. Nov. 2, 2018) ..................................................... 19

*Roe v. City of Waterbury*,
542 F.3d 31 (2d Cir. 2008) .............................................................................. 11

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) .............................................................................. 6

*Russo v. City of Bridgeport*,
479 F.3d 196 (2d Cir. 2007) .............................................................................. 7

*Serviss v. Margiotta*,
  2017 WL 2543903 (E.D.N.Y. May 25, 2017)................................................................ 15

*Simms v. City of New York*,
  480 F. App'x 627 (2d Cir. 2012)................................................................................. 10

*Tangreti v. Bachmann*,
  2020 WL 7687688 (2d Cir. Dec. 28, 2020) ............................................................... 16

*Toussie v. Town Bd. of Town of E. Hampton*,
  2010 WL 597469 (E.D.N.Y. Feb. 17, 2010) .............................................................. 13

*Townes v. City of N.Y.*,
  176 F.3d 138 (2d Cir.1999)........................................................................................ 18

*Williams v. City of New York*,
  2020 WL 6899995 (E.D.N.Y. Nov. 23, 2020) ........................................................... 10

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007)................................................................................. 17, 18

*Wray v. Johnson*,
  202 F.3d 515 (2d Cir. 2000)..................................................................................... 1, 17

*Zahra v. Town of Southold*,
  48 F.3d 674 (2d Cir. 1995) ......................................................................................... 12

*Zherka v. City of New York*,
  459 F. App'x 10 (2d Cir. 2012)................................................................................... 12

**Rules**

Fed. R. Civ. P. 8(a)(2)......................................................................................................... 9
Fed. R. Civ. P. 12(b)(6)................................................................................................ 2, 3, 9
Fed. R. Civ. P. 15(a)(2)....................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff seeks leave to amend his complaint for a fourth time, now to add a futile *Monell* claim against defendant Nassau County. He claims the County employed "constitutionally defective" photo-array and lineup procedures, but cites no law establishing the unconstitutionality of any of the ten challenged policies. Instead, he relies on a 2020 academic article that, in his words, "explain[s] why some of the policies employed by the County in plaintiff's [2008] case were likely to result in misidentification." Pl. Br. at 6. But "a suggestive [identification] procedure 'does not in itself intrude upon a constitutionally protected interest.'" *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 113 n.13 (1977)). And "Section 1983 provides a remedy for the violation of rights protected by the Constitution or federal law," not "for violations of best police practices." *Bah v. City of New York*, No. 13-CV-6690 (PKC), 2017 WL 435823, at *6 (S.D.N.Y. Jan. 31, 2017).

While *Monell* liability does not require Plaintiff to allege a facially unconstitutional policy, "[t]he fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985). "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).

Lacking a facially unconstitutional policy, Plaintiff must plausibly allege the County was deliberately indifferent to the known or obvious consequence that constitutional violations would result from the identification policies he challenges. His conclusory allegations fail to meet this standard. The Court should deny Plaintiff's request for leave to amend.

## STATEMENT OF FACTS[1]

At approximately 1:30 a.m. on May 15, 2008, Jorge Anyosa was shot in the face while in Village of Hempstead. ¶ 19.[2] The victim and a witness observed the shooter, "describing him as a black male, 25-30 years old, approximately 5'10"-5'11", with close-cropped or shaved hair, an accent and no glasses or distinguishing facial features." ¶ 20.

On June 5, 2008, Village police officers arrested Plaintiff on charges "unrelated to the Anyosa shooting." ¶ 33–34. Plaintiff claims these unrelated charges were "later dismissed in their entirety," but he does not allege when. ¶ 34. Plaintiff does not—and cannot—allege a lack of probable cause for the arrest on those charges.

While Plaintiff was in police custody, unidentified defendants constructed photo arrays "using an old, outdated photograph of plaintiff." ¶¶ 35, 38. In the presence of defendants Lipson and Horowitz, Anyosa selected plaintiff from the photo array as the perpetrator. ¶ 39. Lipson and Horowitz allegedly "told Anyosa that he had selected the 'right guy' and that his friend had picked the same person." ¶ 40. On June 16, 2008, a grand jury indicted Plaintiff for the attempted murder of Anyosa. ¶ 46.

Under New York law at that time, photo identifications of a criminal defendant—and any testimony relating thereto—were inadmissible at trial to support the prosecution's case-in-chief. *See, e.g., People v. Perkins*, 61 A.D.3d 780, 781, 876 N.Y.S.2d 517, 518 (2d Dep't 2009)). On

---

[1] The Statement of Facts is drawn from the allegations of the Proposed Fourth Amended Complaint ("PFAC") and documents this Court may consider in deciding whether Plaintiff's proposed *Monell* claim satisfies Fed. R. Civ. P. 12(b)(6), the applicable standard. All referenced exhibits are annexed to the accompanying Declaration of Brian S. Sokoloff. They are included to show Plaintiff cannot even plausibly claim the challenged policies—as opposed to the isolated actions of a non-policymaking County employee or Galloway's own criminal defense counsel—were the "moving force" behind any alleged constitutional violations just in *his own* criminal case. However, Plaintiff's failure to allege the County promulgated these policies with deliberate indifference—which he must to state his *Monell* claim—is clear from the PFAC alone and without reference to the exhibits.

[2] All citations to "¶" refer to the paragraphs of the PFAC.

June 30, 2008, "upon the application of A.D.A. Joseph LaRocca, an Assistant District Attorney of Nassau County, and upon consent of [Plaintiff's criminal defense attorney]," the criminal court issued an order requiring Plaintiff to submit to a physical lineup procedure. Ex. A at 1;[3] ¶ 47. On August 14, 2008, Plaintiff appeared for the court-ordered lineup. ¶¶ 50–51. "[D]efendants including Ross, Dluginski and Dorsi concealed [plaintiff]'s long hair under a hat and disguised his diminutive stature using a seated lineup with [him] sitting on two phone books." ¶ 51. "[T]he victim and witness" separately identified plaintiff as the perpetrator. ¶ 53.

Plaintiff moved pretrial to suppress, *inter alia*, the photo-array and lineup identifications. ¶ 60; Ex. B; Ex. C.[4] At the hearing, Det. Lipson described the single-blind process he used to create and administer the two photo arrays, *i.e.*, that he retrieved Plaintiff's photo from the Nassau County Rogues system, put it in an array with five other photos of people with similar characteristics, showed the arrays to the witness and victim, asked if they recognized anyone, and had them circle and sign next to the identified photo and complete a supporting statement. Ex. B at 8:9–10:15, 11:3–17. Plaintiff's new criminal defense counsel, Frederick Brewington, cross-examined Det. Lipson on the photo-array procedures. *Id.* at 26:20–56:25. Det. Ross described the procedures he used organizing and conducting the lineup. Ex. C at 213:12–216:6. He testified that he picked "fillers" based on Plaintiff's description and that all the subjects of the lineup were seated, "covered

---

[3] Exhibit A is the lineup order, which the Court may consider because Plaintiff quotes from it and incorporates it by reference in the PFAC (¶ 47). *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

[4] Exhibits B and C are the transcripts of Plaintiff's pre-trial hearing. The Court may take judicial notice of these public records. *See Kuar v. Mawn*, No. 08-CV-4401 JFBETB, 2011 WL 838911, at *4 (E.D.N.Y. Mar. 4, 2011). Defendants ask the Court to consider the testimony only "to prove that such statements were made" and not "to prove the truth of the matters asserted therein." *Id.*; *see also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006) (testimony in other proceedings is a public record that court may take judicial notice of for purposes of establishing the "existence of the opinion"); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) ("The Court may properly 'rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial decisions.'") (*quoting Jordan v. Verizon Corp.*, No. 08 Civ. 6414, 2008 WL 5209989, at *5 (S.D.N.Y. Dec. 10, 2008)).

with sheets," and "wore the same hat." *Id*. at 215:2–6, 18–20. Brewington cross-examined Det. Ross on the lineup procedures. *Id*. at 230:15–248:5, 249:10–19.

Brewington argued the photo-array and lineup identification procedures were unduly suggestive. *Id*. 257:14–266:5. He attacked the photo array for its use of a photo of Plaintiff "from the past that matched the description" of the perpetrator. *Id*. at 259:6–7. And he argued the lineup "robbed [Plaintiff] of his ability to defend himself in his lineup by taking away the distinguishing factor that didn't match the description [of the perpetrator] but set him apart." *Id*. at 265:5–8.

The criminal court completely denied Plaintiff's suppression motion. ¶ 60. After finding the police had "sufficient probable cause" to arrest Plaintiff on charges unrelated to the Anyosa shooting, Ex. C at 279:1–19, the court ruled:

> [I]t was appropriate, and certainly not in violation of the defendant's rights for Detective DeCaro to put into motion the procedure whereby Mr. Galloway's photograph was placed in a photo array, along with five other individuals who resembled Mr. Galloway in appearance, and for these photographs to be shown to the victim and a witness in the … open investigation [of the Anyosa shooting].
>
> Now, the photo array was shown separately to the victim and to a person who's described as a witness. There was no suggestibility with regard to the photographs. There was no suggestibility with regard to the procedure that was followed. And there was nothing unreasonably or unduly suggestive in the wording that was used by police personnel during the showing of the photo arrays.
>
> And, accordingly, the motion to suppress the viewing of the photo arrays -- or shall I say, the motion to deny the People the opportunity to attempt an in-court trial identification of the defendant based on the photo arrays is denied, because the photo arrays did not violate the constitutional rights of the defendant.
>
> Now, with regard to the court ordered lineup, the Court finds, according to the testimony and the evidence it was fair, in compliance with the defendant's constitutional and statutory rights. As a matter of fact, he had an attorney present.
>
> …

> The Court finds that the use of the hats was an attempt to protect the defendant's rights and to ensure fairness. Furthermore, there was certainly no objection rendered by either the defendant or the attorney who was present.
>
> Similarly, having the individuals sit was also in an attempt to keep things fair, as well as the use of the sheet.
>
> There was nothing that was said or done to coerce or pressure or overly suggest to the individuals who viewed the lineup that they should in any way be unduly directed toward the defendant. And there was nothing unduly suggestive about the procedure of the lineup, the people that were used in the lineup, or any interaction that police personnel had with regard to the civilians who viewed the lineup.
>
> The motion to suppress testimony with regard to the lineup at trial is denied.

*Id*. at 280:1–282:2. Plaintiff claims the trial court was "misled about … the purported Anyosa identifications." ¶ 60. But the only relevant conduct allegedly withheld[5] from the court was Lipson's alleged comment, after administration of the photo array, that Anyosa had selected "the right guy" and that his friend had also identified Galloway. As pertains to his proposed *Monell* claim, Plaintiff alleges no deliberate action *by the County* relating to these comments, *i.e.*, he does not allege any County policy *directed* Lipson to make and withhold these alleged comments or that the County was deliberately indifferent to such conduct by its non-policymaking employees.

The criminal court thoroughly explored the photo array and lineup procedures again, at Plaintiff's criminal trial. Although photo-array identification evidence normally was inadmissible at trial, Plaintiff's own attorney "opened the door" to its admission. During his opening statement, Brewington faulted the prosecutor for not mentioning the photo array in the People's opening statement, suggesting "[m]aybe that's because what they did was make the photo pack fit." Ex. D

---

[5] Plaintiff's separate claim that "Defendants never disclosed their [alleged] coercion of [plaintiff's friend] Ogletree" during a custodial interrogation (¶ 62) is not germane to his proposed *Monell* claim, which he premises only on the challenged identification procedures.

at 256:3–16.[6] This consequential impropriety by Galloway's counsel forced the trial judge to curatively instruct the jury that "the People were, under the law, forbidden from mentioning the existence of any photographic identification procedure." *Id.* at 261:20–262:12. And when Brewington later tried to suppress the photo array, the court ruled he had "throw[n] the door open." *Id.* at 392:18–395:23.

Det. Lipson testified about the photo-array procedures. Ex. E at 703:4–708:11. The jury heard Lipson explain how he created and administered the photo arrays to the victim and witness. *Id.* Brewington cross-examined Lipson. *Id.* at 709:16–722:2, 724:22–729:17. Det. Ross testified about the lineup procedures, Ex. F at 754:4–764:17, and Brewington cross-examined him extensively. *Id.* at 764:22–800:5, 802:12–805:25, 887:12–895:9. The jury heard the lineup subjects were seated and covered with a sheet, *id.* at 756:16–20, such that the viewing witnesses could not discern Plaintiff's height, which Brewington described as a "distinguishing factor." *Id.* at 777:9–778:6. The jury heard Det. Ross had Plaintiff sit on two phone books. *Id.* at 787:6–8. The jury heard Plaintiff's concealed hair was different from the other subjects seated in the lineup. *Id.* at 786:13–25. The jury heard the lineup subjects each wore the same hat. *Id.* at 757:1–10, 768:15–16, 789:3–11.

During summation, Brewington argued to the criminal court jury "that the police knew that [Plaintiff] was the wrong person from the beginning" and inculpated him through unduly suggestive identifications, including by using an "old picture" of Plaintiff in the photo array and concealing his hair and height during the lineup. Ex. G at 1051:21–1052:17, 1087:21–1097:9; 1100:19–1101:10.

---

[6] Exhibit D is an excerpt from the transcript of Brewington's opening statement at Plaintiff's criminal trial, and Exhibits E, F, and G are the transcripts of Det. Lipson's trial testimony, Det. Ross' trial testimony, and Brewington's summation. As discussed, this Court may take judicial notice of this public document "to prove that such statements were made." *Kuar*, 2011 WL 838911, at *4.

On March 9, 2009, the jury returned a guilty verdict. ¶ 66. Plaintiff moved to set aside the verdict. ¶ 68; Ex. H.[7] He argued the photo-array and lineup procedures were unduly suggestive. *Id*. at ¶¶ 8–30. The court denied Plaintiff's motion. ¶ 68.

In early July 2018, a woman contacted the Nassau County District Attorney's office to say "she could no longer remain silent" about Plaintiff's conviction." ¶ 69. The Nassau County Conviction Integrity Unit ("CIU) reinvestigated Plaintiff's conviction. ¶ 70. On September 13, 2018, the CIU moved to vacate Plaintiff's conviction pursuant N.Y. C.P.L. § 440.10(1)(g). ¶ 74.

Plaintiff filed this action on September 4, 2019. ECF No. 1. He filed a first amended complaint on October 24, 2019 (ECF No. 9), a second amended complaint on March 31, 2020 (ECF No. 53), and a third amended complaint on October 22, 2020 (ECF No. 80). Against the County Defendants, he asserts eight causes of action: i) a § 1983 malicious prosecution claim against Detectives DeCaro, Darienzo, Lipson, and Dluginski; ii) a § 1983 "Fabrication of Evidence/Denial of Fair Trial and *Brady* Violations" claim against all individual defendants; iii) a § 1983 supervisory liability claim against Det. Dorsi; iv) state law false imprisonment and malicious prosecution claims against the County; v) intentional or negligent infliction of emotional distress claims against the County; vi) a § 1983 conspiracy claim against all individual defendants; vii) an "Unlawful Pre-Trial Detention In Violation of the 4th Amendment and *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007)" claim against all individual defendants; and viii) a failure to intervene claim against all individual defendants. The County Defendants answered on November 12, 2020. ECF No. 85.

---

[7] Ex. H is Plaintiff's motion to set aside the verdict. The Court may consider this document because the PFAC incorporates it by reference (¶ 68), *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), and as a matter of public record. *Amissah v. Wells Fargo*, No. 219CV04624AMDCLP, 2020 WL 868599, at *1, n.3 (E.D.N.Y. Feb. 20, 2020).

Plaintiff now seeks leave to amend his complaint for a fourth time, to add a *Monell* claim against the County. In the PFAC, he alleges, in conclusory terms, that the County "employed photo array and lineup procedures that were constitutionally defective and unduly suggestive." ¶ 131. He then alleges "it was Nassau County policy at the time of the disputed events: a. for witness statements to be written by officers; b. for witness interviews, photo arrays and lineups not to be audio- or video-recorded; c. for no record to be made of the confidence of a witness's selection when a photo array was administered, or of the time it took the witness to make the selection; d. for photo arrays to be administered in a non-blind fashion; e. for officers to disclose the identity of the subject selected to the array viewer; f. to use photographs of a suspect even where the photograph is outdated and the suspect's appearance has changed; g. to conduct repeated identification procedures with the same witness, even after the identity of the suspect was previously revealed; h. where a perpetrator was described as having an accent and the suspect did not, to prohibit the lineup participants from speaking; i. to deprive the suspect of distinguishing characteristics through the use of seated lineups, hats, sheets and phonebooks; and j. to select lineup fillers without accounting for the demographics of the suspect." ¶ 132.

Plaintiff alleges, again in purely conclusory terms and with no reference to any specific underlying constitutional claim, that "the foregoing policies, practices and customs proximately caused the wrongful conviction in this case and the damages sustained by the plaintiff." ¶ 133. He annexes to the PFAC a 2020 academic article entitled *Policy and Procedure Recommendations for the Collection and Preservation of Eyewitness Identification Evidence*, which, he argues, "explain[s] why some of the policies employed by the County in plaintiff's [2008] case were likely to result in misidentification." Pl. Br. at 6.

**STANDARD OF REVIEW**

A party may receive leave to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant leave to amend "is within the sound discretion of the court," *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994), and the court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)). Courts "do not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 10–11 (2d Cir. 2017) (summary order) (affirming pre-answer dismissal of

9

*Monell* claim for failure to plead deliberate indifference) (quoting *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 191 (2d Cir. 2012)).

Plaintiff suggests *Monell* claims are subject to a different, more "lenient pleading standard," relying on the Second Circuit's pre-*Twombly*/*Iqbal* decision *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113 (2d Cir.2004) concerning a failure-to-train theory *Monell* claim. Pl. Br. at 2. However, "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery [*citing Amnesty*], this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order); *see also Kimble v. Kingston City Sch. Dist.*, 792 F. App'x 80, 82 (2d Cir. 2019) ("it is settled Second Circuit law that, to prevail under a *Monell* theory of municipal liability, plaintiffs must do more than merely assert the existence of a municipal policy or custom leading to a rights violation.") (internal quotation and citation omitted); *Williams v. City of New York*, No. 20CV5113AMDLB, 2020 WL 6899995, at *2 (E.D.N.Y. Nov. 23, 2020) ("It is well-settled that conclusory allegations, which merely recite the elements of a *Monell* claim, are insufficient to state a claim for municipal liability."); *Plair v. City of N.Y.,* 789 F.Supp.2d 459, 469 (S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly, Monell* claims must satisfy the plausibility standard.").

Plaintiff's reliance on *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) is equally misplaced. Pl. Br. at 2–3. "*Iqbal*—not *Leatherman*—governs the pleading standard for a *Monell* claim." *Kiernan v. Town of Southampton*, No. 14-CV-1831 SJF AKT, 2015 WL 1258309, at *21 (E.D.N.Y. Mar. 17, 2015). "*Leatherman* simply stands for the proposition that claims of municipal liability do not need to satisfy the higher pleading standard set forth in Rule 9(b)." *Id.*

**ARGUMENT**

**POINT I:    PLAINTIFF'S PROPOSED AMENDMENT IS FUTILE**

Plaintiff's proposed *Monell* claim fails as a matter of law because Plaintiff does not—and cannot—plausibly allege any deliberate action by the County concerning the facially lawful identification policies was the "moving force" behind any alleged constitutional violation.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To plead a *Monell* claim, "a plaintiff must allege: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Reid v. City of New York*, No. 19-CV-324 (AMD)(ST), 2019 WL 1573370, at *4 (E.D.N.Y. Apr. 11, 2019) (*citing Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). "Courts in this Circuit apply a two-part test to Section 1983 claims brought against a municipality. First, a plaintiff must establish the existence of a municipal policy or custom to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, a plaintiff must demonstrate a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Nieves v. Fahmy*, No. 15CIV7297AMDST, 2016 WL 6804926, at *5 (E.D.N.Y. Nov. 16, 2016) (internal citations and quotations omitted).

"To establish the existence of a municipal policy or custom, a plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the

11

alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 336–37 (E.D.N.Y. 2007), *aff'd*, 579 F.3d 204 (2d Cir. 2009). "It has long been well-settled that 'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (summary order) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

In a vague nod to pleading the existence of a municipal policy, Plaintiff alleges the non-policymaking individual defendants "have admitted in discovery" that the challenged policies existed in 2008. ¶ 132. However, Plaintiff's allegations exaggerate and, in some instances, misrepresent the testimony of the individual defendants. Tellingly, neither the PFAC nor Plaintiff's motion to amend cites to any defendant's testimony. While the Court must generally accept Plaintiff's allegations as true at this stage, the County Defendants must call out one egregious misrepresentation, *i.e.*, that, "where a perpetrator was described as having an accent and the suspect did not, [it was County policy] to prohibit the lineup participants from speaking." ¶ 132(h). No defendant testified to such a prohibition, much less a policy-based one. To the contrary, when asked at his deposition whether "the witness [would] be allowed during the lineup to ask a particular participant to speak, so they can listen for the accent," Det. Ross testified, "Would he be allowed? Of course he would be able to say anything he wants." Ex. I at 129:15–25.[8] He also

<hr>

[8] Exhibit I is an excerpt from the transcript of Det. Ross' deposition in this case. By basing his *Monell* claim on Defendants' alleged admissions in discovery, Plaintiff makes this testimony "integral" to the PFAC and, thus, subject

testified, "I know there were times that I was not involved with, that I did hear that they needed to speak or what not, a person said a certain thing." *Id*. at 56:2–6.

Even if Plaintiff's conclusory allegations were sufficient to allege the existence of the challenged policies, his proposed *Monell* claim fails for lack of causation.

*Monell*'s causation requirement "reflects Congress' intention that municipalities not be held liable under § 1983 'unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Reid*, 2019 WL 1573370, at *4 (quoting *Monell*, 436 U.S. at 691). To establish municipal liability, "[t]here must be a 'direct causal link' between a municipal policy and the alleged constitutional deprivation." *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "The plaintiff must … demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

"Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Id*. For example, as the Supreme Court once explained:

> The "policy" of the New York City Department of Social Services that was challenged in *Monell* was a policy that by its terms compelled pregnant employees to take mandatory leaves of absence before such leaves were required for medical reasons; this policy in and of itself violated the constitutional rights of pregnant employees by reason of our decision in *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Obviously, it requires only one application of a policy such as this

---

to the Court's consideration. *Toussie v. Town Bd. of Town of E. Hampton*, 2010 WL 597469, at *3 (E.D.N.Y. Feb. 17, 2010) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure").

> to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985). Of course, a plaintiff need not allege a facially unconstitutional policy to plead a *Monell* claim. *See Harris*, 489 U.S. at 387. However, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.

Indeed, "some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter." *Tuttle*, 471 U.S. at 823. In *Tuttle* (an excessive force case), the Supreme Court recognized:

> Obviously, if one retreats far enough from a constitutional violation some municipal "policy" can be identified behind almost any such harm inflicted by a municipal official; for example, [the officer] would never have killed [the plaintiff] if [the municipality] did not have a "policy" of establishing a police force.

*Id*. Put another way, "[t]he fact that a municipal 'policy' *might* lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation." *Id.* at 824 n.8 (emphasis added).

Accordingly, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown,* 520 U.S. at 407; *see also Chepilko v. City of New York*, No. 06-CV-5491 ARRLB, 2012 WL 398700, at *13 (E.D.N.Y. Feb. 6, 2012) ("Though a facially constitutional policy may still give rise to municipal liability, plaintiff must establish that it was promulgated

with 'deliberate indifference' to the known or obvious consequence that constitutional violations would result."); *Dawson v. Cty. of Westchester*, 351 F. Supp. 2d 176, 195 (S.D.N.Y. 2004).

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. The Second Circuit has held that "demonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones*, 691 F.3d at 81 (collecting cases). "[I]solated incidents by employees below the policy making level" are not sufficient to allege deliberate indifference. *Serviss v. Margiotta*, No. CV153411JMAARL, 2017 WL 2543903, at *5 (E.D.N.Y. May 25, 2017) (recommending pre-answer dismissal of *Monell* claim), *report and recommendation adopted*, 2017 WL 2539780 (E.D.N.Y. June 12, 2017); *see also Tuttle*, 471 U.S. at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, *unconstitutional* municipal policy, which policy can be attributed to a municipal policymaker.") (emphasis added).

Here, Plaintiff fails to allege a plausible connection between any deliberate conduct by the County concerning the challenged identification policies and an underlying constitutional violation. Indeed, Plaintiff fails even to specify which of his underlying constitutional claims serves as the basis of his *Monell* claim, much less how any of the referenced policies was the "moving force" giving rise to the claim. Notably, the only possible candidates involve the fabrication of evidence or a deliberate failure to disclose exculpatory evidence (*i.e.*, his malicious

prosecution, fair trial, and unlawful pre-trial detention claims).[9] ¶¶ 85–101, 123–125. Indeed, to argue his *Monell* claim is timely, Plaintiff cites *McDonough v. Smith*, 139 S. Ct. 2149 (2019), in which the Supreme Court calibrated when fabricated-evidence claims accrue for statute of limitations purposes. Pl. Br. at 5. Plaintiff fails to allege how any of the challenged identification policies was the "moving force," either directly or through deliberate indifference, behind the fabrication or deliberate non-disclosure of evidence. The only alleged misconduct Plaintiff cites relating to Anyosa's identification of him as the shooter that was "withheld" from prosecutors was Lipson and Horowitz's purported comment to Anyosa that he selected the "right guy" in the photo array and that his friend had also identified Galloway. Plaintiff, however, does not allege this comment was made *pursuant to* any policy. And while he argues "single-blind administration paved the way" for this comment, "[t]he fact that a municipal 'policy' *might* lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation." *Tuttle*, 471 U.S. at 824 n.8 (emphasis added). Thus, even if true, this isolated incident by a non-policymaking employee is not sufficient to allege the County was deliberately indifferent.

Plaintiff's suggestion that the County's allegedly "unduly suggestive" identification procedures are facially unconstitutional lacks legal support. He cites no law showing any challenged procedure "in and of itself violated" the Constitution. *Id*. at 822. And the academic

---

[9] Plaintiff also asserts supervisory liability, conspiracy, and failure-to-intervene claims under 42 U.S.C. § 1983. However, like *Monell* claims, these claims depend on an underlying constitutional violation. *See, e.g., Tangreti v. Bachmann*, No. 19-3712, 2020 WL 7687688, at *7 (2d Cir. Dec. 28, 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."); *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

article he annexes to the PFAC does not overcome this legal hurdle.[10] "Section 1983 provides a remedy for the violation of rights protected by the Constitution or federal law. It does not provide a remedy for violations of best police practices." *Bah v. City of New York*, No. 13-CV-6690 (PKC), 2017 WL 435823, at *6 (S.D.N.Y. Jan. 31, 2017); *see also Brogan v. Tunkhannock Twp.*, No. 3:14-CV-1690, 2017 WL 8288087, at *18 (M.D. Pa. Mar. 13, 2017) ("While this report doubtless critiques police practices and procedures, we find that the conclusions drawn … represent, at most, a dispute over best practices, but do not rise to proof of deliberate indifference to constitutional violations, the necessary quantum of proof for agency liability."), *report and recommendation adopted*, 302 F. Supp. 3d 670 (M.D. Pa. 2018)

To the contrary, "a suggestive [identification] procedure 'does not in itself intrude upon a constitutionally protected interest.'" *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 113 n.13 (1977)). Rather, "it is the admission of testimony" at trial concerning the identification that violates a criminal defendant's constitutional rights. *Id.* (*citing Neil v. Biggers,* 409 U.S. 188, 198 (1972)); *see also Perkins v. City of New York, et al.*, No. 17-CV-423 (RRM) (PK), 2019 WL 4736950, at *5 (E.D.N.Y. Sept. 27, 2019) ("it is not a suggestive identification alone that violates the Constitution; 'rather, the constitutional violation is that [the criminal defendant's] right to a fair trial was impaired by the *admission* of testimony regarding the unreliable identification.'") (quoting *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (dismissing *Monell* claim relating to identification procedures for lack of deliberate indifference)).

_____

[10] In addition to its silence on the issue of constitutionality, Plaintiff's academic article acknowledges some of the challenged conduct is, in practice, common. *See* Pl. Br. at 9 ("In practice, however, we find it not uncommon for circumstances surrounding the identification procedure to alert the witness to which lineup member is the suspect. For example, the witness may be tipped off to who the suspect is after being presented with multiple photo arrays that share only one lineup member (the suspect) in common.") (quoting PFAC Ex. 1 at 14).

Even when a suggestive identification is admitted at trial, the police who secured the identification cannot be liable for the resulting constitutional violation unless the police misled or pressured the prosecutor or trial judge. *Wray*, 490 F.3d at 193 ("In the absence of evidence that [the officer] misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge."); *see also Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir.1999) ("It is well settled that the chain of causation between a police officer's unlawful [conduct] and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment …. in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment.") .

The PFAC contains no allegations—even conclusory ones—plausibly suggesting the challenged policies were "promulgated with 'deliberate indifference' to the known or obvious consequence that constitutional violations would result." *Chepilko*, 2012 WL 398700, at *13. Plaintiff does not, for example, allege the County has a history of knowingly allowing its employees to secure unduly suggestive identifications (much less to mislead prosecutors and trial courts into admitting the identifications at trial). With zero factual support suggesting deliberate indifference, Plaintiff's proposed *Monell* claim fails as a matter of law. *See, e.g., Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *20 (S.D.N.Y. May 26, 2017) (granting 12(b)(6) motion to dismiss *Monell* claim where "Plaintiff fail[ed] to allege a pattern of misidentifications that would put the City on notice of a training deficiency."); *Khan v. City of Lodi*, No. 2:17-CV-02169-MCE-AC, 2020 WL 2556797, at *3 (E.D. Cal. May 20, 2020) (granting 12(b)(6) motion to dismiss *Monell* claim based on municipality's alleged "policies/customs allowing its personnel and/or police officers... to engage in improper/inadequate investigating

techniques" that "promote police officer conduct that leads to misidentification of innocent persons and their arrest" for failure to plausibly allege deliberate indifference); *Roberts v. Williams*, No. CV 15-6629, 2018 WL 5777291, at *2–3 (E.D. Pa. Nov. 2, 2018) (denying leave to amend to add futile *Monell* claim based on alleged "photo line-up custom, practice and policy ... which created inherently unreliable identification and was the proximate cause of ... [the plaintiff's] unlawful detainment" because the plaintiff failed to allege facts "demonstrating that there was a pattern or practice of mistaken identifications that might establish the City's contemporaneous knowledge." The court concluded: "The upshot is that the City's policy 'raised a serious doubt with regard to the accuracy of the results of a positive identification' and 'increased the likelihood that victims and witnesses of crime would misidentify persons presented as suspects of criminal event.' We cannot conclude from this, however, that Roberts has pleaded sufficient facts to show that the City tolerated or acquiesced to a known and unlawful flaw in its photo lineup policy.").[11]

Indeed, Plaintiff cannot even plausibly allege the challenged policies were the moving force behind any constitutional violation in his own criminal trial. His attorney caused the admission of testimony relating to the photo array when he improperly faulted the prosecutor for not mentioning it to the jury. Ex. D at 256:3–16, 261:20–262:12, 392:18–395:23. In any event, as the public trial records show, Plaintiff was fully aware of the photo array and lineup procedures and attacked them throughout his prosecution. Ex. B at 8:9–10:15, 11:3–17, 26:20–56:25; Ex. C at 213:12–216:6, 215:2–6, 18–20, 230:15–248:5, 249:10–19, 257:14–266:5, 259:6–7, 265:5–8; Ex. E at 703:4–708:11, 709:16–722:2, 724:22–729:17; Ex. F at 754:4–764:17, 756:16–20, 777:9–778:6, 787:6–8, 786:13–25, 757:1–10, 768:15–16, 789:3–11; Ex. G at 1051:21–1052:17, 1087:21–1097:9; 1100:19–1101:10; Ex. H at ¶¶ 8–30. The criminal court allowed the admission of

---

[11] Plaintiff's proposed *Monell* claim is akin to a person injured when a police officer attached handcuffs too tightly attempting a *Monell* claim against the municipality for *requiring officers* to handcuff all arrestees.

testimony regarding both the photo array and lineup identifications. Ex. C at 279:1–19, 280:1–282:2; Ex. D at 392:18–395:23. And while he claims Lipson misled the prosecutor and court by not disclosing his alleged comments to Anyosa after administering the photo array, Plaintiff cannot plausibly allege the challenged policies were the moving force behind this single alleged act by a non-policymaking officer. Again, "[t]he fact that a municipal 'policy' *might* lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation." *Tuttle*, 471 U.S. at 824 n.8 (emphasis added).

## CONCLUSION

The County Defendants respectfully request this Court deny Plaintiff's motion for leave to file the PFAC, with such other relief as this Court may deem just, equitable, and proper.

Dated: Carle Place, New York
        January 4, 2021

SOKOLOFF STERN LLP
*Attorneys for County Defendants*

Brian S. Sokoloff
Alexander J. Eleftherakis
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 190164
