UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSIAH GALLOWAY,<br><br>                        Plaintiff,<br><br>-against-<br><br>COUNTY OF NASSAU, et al.,<br><br>                       Defendants. | 19 CV 5026 (AMD) (ARL) |

Plaintiff's Reply Memorandum of Law in Further Support of his
Motion for Leave to Amend the Complaint

Oral Argument Requested

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

January 11, 2021

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Point I

    The Vacatur of Mr. Galloway's Conviction Eliminates any Collateral
    Estoppel Effect of the Judgment and Underlying Findings of Fact and Law . . . . . . . . . . . . . . . .4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Table of Authorities

CASES

*Ambrose v. City of New York*, 623 F. Supp. 2d 454 (S.D.N.Y. 2009) .............................................. 10

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) ........................................................... 8

*Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) ...................................................................... 8

*Church v. N.Y. State Thruway Auth.,* 791 N.Y.S.2d 676 (N.Y. App. Div. 2005) ............................ 5

*Cleveland v. Caplaw Enters.,* 448 F.3d 518 (2d Cir. 2006) ............................................................... 2

*Cordero v. City of New York*, 282 F. Supp. 3d 549 (E.D.N.Y. 2017) ............................................... 1

*Cuite v. Winthrop Univ. Hosp.*, 06 CV 6140 (LDW) (ARL), 2007 WL 2582135 (E.D.N.Y. Sept. 4, 2007) ............................................................................................................................................ 2

*Curry v. City of Syracuse,* 316 F.3d 324 (2d Cir. 2003) .................................................................... 5

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ................... 2

*F.T.C. v. Consumer Health Benefits Ass'n*, 10 CV 3551 (ILG), 2011 WL 3652248 (E.D.N.Y. Aug. 18, 2011) ..................................................................................................................................... 2

*Flemings v. Kinney*, 02 CV 9989 (DC), 2004 WL 1672448 (S.D.N.Y. July 27, 2004) ................... 10

*Fonte v. Bd. of Mgrs. of Cont'l Towers Condo.,* 848 F.2d 24 (2d Cir. 1988) ........................................ 3

*Friedl v. City of New York,* 210 F.3d 79 (2d Cir. 2000) ................................................................. 3, 4

*Hamilton v. City of New York*, 15 CV 4574 (CBA) (SJB), 2019 WL 1452013 (E.D.N.Y. Mar. 19, 2019) ............................................................................................................................................ 7

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019) .................................................................. 8

*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66 (2d Cir. 1998) ............................................................................................................................................ 3

*Kogut v. Cty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710 (E.D.N.Y. Aug. 27, 2012) 10

*Kogut, et al. v. Nassau County, et al.,* 06 CV 6695, 06 CV 6720, 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009) ................................................................................................................................. 6, 7

*Kopec v. Coughlin,* 922 F.2d 152 (2d Cir. 1991) ................................................................................. 3

*Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir. 1991) ................................................................ 3

*Liao v. Chertoff*, 07 CV 2041 (SJF) (ARL), 2008 WL 11449305 (E.D.N.Y. Aug. 20, 2008) ............ 3

*Limone v. Condon,* 372 F.3d 39 (1st Cir. 2004) ................................................................................. 3

*Lynch v. City of N.Y.*, 952 F.3d 67 (2d Cir. 2020) .............................................................................. 2

*McCray v. City of New York*, 03 CV 9685 (DAB), 03 CV 9974 (DAB), 03 CV 10080 (DAB), 2007 WL 4352748 (S.D.N.Y. Dec. 7, 2007) ..................................................................................... 6

*Migra v. Warren City Sch. Bd. Of Educ.*, 465 U.S. 75 (1984) ............................................................ 5

*Moroughan v. Cty. of Suffolk*, 99 F. Supp. 3d 317 (E.D.N.Y. 2015) .................................................. 8

*O'Brien v. National Gypsum Co.*, 944 F.2d 69 (2d Cir. 1991) ........................................................ 9

*Parker v. Town of Swansea*, 270 F. Supp. 2d 92 (D. Mass. 2003) ................................................. 8

*Paul v. City of Altus*, 141 F.3d 1185 (10th Cir. 1998) .................................................................... 8

*Pavone v. Puglisi*, 08 CV 2389 (MEA), 2013 WL 245745 (S.D.N.Y. Jan. 23, 2013) ....................... 4

*People v. Fuentes,* 53 N.Y.2d 892 (1981) ...................................................................................... 6

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ............................................................................... 9

*Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ..................................................... 9

*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991) ........................................................ 2

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) ......................................................... 2

*Sorrell v. Inc. Vill. of Lynbrook*, No. 10 CV 49 (DRH) (GRB), 2012 WL 1999642 (E.D.N.Y. June 4, 2012) ............................................................................................................................... 2

*Springs v. Clement*, 202 F.R.D. 387 (E.D.N.Y. 2001) ................................................................. 10

*Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (WDW), 2010 WL 5341929 (E.D.N.Y. Dec. 21, 2010) ............................................................................................................................................... 7

*U.S. v. Lawson,* 736 F.2d 835 (2d Cir. 1984) ................................................................................. 5

*United States v. Nolan,* 956 F.3d 71, 75 (2d Cir. 2020) ................................................................. 9

*Vann v. City of N.Y.,* 72 F.3d 1040 (2d Cir. 1995) ....................................................................... 10

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................................ 6

N.Y. Crim. Proc. Law § 710.40(4) ................................................................................................. 6

**RULES**

Fed. R. Evid. 201 ........................................................................................................................... 3

Loc. Civ. R. 56.1 ............................................................................................................................ 4

On December 21, 2020, plaintiff requested leave to file his proposed Fourth Amended Complaint to assert a municipal liability claim against Nassau County based on evidence adduced during discovery. Specifically, Nassau County and the individual defendant police officers, who are jointly represented in this action, have adopted the position that the procedures surrounding plaintiff's misidentifications – including practices criticized by the Second Circuit and widely discredited – were conducted pursuant to and in accordance with officially promulgated County policies then in effect. Proposed Fourth Amended Complaint ("FAC"), ¶ 132 & Exhibit ("Ex.") 1 thereto. Since the misidentifications were the sole evidence admitted against plaintiff at trial, it is plausible that these policies proximately caused plaintiff's acknowledged wrongful conviction. *See Cordero v. City of New York*, 282 F. Supp. 3d 549, 563 (E.D.N.Y. 2017) ("The Court of Appeals for the Second Circuit has established a two-prong test for finding liability under *Monell*: (1) the plaintiff must show a municipal policy or custom beyond a single bad act by an officer; (2) there must be a causal connection between the custom or policy and the plaintiff's loss of liberty.") (citations omitted) (collecting cases).

The County's Opposition to Plaintiff's Motion for Leave to Amend dated January 4, 2021 ("Def. Mem." or "Response") is premature and defective. It is early because, instead of focusing on the allegations as pleaded, it seeks to challenge the evidence in support of the FAC—which may only be done on summary judgment. It is defective because it relies on the underlying criminal proceedings as preclusive, when, as a matter of law, they are a nullity. The Response confirms that plaintiff has satisfied the requirements of Rule 15—the sole question in issue here—and should be permitted to file his proposed Fourth Amended Complaint.

The only argument Nassau County makes in opposition to plaintiff's motion is the assertion that the proposed amendment is futile. *See* Def. Mem., pp. 11-20. "Futility . . . is a minimal standard to

overcome—perhaps the lowest bar." *F.T.C. v. Consumer Health Benefits Ass'n*, 10 CV 3551 (ILG), 2011 WL 3652248, *4 (E.D.N.Y. Aug. 18, 2011) (internal citation and quotation omitted); *accord Cuite v. Winthrop Univ. Hosp.*, 06 CV 6140 (LDW) (ARL), 2007 WL 2582135, *2 (E.D.N.Y. Sept. 4, 2007) ("To overcome objections of futility, the plaintiff must merely show that it has 'at least colorable grounds for relief.'") (citation omitted) (Lindsay, J.).

The County correctly identifies the legal standard for futility: a proposed amendment is only futile if it "fails to state a claim to relief that is plausible on its face." Def. Mem., p. 9 (quotation marks and citation omitted). Thus, at this stage, the Court must assess plaintiff's proposed amendment under the familiar motion-to-dismiss standard. The question, then, is whether the "proposed claim could . . . withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). The Court must "construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (citation omitted). Further, "the Court's focus must rest on the pleadings." *See Sorrell v. Inc. Vill. of Lynbrook*, No. 10 CV 49 (DRH) (GRB), 2012 WL 1999642, *4 (E.D.N.Y. June 4, 2012); *Dougherty*, 282 F.3d at 92 (reversing district court for improperly denying leave to amend as futile where proposed amendment stated a legally cognizable claim); *see also Lynch v. City of N.Y.*, 952 F.3d 67, 82 (2d Cir. 2020) (in assessing plausibility, courts should "view the allegations of the Complaint in combination rather than piecemeal").

In the Rule 12 context, the Court is not a factfinder; rather its analysis is purely legal, considering only the facts alleged within the four corners of the complaint, taken as true, and drawing all inferences in plaintiff's favor. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Xiangmin Liao*

2

*v. Chertoff*, 07 CV 2041 (SJF) (ARL), 2008 WL 11449305, *6 (E.D.N.Y. Aug. 20, 2008) (Lindsay, J.); *accord* Order dated October 21, 2020 (noting that an evidentiary argument "does not render the proposed amendment futile. Instead, it merely reveals the existence of a factual dispute to be resolved after discovery."). Likewise, because the plaintiff is the master of his complaint, "[c]ourts must be equally careful...not to permit a defendant to hijack the plaintiff's complaint and recharacterize its allegations so as to minimize [its] liability." *Limone v. Condon,* 372 F.3d 39, 46 (1st Cir. 2004).

Beyond the face of the complaint, a court may only consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference [and] matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991).[1] It is error to "consider[] affidavits and exhibits submitted by defendants, or rel[y] on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York,* 210 F.3d 79, 83-84 (2d Cir. 2000) (citing *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir. 1991) and *Fonte v. Bd. of Mgrs. of Cont'l Towers Condo.,* 848 F.2d 24, 25 (2d Cir. 1988)).

Ignoring this rule, Nassau County improperly proffers 489 pages of discovery selectively culled from the underlying criminal proceedings, grossly distorting the truth. The County's assertions of so-called undisputed "facts" are actually one-sided and inaccurate recitations of contested factual

---

[1] "A court may take judicial notice of a document filed in another court *not for the truth of the matters asserted* in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Comm'c'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006) (emphasis added). The County repeatedly cites to judicially filed documents - as well as other documents that are never amenable to judicial notice - for the *truth* of their contents (*e.g.,* Def. Mem. Ex. A (line-up order), Exs. B & C (*Wade* Transcripts & Opinion), Exs. D-G (Partial Trial Transcripts), Ex. H (post-trial brief), Ex. I (excerpted deposition testimony)). *See* Fed. R. Evid. 201; *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."). This is plainly improper in a motion on the pleadings; the Court should disregard these extraneous materials. *See Global Network Comm'c'ns,* 458 F.3d at 157 ("[I]t is clear that the extraneous documents were used not to establish their existence, but rather to provide the reasoned basis for the court's conclusion…Analysis of such material was therefore not appropriate under the judicial notice exception to the conversion requirement.") (quotation omitted).

disputes.² Its attempt to sway the Court by selectively quoting from segments of the criminal record–when Mr. Galloway has not completed discovery in this wrongful conviction lawsuit–is consistent with its myopic view that the now-vacated criminal proceedings should dispose of this action.³ *See* Point I, *infra.* Having elected to oppose plaintiff's motion for leave and given that Rule 56 is unavailable, the County's motion must be decided under the operative Rule 12 standard, based solely on the allegations in the complaint, taken as true. The Court must disregard the extraneous materials the County has selectively and misleadingly referenced. *Friedl,* 210 F.3d at 83-84.

I. **The Vacatur of Mr. Galloway's Conviction Eliminates any Collateral Estoppel Effect of the Judgment and Underlying Findings of Fact and Law**

The County's thesis is that Mr. Galloway cannot establish causation for purposes of his *Monell* claim because he was unsuccessful in challenging the identification procedures at his criminal trial and in pretrial hearings. Def. Mem., pp. 5, 11-20. However, given that plaintiff's conviction was vacated on the basis of innocence on the District Attorney's motion (*see* FAC, ¶¶ 74, 91), this argument has no merit.

---

² As but one example, the County repeatedly asserts that "the only relevant conduct allegedly withheld from the [criminal] court was Lipson's…comment…that Anyosa had selected 'the right guy' and that [Wilmer Hernandez] had also identified Galloway," Def. Mem. at pp. 5, 16 & 20, but this is simply false. The County ignores key State's witness Robert Ogletree, whose credible claims of coercion were never presented to the hearing court (*see* Def. Mem. Exs. B-C, *generally* and FAC, ¶ 37), as well as the fabrications in the felony complaints and recently revealed improprieties with Wilmer Hernandez. *See* FAC at ¶¶ 43-44, 49, 94-95, 119; Plaintiff's Opening Brief, pp. 7, 11. Each of these acts irredeemably tainted the criminal proceedings and contributed to plaintiff's acknowledged wrongful conviction. This is to say nothing of the new, previously unavailable evidence proving that Kenton Sherwood perpetrated the crime and that plaintiff is factually innocent (*see* FAC, ¶¶ 19-29, 43, 57-59), which alone would have guaranteed plaintiff's acquittal. *See infra*, p. 6. Indeed, this Honorable Court has acknowledged the strength of plaintiff's civil rights claims premised on the individual officer-defendants' misconduct. *See* Transcript of Pre-Motion Conference before Hon. Ann M. Donnelly, March 10, 2020, annexed to the Reply Declaration of Gabriel P. Harvis dated January 11, 2021 ("Reply Decl.") as Ex. 3, p. 16, ln. 21-22 (describing individual-liability arguments incorporated into Second Amended Complaint as "very strong"); Transcript of Initial Conference before Hon. James Orenstein, April 6, 2020 (DE #68), p. 7, ln. 6-8 (THE COURT: …I'll leave it for another day to have a discussion of why on earth police might want to do what apparently they did here…). Plaintiff respectfully notes that, by illustrating the County's misrepresentations of fact, Mr. Galloway does not invite the Court to weigh evidence.

³ In asking the Court to prematurely weigh evidence on an incomplete record and in the absence of Local Civil Rule 56.1 statements, the County has deprived plaintiff and the Court of "crucial procedural safeguards." *See Pavone v. Puglisi*, 08 CV 2389 (MEA), 2013 WL 245745, *2 (S.D.N.Y. Jan. 23, 2013) (Local Civil Rule 56.1 statements are "not mere formalities; they help ensure the accurate resolution of claims as a matter of law") (citation omitted).

In New York,[4] "[t]he party seeking application of collateral estoppel bears the burden of showing that the decisive, identical issue was 'necessarily decided' in the prior action, while the party opposing application of the doctrine must demonstrate the absence of a full and fair opportunity to contest the prior determination." *Church v. N.Y. State Thruway Auth.*, 791 N.Y.S.2d 676, 679 (N.Y. App. Div. [3d Dep't] 2005) (citation omitted); *see also Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir. 2003) (same). "In determining whether an issue has been necessarily decided, it must be remembered that it is the *judgment* in the prior action that acts as a bar – neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered." *Church*, 791 N.Y.S.2d at 679 (quotation omitted).

The County's argument fails on the first prong alone for lack of a final judgment. "[I]t is the *judgment* in the prior action that acts as a bar," *id.* (emphasis added), yet Mr. Galloway's conviction was vacated, and the indictment dismissed, at the government's request. FAC, ¶¶ 74, 91. "[W]hen no order or final judgment has been entered on a verdict or decision, *or when the judgment is subsequently vacated,* collateral estoppel is inapplicable." *Church* at 679 (emphasis added; citations omitted); *accord U.S. v. Lawson,* 736 F.2d 835, 837 (2d Cir. 1984) ("It has long been established…that when a judgment has been reversed and the case remanded for a new trial the effect is to nullify the judgment entirely and place the parties in the position *of no trial having taken place.*") (emphasis added).

In other words, none of the prior findings from Mr. Galloway's criminal proceedings—not the judgment of conviction nor the underlying facts as determined in pretrial suppression hearings or trial—have any collateral estoppel effect here. Just as in *McCray v. City of New York,* the Central Park

---

[4] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Bd. Of Educ.*, 465 U.S. 75, 81 (1984).

Jogger wrongful conviction case, "[g]iven the vacatur of the judgments of conviction, and the dismissal of charges against [him], the suppression ruling against Plaintiff[] cannot be said to have existed in any legally effective way at the inception of this federal suit." *McCray,* 03 CV 9685 (DAB), 03 CV 9974 (DAB), 03 CV 10080 (DAB), 2007 WL 4352748, *11 (S.D.N.Y. Dec. 7, 2007).[5] The Court need go no further to reject the County's meritless collateral estoppel defense.

However, it is equally clear that Mr. Galloway did not get a full and fair opportunity to litigate the issues presented by his civil rights claims. Specifically, the Nassau County District Attorney found that the true perpetrator was a man named Kenton Sherwood, who had confessed repeatedly to third parties, that plaintiff is innocent, and that evidence suggests detectives engaged in suggestive conduct. FAC, ¶¶ 19-32, 74, 91. As the District Attorney recognized, such previously unavailable evidence sheds new light on the reliability of the misidentifications admitted against Mr. Galloway and is therefore directly probative of the tactics used to obtain them. The County makes no attempt to show that Mr. Galloway had a full and fair opportunity to litigate these issues, nor can it.

Courts in this district have refused to find collateral estoppel in other § 1983 wrongful conviction actions. In *Kogut v. Nassau County,* defendants contended that because the voluntariness of Kogut's confession was litigated in his criminal trial, on direct appeal and on *habeas corpus,* he could not relitigate the issue in a subsequent § 1983 action despite vacatur of the conviction and acquittal upon retrial. *Kogut, et al. v. Nassau County, et al.,* 06 CV 6695, 06 CV 6720, 2009 WL 5033937, *10 (E.D.N.Y. Dec. 11, 2009). The Hon. Joanna Seybert reasoned that, "[s]ince the trial court has

---

[5] If Mr. Galloway had been retried, he could have relitigated the identification procedures in a pretrial *Wade* hearing based on the newly discovered facts supporting the District Attorney's motion to overturn the conviction and those adduced in the instant action. *See People v. Fuentes,* 53 N.Y.2d 892, 894 (1981) (holding that "[a] trial court may reopen a pretrial hearing if it 'is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination' of his pretrial application.") (citing N.Y. Crim. Proc. Law § 710.40(4)). If he were not estopped upon remand, Mr. Galloway is not collaterally estopped in this civil action.

6

discretion to reopen a suppression hearing after an appellate court has remitted the case for a new trial, it should have similar discretion upon the granting of a motion to vacate a judgment of conviction." *Id.,* 2009 WL 5033937 at n.10. Following that logic, Judge Seybert rejected the collateral estoppel defense, holding: "Although the Identical Issue was Necessarily Decided in the Prior Action, a Vacated Judgment Cannot have any Preclusive Effect on Subsequent Proceedings," and thus, because his conviction was vacated, "collateral estoppel does not bar Kogut from relitigating whether [his] confession was voluntary...." *Id.,* 2009 WL 5033937 at *9, *10; *accord Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (WDW), 2010 WL 5341929, *5 (E.D.N.Y. Dec. 21, 2010) (same) (citation omitted).

In another wrongful conviction action in this district, *Hamilton v. City of New York,* the municipality also argued, like the County here, that purported errors by plaintiff's criminal defense counsel broke the causal chain between constitutional defects in the underlying investigation and plaintiff's subsequent wrongful conviction. *Compare* Def. Mem., pp. 2 n.1, 3-4, 6 & n.6 ("the isolated actions of…Galloway's own criminal defense counsel…were the 'moving force' behind any alleged constitutional violations") *with* 15 CV 4574 (CBA) (SJB), 2019 WL 1452013, *14 (E.D.N.Y. Mar. 19, 2019) ("[Individual defendants] contend that…decisions made by…[plaintiff's criminal] defense counsel…constitute superseding causes of Hamilton's conviction…"). The Hon. Carol Bagley Amon considered these arguments and overruled them at summary judgment. *See id.* at *17 ("Where a police officer deceives subsequent decision makers with false information, the chain of causation need not be considered broken because the officer can reasonably foresee that his misconduct will contribute to the subsequent decisions that result in a deprivation of liberty.") (internal quotation marks and citations omitted) (collecting cases). Judge Amon relied, in part, on the Second Circuit decision *Bermudez v. City of New York*, a case bearing some similarity to the instant action. 790 F.3d 368 (2d

7

Cir. 2015). In *Bermudez*, as here, evidence suggested that police investigators had failed to disclose improprieties in identification procedures to prosecutors and the court. *Id* at 374-75; *see* FAC at ¶¶ 41-42, 46, 75-76, 109. Under such circumstances, the Second Circuit held there was no break in the causal chain of the due process deprivation and that "a jury could find that Defendants' procedures for producing witness evidence proximately caused the alleged rights violations." *Id.* at 375.

Here, it is beyond peradventure that the County's procedures for producing witness evidence proximately caused the alleged rights violation, given that the misidentifications were *the only evidence admitted against Mr. Galloway at trial. See* FAC, ¶¶ 37-78, 86-91, 94-100, 130-33. This plausibly establishes *Monell* causation. *See, e.g., Hernandez v. United States*, 939 F.3d 191, 206-09 (2d Cir. 2019) ("[A]s the Complaint plausibly alleges that the City refused to release Hernandez because of its policy, and that the City would have seen that Hernandez was not subject to an immigration detainer if it had checked, Hernandez plausibly alleges that City policy indeed caused the deprivation of his rights."); *see also*, *e.g.*, *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (finding the existence of a municipal custom based on "[t]estimonial evidence" from a police sergeant that he had been present at between twenty and sixty situations involving door breakdowns and that the conduct at issue was representative of "the way [the department had] always applied" the custom); *Paul v. City of Altus*, 141 F.3d 1185, *2-3 (10th Cir. 1998) (table) (denying municipality's motion for summary judgment where an officer's incident report stated that the defendant officer's action was consistent with their training); *Parker v. Town of Swansea*, 270 F. Supp. 2d 92, 101 (D. Mass. 2003) (denying defendant town's motion for summary judgment where an officer testified that the defendant officer's action was "in accordance" with police training and that "he would have done the same thing"); *see also Moroughan v. Cty. of Suffolk*, 99 F. Supp. 3d 317, 326 (E.D.N.Y. 2015) (granting leave to amend).

To the extent the County claims that plaintiff's allegations are "conclusory," it misuses the term.[6] Plaintiff alleges in specific detail that the County had official policies that plausibly contributed to plaintiff's acknowledged wrongful conviction, including, *inter alia*, "us[ing] photographs of a suspect even where the photograph is outdated and the suspect's appearance has changed," "depriv[ing] suspects] of distinguishing characteristics through the use of seated lineups, hats, sheets and phonebooks," "disclos[ing] the identity of the subject selected to the array viewer" and "conduct[ing] repeated identification procedures with the same witness, even after the identity of the suspect was previously revealed." FAC at ¶ 132. "There is nothing conclusory about these accusations." *Redd v. New York Div. of Parole*, 678 F.3d 166, 179 (2d Cir. 2012). And at this stage, the Court must accept each of those allegations as true. *See Selevan*, 584 F.3d at 88. Notably, the County generally concedes the accuracy of plaintiff's policy allegations[7] and makes no effort to contend with *United States v. Nolan*, 956 F.3d 71, 75, 80 (2d Cir. 2020), the recent Second Circuit decision criticizing some of the challenged procedures and quoted at length in plaintiff's opening brief (at pp. 7-8). *See also Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) ("Suggestive identification procedures increase the likelihood of misidentification, and it is the likelihood of misidentification which violates a defendant's right to due process.") (citations, brackets and quotation marks omitted). Nor does the County credibly

---

[6] If the County intended to argue that plaintiff's allegations ultimately rest on circumstantial evidence, this argument is both inappropriate at this stage, as explained above, and legally unavailing. *O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir. 1991) ("[I]t is beyond any doubt that circumstantial evidence alone may suffice to prove adjudicative facts.").

[7] The only policy allegation the County attempts to dispute is ¶ 132(h) of the FAC, which alleges that line-up participants were prohibited from speaking, even where, as here, the perpetrator was alleged to have had an accent (and the suspect did not). *See* Def. Mem., p. 12. Although it is true that Mr. Galloway was not given the opportunity to speak at his line-up, plaintiff agrees that it is insufficiently clear on this record that this resulted from County policy. Accordingly, plaintiff respectfully annexes a revised version of his proposed Fourth Amended Complaint to the Harvis Reply Decl. as Ex. 4, striking former ¶ 132(h). Plaintiff respectfully notes that this issue could have been avoided if defense counsel had raised it with plaintiff when the proposed amendment was circulated to defendants in advance for their review and feedback. In any event, if it should please the Court, ¶ 132(h) is a minor component of plaintiff's detailed and plausible policy allegations, the remainder of which the County concedes.

9

contest the scientific evidence cited by plaintiff. *See* Def. Mem., *generally.* As the Hon. Kenneth M. Karas explained under similar circumstances in *Ambrose v. City of New York*:

> In filing a complaint…a plaintiff is not obliged to plead evidence supporting his allegations of the existence of a custom or policy that allegedly caused the injury in question. …[I]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation. Thus, the pleading requirement for a municipal liability claim under § 1983 will be met if a plaintiff alleges that the implementation of a formal policy which is officially endorsed by the municipality caused the plaintiff's injuries.…[D]ismissal is not warranted as long as the defendant has fair notice of what the plaintiff's claim is and the grounds upon which it rests. It is up to the liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

623 F. Supp. 2d 454, 465 (S.D.N.Y. 2009) (citations, brackets and internal quotation marks omitted).

As in *Ambrose*, plaintiff plausibly alleges the County's deliberate implementation of officially endorsed identification policies that caused plaintiff's injuries and that the County failed to adequately train, supervise or discipline the individual defendants.[8] *See* FAC, ¶¶ 13, 75-78, 105, 132-35 & Ex. 1 thereto. Indeed, the County does not and cannot credibly challenge plaintiff's allegations, which are similar to those accepted in this district at the more demanding summary judgment phase.[9] Plaintiff should be granted leave to amend. *See Ambrose*, 623 F. Supp. 2d at 477-79 (collecting cases).

---

[8] If it should please the Court, to resolve any concerns regarding the articulation of plaintiff's *Monell* claim, plaintiff has respectfully included three additional paragraphs in his revised proposed amendment annexed as Ex. 4 to the Harvis Reply Decl. *See id.* at ¶¶ 133-35. Plaintiff respectfully requests that the Court consider these revisions. *See, e.g.*, *Springs v. Clement*, 202 F.R.D. 387, 394 (E.D.N.Y. 2001) ("The Second Circuit strongly prefers dispute determination on the merits…") (citations omitted) (collecting cases); *see also, e.g., Flemings v. Kinney*, 02 CV 9989 (DC), 2004 WL 1672448, *6 (S.D.N.Y. July 27, 2004) ("If there is a chance that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.") (citations and quotation marks omitted).

[9] *See, e.g., Kogut v. Cty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710, *2-3 (E.D.N.Y. Aug. 27, 2012) ("[Evidence going back to the 1990s] suggests that [Nassau] County had a custom whereby it acquiesced in unconstitutional conduct by its officers.") (citation and quotation omitted); *see also, e.g., Vann v. City of N.Y.,* 72 F.3d 1040, 1049 (2d Cir. 1995) (allowing inference of deliberate indifference where repeated complaints are followed by no meaningful attempt to investigate or forestall incidents).

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that the Court grant him leave to file his proposed Fourth Amended Complaint and for such other and further relief as the Court deems just and proper.

Dated:      January 11, 2021
               New York, New York

                                                   Elefterakis, Elefterakis & Panek

                                                   _____
                                                   Gabriel P. Harvis
                                                   Baree N. Fett
                                                   80 Pine Street, 38th Floor
                                                   New York, New York 10005
                                                   (212) 532-1116

                                                   *Attorneys for plaintiff*