UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSIAH GALLOWAY,

                    Plaintiff,

                -against-

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT; INCORPORATED VILLAGE OF
HEMPSTEAD;P.O. STEVEN HOROWITZ (Shield # 144);
DETECTIVE MATTHEW ROSS (Shield # 834);
DETECTIVE CHARLES DECARO (Shield # 1047);
DETECTIVE THOMAS BISCHOFF (Shield # 1001);
DETECTIVE RONALD LIPSON (Shield # 1296);
DETECTIVE THOMAS D'LUGINSKI (Shield # 7900);
DETECTIVE GEORGE DARIENZO (Shield # 1038);
DETECTIVE KEVIN CUNNINGHAM (Shield # 112);
KATHLEEN RICE;ASSISTANT DISTRICT ATTORNEY
JOSEPH LaROCCA; ASSISTANT DISTRICT ATTORNEY
ROBERT SCHALK; JOHN DOE and JANE DOE #s 1 – 20
being and intended to be other parties from the County of Nassau,
Nassau County Police Department, Incorporated Village of Hempstead
And Incorporated Village of Hempstead Police Department whose
names are presently unknown, all jointly and severally,

                    Defendants.
-------------------------------------------------------------------X

**ORDER**

19-CV-5026 (AMD) (ARL)

**LINDSAY, Magistrate Judge:**

Before the Court, on referral from District Judge Donnelly, is the plaintiff's motion for

leave to file a fourth amended complaint.  The County defendants oppose the motion.  For the

reasons stated below, the motion is granted.

## BACKGROUND

### A.    Factual Averments

On September 4, 2019, the plaintiff, Josiah Galloway ("Galloway"), commenced this

action against the County of Nassau ("County"), the Nassau County Police Department

("NCPD"), the Incorporated Village of Hempstead ("Hempstead"), several police officers and

detectives, Kathleen Rice ("Rice"), who, at the time, was the Nassau County District Attorney, and two Assistant District Attorneys, alleging that he was wrongfully arrested on June 5, 2008, in connection with crimes committed on May 28, 2008.  ECF No. 1.  Since September 2019, Galloway has amended his complaint three times.  ECF Nos. 9, 53, 80.  However, in August 2020, before he filed the third amended complaint, Galloway sought to extend all of the discovery deadlines, including the deadline to file motions to amend, arguing that the defendants had failed to provide timely discovery.  Judge Orenstein, who was assigned to the case at the time, denied the request for an extension without prejudice to Galloway's right to seek leave to amend if and when he succeed[ed] in securing disclosures from the defendants that reveal[ed] a basis for the proposed amendment.  As a result, Galloway currently seeks leave to file a fourth amended complaint to add a claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978) pursuant to Rule 15(a).  According to Galloway, recent deposition testimony has disclosed that the identification procedures used to secure his wrongful conviction were official policies of Nassau County at that time.

1.     **Events Leading up to Galloway's Incarceration**

According to the proposed fourth amended complaint, on May 15, 2008, Jorge Anyosa ("Anyosa"), the victim of the crime for which Galloway was charged, was seated in his cab awaiting customers near a train and bus terminal in Hempstead.  ECF 93-1 ¶ 19.[1]  At

---

[1] 1 The facts have been drawn from the allegations set forth in the proposed Fourth Amended Complaint and have been accepted as true for the purpose of deciding this motion.  *See Addison v. Reitman Blacktop, Inc*., 283 F.R.D. 74, 79 (E.D.N.Y. 2011).  These facts, however, do not constitute findings of fact by the Court.  *See Colvin v. State University College at Farmingdale,* No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).  In addition, the Court has considered documents incorporated by reference in the complaint and matters of which judicial notice may be taken.  *See Serdarevic v. Centex Homes*, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010).  However, where judicial notice of a document filed in another court was taken, the Court did not consider it for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc*., 146 F.3d 66, 70 (2d Cir. 1998)).

approximately 1:30 a.m., Anyosa was shot in the face following a dispute with the driver of a

vehicle that had approached his car twenty minutes earlier.  *Id.*  Anyosa and a witness observed

the shooter and described him as a black male, 25-30 years old, approximately 5'10"-5'11", with

close-cropped or shaved hair, an accent and no glasses or distinguishing facial features.  *Id*. ¶ 20.

Kenton Sherwood ("Sherwood"), who has since admitted to perpetrating the crime, matches the

description provided by Anyosa and has a Jamaican accent.  *Id*. ¶ 21.  Witnesses described the

vehicle Sherwood drove that night as a 2002-2005 gray Toyota Corolla with a missing front

driver-side hubcap and dark tinted windows.  *Id*. ¶ 22.  Sherwood's girlfriend at the time,

Natasha Cheney ("Cheney"), owned a gray 2003 Toyota Corolla.  *Id*. ¶ 23.

     According to the complaint, Cheney, other civilians, including Nadine and Vashtine

Johnson, knew that Sherwood was responsible for the Anyosa shooting.  *Id*. ¶ 25.  In fact, on the

day of the incident, Vashtine Johnson called the police tip line to report that Sherwood was the

shooter but neither the NCPD not the Hempstead police investigated the lead.  *Id*. ¶ 26.  Instead,

on May 19, 2008, a sketch artist met with the victim, who was still in the hospital, and generated

a composite rendering of the perpetrator.  *Id*. ¶ 28.  The sketch resembles Sherwood.  *Id*. ¶ 29.

     In any case, on June 5, 2008, Hempstead police officers arrested Galloway on charges

unrelated to the Anyosa shooting.  *Id.* ¶ 33–34.  32.  According to Galloway, the composite

sketch does not resemble him.  *Id*. ¶ 32.  Galloway is a 5'5" black man with no accent.  *Id*. ¶ 30.

In addition, at the time of the incident, Galloway was 21 years old, had long hair and was

missing a front tooth.  *Id*.  Galloway also wore glasses to drive and, due to his poor vision, did

not drive at night.  *Id.*  Galloway claims that he had no access to the type of vehicle used in the

crime and, at the time of the shooting, was at home with his family watching a movie.  *Id*. ¶¶ 30-

1.

Nevertheless, after Galloway was arrested, several of the defendant officers allegedly coerced a friend of Galloway's into signing a statement which implicated Galloway in the Anyosa shooting.  *Id*. ¶ 37.  The defendants then constructed photo array, using an old photograph of Galloway during a time period in which he had short hair, despite the fact that Galloway, who had longer hair, was present in the precinct for identification purposes.  *Id*. ¶ 38. Anyosa selected the photograph of Galloway and was allegedly advised by the defendants that he had selected "the right guy."  *Id*. ¶¶ 39-40.  Following Anyosa's identification, the defendants prepared a felony complaint charging Galloway with, among other things, attempted murder.  *Id*. ¶ 43.  Galloway was remanded without bail.  *Id*. ¶ 45.

On June 16, 2008, Galloway was indicted.  *Id*. ¶ 45.  Two weeks later, the criminal court issued an order requiring Galloway to "stand in" a lineup procedure and prohibited the alteration or removal of "any scalp or facial hair." *Id*. ¶ 47.  Galloway was not brought to the precinct for the court-ordered line-up until August 5, 2008.  *Id*. ¶ 48.  Galloway claims that the length of his hair still did not match the victim's description of perpetrator," so, in defiance of the court's order, the defendants demanded that he shave his head.  *Id*. ¶¶ 48-9.  Galloway refused and the lineup was canceled.  *Id*. ¶ 50.

The lineup was rescheduled for August 14, 2008.  *Id*. ¶ 51.  On that date, pursuant to what Galloway now claims is official County policy, several of the defendants concealed his long hair under a hat and disguised his height by using a "seated lineup" with Galloway sitting on two phone books and draping his body with a sheet.  *Id.*  The defendants also filled the lineup with older police officers.  *Id*. ¶ 52.  Anyosa and the other witness both identified Galloway as the perpetrator.  *Id.* ¶ 53.

In June, Galloway's criminal defense attorney then filed an alibi notice.  *Id*. ¶ 54.  As

indicated above, Galloway claims that he was watching a movie during the incident with his girlfriend, mother and cousin.  *Id*. ¶ 55.  However, the defendants made no effort to investigate it or confirm the veracity of his alibi.  *Id*. ¶ 56.  Galloway then moved to suppress the photo-array and lineup identifications.  *Id.* ¶ 60; Sokoloff Decl. Exs. B and C.  During the hearing, Galloway's criminal defense attorney argued the photo-array and lineup identification procedures were unduly suggestive. Sokoloff Decl. Ex. C. 257:14–266:5.  Among other things, he challenged the use of an outdated photo in the photo array that better matched the description of the perpetrator.  *Id*. 259:6–7.  He also argued that the lineup "robbed [Galloway] of his ability to defend himself in his lineup by taking away the distinguishing factor that didn't match the description [of the perpetrator] but set him apart."  *Id*. 265:5–8.  Nevertheless, the criminal court denied Galloway's suppression motion.  ECF No. 93-1 ¶ 60.

During the trial, Robert Ogletree, who had signed the statement implicating Galloway, testified that he was coerced into signing a false statement.  *Id*. ¶ 61.  Nevertheless, in March 2009, after reporting that they were deadlocked several times, the jury returned a verdict finding Galloway guilty.  *Id*. ¶¶ 65-6.  Galloway's motion to set aside the conviction was thereafter denied and, in November 2009, Galloway was sentenced to twenty-five years.  *Id*. ¶ 68.

## 2.    Galloway's Innocence is Confirmed

In July 2018, a woman contacted the Nassau County District Attorney's office stating that she could no longer remain silent regarding Galloway's wrongful conviction.  *Id*. ¶ 69. The Chief of the Nassau County Conviction Integrity Unit ("CIU"), ADA Sheryl H. Anania ("Anania"), reinvestigated Galloway's conviction and declared him innocent.  *Id*. ¶ 70.  Indeed, the CIU investigation confirmed that Sherwood was the actual perpetrator and uncovered the 2008 tip identifying him.  *Id*. ¶ 73.  On September 13, 2018, Galloway was brought to a

courtroom where the CIU moved to vacate the conviction and dismiss the indictment pursuant to N.Y.C.P.L. § 440.10(1)(g). *Id.* ¶ 74.

## B.    The Proposed Fourth Amended Complaint

As noted above, Galloway filed this action on September 4, 2019 and has, to date, filed three amended complaints. The operative pleading asserts eight causes of action against the County defendants: (1) a § 1983 malicious prosecution claim against Detectives DeCaro, Darienzo, Lipson, and Dluginski; (2) a § 1983 "Fabrication of Evidence/Denial of Fair Trial and Brady Violations" claim against all individual defendants; (3) a § 1983 supervisory liability claim against Detective Dorsi; (4) a state law false imprisonment and malicious prosecution claims against the County; (5) a claim for intentional or negligent infliction of emotional distress against the County; (6) a § 1983 conspiracy claim against all individual defendants; (7) an "Unlawful Pre-Trial Detention In Violation of the 4th Amendment and *Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2007)" claim against all individual defendants; and (8) a failure to intervene claim against all individual defendants. The County defendants last answered on November 12, 2020. ECF No. 85. Galloway now seeks leave to amend his complaint for a fourth time to add a *Monell* claim against the County.

In the proposed pleading, Galloway alleges, among other things, that the County "employed photo array and lineup procedures that were constitutionally defective and unduly suggestive." ECF No. 93-1 ¶ 131. He also asserts that it was Nassau County policy at the time of the disputed events:

a.  for witness statements to be written by officers;

b.  for witness interviews, photo arrays and lineups not to be audio- or video-recorded;

c.  for no record to be made of the confidence of a witness's selection when a photo array was administered, or of the time it took the witness to make the selection;

d.  for photo arrays to be administered in a non-blind fashion;

e.  for officers to disclose the identity of the subject selected to the array viewer;

f. to use photographs of a suspect even where the photograph is outdated and the suspect's appearance has changed;

g. to conduct repeated identification procedures with the same witness, even after the identity of the suspect was previously revealed;

h. where a perpetrator was described as having an accent and the suspect did not, to prohibit the lineup participants from speaking;

i. to deprive the suspect of distinguishing characteristics through the use of seated lineups, hats, sheets and phonebooks; and

j. to select lineup fillers without accounting for the demographics of the suspect.

*Id.* ¶ 132.  Galloway alleges that "the foregoing policies, practices and customs proximately caused the wrongful conviction in this case and the damages sustained by the plaintiff." ¶ 133.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 15 provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Generally, a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07–CV–3478

(JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 126 (2d Cir. 2008) (*per curiam*) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."). Nevertheless, where a Court has issued a scheduling order, pursuant to Rule 16, such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340 (2d Cir. 2000).

As a threshold matter, the undersigned notes that although Judge Orenstein initially established a June 2020 deadline for joinder of additional parties and amendment of pleadings, his August 27, 2020 order left open the possibility for Galloway to seek leave to amend "if and when he succeed[ed] in securing disclosures from the defendants that reveal[ed] a basis for [a] proposed amendment." Indeed, the County defendants do not argue that this case should be governed by Rule 16. Nor do they suggest that the motion was unduly delayed or made in bad faith. Instead, the County defendants challenge the proposed amendment on the basis of futility. Accordingly, the Court will analyze this motion under the more lenient standard of Rule 15(a).

The County defendants first argue that while Galloway claims the trial court was "misled about … the purported Anyosa identifications," the only relevant conduct allegedly withheld from the state court was the defendant's alleged comment, after administration of the photo array, that Anyosa had selected "the right guy" and that his friend had also identified Galloway. The defendants note, in this regard, that as it pertains to his proposed *Monell* claim, Galloway

alleges no deliberate action by the County relating to these comments, i.e., he does not allege any County policy directed the defendant to make and withhold these alleged comments or that the County was deliberately indifferent to such conduct by its non-policymaking employees.  The County defendants also argue that the plaintiff's separate claim that the defendants never disclosed their alleged coercion of Ogletree during a custodial interrogation is not germane to his proposed *Monell* claim, which he premises only on the challenged identification procedures. Finally, the County defendants assert that Galloway has failed to allege that the County was deliberately indifferent to the fact that constitutional violations would or could result from the challenged identification policies.  In sum, the County defendants contend that Galloway's *Monell* claim must fail as a matter of law because he has not alleged any deliberate action by the County which could be considered a "moving force" behind any alleged constitutional violation. The Court disagrees.

It is clear from the proposed pleading that Galloway is asserting that that the identification policies employed by the County at the time of his conviction were likely to result in misidentification.  Indeed, he includes in his pleading examples of County procedures that he says led to his misidentification including, using outdated photographs even where a suspect's appearance has changed, prohibiting the lineup participants from speaking in cases where a perpetrator is described as having an accent and depriving the suspect of distinguishing characteristics through the use of seated lineups, hats, sheets and phonebooks.[2]  The County also takes issue with the fact that Galloway has annexed an academic article to his pleading for the

---

[2] To this end, the County defendants argue that the Galloway has exaggerated and, in some instances, misrepresented the testimony of the individual defendants regarding the policies.  As noted previously, the Court has accepted the plaintiff's allegations as true for the purpose of this motion and has no evidence before it to suggest that his claims are "egregious misrepresentations."

purpose of explaining why some of those policies employed by the County were likely to result in misidentification, rather than citing to law establishing that the County's policies are unconstitutional.  Indeed, the County goes as far as to suggest that the *Monell* claim is futile because the police where employing "best practices." However, at this stage, Galloway need not prove that the County's policies were the proximate cause of his loss of liberty.  He simply must show that the *Monell* claim is plausible on its face and he has done so.  For these reasons, the motion for leave to file a fourth amended complaint is granted.


Dated: Central Islip, New York                              **SO ORDERED**
          May 10, 2021


                                                  _____/s_____
                                                  ARLENE R. LINDSAY
                                                  United States Magistrate Judge