UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSIAH GALLOWAY,

                Plaintiff,

-against-

COUNTY OF NASSAU, et al.,

                Defendants.

19 CV 5026 (AMD) (JMW)

Plaintiff's Memorandum of Law in Support of his
Motion to Disqualify Sokoloff Stern LLP

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

July 19, 2021

<u>Table of Contents</u>

Table of Authorities ............................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Procedural History .............................................................................................................. 1

Facts .................................................................................................................................... 2

Argument ............................................................................................................................ 5

    The Facts Above Demonstrate an Unwaivable Conflict for Sokoloff ......................... 5

        Officer v. Officer Conflict ..................................................................................... 6

        Officer v. Municipality Conflict ........................................................................... 8

        District Attorney v. Individual Defendant Conflict ............................................ 11

Conclusion ......................................................................................................................... 12

## Table of Authorities

### CASES

*Blake v. Race*, 01 CV 6954 (SJ) (CLP) (E.D.N.Y. Jan. 11 2005) ............................................... passim
*Board of Education v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979)......................................................... 5, 6
*Cinema 5, Ltd. V. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) ...................................................... 6
*Dunton v. County of Suffolk*, 729 F.2d 903, *amended*, 748 F.2d 69 (2d Cir. 1984) ................... passim
*Emile Indus., Inc. v. Patenetex, Inc.*, 478 F.2d 562 (2d Cir. 1973) .................................................... 5
*Galloway v. Cty. of Nassau*, 2021 WL 1902230 (E.D.N.Y. May 10, 2021) ........................... 1, 2, 3, 4
*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) ........................................................................ 5
*Owen v. City of Independence*, 445 U.S. 622 (1980) ........................................................................ 8
*Tiffany v. Village of Briarcliff*, 216 F.3d 1073 (2d Cir. 2000) .......................................................... 8
*U.S. v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) ................................................................................. 6, 7
*Wheat v. United States*, 486 US. 153 (1988) .................................................................................. 5, 6

### STATUTES

18 U.S.C. § 1512............................................................................................................................... 4
42 U.S.C. § 1983........................................................................................................................... 7, 8

### RULES

Loc. Civ. R. 1.5(b)(5)........................................................................................................................ 1
N.Y. Rule of Prof. Conduct 1.7 .............................................................................................. 2, 6, 9
N.Y. Rule of Prof. Conduct 1.7(a) .................................................................................................... 1
N.Y. Rule of Prof. Conduct 1.7(b) .................................................................................................... 3
N.Y. Rule of Prof. Conduct 1.7(b)(1) ............................................................................................... 6
N.Y. Rule of Prof. Conduct 1.7(b)(4) ............................................................................................... 9
N.Y. Rule of Prof. Conduct 1.8(f).................................................................................................... 9

Preliminary Statement

If it should please the Court, Sokoloff Stern LLP ("Sokoloff") has non-waivable conflicts in violation of Rule 1.7(a) of the New York Rules of Professional Conduct:[1]

- First, as discussed by the Hon. Chief Magistrate Judge Cheryl L. Pollak on similar facts in *Blake v. Race*, 01 CV 6954 (SJ) (CLP) (E.D.N.Y. Jan. 11 2005), between the officers, due to varying degrees of knowledge, exposure, taint, and incentive for blame-shifting.
- Second, between Nassau County and the individual defendants, with the County disavowing the officers' misconduct and the officers purporting to rely on official County policies. *Dunton v. County of Suffolk*, 729 F.2d 903, *amended*, 748 F.2d 69 (2d Cir. 1984).
- Third, as in *Blake*, between the Nassau County District Attorney's office, which exonerated plaintiff and discovered police misconduct in its reinvestigation, and the individual defendants responsible for the misidentifications – Sokoloff not only represented the ADA witnesses at depositions but impeded their favorable testimony to benefit its clients.

Taken together, disqualification is warranted.

Procedural History

Plaintiff Josiah Galloway commenced this civil rights action on September 14, 2019. DE #1. Following extensive discovery, plaintiff was granted leave to file his Fourth Amended Complaint. *See Galloway v. Cty. of Nassau*, ___F.Supp.3d____, 2021 WL 1902230 (E.D.N.Y. May 10, 2021) (DE #113). Plaintiff's amended pleading, which now includes a *Monell* claim challenging the County's identification procedures, was filed on May 11, 2021. DE #114 ("FAC").

---

[1] The New York Rules of Professional Conduct apply to the conduct of attorneys appearing before the United States District Court for the Eastern District of New York. *See* Rule 1.5(b)(5) of the Local Rules of the Southern and Eastern District Courts of New York.

Nassau County and eight former employees of its police department – defendants Thomas D'Luginski, George Darienzo, Charles DeCaro, Richard Dorsi, Ronald Lipson, Matthew Ross, Carl Strange[2] and Rene Yao – all represented by Sokoloff, answered on May 17, 2021. DE #116. None of the defendants have executed a conflict waiver. *See* Nassau County Response to Plaintiff's Document Request 55 ("County Responses"), annexed to the Harvis Decl. as Exhibit 2, p. 2.

Facts

The facts below demonstrate unwaivable RPC 1.7 conflicts.

When the Nassau County District Attorney's Conviction Integrity Unit ("CIU") reinvestigated plaintiff's conviction in 2018 and determined he was innocent, CIU learned from Jorge Anyosa – plaintiff's alleged victim and the sole eyewitness to the shooting – about police misconduct in the identification procedures, including defendant Lipson reportedly having told Anyosa he picked "the right person" from a photo array. *See* FAC, ¶¶ 39-40; *Galloway*, 2021 WL 1902230 at *2. Moreover, the photo array, prepared by defendant Lipson and containing an old photo of plaintiff with much shorter hair, was biased and significantly contributed to plaintiff's misidentification. *See* Eyewitness Identification Expert Report of Dr. Jennifer Dysart dated March 4, 2021, annexed to the Harvis Decl. as Exhibit 3, § 3 & Appendix D, pp. 10-12, 48-49. The seven officers represented by Sokoloff who did not prepare or administer the photo array have good reason to distance themselves from defendant Lipson.

The subsequent lineup procedure was similarly problematic. Orchestrated by defendant Ross, the police used phone books, hats and sheets to conceal plaintiff's distinguishing characteristics, objectively increasing the likelihood of misidentification. *See id.* at §§ 4-8, pp. 12-19; *see also* FAC at ¶¶ 47-53;

---

[2] As of October 2020, defendant Strange was still employed as a Nassau County detective.

*Galloway*, 2021 WL 1902230 at *2. As with Lipson, it is hard to imagine that Sokoloff's other clients – if fully informed as required by Rule 1.7(b) – would elect to stand trial jointly represented with this defendant.

Indeed, from the outset of the instant litigation, the tactics employed by the individual defendants to secure the misidentifications of plaintiff, as exposed by the CIU investigation, raised thorny questions for the Nassau County defendants to answer in discovery. *See* Transcript of Initial Conference before the Hon. James Orenstein, April 6, 2020 (DE #68), p. 7, ln. 6-8 (THE COURT: ...I'll leave it for another day to have a discussion of why on earth police might want to do what apparently they did here...); *see also* Transcript of Pre-Motion Conference before the Hon. Ann M. Donnelly, March 10, 2020, (DE #51-1), p.16, ln. 21-22 (describing the evidence supporting plaintiff's individual-liability claims as "very strong").

Against this backdrop, the parties began depositions in Fall 2020. Sokoloff represented not only the nine Nassau County defendants, but numerous Nassau County District Attorney witnesses, notably including CIU Chief and lead investigator Sheryl Anania, who had written the notes reprinted at ¶ 72 of the FAC. Sokoloff repeatedly instructed Ms. Anania not to answer questions, impeding plaintiff's access to key testimony from a favorable witness. *See* Deposition Transcript of Sheryl Anania, September 11, 2020, annexed to the Harvis Decl. as Exhibit 4, p. 78, ln. 17 - p. 81, ln. 10. Sokoloff's obstruction of the favorable testimony raises a further conflict.

Several weeks later, defendant Ross, also represented by Sokoloff, testified that he had been repeatedly trained by Nassau County to conduct the lineups as he did in Mr. Galloway's case "so it is

3

as fair as it can be for the defendant." Deposition Transcript of Matthew Ross, November 16, 2020 ("Ross Dep. Tr."), annexed to the Harvis Decl. as Exhibit 5, p. 29, ln. 12- p. 34, ln. 15.[3]

In January 2021, defendant Ross's former fiancé, Lori Magliaro, came forward out of the blue with an affidavit accusing Ross of having committed perjury at his deposition. *See* Affidavit of Lori Magliario, annexed to the Harvis Decl. as Exhibit 6.

Ms. Magliaro was deposed last month. Under questioning from Sokoloff, Magliaro was guided through a line-by-line recantation of the affidavit. *See* Lori Magliaro Deposition Transcript, June 15, 2021 ("Magliaro Dep. Tr."), annexed to the Harvis Decl. as Exhibit 8, p. 6, ln. 13 - p. 17, ln. 7.

Review of Ms. Magliaro's subsequently produced correspondence, however, casts doubt on Ms. Magliaro's deposition testimony and bolsters the perjury allegations against Ross. *Compare id.* at p. 19, ln. 15 - p. 22, ln. 3; p. 26, ln. 20- p. 28, ln. 3; p. 28, ln. 11 - p. 29, ln. 4 (Magliaro claims her affidavit was signed under duress from her attorney) *with* February 23, 2021 Letter and encl., annexed to the Harvis Decl. as Exhibit 7, p. 2, ln. 10-12 (Magliaro writes to her attorney more than a month after signing her affidavit: "[Ross] continues to abuse me to the point I can[']t focus. He is the liar here, always has been, and I stand my ground for defending that boy that suffered because of his misconduct."); Letters dated June 15 and 16, 2021 and encl., annexed to the Harvis Decl. as Exhibit 9, *e.g.*, p. 51; *see also* 18 U.S.C. § 1512. Within the communications from Ross (which plaintiff has yet to discover in their entirety) there would appear to be evidence of bad acts beyond intimidation, including the filing of false insurance documents and restricted database access. Harvis Decl., Exhibit

---

[3] It was based on such claims by Ross and the other individual Nassau County defendants that plaintiff sought, and was granted, leave to assert a *Monell* claim against Nassau County. *See* FAC, ¶ 132; *Galloway*, 2021 WL 1902230 at *5 ("It is clear from the proposed pleading that Galloway is asserting that that the identification policies employed by the County at the time of his conviction were likely to result in misidentification."); *see also Dunton*, 729 F.2d at 907 ("After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict.") (collecting cases).

4

7, p. 10 ("BTW I used your mom[']s address for you on Ins policy. I refused to use Belleview address."); *id.* at p. 4, ln. 14 ("*My report* proves that liar should be your middle name.") (emphasis added).

Argument

The Facts Above Demonstrate an Unwaivable Conflict for Sokoloff

A district court's authority to disqualify an attorney arises from its responsibility to supervise the members of its bar, *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975), and "has long been assumed, without discussion." *Board of Education v. Nyquist*, 590 F.2d 1241, 1245-1246 (2d Cir. 1979).

Courts may order disqualification to preserve the integrity of the adversarial process in actions before them or where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client. *Id.* at 1246. As the United States Supreme Court observed in *Wheat v. United States*, 486 US. 153, 158 n.2 (1988): ("[T]he right of counsel 'does not override the broader societal interests in the effective administration of justice'…or in the maintenance of 'public confidence in the integrity of our legal system'") (internal citations omitted).

In considering a motion for disqualification, a court is faced with the need to "preserve a balance, delicate as it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Emile Indus., Inc. v. Patenetex, Inc.*, 478 F.2d 562, 564-65 (2d Cir. 1973). The attorney with the concurrent representation bears a "heavy burden" to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of her representation. *Cinema 5, Ltd. V. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). Any doubt in resolving a motion to disqualify must be resolved in the movant's favor. *Hull*, 513 F.2d at 571.

5

Officer v. Officer Conflict

Rule 1.7 of the New York Rules of Professional Conduct precludes a lawyer from representing a client if a reasonable lawyer would conclude that the representation will involve the lawyer in representing differing interests, except that if the lawyer believes she will be able to provide competent and diligent representation to each affected client, and each affected client gives informed consent, confirmed in writing, a lawyer may represent such a client. 22 N.Y.C.R.R. 1200.1.7 (2020). Under RPC 1.7(b)(1) a waiver is not effective unless a reasonable lawyer would believe the representation is appropriate. *See Blake v. Race*, Harvis Decl., Exhibit 1 (rejecting waiver of conflict in New York City Corporation Counsel's representation of Assistant District Attorney); *Wheat*, 486 U.S. at 162 ("[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented.").

The Second Circuit has recognized "the potential for conflict is hardly limited to the trial context but can infect, actually or potentially, a broad spectrum of activities," *Cinema 5*, 528 F.2d at 1387; *see Nyquist*, 590 F.2d at 1246.

In *U.S. v. Schwarz*, 283 F.3d 76 (2d Cir. 2002), the Second Circuit reversed a criminal verdict, even though the officers there had waived conflict in open court and the trial judge, after holding a hearing, had accepted the waiver, permitting simultaneous representation. The Court of Appeals ordered a new trial, finding an unwaivable conflict based on the different defenses and factual contentions among the represented parties. *Id.* at 91, 95-6.[4]

---

[4] Though *Schwarz* is a criminal case, the conflict questions it illuminates are even more compelling in a civil case, in which this Court does not have to balance conflict questions with a criminal defendant's constitutional right to counsel of their choice.

Defense conflicts in § 1983 litigation outside of *Dunton* were analyzed at length by the Hon. Chief Magistrate Judge Cheryl L. Pollak in *Blake v. Race. See* Harvis Decl., Exhibit 1. In that case, also involving a wrongful conviction, Judge Pollak adjudicated a disqualification motion where defense counsel was alleged to have had a "fundamental" conflict: "namely, counsel is attempting to represent individuals whose interests and responsibilities for plaintiff's injuries may be vastly different." *Id.* at 9. In determining that a hearing was necessary on the issue, Judge Pollak described several potential conflicts and remarked that "[t]he Court is concerned that because Race was the supervisor, and because the officers had different roles in the case, and thus different levels of knowledge of and contact with the informant, there may be other examples of potential conflict between officers' respective positions." *Id.* at 11.

Here, the individual officers have varying liability exposure, with Lipson and Ross standing apart from the other defendants as particularly exposed based on the centrality of their involvement in the alleged misconduct. The individual defendants have also presented conflicting testimony about critical facts at issue in this case, such as: plaintiff's appearance while in custody, the steps taken to determine whether there was probable cause to conduct a photo array procedure, whether plaintiff made statements of admission during his interrogation, what instructions were given to the witnesses, what information about the perpetrator was known to investigators, which officers were involved in key decisions, and the extent of supervisory involvement. This is precisely the situation that concerned the Court in *Blake*. Additionally, the officers who did not tell Anyosa he had picked the right guy and who did not cause plaintiff to sit on phone books in the line-up or allegedly lie at their depositions may prefer to distance themselves from such conduct and be separately represented.

7

Now that Anyosa has alleged specific wrongdoing against Lipson, and Magliaro has alleged specific wrongdoing against Ross, they and the other defendants must be afforded conflict-free counsel and a conflict waiver is simply impossible.

<u>Officer v. Municipality Conflict</u>

Because a municipality may be held liable under 42 U.S.C. § 1983 for employees' actions taken pursuant to municipal policy, the interests of a municipality and its employees as defendants in a 1983 action are in conflict. *Dunton*, 729 F.2d at 907. This is because

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be subject to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense.

*Id.* (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)).

The Second Circuit has continued to emphasize the need for close scrutiny of potential *Dunton* conflicts in civil rights cases. *See Tiffany v. Village of Briarcliff*, 216 F.3d 1073 n.1 (2d Cir. 2000) (expressing "concern that the court and parties were not cognizant of the conflict that existed here" and noting that "[w]hile *Dunton* stopped short of creating an automatic rule of disqualification in such circumstances, the Court there strongly advised against multiple representation in § 1983 cases") (citation omitted).

Here, Sokoloff can defend its client, Nassau County, from civil liability by establishing that Sokoloff's other clients – the eight individual former Nassau County detectives – were not acting pursuant to the County's policies and/or training when they engaged in the alleged conduct.

8

Alternatively, Sokoloff can defend its individual-defendant clients by establishing that at all times, they were acting pursuant to Sokoloff's other client – the County's – policies and training. These adverse positions will necessarily impact a jury's final decision.[5]

If Sokoloff can establish that its individual-defendant clients' actions were pursuant to an official policy or practice, Sokoloff can shift part of the liability to its other client, Nassau County. In pointing the finger at its client Nassau County Sokoloff could potentially protect its eight individual clients from being assessed *punitive* damages. Moreover, in the event that a constitutional injury is established, which on these facts is a very real possibility, if Sokoloff is successful in obtaining immunity for its individual-defendant clients, Sokoloff's other client, the County, may be held solely liable to plaintiff (because the immunity defense is not available to Nassau County). *See Owen*.

Moreover, given the evidence of perjury relating to defendant Ross and Ms. Magliaro, and the absence of any written conflict waivers, it is unlikely that Ross has been appropriately counseled or would knowingly agree to joint representation with Nassau County in violation of RPC 1.7(b)(4); especially since (a) the County is his former employer, (b) the Nassau County CIU conducted the re-investigation of plaintiff's conviction, (c) the CIU uncovered police misconduct, (d) the County is a decision-maker regarding whether or not Ross (or Lipson, or the other defendants) should be referred for criminal prosecution, and (e) if the County obtains further evidence against Ross (or others), the County would be compelled to reopen the criminal investigation, and if appropriate, seek to terminate his pension and/or refer him for criminal prosecution. *See Dunton*, 729 F.2d at 907-08 ("As a layman,

---

[5] Sokoloff appears to have neither the RPC 1.7 written waiver required to attempt this joint representation nor the waiver required by RPC 1.8(f), needed because Nassau County is presumably paying for the joint defense.

9

he could not be expected to appreciate his need to prove a good faith defense. Furthermore, he was never advised that his counsel would take positions directly contrary to his interest.").

Furthermore, while *punitive* damages cannot be awarded against the County in this lawsuit, *punitive* damages can be awarded against the individual defendants. Importantly, if *punitive* damages are awarded against the individual defendants, they may be held *personally* liable for same.

Evidence of the impermissible concurrent conflicts' impact can already be found in the single Answer filed by the Nassau County defendants (DE #116). By way of example, Sokoloff denied on behalf of its jointly represented clients the existence of the policies and procedures testified to by the individuals (¶ 132); meaning, if the identification procedures employed by the individual defendants are found to be unlawful, those defendants can no longer argue that they are entitled to qualified immunity because their own counsel threw them under the bus. Stated another way, by Sokoloff pleading on behalf of its clients that the County policies allegedly contributing to the misidentifications were not in force, if Sokoloff's other clients – the individuals – are found to have violated plaintiff's constitutional rights, they acted *contrary* to their policies and training. *Compare* FAC, ¶¶ 129-133 *with* Answer (DE #116), ¶¶ 129-133.

When it comes time to argue damages to the jury, how is that going to work? Is Sokoloff going to argue that its client – Nassau County – and not Sokoloff's other clients – the individuals – should be held solely financially liable because of its deficient policies and training? Or, is Sokoloff going to argue that its clients – the individuals – should be held solely financially liable because they acted contrary to Sokoloff's other client – Nassau County's – policies and training?

The concurrent conflicts of interest could not have been properly waived, have not been waived, and will play out to the detriment of the individual defendants *and plaintiff*. *Plaintiff* is prejudiced by

10

the conflicts, as any judgment obtained can be collaterally attacked and is subject to reversal. Specifically, the individual defendants can fairly argue on appeal that they did not provide "informed consent" to the joint representation, that their personal interests were not properly represented at summary judgment or trial, that any verdict and award of *punitive* damages should be set aside, and that they should be entitled to a new trial. The new trial would take place at a significant cost to the plaintiff, and with defense counsel having already had the benefit of discovering plaintiff's trial litigation strategy, and having already heard opening and closing arguments.

District Attorney v. Individual Defendant Conflict

In *Blake*, Judge Pollak concluded that Corporation Counsel's representation of a non-party District Attorney witness warranted disqualification without the need for a hearing. Among other reasons, Judge Pollak was concerned "that the Corporation Counsel's instruction to the ADA not to sign an affidavit which the ADA had previously agreed was accurate and truthful – creates an appearance of impropriety." *Id.* at 14. "Although this Court does not draw any conclusion that counsel acted improperly in this regard," Judge Pollak stated, "their actions violated Canon 9 to the extent that they created this appearance of impropriety, by advising the non-party witness to withdraw his statement." *Id.* The same result is warranted here.

Given the facts here there is a conflict for Sokoloff to have represented the DA witnesses. By repeatedly instructing the witness not to answer, Sokoloff prioritized the interests of the County in avoiding liability over the core fact-finding function of the discovery process. To avoid even the appearance of impropriety, the District Attorney witnesses should have been separately represented.

One final observation is in order. The conflicts in this case are staggeringly obvious and significant as discussed above, but what is even more shocking is that Sokoloff proceeded in this case

11

without at least attempting to proffer a written conflict waiver, a first step in any conflict waiver process. *See* County Responses, Harvis Decl., Exhibit 2, Response to Plaintiff's Request for Production 55. Whatever protestations this Court hears from the Sokoloff firm, we ask that the credibility of those assertions be considered in the context of a law firm which has not even attempted to assert that it recognizes the conflict issues and has sought to address them.

Conclusion

For the foregoing reasons, plaintiff respectfully requests that the Court disqualify Sokoloff and grant plaintiff such other and further relief as the Court deems just and proper.

Dated: July 19, 2021
      Briarcliff Manor, New York

**Elefterakis, Elefterakis & Panek**

_____
Gabriel P. Harvis
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

*Attorneys for plaintiff*