UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JOSIAH GALLOWAY,

                Plaintiff,

    -against-

                                        **MEMORANDUM**
                                        **DECISION AND ORDER**
                                        19-CV-5026 (AMD) (JMW)

NASSAU COUNTY, *et al.,*

                Defendants.
---------------------------------------------------------------X

**WICKS,** Magistrate Judge:

> *When dealing with ethical principles, . . . we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent.*[1]

In this Section 1983 case, Plaintiff alleges that the individual defendants—Nassau County law enforcement officers—investigated and charged Plaintiff with attempted murder without probable cause, held unconstitutional lineup procedures, and failed to disclose *Brady* material. The culmination of these alleged misdeeds was Plaintiff's criminal conviction, which was, after ten years, vacated as wrongful. This action ensued. Over two years into this litigation, Plaintiff now moves to disqualify Defendants' Counsel, Sokoloff Stern LLP, on the grounds that it has multiple non-waivable conflicts in violation of New York Rule of Professional Conduct 1.7(a), namely, the "concurrent representation" conflict rule. Specifically, Plaintiff mounts a three-prong attack, contending that a conflict exists in Sokoloff's joint representation of (1) the individual officer Defendants "due to varying degrees of knowledge, exposure, taint, and incentive for blame-shifting"; (2) the individual officer Defendants and Nassau County due to divergent interests in assessing *Monell* liability; and (3) the Nassau County District Attorney's ("DA") office and the individual

---

[1] *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 567 F.2d 225, 227 (2d Cir. 1977) (quoting *United States v. Standard Oil Co.*, 136 F. Supp. 345, 367 (S.D.N.Y. 1955)).

officer Defendants, as counsel's representation of the ADA witness, ADA Sheryl H. Anania, impeded their potentially favorable testimony for Plaintiff.[2]

Defendants oppose the motion, asserting that no conflict exists between (1) the individual officer Defendants because there is no possibility of blame shifting, given that the individual officer Defendants have not offered contradictory testimony; (2) the individual Defendants and the County because the County has already agreed to indemnify the individual officer Defendants, aligning their interests; and (3) the ADA and the County, because the ADA is necessarily an employee of the County. Defendants' counsel adds that his clients have now executed conflict waivers.[3]

After careful consideration of the parties' submissions (DE 123, 125, 127), oral argument held on September 9, 2021 (DE 128), and supplemental submissions regarding ADA Anania's testimony (DE 129, 130, 132, 135, 136), as discussed more fully *infra*, the motion to disqualify is hereby GRANTED.

## PERTINENT FACTUAL BACKGROUND

As noted above, this matter stems from the wrongful conviction of Plaintiff for attempted murder and other related charges. As alleged in the fourth amended complaint, on May 15, 2008, Jorge Anyosa, a taxi driver, was shot in the face following a dispute with a motorist. (DE 114 at 5.) Plaintiff, following his arrest for unrelated charges, came under investigation by Defendants for the shooting of Mr. Anyosa. (*Id.* at 7.) Plaintiff alleges that, as a part of the investigation, Defendants Lipson and Horowitz "constructed suggestive photo arrays" and "pressured and misled" Mr. Anyosa into selecting Plaintiff as the shooter from the arrays. (*Id.* at 7–8.) Plaintiff alleges that Defendants Lipson and Horowitz told Mr. Anyosa that "he had selected the 'right guy' and that his friend had picked the same person." (*Id.* at 8.) Every Defendant in this matter denies those allegations. (*See* DE 116 at 5.) Following an alleged series of additional misconduct on the part of Defendants, Plaintiff was ultimately convicted at trial and sentenced to twenty-five years in prison. (*See* DE 114 at 9–12.)

---

[2] As discussed *infra*, Plaintiff's position on this prong, related to Defense Counsel's representation has evolved since the filing of this motion.
[3] Defendants' Counsel admits the conflict waivers were obtained only after the filing of the motion, and not at the outset of the representation.

In early July 2018, a woman contacted the Nassau County DA's office stating that she could no longer remain silent about Plaintiff's wrongful conviction. In response, the Chief of the Nassau County Conviction Integrity Unit ("CIU")—ADA Sheryl H. Anania—reinvestigated Plaintiff's conviction. (*Id.* at 13.) During her investigation, ADA Anania spoke to Mr. Anyosa, who allegedly told her—according to her notes included in the fourth amended complaint—that "after he [identified the] photo in [the] array, [the] detective hold him he [identified the] right person." (*Id.*) The CIU subsequently moved, on September 13, 2018, to vacate Plaintiff's conviction and dismiss the indictment. (*Id.* at 14.)

On September 4, 2019, Plaintiff filed the present action. (DE 1.) In mounting a joint defense, Defendant Nassau County agreed to indemnify the individual officer Defendants in the event they are found liable in this lawsuit. (DE 126-10.) On September 7, 2021—over two years after Plaintiff commenced this action—Plaintiff filed the present motion seeking disqualification of Defense Counsel. (DE 122.) Not long after did Defense Counsel secure conflict waiver forms from each Defendant. (DE 126-18.) Non-party ADA Anania—who Defense Counsel represented at a deposition—did not execute a conflict waiver. (*See id.*)

## **LEGAL STANDARD**

The purpose of the conflict rules is to ensure that a lawyer's loyalty to the client remains undivided and devoted. "A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer." *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F. Supp. 265, 268 (S.D.N.Y. 1953). In this Circuit, motions to disqualify counsel are generally viewed with disfavor. *Painter v. Turing Pharms., LLC*, 17 CV 7558 (CBA) (LB), 2018 WL 10529533, at *1 (E.D.N.Y. Aug. 7, 2018) (citation omitted). This is because disqualification by and large leads to "an immediate adverse effect on the client by separating him from counsel," and because such motions "are often interposed for tactical reasons . . . and inevitably cause delay." *Bd. Of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). As such, motions to disqualify are subjected to heightened scrutiny. *Flaherty v. Filardi*, No. 03 Civ.2167 (LTS) (HBP), 2004 WL 1488213, at *2 (S.D.N.Y. July 1, 2004). Ultimately, the question of whether disqualification is warranted falls within the court's discretion. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

3

Significant risk of trial taint is the touchstone of the inquiry:

> The key then to determining whether disqualification is warranted rests on whether the movant can show that the presence of a particular counsel will taint the trial by affecting his or her representation of a case. With rare exceptions this occurs in only two kinds of cases, one of which is where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client. Even when such a situation is implicated, however, disqualification is unwarranted unless there exists a significant risk of trial taint. This is determined in the context of the particular facts presented by each case.

*M & T Mort. Corp. v. White*, No. 04 CV 4775 (NGG) (VVP), 2007 WL 2816186, at *3 (E.D.N.Y. 2007) (internal quotation marks and citations omitted). *De minimis* taint will not support disqualification; rather, disqualification is only appropriate where "a *significant* risk of trial taint" exists. *Id.* (quoting *Drag Racing Techs., Inc. v. Universal City Studios, Inc.*, No. 02 Civ. 958, 2003 WL 1948798, at *3 (S.D.N.Y. Apr. 24, 2003)). That is to say that the "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion." *Painter*, 2018 WL 10529533, at *1 (internal quotation marks and citation omitted).

Notably, it is well-established that "[s]ince . . . disqualification is in the public interest the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify continuance of a breach of the Code of Professional Responsibility." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir. 1973). The Second Circuit has held that a delay in moving for disqualification may, in "extreme cases," be given some weight, but that courts should "'not bar a claim on that ground where no prejudice has resulted from the delay.'" *In re I Successor Corp.*, 321 B.R. 640, 662 (Bankr. S.D.N.Y. 2005) (quoting *Emle Indus., Inc.*, 478 F.2d at 574); *see also United States v. Huawei Techs. Co. Ltd.*, 18-CR-457 (S-2) (AMD), 2020 WL 903007, at *5 (E.D.N.Y. Feb. 25, 2020) (Donnelly, J.) (noting that "[t]he length of delay in bringing a disqualification motion is an important consideration, but is 'not determinative'").

Mindful of these principles, the Court turns to the three challenges posed by Plaintiff and Defendants' counterarguments.

**Plaintiff's Delay**

At a threshold, the Court addresses Defendants' argument—set forth somewhat tacitly—that the Court should deny Plaintiff's motion to disqualify based on Plaintiff's delay in filing the present motion. (DE 125 at 18–21.) In spilling two pages of ink, Defendants contend that "the motion's timing speaks volumes," (*id.* at 18 (capitalization altered)), and that Plaintiff's motivation in seeking Defense Counsel's disqualification is purely tactical, (*id.* at 19). Although granted "'disqualification motions are often interposed for tactical reasons,'" *Giuffre v. Dershowitz*, 515 F. Supp. 3d 123, 134 (E.D.N.Y. 2021) (citation omitted), the Court finds that the impetus behind the filing of the present motion was not for tactical purposes and that Plaintiff's delay is not so extreme as to warrant denial of the motion on that ground.

At oral argument, Plaintiff's Counsel made clear his position that the disqualification motion became viable only once all three conflicts raised in the motion became apparent. (*See* DE 128; *see also* DE 123 at 4 (outlining the asserted grounds for disqualification and noting that "[t]aken *together*, disqualification is warranted") (emphasis added).) Although, as discussed below, the Court disagrees with Plaintiff Counsel's initial assessment that the success of the disqualification motion depends on a three-part finding of conflict between the individual officer Defendants, the individual officer Defendants and the County, and ADA Anania and the individual officer Defendants,[4] Plaintiff's stated explanation was an "entirely reasonable explanation" for the delay in bringing the motion. *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 213 (S.D.N.Y. 2009) (holding that tactical motivations could not be inferred when an "entirely reasonable explanation" existed for the moving party's delay). Given that ADA Anania's initial deposition occurred on September 11, 2020 (DE 124-4)—the date at which, according to Plaintiff's Counsel, the disqualification motion become viable in his view—the fact that he waited just under a year to move for disqualification in no way constitutes extreme delay warranting the denial of his motion.

---

[4] Having filed numerous supplemental briefings and taken ADA Anania's continued deposition, Plaintiff's Counsel has since pivoted and now argues that each conflict alone—if present—warrants Defense Counsel's disqualification. (*See* DE 134, 136.)

*Compare Emle Indus., Inc.*, 478 F.2d at 574 (holding that the three-year delay in filing motion to disqualify was "not extraordinary" enough to deny motion).

Accordingly, Plaintiff's motion to disqualify Defense Counsel is not so belated as to warrant a denial of the motion for reason of delay. The Court now turns to the three grounds.

### *As to Alleged Conflict No. 1:* **Officer v. Officer:**

Plaintiff's application provides no specific reason why a conflict exists in the representation of the individual Defendants. Rather, Plaintiff contends that Defendant Lipson and Defendant Ross "stand[] apart from the other [D]efendants as particularly exposed based on the centrality of their involvement" in the alleged lineup improprieties. (DE 123 at 10.) Moreover, Plaintiff avers that the individual Defendants have "presented conflicting testimony about critical facts at issue in the case," listing numerous facts at issue but failing to cite to any supporting record evidence. (*Id.*) In light of these issues, Plaintiff suggests that the individual Defendants "may prefer to distance themselves from" Defendant Lipson and Defendant Ross. (*Id.*) This, though, is too speculative, does not support a finding of potential trial taint, and therefore does not compel disqualification of Defense Counsel.

Plaintiff primarily relies on *Blake v. Race*, 01-CV-6954 (JFB) (CLP) (E.D.N.Y. Jan. 11, 2005), a wrongful conviction Section 1983 case, in urging that conflict exists in Defense Counsel's representation of the individual defendants. There, the Hon. Cheryl Pollack held that a conflict likely existed in representing all individual Defendants because their testimony elucidated their varying views of whether a *Brady* violation had occurred, presenting trial strategy conflicts for defense counsel. Additionally, the court held that because two of the individual defendants allegedly threatened the crime witness, the other two defendants could have argued that they should be absolved of blame for that reason, pitting groups of defendants against one another. In sum, the *Blake* court found a clear disparity of positions among the four defendants in that case. What the *Blake* court had—which this Court does not—is the benefit of a more developed particularized record and specific factual bases for actual conflicts among the individual

6

defendants. In addition, in this case, Defendants have executed conflict waivers that satisfy *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir. 1984).[5]

Accordingly, since the Court does not find that the "officer v. officer" conflict exists at this time, the motion is denied as to that branch.

### *As to Alleged Conflict No. 2:* **Officer v. Municipality:**

Next, Plaintiff claims that a conflict of interest exists between the individual officer Defendants and the County. That argument is readily disposed of by reference to *Coggins v. County of Nassau*, 615 F. Supp. 2d 11 (E.D.N.Y. 2009), which is on point and instructive. There, the court held that because the County defendant agreed to indemnify the individual officer defendant, the parties' interests were aligned rather than in conflict. *Id.* at 33. Interestingly, in *Coggins*, the claim of conflict of interest was raised not by plaintiff, but by one of the co-defendants. Here, the Nassau County Police Officer Indemnification Board agreed to indemnify each individual defendant for all damages, including punitive damages, which aligns the parties. (DE 125 at 25.) Moreover, the one circumstance that the *Coggins* court suggested *may* create conflict—when counsel acts in favor of the County and at the detriment of an individual defendant— does not exist here. As Plaintiff points out, the answer denies, on behalf of all Defendants, that the County had unconstitutional policies and procedures in place. (DE 123 at 14.) This pleading does not unfairly affect any one individual Defendant, and, while it may foreclose all individual Defendants from asserting qualified immunity *if* their actions are found to be unlawful—which they deny—the County has agreed to indemnify them. Thus, no non-waivable conflict appears to exist here, and the "officer v. municipality" conflict is not a basis for disqualification.

### *As to Alleged Conflict No. 3:* **the ADA Witness Representation:**

The contours of the alleged conflict related to Defense Counsel's representation of ADA Anania have shifted since the filing of the present motion and present the most challenging of the three arguments. Plaintiff initially argued that Defense Counsel "prioritized the interests of the County in avoiding liability

---

[5] Plaintiff's counsel conceded at oral argument that the waivers would appear to satisfy *Dunton* and that a *Dunton* hearing would not be necessary.

over the core fact-finding function of the discovery process" by "repeatedly instructing [the ADA] witness not to answer" at her deposition, asserting the attorney work product privilege. (DE 123 at 11.) Following oral argument, the Court directed the parties to file supplemental briefing addressing the sole issue of the propriety of Defense Counsel's assertion of the work product privilege at the deposition. (Electronic Order dated Sept. 10, 2021.) After review of the parties' respective arguments, it became clear that Defense Counsel's work product assertion was improper and, accordingly, the Court permitted Plaintiff to continue the deposition of ADA Anania, limited only to the question originally posed by Plaintiff's counsel regarding the legality of the police identification procedures, as well as any reasonable outgrowth of questioning following her response. (Electronic Order dated Sept. 22, 2021.)

Following the continued deposition, Plaintiff supplemented his briefing on the present motion in light of ADA Anania's additional testimony. (DE 132.) Plaintiff's refined argument—now made with the benefit of ADA Anania's more complete deposition testimony—is that, because ADA Anania "admit[ted] that the Nassau County District Attorney's Office credited the victim's irregularities in the officers' administration of identification procedures," Defense Counsel should be disqualified because it is "inappropriate for the same attorney to simultaneously represent both the accused wrongdoers and the investigators who have concluded that the challenged conduct took place." (*Id.* at 1.) Plaintiff points specifically to the following exchange between his Counsel and ADA Anania:

> Q. In determining that [Plaintiff] was innocent and that his conviction should be vacated, did your office credit the statements of the victim Jorge Anyosa?
>
> . . .
>
> A. What statements are you talking about?
>
> Q. The statements that he gave you when you interviewed him about what happened?
>
> A. That was part of it.
>
> Q. Is that a yes?
>
> A. Yes. I would say I credited it, yes.

8

(DE 132-1 at 13.) In response, Defendants highlight the portion of the exchange immediately following the above which, in their view, supports that "[ADA] Anania is not at odds with the action of any police here." (DE 134 at 3.) That testimony is as follows:

> Q. Okay. Did you investigation find any reason to doubt the veracity of Mr. Anyosa?
>
> . . .
>
> A. You know, I have to tell you, I didn't—I didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime. So I took it at face value, it didn't really affect my investigation, but I can't say that I did an in[-]depth investigation as to everything he said to me as to whether it's true or not.

(DE 132 at 13–14.)

In light of the newly elicited testimony, the Court concludes that the disqualification of Defense Counsel is warranted. ADA Anania—Chief of the CIU that ultimately determined Plaintiff was wrongfully convicted and moved to have his conviction vacated—is more aligned with Plaintiff in this matter than with Defendants. Indeed, in making her determination regarding Plaintiff's innocence, ADA Anania "credited" the statements of Mr. Anyosa, the only eyewitness in the case, who informed her that the detectives conducting the photo array told him that he identified the correct person. (DE 132 at 13.[6]) This, of course, cuts *directly* against Defendants' denial of ever telling Mr. Anyosa that he "picked the right guy," which Plaintiff alleges led to Mr. Anyosa misidentifying him before the Grand Jury and at trial. (*Compare* DE 114 at 18–19 *with* DE 118 at 11.) For these reasons, Defendants' contention that ADA Anania is not at odds with the actions of the individual officer Defendants strains credulity and is unavailing. One can easily imagine Plaintiff calling ADA Anania at trial and confronting her with this testimony, placing Defense Counsel in the impossible position of having represented a witness earlier in the proceedings who, now before a jury, is testifying directly against the Defendants. Such circumstances would fly far beyond the mere image of impropriety and would instead pose a palpable and significant risk of taint to the trial. *White*, 2007 WL 2816186, at *3.

---

[6] *See also* DE 114 at 13–14 (appending ADA Anania's handwritten notes from her interview with Jorge Anyosa, which note that the "detective told [Mr. Anyosa] he [identified the] right person).

9

*Blake* addressed this precise issue, holding that the ADA's likely testimony in that case, which "would [have] be[en] directly contrary to the interests of" the defendant officer, created a conflict warranting disqualification. (DE 124-1 at 13.) Had ADA Anania *not* credited Mr. Anyosa's recounting of Defendants' actions, an incrementally stronger argument could be made that she is joining in "a unified defense against [P]laintiff['s] charges." *Drag Racing Techs., Inc.*, 2003 WL 1948798, at *4. But ADA Anania's testimony, paired with the integral role she played as Chief of the CIU in vacating Plaintiff's conviction, leads to the inescapable conclusion that her involvement undermines Defendants' core defenses in this lawsuit.

Mindful that disqualifications are generally disfavored in this Circuit, *see Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 304 (E.D.N.Y. 2005), the Court nevertheless concludes that under the circumstances presented here, a risk of significant trial taint exists. Moreover, the Court is also guided by the principle that "in [a] disqualification situation, any doubt is to be resolved in favor of disqualification," as the Second Circuit instructs. *Hull v. Celanese Corp.*, 513 F. 2d 568, 571 (2d Cir. 1975); *see Huawei Techs. Co. Ltd.*, 2020 WL 903007 at *3 ("Nevertheless, while the burden required to merit disqualification is a high one, the Second Circuit has cautioned that any doubt is to be resolved in favor of disqualification"). The Court therefore finds that Defense Counsel must be disqualified from representation of Defendants and ADA Anania in this action.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion to disqualify Defendants' Counsel, Sokoloff Stern LLP, is hereby GRANTED. The action is stayed for thirty days to allow defendants to retain substitute counsel.

Dated:       Central Islip, New York
               October 27, 2021

**S O  O R D E R E D:**


/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

11