UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSIAH GALLOWAY,

                              Plaintiff,

            -against-

NASSAU COUNTY; THE INCORPORATED VILLAGE
OF HEMPSTEAD; Police Officer STEVEN HOROWITZ,
Shield No. 144; Detective MATTHEW ROSS, Shield No.
834; Detective CHARLES DECARO, Shield No. 1047;
Detective RONALD LIPSON, Shield No. 1296; Detective
THOMAS D'LUGINSKI, Shield No. 7900; Detective
GEORGE DARIENZO, Shield No. 1038; Detective
KEVIN CUNNINGHAM, Shield No. 112; Detective
Sergeant RICHARD DORSI; Detective RENE B. YAO;
Detective CARL STRANGE, Shield No. 1225; JOHN and
JANE DOE 1-20,

                              Defendants.

19-cv-5026 (AMD) (JMW)


**COUNTY DEFENDANTS' OBJECTIONS TO THE MEMORANDUM DECISION AND
ORDER OF THE MAGISTRATE JUDGE GRANTING PLAINTIFF'S MOTION TO
DISQUALIFY DEFENSE COUNSEL**


**SOKOLOFF STERN LLP**
*Attorneys for County Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No.: 190164


*Of Counsel:*
      Brian S. Sokoloff

i

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................ i

Table of Authorities .................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Statement of Facts .................................................................................................................... 2

Standard of Review .................................................................................................................. 8

Argument .................................................................................................................................. 9

    POINT I:     THE MAGISTRATE JUDGE'S DISQUALIFICATION OF COUNSEL FOR THE
    COUNTY DEFENDANTS IS BOTH CONTRARY TO LAW AND CLEARLY ERRONEOUS. ................. 9

Conclusion ............................................................................................................................... 20

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Bd. of Education v. Nyquist,*
  590 F.2d 1241 (2d Cir. 1979) ................................................................. 9

*Drag Racing Techs., Inc. v. Universal City Studios, Inc.,*
  2003 WL 1948798 (S.D.N.Y. Apr. 24, 2003) ........................................ 9

*Fielding v. Tollaksen,*
  510 F.3d 175 (2d Cir. 2007) ................................................................. 8

*Flaherty v. Filardi,*
  2004 WL 1488213 (S.D.N.Y. July 1, 2004) .......................................... 9

*Hickman v. Taylor,*
  329 U.S. 495 (1947) .............................................................................. 6

*Holmes v. City of Chicago,*
  2016 WL 6442117 (N.D. Ill. 2016) ...................................................... 16

*Kuar v. Mawn,*
  2011 WL 838911 (E.D.N.Y. Mar. 4, 2011) ........................................... 10

*M & T Mort. Corp. v. White,*
  2007 WL 2816186 (E.D.N.Y. 2007) ..................................................... 9

*McNamara v. City of New York,*
  249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................ 8

*Painter v. Turing Pharms., LLC*
  17 CV 7558 (CBA)(LB) ....................................................................... 9

*Schultz v. Thomas,*
  832 F.2d 108 (7th Cir. 1987) ............................................................... 15, 16

Statutes

28 U.S.C. § 636(b)(1)(A) ........................................................................... 8
NY CPL § 440.10(1)(g) ............................................................................. 3, 4

Rules

Fed. R. Civ. Pro. 72 .................................................................................... 8
Fed. R. Evid. 608(a) ................................................................................... 16

Other Authorities

Wright & Miller, *Federal Practice & Procedure* § 6114 ............................................................ 16

## PRELIMINARY STATEMENT

Near the end of fact discovery in a twenty-deposition, document heavy case, Plaintiff moved to disqualify counsel for the County Defendants.[1] Of the three grounds originally cited by Plaintiff, Magistrate Judge James W. Wicks, found none justifying disqualification. After oral argument on the motion, Magistrate Judge Wicks ordered a limited second deposition of Nassau County Assistant District Attorney Sheryl Anania and found that a few lines of testimony she gave justified disqualification.

The disqualification Memorandum Decision and Order is clearly erroneous and contrary to law. First, the questions in the supplemental deposition used by Magistrate Judge Wicks to disqualify defense counsel are so vague that the answers they produce are too ambiguous to support his interpretation of them. Because the questions are poor, the answers are poor. Second, Magistrate Judge Wicks misinterpreted the word "credited" in ADA Anania's deposition testimony to mean that ADA Anania supported another witness's statement to her. In so doing, he overlooked ADA Anania's own explanation and wrongfully postured ADA Anania as adversarial to a County Defendant.

Additionally, Magistrate Judge Wicks disqualified counsel for the County Defendant by imagining trial questioning of ADA Anania that would be contrary to law.

Finally, Magistrate Wicks acted contrary to law when he found an unreported and easily distinguishable case entitled to any weight on this motion.

---

[1] The County Defendants comprise Nassau County, Det. Matthew Ross, Det. Charles DeCaro, Det. Ronnie Lipson (s/h/a Ronald Lipson), Det. Thomas Dgluginski (s/h/a D'Luguinski), Det. George Darienzo, Det. Sgt. Richard Dorsi, Det. Rene Yao, and Det. Carl Strange

## STATEMENT OF FACTS

The "Pertinent Factual Background" in Magistrate Judge Wicks' Memorandum Decision and Order [DE 137][2] ("D&O") is accurate but incomplete. This Court needs additional facts from the record, which are set out below.

<u>Investigation of Cabdriver Shooting and Galloway Conviction</u>

On May 15, 2008, Jorge Anyosa, a taxi driver, was shot in the face following a dispute with a motorist [DE 137, p. 2]. Plaintiff, following his arrest for unrelated charges, came under investigation by Defendants for the shooting of Mr. Anyosa. *Id*. Plaintiff alleges that, as part of the cab driver shooting investigation, Defendants Lipson and Horowitz[3] "constructed suggestive photo arrays" and "pressured and misled" Mr. Anyosa into selecting Plaintiff as the shooter from the arrays.[4]

Plaintiff's complaint alleges that Defendants Lipson and Horowitz told Mr. Anyosa that "he had selected the 'right guy' and that his friend had picked the same person.[5] Every Defendant denies these allegations." [DE 137, p. 2]

A criminal jury given other evidence unnecessary for the present motion convicted Galloway of the shooting. *Id*.

---

[2] Citations to "DE" refer to docket entries on Court's ECF docket sheet.

[3] Lipson is a Nassau County Police Department detective. Horowitz is an officer with the Village of Hempstead Police Department.

[4] Magistrate Judge Wicks cited this as an allegation from Plaintiff's complaint, but factual support for it evaporated during discovery. Mr. Anyosa testified in Galloway's criminal trial and in a deposition in this case and reported no such pressure from the police. Similarly, in his two recent post-conviction discussions with the Conviction Integrity Unit of the Nassau District Attorney's Office ("DA"), he reported no police pressure to pick anyone in the photo array.

[5] The evidence culled during discovery shows the allegation is overblown. *See infra* at *.

Conviction Integrity Unit Reinvestigation of Cabdriver Shooting

In early 2018, a decade after Galloway's conviction, a person called the Nassau County DA's Office with information about the cabdriver shooting. *See* Notes of Sheryl Anania, Chief of the Conviction Integrity Unit ("CIU"), annexed to the Declaration of Brian S. Sokoloff, dated November 26, 2021 ("Sokoloff Decl.") as Exhibit "A".[6] The CIU investigated this lead. Here is Ms. Anania's description of the CIU reinvestigation, as presented to the criminal court at Galloway's NY CPL § 440.10(1)(g) exoneration:

The CIU interviewed the caller in person. The individual told the DA that the wrong person was convicted and he/she could no longer remain silent. The person provided details about the name of the actual perpetrator and the circumstances surrounding the crime. That information led the CIU to additional witnesses unknown at the time of trial. The CIU gathered information seeking to verify the individual's account.

The CIU re-interviewed witnesses from Galloway's trial and found new witnesses that verified the individual's account that someone else committed the crime. The new suspect whom the CIU believed actually committed the crime matches the initial description of the shooter and resembles the sketch generated by the police. The CIU also discovered that, over the years, the actual perpetrator admitted to numerous people that he shot a cabdriver in Hempstead. The person the CIU came to believe was the actual perpetrator had a criminal record and was then serving a prison sentence. Because the statute of limitations for attempted murder is five years, the DA could not prosecute the man the DA believed was the actual perpetrator. *See id.*

---

[6] These notes bear a Bates number beginning with P, which means Plaintiff produced them in discovery. Ms. Anania testified in her September 11, 2020 deposition that she prepared the notes to read from when making the CPL § 440 motion to exonerate Galloway based on newly discovered evidence. She made small changes to the statement, and then typed a clean version of the statement. These exhibits are already part of the record as [DE-134-2, DE-136-2]. *See* Excerpts from transcript of Sheryl Anania, taken on September 11, 2020, annexed to Sokoloff Decl. as Exhibit "B", pp 97:12-103:12

Following the CIU investigation, Ms. Anania told the 440 court that the CIU investigation showed that, at the time of Mr. Galloway's trial, any and all exculpatory information was provided by the prosecution to the defense, including any discrepancies between the perpetrator's description and Mr. Galloway. These discrepancies were thoroughly explored by the defendant's attorney and argued to the jury. [Galloway] and two alibi witnesses also testified. The prosecution called to the stand a former co-defendant of Mr. Galloway's who allegedly told the police that Mr. Galloway confessed that he shot the cabdriver. Nonetheless, that witness recanted on the witness stand stating that Mr. Galloway had never confessed to him. *See id.*

After becoming convinced of the guilt of the new suspect, the CIU moved quickly to exonerate Galloway.

During the investigation she conducted following the tip, Ms. Anania had two conversations with the shooting victim, Jorge Anyosa. The first conversation was in person before she decided to seek Galloway's exoneration; the second was a phone call she placed to Mr. Anyosa some weeks later to tell him that the DA's office was going seek Galloway's exoneration. Plaintiff's Fourth Amended Complaint attaches handwritten notes made by Sheryl Anania made during both conversations with Mr. Anyosa. In one note, made during her in-person interview with Mr. Anyosa, Ms. Anania wrote what Mr. Anyosa told her: "After he id'd photo in array, detective told him he id'd right person." [DE-114, ¶ 72]. In Ms. Anania's note of the phone call with Mr.

Anyosa, she wrote: "In court, he didn't feel 100% sure but he felt pressure because he knew Wilmer[7] had id'd him & detectives said it was the right guy." *Id.*[8]

This Litigation

On September 14, 2019, Plaintiff filed his complaint in this case. [DE 1]. Amended complaints followed. [DE 9, DE 53, DE 80, DE 114].

On September 11, 2020, Plaintiff deposed Sheryl Anania. Sokoloff Stern LLP, counsel for the County Defendants represented Ms. Anania. Nassau County was then a party [DE 53], and Ms. Anania is a County employee.

Fact discovery proceeded to its near conclusion. Near the end of a year-plus period of factual discovery in a complex, document-heavy case, and after close to twenty depositions of parties and non-parties, Plaintiff moved to disqualify Sokoloff Stern LLP as counsel for the County Defendants.

Plaintiff's Disqualification Motion

Plaintiff moved on three grounds. Magistrate Judge Wicks easily found neither of the first two grounds supported disqualification. This Court need not consider them. Plaintiff's third ground is the one that led Magistrate Judge Wicks to order disqualification.

---

[7] Wilmer refers to Wilmer Hernandez, another taxi driver, who worked with Mr. Anyosa the night of the shooting. Hernandez was present for the altercation between Anyosa and the man who would shoot Anyosa a short time later. Although Hernandez did not see the shooting, he was an eyewitness who saw the man Anyosa said shot him. Hernandez independently picked Galloway's photo out of a photo array, independently picked Galloway out of a lineup, and independently identified Galloway during in court testimony. Hernandez testified in a deposition in this case and reported no evidence of coercion in the photo array or after the fact confirmation by the police that he picked the right guy.

[8] In her first deposition, Ms Anania testified about Mr. Anyosa's demeanor during the phone call she placed to tell him Mr. Galloway would be free: "He was nervous that Galloway would blame him. He was not happy…. [Mr. Anyosa] told me he was afraid [Galloway] might try for revenge, so I perceived him to be nervous about Galloway being released." *See* Excerpts from Transcript of Deposition of Sheryl Anania, taken on September 11, 2020, annexed as Exhibit "B" to Sokoloff Decl., pp. 115-16.

5

Plaintiff's third ground was that, during the deposition of Sheryl Anania, Sokoloff Stern LLP improperly objected to a question put to her in the deposition. In her September 11, 2020 deposition, Plaintiff's counsel, Gabriel Harvis, asked Ms. Anania this question, "[W]hether or not it is proper or constitutional, for a police officer to tell a crime victim, that they have identified the right person." See Anania Deposition, p. 80-81 [DE124-4]. Defense counsel objected and invoked the attorney work-product doctrine. Mr. Harvis replied, "We'll mark that for a ruling and we'll finish doing the deposition and we'll call Judge [Orenstein] and find out if that's a question that needs to be answered." At the end of the deposition, with all counsel present and available, Mr. Harvis placed no such call. Plaintiff, in fact, never moved to compel an answer to the question.

On September 9, 2021, Magistrate Judge Wicks heard oral argument on the disqualification motion. The next day Magistrate Jude Wicks ordered this: "Having reviewed the parties' submissions and heard oral argument, the parties are directed to submit letters on or before 9/17/21 addressing the sole issue of the propriety of defense counsel's work-product privilege assertion at ADA Anania's deposition. The letters shall not exceed three (3) pages in length." *See* Unnumbered DE, dated September 10, 2021.

The parties briefed the applicability of the work-product doctrine to the question. On September 22, 2021, in an unnumbered Docket Order, Magistrate Judge Wicks issued this ruling:

> After reviewing the parties' briefing on the propriety of defense counsel's work product privilege assertion at ADA Anania's deposition (DE 129, 130), the Court concludes that the work product assertion was improper. The question posed to ADA Anania was whether she believed that certain police identification procedures were permissible. (DE 124-4 at 4.) While the question sought ADA Anania's opinion on the constitutionality of certain procedures, it did not seek to extract any identifiable work product from her. Said differently, the opinion sought by Plaintiff's counsel was not prepared by [ADA Anania] with an eye toward [this] litigation. Hickman v. Taylor, 329 U.S. 495, 511 (1947). Rather, ADA Anania's peripheral involvement in this case stems only from her work to exonerate Plaintiff, work that was not completed at the behest of Defendants in anticipation of this litigation. Defense counsel's reliance on the work product privilege was therefore

6

improper. As such, Plaintiff may, by 10/6/2021, continue the deposition of ADA Anania, limited only to the question posed by Plaintiff's counsel regarding the legality of the police identification procedures, as well as any reasonable outgrowth of questioning following her response. The parties may conduct the deposition remotely. Following the deposition, the parties shall, on or before 10/15/2021, supplement their submissions regarding Plaintiff's motion to disqualify counsel (DE 122, 125), explaining how, if at all, ADA Anania's answers affect the disqualification analysis. The supplemental briefings shall be no longer than three (3) pages in length.

On October 5, 2021, Ms. Anania sat for a second deposition. *See* Complete Transcript of Anania October 5, 2021 deposition. [DE-132-1]. Asked whether an officer telling a crime victim he picked the right guy in a photo array is permissible, Ms. Anania said, "I couldn't answer that question." *Id*. at p. 133.

Mr. Harvis then asked Ms. Anania whether she would consider a detective telling a crime victim he picked the right guy to be suggestive. She responded: "No. After he's already identified the person, no. I would not." *Id*.

Mr. Harvis then asked Ms. Anania, "Do you believe that telling someone, a crime victim, that they picked the right person, would be likely to influence the confidence that the victim has in their identification?" She gave this answer:

I don't think that would. The only reason I say that is because whether you tell someone you picked the right person or not, the fact is they're going to assume that when the case goes forward and the person has been arrested and they end up testifying. So they're going to figure it out whether you tell it to them or not.

*Id*. at pp. 134-5.

Ms. Anania also gave this testimony in her second deposition:

Q.      In determining that Mr. Galloway was innocent and that his conviction should be vacated, did your office credit the statements of the victim Jorge Anyosa.

MR. SOKOLOFF:      Objection.

A.      What statements are you talking about?

7

Q.     The statements that he gave you when you interviewed him about what happened?

A.     That was part of it.

Q.     Is that a yes?

A.     Yes. I would say I credited it, yes.

Q.     Okay. Did your investigation find any reason to doubt the veracity of Mr. Anyosa?

MR. SOKOLOFF:     Objection.

A.     You know, I have to tell you, I didn't – I didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime. So I took it at face value, it didn't really affect my investigation, but I can't say that I did an in depth investigation as to everything that he said to me as to whether it's true or not.

[DE-132-1, pp. 137:6 to 138:9.]

While finding no previous ground justified disqualification of defense counsel, Magistrate Judge Wicks found that the testimony appearing at DE-132-1, pp. 137:6 to 138:9 justified disqualifying Sokoloff Stern LLP as counsel to nine separate defendants because it represented Ms. Anania at her deposition.

Because Magistrate Judge Wick's opinion is clearly erroneous and contrary to law, this Court should reverse.

## STANDARD OF REVIEW

Fed. R. Civ. Pro. 72 and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A) provide that a district court shall reverse a magistrate judge's order regarding a non-dispositive matter only where the order is "clearly erroneous or contrary to law." *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). An order disqualifying counsel is non-dispositive.

An order is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *McNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008)(citing cases). An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (citing cases).

The D&O is both clearly erroneous and contrary to law. This Court should reverse.

## ARGUMENT

**POINT I:    THE MAGISTRATE JUDGE'S DISQUALIFICATION OF COUNSEL FOR THE COUNTY DEFENDANTS IS BOTH CONTRARY TO LAW AND CLEARLY ERRONEOUS.**

Magistrate Judge Wicks' D&O cited important cases, but it failed to heed them. Magistrate Judge Wick correctly noted that, "In this Circuit, motions to disqualify counsel are generally viewed with disfavor." (*Citing Painter v. Turing Pharms., LLC*, 17 CV 7558 (CBA)(LB), 2018 WL 10529533, at * 1 (E.D.N.Y. Aug. 7, 2018)). [DE 137, p. 3] "This is because disqualification by and large leads to 'an immediate adverse effect on the client by separating him from counsel' and because such motions 'are often interposed for tactical reasons. . . and inevitably cause delay.'" [DE 137, p. 2] (*Citing Bd. of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

Magistrate Wicks also noted that "motions to disqualify are subjected to heightened scrutiny." [DE 137-2] (*Citing Flaherty v. Filardi*, No. 03 Civ. 2167 (LTS)(HBP), 2004 WL 1488213, at *2 (S.D.N.Y. July 1, 2004)).

Magistrate Judge Wicks even noted the correct issue and its standard: "The key to determining whether disqualification is warranted rests on whether the movant can show that the presence of a particular counsel will taint the trial by affecting his or her representation of a case…. Even when such a situation is implicated, however, disqualification is unwarranted unless there exists a significant risk of trial taint." [DE 137, p. 4] (*Quoting M & T Mort. Corp. v. White*, No. 04 CV 4775 (NGG)(VVP), 2007 WL 2816186, at *3 (E.D.N.Y. 2007)). Emphasizing the point,

9

Magistrate Wicks said, "*De minimis* taint will not support disqualification; rather disqualification is only appropriate where 'a *significant* risk of trial taint' exists." [DE 137] (*Citing id.* and *Drag Racing Techs., Inc. v. Universal City Studios, Inc.,* No. 02 Civ. 958, 2003 WL 1948798, at * 3 (S.D.N.Y. Apr. 24, 2003)).

Magistrate Judge Wicks' D&O wrongfully sees Sheryl Anania as at odds with the County Defendants. She is not at odds with the County Defendants, and her recent deposition testimony is not adversarial to them.

In the D&O, Magistrate Judge Wicks wrote, "ADA Anania – Chief of the CIU that ultimately determined Plaintiff was wrongfully convicted and moved to have his conviction vacated—is more aligned with Plaintiff in this matter than with Defendants. Indeed, in making her determination regarding Plaintiff's innocence, ADA Anania 'credited' the statements of Mr. Anyosa, the only eyewitness in the case, who informed her that the detectives conducting the photo array told him that he identified the correct person." [DE 137, p. 9]

This statement, at the heart of the Magistrate Judge's disqualification decision, misunderstands the record in several ways.

First, Mr. Anyosa was not the only eyewitness in the criminal case, whose testimony alone convicted Galloway. Wilmer Hernandez, who saw the shooter moments before the shooting, also identified Mr. Galloway in a photo array, in a lineup, and at trial. *See* Testimony of Ronnie Lipson at November 5, 2008 Pretrial Hearing [DE 95-2, pp. 9-10, 79-80], [9] November 7, 2008 Decision of criminal court on Galloway's suppression motion [DE 95-3, p. 280] (Criminal court: "Now, the photo array was shown separately to the victim and to a person who's described as a witness. There

---

[9] This document and the next cited document came before the Court during Plaintiff's motion to amend the complaint to a Fourth Amended Complaint. The Court can take judicial notice of this public record. *See Kuar v. Mawn*, No. 08-CV-4401 JFBETB, 2011 WL 838911, at *4 (E.D.N.Y. Mar. 4, 2011).

was no suggestibility with regard to the photographs. There was no suggestibility with regard to the procedure that was followed. And there was nothing unreasonably or unduly suggestive in the wording that was used by police personnel during the showing of the photo arrays." ) The importance of the Hernandez identification of Galloway matches the importance of Anyosa's. That Magistrate Judge Wicks credited Anyosa as "the only eyewitness in the case" does not make his D&O clearly erroneous or contrary to law, but it does show a lack of appreciation of the record.

More fundamental – and clearly erroneous -- is Magistrate Judge Wick's misunderstanding of Ms. Anania's deposition testimony, which led to a critically flawed view of how it relates to her position in the case. Magistrate Judge Wicks wrote, "Indeed, in making her determination regarding Plaintiff's innocence, ADA Anania 'credited' the statements of Mr. Anyosa… who informed her that the detectives conducting the photo array told him that he identified the correct person." [DE 137, p. 9]. The record does not support this.

Ms. Anania did *not* move to exonerate Galloway because she "credited" Mr. Anyosa's statement about being told by Detective Lipson that he picked "the right guy" in the photo array. Ms. Anania told the criminal court why she moved to exonerate Galloway: because a witness came forward ten years post-conviction with new evidence, including a confession, showing that a different person committed the crime, and the later investigation uncovered solid evidence of a different shooter. She did not list police conduct or misconduct of any kind as a factor. *See* [DE-134-2, DE-136-2].

In her first deposition, Ms. Anania testified to why she moved to exonerate Galloway:

      Q.    And in this case, can you tell me what the newly discovered evidence was, that the DA's office believed warranted the reversal of the conviction?

      A.    It was the witness, N.J. It was the witness T.B. two. It was other evidence that flowed from those statements. The car that N.C. had access to, that K.S. [the newly

identified shooter] had access to. Jorge Anyosa's identification of K.S., that's about all I can remember now.

*See* Sokoloff Decl., Exhibit B, p. 102. "Crediting" Mr. Anyosa's "right guy" statement was not part of it.

Beyond that, the testimony on which Magistrate Judge Wicks relied to disqualify defense counsel is too vague to support the meaning Magistrate Judge Wicks gave to it. Here is the testimony in full:

Q.      In determining that Mr. Galloway was innocent and that his conviction should be vacated, did your office credit the statements of the victim Jorge Anyosa.

MR. SOKOLOFF:      Objection.

A.      What statements are you talking about?

Q.      The statements[10] that he gave you when you interviewed him about what happened?

A.      That was part of it.

Q.      Is that a yes?

A.      Yes. I would say I credited it, yes.

Q.      Okay. Did your investigation find any reason to doubt the veracity of Mr. Anyosa?

---

[10] An understanding of the meaning of "the statements that [Anyosa] gave you when you interviewed him" requires a review of Ms. Anania's earlier testimony about what Anyosa told her when she spoke to him. In her first deposition, Ms. Anania testified to two speaking interactions with Mr. Anyosa. The first was an August 28, 2018 meeting with him her office; she asked him about – and he recounted -- his participation in the police investigation of the cabdriver shooting. Her second interaction with Mr. Anyosa was a September 11, 2018 phone call: Ms. Anania called Mr. Anyosa to notify him that her office would exonerate Galloway after its reinvestigation of the case. Ms. Anania's testimony about the multiple statements she obtained from Mr. Anyosa appear at these pages of the transcript of her September 11, 2020 deposition, all of which are annexed as Exhibit "B" to the Sokoloff Decl.: pp. 56:11 - 59:2, 59:13 - 63:6, 76:22-78:21, and 81:24-84:15

Between the two interactions, Mr. Anyosa gave Ms. Anania *multiple* statements, which prompted her above to ask Mr. Harvis to clarify which Anyosa statement(s) he was asking about: "What statements are you talking about?" Mr. Harvis's response -- "the statements that he gave you when you interviewed him" -- does not specify *which* of Anyosa's multiple statements he wanted to know if "her office" (not her) credited. Because Mr. Harvis never specified what Anyosa statement(s) he was asking her about, the answer he got creates confusion.

MR. SOKOLOFF:      Objection.

A.      You know, I have to tell you, I didn't – I didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime. So I took it at face value, it didn't really affect my investigation, but I can't say that I did an in depth investigation as to everything that he said to me as to whether it's true or not.

[DE-132-1, pp. 137:6 to 138:9.]

Mr. Harvis's first question was so vague that it prompted Ms. Anania to seek clarification. In particular, when Mr. Harvis asked, "In determining that Mr. Galloway was innocent and that his conviction should be vacated, did your office credit the statements of the victim Jorge Anyosa?" Ms. Anania asked, **"What statements are you talking about?"** Mr. Harvis's response failed to clarify the question: "The statements that he gave you when you interviewed him about what happened."

The "clarification" encompassed several statements over conversations on different days. The "clarification" included Mr. Anyosa's recognition of the photo of the new shooter. It also included the "right guy" statement, but it included so much more that it is impossible to discern from her answer what Magistrate Judge Wicks apparently gleaned: Mr. Anania believed Det. Lipson told Anyosa he picked the right guy.

Even if Mr. Harvis limited his question to the "right guy" statement, the testimony still would not support the meaning Magistrate Judge Wicks gave to it. The answer stretches the meaning of "credited" too far to interpret it to mean that Ms. Anania *believed* Mr. Anyosa's statement as true and took a position on it contrary to Det. Lipson.

In the answer to the very next question, Ms. Anania warned Mr. Harvis against concluding anything about Mr. Anyosa's "right guy" statement beyond her hearing it. She explained that Mr. Anyosa's report of the "right guy" statement had no meaning to her, and she drew no conclusions

13

from it because she had sufficient evidence implicating the new shooter. "Q. Okay. Did your investigation find any reason to doubt the veracity of Mr. Anyosa? MR. SOKOLOFF: Objection. A. You know, I have to tell you, I didn't – I didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime. So I took it at face value, it didn't really affect my investigation, but I can't say that I did an in depth investigation as to everything that he said to me as to whether it's true or not." [DE-132-1, pp. 137:6 to 138:9.]

Earlier in her second deposition, Ms. Anania testified she could not answer whether the "right guy" statement was permissible. [DE-132-1, p. 133]. She testified she does not consider such a statement suggestive. *Id.* And she testified that she does not believe the "right guy" statement would influence the confidence a crime victim has in their identification: "The only reason I say that is because whether you tell someone you picked the right person or not, the fact is they're going to assume that when the case goes forward and the person has been arrested and they end up testifying. So they're going to figure it out whether you tell it to them or not." *Id.* at pp. 134-5.

Given (a) the vagueness of the Harvis questions, (b) Ms. Anania's statement and evidence about why she moved to exonerate Mr. Galloway, and (c) her view of the harmlessness of the "right guy" statement, Ms. Anania's statement that she "credited" Mr. Anyosa's statement amounts to simply a profession of agnosticism. A hypothetical example shows exactly what happened here: during his interview, Mr. Anyosa looked at his watch and said, "It's 2:45, and I must leave because I start work at 3 p.m." In her deposition, Mr. Harvis asked Ms. Anania whether she "credited" his statement. She responds that she "credited it" and "took it at face value" but she did not look at her own watch or contact his employer to see when he starts work.

14

It is clearly erroneous for Magistrate Judge Wicks to use these scant few lines of testimony by Ms. Anania in her second deposition to say that her testimony "cuts *directly* against Defendants' denial of ever telling Mr. Anyosa that he 'picked the right guy." [DE 137, p. 9] (Emphasis in original.) There is no such contradiction. Defendants do not dispute the genuineness of Ms. Anania's notes or that she wrote down what Mr. Anyosa told her. There is no contradiction between her recording what Anyosa told her and Detective Lipson's denial that he made the statement.

Any trial testimony by Ms. Anania (hearsay objections aside) could only be to what she heard, what she wrote, and why she did what she did. Nothing in that testimony would invite or require to cross-examination by the Defense for there is no contradictory evidence. Defendants do not deny she heard Mr. Anyosa say what he said, do not deny that she wrote what he said, and do not contradict why she moved to exonerate Galloway. There is no contradiction between there position and her testimony and no trial taint from defense counsel's representation of her at her deposition.

Magistrate Judge Wicks wrote, "One can easily imagine Plaintiff calling ADA Anania at trial and confronting her with this testimony [*i.e.*, that she "credits" Anyosa's statement to her], placing Defense counsel in the impossible position of having represented a witness earlier in the proceedings who, now before a jury, is testifying directly against the Defendants." [DE 137, p. 9].

Magistrate Wicks' imagined scenario -- where Plaintiff calls Ms. Anania at trial and asks her whether she "credited" Mr. Anyosa or had reason to doubt him -- is contrary to law. Ms. Anania's opinion of another witness's credibility is inadmissible and meaningless. Ms. Anania told the criminal court and testified in her deposition about why she moved to exonerate Mr.

Galloway. Mr. Anyosa's right guy statement did not motivate her.[11] It does not matter if she believed Mr. Anyosa.

*Schultz v. Thomas*, 832 F.2d 108 (7th Cir. 1987) explains why Ms. Anania's opinion of another witness's truthfulness is inadmissible. *Schultz* is a civil rights case against police officers arising from plaintiff's arrest and trial for disorderly conduct. During the trial of the civil rights case, the judge who presided in plaintiff's criminal trial testified and gave his opinion, based on his criminal trial observation of them, that the now-defendant police officers were not truthful. The Seventh Circuit found this reversible error and explained why:

> Judge Flynn was not testifying about the existence of some objective fact as to which he had personal knowledge; but rather, gave his opinion based upon his own assessment of the witnesses' credibility. . . . Judge Flynn merely tried the plaintiff's disorderly conduct case. He was not a witness to nor did he have any personal knowledge of the underlying facts. Thus he had no basis for his opinion about the defendants' truthfulness other than his own credibility observations during the previous trial. No person, especially a judge, should usurp the jury's exclusive duty to determine credibility.

832 F.2d at 111. *See also Holmes v. City of Chicago*, 2016 WL 6442117, * 17 (N.D. Ill. 2016)("[T]he reasoning and impressions of credibility of the Impound Hearing Officer, the IG, and the ASAs are not admissible. Allowing reference to their opinions about the credibility of Defendant would invade the province of the jury in assessing the credibility of testifying witnesses.") *See generally* Wright & Miller, *Federal Practice & Procedure* § 6114 (operation of Fed. R. Evid. 608(a))

Defendants cited these cases to Magistrate Judge Wicks in the briefing on the disqualification motion [DE 134], but his D&O failed to address them.

---

[11] Though unnecessary to brief here, the District Attorney's reasons for moving to exonerate Galloway would not be relevant, anyway. Even if Ms. Anania investigated the "right guy" statement, concluded it was true, and sought exoneration on that ground, the civil jury would not need to know that. In any event, Ms. Anania did *not* investigate the statement, did *not* conclude it was true, and did *not* move to exonerate Galloway on that ground.

Magistrate Judge Wicks D&O found *Blake v. Race*, 01-CV-6954 (JFB)(CLP)(E.D.N.Y.

Jan. 11, 2005), an unreported decision. dispositive in this case. Magistrate Judge Wicks said it

addressed the "precise" issue presented here. [DE 137, P. 10]. *Blake* is very different from this

case. The only thing *Blake* shares with this case is that, in both cases, counsel for police officers

in a wrongful conviction case represented an assistant district attorney in a deposition. The

similarity ends there.

In *Blake*, the court outlined a host of conflicts facing the New York City Law Department

in its simultaneous representation *first* of all police defendants and *second* its representation of

Assistant District Attorney Catalano, who participated in the prosecution of Blake. The court listed

several categories of conflict facing the Law Department: (1) conflicts among the police officer

defendants as to which police officers conveyed to ADA Catalano information damaging to the

credibility of Garner, a key witness, (2) conflicts between the officers and the ADA about whether

the ADA received this information from the police at all, and (3) whether *Brady* required police to

turn the Garner information over to the prosecutor (with the ADA and a defendant police officer

having different conclusions about it). Adding to these three categories of stark conflict facing the

Law Department was a fourth, identified by the court: the Assistant Corporation Counsel

representing the officers might be a culprit in front of the jury for why the ADA first promised

Blake's attorney that he would sign an affidavit helpful to Blake and then reversed course (on

advise from the Assistant Corporation Counsel.)

The *Blake* decision explains in evidentiary detail each of these four conflict categories. As

examples, one police officer testified that another officer had a reputation for feeding facts to

witnesses, corroborating Blake's claims. The court said the Law Department represented parties

pointing fingers at one another.

In another conflict, the court said it expected ADA Catalano to testify that the information about Garner was clearly relevant and exculpatory and that *Brady* required the officers to produce it. That expected testimony directly contradicted defendant Sgt. Race, who denied understanding he had an obligation to disclose this material.

Finally, the *Blake* decision explains why the Assistant Corporation Counsel's actions in representing the ADA could hurt the interests of the police defendants. ADA Catalano first promised a helpful affidavit to Plaintiff's counsel and then, on advice of the Law Department, reneged. The court explained:

> Finally, plaintiff raised a further concern – namely, that the Corporation Counsel's instructions to the ADA not to sign the affidavit the ADA had previously agreed was accurate and truthful – creates an appearance of impropriety. Although the Corporation Counsel argues that the District Attorney's Office contacted the Corporation Counsel seeking representation, that does not alter the fact that the Corporation Counsel represents four individual police officers whose interests may be in conflict with that of the prosecutor. Certainly it could be argued that it was in their clients' interests to try to have the prosecutor rephrase his affidavit in a way that was more favorable to the defendants, or to try to shift the blame to the prosecutor and away from the clients, particularly since the prosecutor is not named as a defendant in the case. Although the Court does not draw any conclusion that counsel acted improperly in this regard, their actions violated Canon 9 to the extent that they created this appearance of impropriety, by advising the non-party witness to withdraw his statement. Given plaintiff's position that defendants were in possession of <u>Brady</u> material and knowingly failed to inform the ADA of such, the ADA's testimony about whether he was informed and about whether defendants had reason to know that the information they possessed was <u>Brady</u> material is highly relevant. Whether the District Attorney's Office contacted counsel or not, defendants' counsel's advice could be construed as an effort to suppress the ADA's testimony and to prevent plaintiff's counsel from obtaining a clear statement that the ADA was never informed of this <u>Brady</u> material. Indeed, counsel's advice to the ADA to withdraw the affidavit and the ADA's subsequent decision to heed that advice may be utilized by plaintiff during the course of the trial for impeachment purposes. If questioned as to why the affidavit was not signed after he agreed to it's [*sic*] contents, the prosecutor may invoke the advice of counsel defense. Should that be the response, the suggestion to the trier of fact would be that counsel for defendants attempted to influence, or did in fact cause, the ADA to change his testimony. While counsel may have a valid reason for explaining that advise, counsel would not be able to testify.

*Blake*, *id*. pp. 14-15

This case is nothing like *Blake*. First, as Magistrate Judge Wicks found, there are no conflicts among the Nassau County defendants to justify disqualification. Second, this case does not have any likelihood of Ms. Anania testifying to advice of counsel for why she reneged on providing an affidavit (or testimony) helpful to Mr. Harvis. There never was a promised affidavit or testimony, and there will be no advice of counsel entering the picture at trial.

Most significantly, the prosecutor in *Blake* is a central character in the case, whose testimony materially and directly conflicts with that of at least once officer. What ADA Catalano did and did not do during the Blake's prosecution and what communications he had with officers during the prosecution all are central to the wrongful conviction case. ADA Catalano had personal knowledge of the facts at issue in the *Blake* case.

Here, ADA Anania, whose investigation occurred a decade after Galloway's prosecution, had no personal facts at issue in the case. She did not prosecute Galloway. She has no direct knowledge of what the officers did or did not do during the investigation of Galloway. *At most*, she spoke to one witness and wrote down what that witness said, a fact that no Nassau County defendant denies or challenges. Answering an unclear and vague question in a deposition – and a question (even if clear) that would be improper at trial – does not put her at odds with, or undermine, the defense of this case.

*Blake* is a great case to show the types of conflicts that might arise among joint representation of multiple defendants or among defendants and a non-party, but none of the conflicts present in *Blake* are present here.

Magistrate Judge Wicks D&O committed an error of law in finding that *Blake* addressed the "precise issue" in this case and warranted disqualification. It does not.

## CONCLUSION

For these reasons, this Court should reverse the D&O of Magistrate Judge Wicks and deny

Plaintiff's motion to disqualify Sokoloff Stern LLP representing the Nassau County Defendants.

Dated: Carle Place, New York
       November 26, 2021

                                          SOKOLOFF STERN LLP
                                          *Attorneys for County Defendants*

                                          _____
                                          Brian S. Sokoloff
                                          Alexander J. Eleftherakis
                                          179 Westbury Avenue
                                          Carle Place, New York 11514
                                          (516) 334-4500
                                          File No. 190164