1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - -  X
 3
    JOSIAH GALLOWAY,              :
 4                                     19-CV-5026(AMD)
              Plaintiff,         :
 5
               -against-         :     United States Courthouse
 6                                     Brooklyn, New York
    COUNTY OF NASSAU, et al.,    :
 7                                     January 11, 2022
              Defendants.        :     3:30 o'clock p.m.
 8
    - - - - - - - - - - - -  X
 9
                    TRANSCRIPT OF MOTION HEARING
10            BEFORE THE HONORABLE ANN M. DONNELLY
                 UNITED STATES DISTRICT JUDGE.
11
    APPEARANCES:
12
    For the Plaintiff:             ELEFTERAKIS ELEFTERAKIS
13                                       & PANEK
                                   80 Pine Street, 38th Floor
14                                 New York, NY 10005

15                                 BY: GABRIEL P. HARVIS, ESQ.
                                       BAREE N. FETT, ESQ.
16
    For Nassau County Defts.:      SOKOLOFF STERN LLP
17                                 179 Westbury Avenue
                                   Carle Place, NY  11514
18
                                   BY: BRIAN S. SOKOLOFF, ESQ.
19
    For Deft. Hempstead:           HARRIS BEACH PPLC
20                                 333 Earle Ovington Boulevard
                                   Uniondale, NY  11553
21
                                   BY:  WILLIAM J. GARRY, ESQ.
22
    Court Reporter:                Charleane M. Heading
23                                 225 Cadman Plaza East
                                   Brooklyn, New York
24                                 (718) 613-2643
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer-aided transcription.
```

2

1          (All present by telephone.)

2          THE CLERK:  This is civil cause for a motion

3    hearing, docket number 19-CV-5026, Galloway versus County of

4    Nassau, et al.

5          Before asking the parties to state their appearance,

6    I would like to note the following.  Persons granted remote

7    access to proceedings are reminded of the general prohibition

8    against photographing, recording and rebroadcasting of court

9    proceedings.  Violation of these prohibitions may result in

10   sanctions including removal of court issued media credentials,

11   restricted entry to future hearings, denial of entry to future

12   hearings and any other sanctions deemed necessary by the

13   Court.

14         Will the parties please state their appearance,

15   plaintiff first?

16         MR. HARVIS:  Good afternoon, Your Honor.  This is

17   Gabriel Harvis.  I'm appearing on behalf of the plaintiff

18   Josiah Galloway and I have my law partner Baree Fett on the

19   line as well.

20         THE COURT:  Good afternoon.

21         MR. SOKOLOFF:  This is Brian Sokoloff, Sokoloff

22   Stern LLP, attorneys for the Nassau County defendants, at

23   least that's what we're hoping for.

24         THE COURT:  Good afternoon.

25         MR. GARRY:  And William Garry, Your Honor, for the

3

1   defendant, the Incorporated Village.

2          THE COURT:  Okay.  Good afternoon.

3          Anybody else?

4          Okay.  So I received the objections to Judge Wicks's

5   report and recommendation and I want to talk to you a little

6   bit just really about the practicalities of all of this.

7          So I've read all of the materials including the

8   Assistant District Attorney's deposition and I agree that

9   there is surely a conflict in representing the Assistant

10  District Attorney but I'm wondering why, as a practical

11  matter, the Sokoloff firm has to be disqualified from

12  representing the other defendants.

13         I talked to Judge Wicks about this and, you know, I

14  have to say that for whatever it's worth, I'm not even sure

15  why an assistant district attorney testifying as a non-party

16  needed a lawyer at a deposition.  It's not anything that I've

17  ever, different experiences from different counties, but the

18  usual concerns are really not present here.  I mean, to the

19  extent that she needs representation, I feel as though this

20  conflict could be fixed by having someone else represent her.

21         The other observation that I would make is it's hard

22  for me to see that she would be, have much to say at a trial

23  because she did not have anything to do with investigating the

24  initial case.  She investigated the case years after the

25  conviction and so it seems to me that the facts to which she

4

1   could testify to would be something that, things that aren't

2   really in dispute, that the district attorney's office

3   investigated the case and made the decision that they made.  I

4   don't think she would be permitted to testify about her

5   opinions about the credibility of witnesses.  I'm not sure

6   that that would be permissible.

7           So this is a very long way of saying it's something

8   that I'm still thinking over but I'm wondering -- and you

9   don't have to answer me today, I can even get submissions from

10  you if you want, but I don't really understand why they would

11  have to be disqualified from representing other defendants.

12          The case has been, it's not as old as some but it's

13  been kicking around for a long time and I'm wondering why,

14  while you mull this over, if it's worthwhile to have a

15  settlement conference about the case.  Are you just too far

16  apart?  If new lawyers start on this case, we'll be starting

17  sort of from square one at least in some respects and I don't

18  know if that's something that you want.

19          So I want to first ask the plaintiff.  What do you

20  envision this witness testifying to at trial?

21          MR. HARVIS:  Thank you, Your Honor.  So in our view,

22  the ADA is really a very important witness in the trial

23  because there is a dispute between the parties about

24  Mr. Galloway's innocence, first of all, which is directly

25  relevant to his claims of civil rights violations because the

5

1  case law, you know, is pretty clear that innocent, you know,

2  the establishment of innocence is relevant to assessing

3  whether or not the officers engaged in the types of misconduct

4  that we allege and determining, you know, the legitimacy of

5  those claims.

6          You know, some of the key evidence of police

7  misconduct is accessible really only through the ADA's

8  testimony.  If you take, for example, the statement that she

9  recorded in her notes where the victim says that the officer

10  told him that he had picked the right guy, you know, the

11  victim has been equivocal about that now.

12          THE COURT:  Right.

13          MR. HARVIS:  You know, in his deposition, he

14  suddenly has, you know, he has some confusion or lack of

15  recollection or lack of clarity on that so the best evidence

16  that we have in the record about that as from Ms. Anania.

17          THE COURT:  So let me just pause right there with

18  this just before I forget.

19          So you would want to have her notes or her testimony

20  as a prior inconsistency, I guess, or to refresh his

21  recollection or from whatever, for whatever evidentiary,

22  whatever exception applies.  And I'm just -- and I get that.

23  So that's one thing.  So she wrote, took in her notes that he

24  said that they told him that he picked the right guy, correct

25  so far?

6

1          MR. HARVIS:  Yes.

2          THE COURT:  And then he is now saying I don't

3    remember if that's what they told me or something to that

4    effect, right?

5          MR. HARVIS:  Correct.  Correct.

6          THE COURT:  Okay.

7          MR. HARVIS:  And there are -- I'm sorry, Your Honor.

8          THE COURT:  Go ahead.

9          MR. HARVIS:  I was going to say that's just one of I

10   would say three or four similar little snippets of allegations

11   that are along those same lines.

12         THE COURT:  Okay.

13         MR. HARVIS:  Including that the officer -- I'm

14   sorry.

15         THE COURT:  No, go ahead.

16         MR. HARVIS:  I was going to say, you know, for

17   example, another example is that the victim was told that his

18   friend who didn't witness the shooting but witnessed a period

19   of time before the shooting had also, the victim was told that

20   his friend had also picked the same person, for example, in

21   the notes.

22         THE COURT:  And she made that notation in her notes,

23   right?

24         MR. HARVIS:  Correct.  Correct.

25         THE COURT:  Okay.  I see.  So she would testify that

7

1    that's what he told her, right?

2         MR. HARVIS: Right. We would basically be

3    establishing that it's a business record and she had a duty to

4    record it and so forth and, like Your Honor said, a hearsay

5    exception.

6         THE COURT: Do you need her to put that into

7    evidence? I'm not really asking you to try your case right

8    now. I'm just -- I mean, I would try to analogize this to,

9    let's say in state court, there was a 440.10 hearing at which

10   the judge decided to set aside the conviction and he, and say

11   the judge credited the witnesses. I don't think the judge

12   testifies, right?

13        MR. HARVIS: Right.

14        THE COURT: But the testimony that came out during

15   the course of the hearing would come in. I'm just wondering.

16   I mean this is sort of a very long way of saying do we need --

17   I mean, how much do we need -- why do we need to disqualify

18   them from representing everyone and how much of a witness is

19   she actually going to be?

20        MR. HARVIS: Yes. I mean, I have a little more to

21   say about that, Your Honor, if you don't mind.

22        THE COURT: Sure. Sure. No, go right ahead.

23        MR. HARVIS: Thank you.

24        So in our view, she's really an important witness

25   from our point of view because if you look at your analogy

8

1    with a 440 hearing, a judge will reduce their findings to an

2    opinion which everybody has the benefit of, whereas, here,

3    that information is really kept in the mind of Ms. Anania.  So

4    we don't have the benefit of -- I mean she did make a

5    statement on the record but her, you know, review and

6    investigation was significantly more expansive than what was

7    contained in her first spoken remarks which themselves are

8    somewhat the subject of controversy because we have her drafts

9    of those remarks and she made changes to them that are

10   probative.

11          You know, for example, she had written an earlier

12   draft that the wrongful conviction was not the result of

13   police misconduct, but then she crossed that out when she

14   finally gave her remarks to the court.  So it's an open

15   question from our point of view, you know, how she viewed the

16   role of police misconduct in what everyone agrees was a

17   wrongful conviction.

18          THE COURT:  But why --

19          MR. HARVIS:  So we think that -- yes.

20          THE COURT:  But I don't understand why she would be

21   able to testify about that because her impression of whether a

22   witness is credible, whether to believe the victim or whether

23   to believe the detectives, I don't see how that comes into

24   evidence at trial and I realize, I'm not making pretrial

25   rulings by any stretch of the imagination.

9

1          I can see like in the Race case, <u>Blake against Race</u>,

2   I think the Assistant District Attorney who testified there

3   actually was involved in the prosecution of the investigation

4   of the initial case.  Here, we have somebody looking at it ten

5   years later and making a decision about it.

6          So, you know, and I actually have never taken one of

7   these all the way to trial so maybe I'm, this is the failure

8   of imagination on my part, but in the case where the judge

9   makes a decision and, you know, writes an opinion, sometimes

10  they do, sometimes they don't, but the jury doesn't get that,

11  do they?  I don't think --

12          MR. HARVIS:  I don't know.  I hear the parties

13  stipulated about that, but there's kind of two interlocking

14  points that I want to make about that.

15          I mean, one is, in our view, Ms. Anania, the ADA in

16  this case, is the only person who spoke to these witnesses

17  that the DA used to determine that Mr. Galloway was innocent.

18          THE COURT:  Right.

19          MR. HARVIS:  So we don't have, we don't have any

20  other way -- and part of our case is, part of our proof of our

21  case is proving that those innocent witnesses were giving

22  correct testimony.  So she's a vital witness in order to

23  establish not the credibility of those people, but the facts

24  that came into the possession of the DA's office in the same

25  way that you would look during a criminal prosecution at

10

1    exculpatory evidence, for example, that was given to the

2    prosecutor.

3          Those questions of sequence and of the content of

4    information that came from the DA's office would, in our view,

5    come properly before the jury and just taking it a step

6    further, because we now all agree that there was this conflict

7    and there was this ethical lapse in the decision to represent

8    her.

9          THE COURT:  Although I'm not sure -- I don't know if

10   we all agree with that but probably.

11         MR. HARVIS:  Most of us.  Most of us agree.  You

12   know, it's now, it now has elevated itself into an issue at

13   the trial because now from our point of view, the only reason

14   why we can imagine that the conscious decision was made to

15   have the same attorney represent Ms. Anania that was

16   representing the officers is because the County could not

17   fairly defend its case if Ms. Anania was permitted to testify

18   in a full and complete manner.

19         So, therefore, we're going to want to be able to

20   present to the jury the theory that, and make arguments along

21   the lines of, you know, that was, that betrays some

22   consciousness, call it consciousness of guilt or call it, you

23   know, some sort of a deliberate decision in which they decided

24   that they had to interfere with her testimony in order to

25   create a defense for their case.

1          We think that to have the same attorney, this goes

2    back to Your Honor's initial question which is why isn't

3    counsel sufficient, because we think to have the attorneys

4    that engaged in that sort of shenanigans at counsel's table

5    even if they're not presently representing the ADA is the kind

6    of, the quality of taint that we think is sufficient to

7    warrant disqualification or at least create sufficient doubt

8    about it that under the Hull case in the Second Circuit, you

9    know, favors disqualification and that, that's the reason why

10   we think, one of the reasons.

11          And if I may, if Your Honor would just indulge me

12   for just one more minute?

13          THE COURT:  Go ahead.

14          MR. HARVIS:  Thank you.

15          Part of the theory of the defense here that's been

16   advanced through deposition questioning is about the

17   legitimacy of the DA's reinvestigation and there's been a

18   theory presented by the defense that, that this was a flawed

19   reinvestigation, that they didn't go about it the right way,

20   that all they did was bring in the victim and show him a

21   picture of Galloway and say, you know, isn't this the shooter

22   and, therefore, they're going to want to get up and they

23   basically are going to want to cross-examine their own former

24   client about that.

25          So those are really the two strands that we think

12

1   make disqualification necessary here.

2          THE COURT:  Okay.  Let me ask Mr. Sokoloff.

3          So I don't want you to waste a whole lot of time on

4   whether there's a conflict question, I agree with Judge Wicks

5   that there is with respect to the Assistant District Attorney,

6   but let me just ask you is that your defense, that the

7   reinvestigation was also flawed?

8          MR. SOKOLOFF:  No, absolutely not.  We don't --

9   we're not arguing, we're not arguing and never have that

10  Mr. Galloway committed the crime at this point.  There might

11  be some quibbling about what the 440 exoneration means.  It

12  means that he wasn't proven guilty but it's not as Mr. Harvis

13  tries to couch it, that, you know, somebody pronounced him

14  innocent.  He's not guilty of that crime.  We don't dispute

15  that.

16         THE COURT:  Okay.  So what is your -- and in terms

17  of the Assistant District Attorney -- I keep forgetting her

18  name.  I'm sorry.

19         MR. SOKOLOFF:  Anania.

20         THE COURT:  Ms. Anania, is she a witness that you

21  would call?

22         MR. SOKOLOFF:  No, there's no need to call her.

23         Your Honor, can I just add something here?  If we

24  were to have an evidentiary hearing, Your Honor would learn

25  from Ms. Anania that their decision to exonerate Mr. Galloway

13

1   did not turn in the least on any finding of police misconduct.

2   She doesn't know of any police misconduct.  She wouldn't

3   testify to any police misconduct.  That's not -- that's not --

4   she didn't investigate police misconduct.  She didn't find

5   police misconduct.  She knows of no police misconduct.

6           THE COURT:  Well, I mean, again, can I just say,

7   again, I think both of you are doing this a little bit --

8   Ms. Anania's opinion about any of these matters is really not

9   relevant at a trial about, which is really a trial that

10  whether these things occurred.  I don't think there's any

11  exception that would permit somebody to say, you know, I

12  talked to this person and I think the person is credible, I

13  talked to this person and I don't think there was police

14  misconduct.

15          I don't recall every bit of her testimony.  My

16  recollection was that there's another person who's much more,

17  who she thinks did it.  I mean, it sounded like there were a

18  combination of factors but, again, I don't think she can

19  testify to any of that at a trial any more than, you know, at

20  a criminal prosecution, but Mr. Harvis also points out that

21  just the very fact that the County, A, chose to have an

22  Assistant District Attorney represented by counsel and, B,

23  chose to have it be the same counsel as the detectives or the

24  police officers, who was representing the police officers

25  whose conduct she necessarily looked at as part of the

14

1    investigation and whose conduct is the subject of this case.

2    That's why Judge Wicks made the decision he did and, in my

3    view, an extremely thoughtful opinion.

4         My only question was, as I say, my question was

5    really one more of practicality.  I'm not entirely sure I

6    understand the theory from Mr. Harvis that counsel, I don't,

7    maybe it's a failure of imagination on my part, I don't know,

8    that the County decided that they didn't want the DA to

9    testify to something.  I mean, I suppose the Assistant

10   District Attorney may have some independent, independent

11   obligation as an officer of the court to testify truthfully

12   but I don't, I don't think anybody is asserting that once her

13   prior deposition came out, that there was anything missing.

14        In any event, I mean, I think the issue is an

15   interesting one.  What I'd like to do is give it some more

16   thought because, in terms of that particular question, whether

17   the Sokoloff firm has to be disqualified from representing the

18   other defendants.  I agree that they can't represent the

19   Assistant DA.  So I mean if you all want to submit a letter to

20   me on this topic, I'll certainly consider it.

21        There are two other things that I want you to

22   consider in the interim.  One thing is I know Judge Wicks

23   knows this case very well and I know you all hate coming out

24   to Brooklyn and so --

25        MR. HARVIS:  Wait.  I don't.

15

1          THE COURT:  So if you want to consider to consenting

2     to his jurisdiction, I'm just throwing that out there.

3     Usually when we get Nassau County cases, people act as though

4     we're requiring them to go to Siberia.  And he knows the case

5     very, very well.

6          The second thing is I don't know to what extent you

7     all have tried to settle this case.  It seems to me that that

8     might be something worth looking into.

9          Have you made any efforts to do that?  Let me start

10    with the plaintiff.

11         MR. HARVIS:  Thank you, Your Honor.  Yes, I mean,

12    well, this was -- Your Honor mentioned that when we appeared

13    before Your Honor in March of 2020 right before the pandemic.

14         THE COURT:  I always mention it.  Yes.

15         MR. HARVIS:  And actually Judge Orenstein who was

16    previously presiding also mentioned it at the judicial

17    conference which was in April of 2020.

18         We have tried to, you know, to kind of sniff around

19    and see if there was interest and we really gotten no, we've

20    never gotten an offer or any real indication that defendants

21    are interested so there hasn't been any headway but we're very

22    open to it and would happy to participate in anything, you

23    know, in that connection.

24         THE COURT:  What about you, Mr. Sokoloff?  There's

25    two things we can do.  We can schedule a settlement conference

16

1    with Judge Wicks.  The court also has an excellent mediation

2    program that has achieved a pretty good rate of success in

3    settling these cases.

4            Is that something that you'd be, either one of those

5    things something that you would be open to?

6            MR. SOKOLOFF:  I suppose that I would but it's not

7    my opinion.  I need to run that by my client, at least they

8    are my client now for this moment.

9            THE COURT:  Right.

10           MR. SOKOLOFF:  I'll be happy to discuss that with

11   them as the Court's suggestion.

12           THE COURT:  Why don't we do this.  Why don't you

13   discuss it with your client.

14           I take it, Mr. Harvis, for this little period, you

15   don't have any objection to me tabling the ultimate decision

16   on disqualification, do you?

17           MR. HARVIS:  I don't.  I don't, Your Honor.  The

18   only thing I would say is I think I just want, the mechanics

19   of it, I just want to discuss it with our outside ethics

20   counsel just to make sure.

21           THE COURT:  Of course.

22           MR. HARVIS:  I don't see any reason why that would

23   be a problem.

24           THE COURT:  Okay.  Yes, double check because I

25   realize, sometimes, you know, I think it's an interesting

1   question here and maybe the fact that it's an interesting

2   question is the reason to go ahead and make a decision, but

3   I'm just not entirely clear, the subject, if you want to write

4   a letter on it and I would maybe do this.  After you sit down,

5   if your ethics counsel says it's okay, after you, if you can

6   try to reach a resolution and then if you can't, then you can

7   just give me your thoughts on that limited question of whether

8   it's necessary to disqualify Mr. Sokoloff's firm from

9   representing everybody.  I don't have an opinion really about

10  it one way or the other at this moment.  I'm just, I would

11  like your thoughts on that if it comes to that.

12          Does that sound like a plan?

13          MR. HARVIS:  I certainly agree with you, Your Honor.

14  I would just want to include Mr. Garry on behalf of the

15  Village of Hempstead who's on the line.

16          THE COURT:  Oh, sure.

17          I'm sorry, Mr. Garry.

18          MR. GARRY:  That's okay.  I don't really feel left

19  out at this point.

20          THE COURT:  Okay.  Is there anything that you want

21  to -- I do apologize.  I get carried away sometimes.  Is there

22  anything that you want to add?

23          MR. HARVIS:  No, Your Honor.

24          THE COURT:  I meant Mr. Garry.

25          MR. GARRY:  No.  The answer is no.

18

1          THE COURT:  Okay.  Good.

2          So just in terms of a timetable, Mr. Sokoloff is

3   going to check with his client and Mr. Harvis is going to

4   check with ethics counsel.  That's step one on whether we even

5   want to go forward with any kind of an attempt to resolve the

6   case.

7          How much time do you think that would take?

8          MR. HARVIS:  I would say a week, Your Honor.

9          THE COURT:  Is that Mr. Harvis who said that?

10         MR. HARVIS:  It is Your Honor.  Sorry.  Thank you.

11         THE COURT:  That's okay.  I just wanted the court

12  reporter to be able to get it.

13         And Mr. Sokoloff, is that okay with you?

14         MR. SOKOLOFF:  Well, it's a good question that you

15  ask.  There are two variables here.  Three.

16         THE COURT:  Okay.

17         MR. SOKOLOFF:  Number one, there's a new

18  administration taking office in Nassau County and I'm not sure

19  where things stand with a new County Attorney who obviously

20  would want to be involved in this because it's a high profile

21  case.  Then the legislature has to get involved and there has

22  to be settlement authority above a certain amount.  This is my

23  first Nassau County case of this magnitude.

24         THE COURT:  Right.

25         MR. SOKOLOFF:  And I'm not sure what channels have

1  to be followed.  It's not like when I represented the City of

2  New York where you call the Controller --

3          THE COURT:  No.

4          MR. SOKOLOFF:  -- to get an answer.  This is a

5  little more convoluted.

6          THE COURT:  Let me pause there because, I mean, I've

7  had a number of these cases and the legislature thing, I

8  think -- sorry, I'm completely blanking -- I think plaintiff's

9  counsel, Mr. Harvis, will agree with this.  The part about

10  going to the legislature usually comes after the parties have

11  managed to hammer out a solution.

12          Am I right about that, Mr. Harvis?

13          MR. HARVIS:  In my experience, yes, Your Honor.

14          THE COURT:  I think that's for the later steps.

15          I suppose it's possible that you can have this new

16  administration that has a policy of never settling anything,

17  that would be kind of surprising, but why don't we do this.

18  Why don't you give us a status update in two weeks.  That

19  should be sufficient just to find out if it's worth it.  And

20  that would take -- and just let us know by letter.

21          MR. SOKOLOFF:  Yes.

22          THE COURT:  Same thing for you, Mr. Harvis.

23          MR. HARVIS:  Yes.

24          THE COURT:  And then we'll just take things from

25  there.  And Mr. Garry, same for you.

20

1           So that takes us to -- today is the 11th -- the

2     25th?

3           THE CLERK:  Yes, Judge.

4           THE COURT:  Is that right?  Okay.  So January 25th,

5     can you give us a status update?  Then if you decide you do

6     want to go forward with some effort to resolve it, then let me

7     know whether you want to go to Judge Wicks who's brilliant at

8     this or if you want to go the mediation route.

9           Anything else that anybody wants to put on the

10    record?

11          MR. HARVIS:  No.  This is Gabe Harvis, Your Honor.

12          So all three parties will put in letters by

13    January 25th and we'll confer in advance assuming that

14    everyone wants to have a conference about, a settlement

15    conference about whether that makes sense to have before

16    Judge Wicks or go to a private mediator.  Do I have that

17    right?

18          THE COURT:  That's great.  You can send a joint

19    status letter.  That's fine.

20          MR. HARVIS:  Sounds good.  Thank you.  I have

21    nothing else from the plaintiff.

22          THE COURT:  What about you, Mr. Sokoloff?

23          MR. SOKOLOFF:  The only thing that I would want to

24    put on the record, I don't think I did when we were discussing

25    the motion, is my agreement with Your Honor about the

1  extremely limited role that Ms. Anania would have at trial.

2          There's no dispute about the content of her notes.

3  We would not -- we would agree her notes say what they say,

4  she accurately reported what she says the people told her, so

5  we wouldn't cross-examine her at all and that's the role that

6  she would have in the trial.  She wouldn't need representation

7  at the trial.

8          THE COURT:  I don't know why -- I have to say,

9  again, maybe I'm just not thinking very clearly, but I can't

10  imagine why she would have ever needed representation in the

11  first place.

12          MR. SOKOLOFF:  Well, at the time --

13          THE COURT:  It's such a limited -- you don't have to

14  explain it.  It doesn't make any sense.  She's not a

15  defendant.  The District Attorney's Office is not a defendant.

16          MR. SOKOLOFF:  The original complaint in this case,

17  by the way, had the District Attorney as a defendant.

18          THE COURT:  Yes, the office, I guess.  Did it?

19          MR. HARVIS:  We took them out, Your Honor.  That was

20  filed by a prior counsel to Mr. Galloway.  As soon as we came

21  on the case, we took them out immediately.  They were not on

22  the case when Ms. Anania was deposed.

23          THE COURT:  They hardly ever are.  So, anyway, let's

24  try to look forward, not backward.

25          You know, the point that I was trying to make is I

22

1  always try to think of what a trial is going to look like in

2  any case and I just kind of imagined, you know, it seems to me

3  almost that you can stipulate to some of the stuff that she

4  was going to say but who knows.

5           In any event, you'll file a status letter on

6  January 25th.  I thank the parties for the thoughtful briefing

7  and we'll wait to see what happens.  Okay?

8           MR. SOKOLOFF:  Very well.

9           MR. HARVIS:  Your Honor, I'm sorry, just one more

10 thing if I may.  I apologize.  It's Gabriel Harvis.

11          THE COURT:  Yes.

12          MR. HARVIS:  We'll set a deadline for submission of

13 these supplemental letters once we look at the question of the

14 settlement conference, is that right?

15          THE COURT:  Yes, indeed.  That's fine.

16          MR. HARVIS:  Okay.  Sounds good.  Thank you very

17 much, Your Honor.

18          THE COURT:  Yes.  Why make work when we don't have

19 to do it.

20          All right.  Thank you so much.

21          MR. SOKOLOFF:  Thank you, Your Honor.

22          MS. FETT:  Thank you, Your Honor.

23          MR. HARVIS:  Thank you, Judge.

24          MR. GARRY:  Have a nice day.

25          (Matter concluded.)