UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
**GALLOWAY**, :
:
                Plaintiff, :
: **MEMORANDUM DECISION AND**
      – against – : **ORDER**
:
: 19-CV-5026 (AMD) (JMW)
**COUNTY OF NASSAU**, *et al.* :
:
                Defendants. :
:
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      On October 27, 2021, the Honorable James M. Wicks granted the plaintiff's motion to disqualify the defendants' counsel, Sokoloff Stern LLP, concluding that its concurrent representation of certain defendants—Nassau County and individual Nassau County law enforcement officers—as well as a witness—Nassau County Assistant District Attorney Sheryl Anania—presented a risk of significant trial taint. Before the Court are the defendants' objections pursuant to Federal Rule of Civil Procedure 72(a). For the reasons below, I affirm Judge Wicks's decision.

## BACKGROUND

      Around 1:30 a.m. on May 15, 2008, taxi driver Jorge Anyosa was shot in the face after a dispute with another driver in Hempstead, New York. (ECF No. 114 ¶¶ 1, 2, 19, 21.) The plaintiff was arrested and charged with shooting Anyosa, and a jury found the plaintiff guilty of attempted murder and related charges; he was sentenced to 25 years in prison in November of 2009. (*Id.* ¶¶ 66-68.) While the plaintiff was serving his sentence, a woman contacted the Nassau County District Attorney's Office Conviction Integrity Unit in July of 2018 with new information about the shooting. (*Id.* ¶ 69.) On September 13, 2018, the Chief of the Nassau

County Conviction Integrity Unit, ADA Anania, reinvestigated the plaintiff's conviction, ultimately concluding that Kenton Sherwood, not the plaintiff, shot Anyosa. (*Id.* ¶ 70, 73.) As part of her investigation, ADA Anania interviewed Anyosa (*id.* ¶ 71), and showed him a photograph of Sherwood. (ECF No. 134-1 at 7.) Anyosa identified Sherwood as the shooter. (*Id.*) ADA Anania told him, "That's not who was convicted." (*Id.*) At her deposition, ADA Anania described her conversation with Anyosa:

> And then we started talking about what had happened, what he remembered about the case. And so we talked about his description and what happened during the identification of the photos. I asked him, I think if the officers had directed him who to pick out, he said no. You know, he picked – I think I showed him [the plaintiff's] picture at some point and we sort of looked at the two side by side. And, you know, he said that after he had identified the photograph in the array, that the officers had told him that he had the right person.

In notes that she took during her interview with Anyosa, ADA Anania wrote, "After he id'd plaint. in array, detective told him he id'd right person." (ECF No. 114 ¶¶ 70-72.) ADA Anania moved to vacate the plaintiff's conviction and dismiss the indictment pursuant to N.Y.C.P.L. § 440.10(1)(g). (*Id.* ¶¶ 73, 74.) The Honorable Teresa K. Corrigan granted the application, and the plaintiff was released having served nine years in prison.

In a subsequent telephone conversation, Anyosa told ADA Anania that "[i]n court, he didn't feel 100% sure but he felt pressure because he knew" that another witness, Wilmer Hernandez, had identified the plaintiff, and that the "detectives said it was the right guy." Anyosa also said that he "wishe[d] police had told him" that the plaintiff was 5'6"; if they had "he would have told them that [the plaintiff] didn't do it." (*Id.* ¶¶ 70-72; ECF No. 134-1 at 11.)[1]

---

[1] ADA Anania also took notes of this conversation, which read, "In court, he didn't feel 100% sure but he felt pressure because he knew Wilmer had id'd him & detectives said it was the right guy" and "He wishes police had told him [the plaintiff] was 5'6" – he would have told them that [the plaintiff] didn't do it." (ECF No. 114 ¶ 72.)

2

On September 4, 2019, the plaintiff brought this case against the defendants—Nassau County, the Village of Hempstead and individual law enforcement officers from each—alleging malicious prosecution, fabrication of evidence, *Brady* violations, false imprisonment, intentional or negligent infliction of emotional distress, conspiracy, unlawful pre-trial detention and failure to intervene. (ECF No. 114 ¶¶ 85-133.) He claims that the defendants corrupted the investigation and subsequent prosecution by manufacturing inculpatory evidence and suppressing exculpatory evidence. (ECF Nos. 1, 114.) The plaintiff alleges that two defendants—a Nassau County officer and a Village of Hempstead officer—told Anyosa that he picked the "right guy" after he identified the plaintiff in the lineup (ECF No. 114 ¶¶ 39, 40), and that Anyosa identified the plaintiff in the grand jury and at trial because the officers assured him, falsely, that he had identified the right person. (*Id.* ¶ 99.) The plaintiff also claims that the officers did not tell the prosecutors, the judge or the plaintiff about what they said to Anyosa. (*Id.* ¶ 41.) The defendants deny the allegations, including that they told Anyosa that he had picked the "right guy." (ECF No. 116 ¶¶ 40, 98, 99.)

Sokoloff Stern LLP represents Nassau County and its law enforcement officers (the "County defendants"), as well as ADA Anania, who is a Nassau County employee. (ECF Nos. 31, 54, 124-4, 132-1.)[2] On September 11, 2020, the plaintiff deposed ADA Anania. (ECF No. 124-4 at 3.) When the plaintiff's counsel asked her about Nassau County identification procedures, the defendants' counsel objected, claiming that the question called for an answer that was protected by the work-product privilege. (*Id.*)

---

[2] The Village of Hempstead and its law enforcement officers (the "Village Defendants") are represented by other counsel. For purposes of this discussion, references to "the defendants' counsel" refers to Sokoloff Stern LLP.

3

On September 7, 2021, the plaintiff moved before Judge Wicks to disqualify Sokoloff Stern LLP (ECF No. 122), alleging that the defense counsel's concurrent representation of the County defendants and ADA Anania posed an insurmountable conflict. (ECF No. 123 at 14-15.) According to the plaintiff, by asserting the work-product privilege when the plaintiff's lawyer asked about Nassau County's identification procedures, the defense counsel "prioritized the interests of the County in avoiding liability over the core fact-finding function of the discovery process" (*id.* at 14), and that representation of both the Nassau County officers and ADA Anania presented a non-waivable conflict under New York Rule of Professional Conduct 1.7. (*Id.* at 4.) On September 22, 2021, Judge Wicks agreed that the work product objection was improper and ordered that the deposition continue, "limited only to the question posed by Plaintiff's counsel regarding the legality of the police identification procedures, as well as any reasonable outgrowth of questioning following her response." (September 22, 2021 Order.)

On October 5, 2021, the plaintiff's counsel continued questioning ADA Anania, who was still represented by the County defendants' counsel. (ECF No. 132-1 at 7.) The following exchange occurred:

> Q. In determining that [the plaintiff] was innocent and that his conviction should be vacated, did your office credit the statements of the victim Jorge Anyosa?
> . . .
> A. What statements are you talking about?
> Q. The statements that he gave you when you interviewed him about what happened?
> A. That was part of it.
> Q. Is that a yes?
> A. Yes. I would say I credited it, yes.
> Q. Okay. Did you investigation find any reason to doubt the veracity of Mr. Anyosa?
> . . .
> A. You know, I have to tell you, I didn't—I didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime. So I took it at face value, it didn't really affect my investigation, but I

4

> can't say that I did an in[-]depth investigation as to everything that he said to me as to whether it's true or not.

(ECF No. 132-1 at 13-14.)

In a comprehensive and well-reasoned opinion, Judge Wicks granted the plaintiff's motion to disqualify Sokoloff Stern LLP. (ECF No. 137.) Judge Wicks rejected the plaintiff's claims that there were conflicts among the officers, or between the officers and Nassau County, but agreed that Sokoloff Stern LLP's representation of both the County defendants and ADA Anania posed an unwaivable conflict. (*Id.*) On November 26, 2021, the County defendants objected under Rule 72(a) to Judge Wicks's order. (ECF No. 142.)[3]

## STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure, which governs a district judge's review of a magistrate judge's non-dispositive pretrial rulings, provides that "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). An order is "clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" *Storms v. United States*, No. 13-CV-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)), and "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation and quotation omitted). "This standard is

---

[3] Both parties submitted briefs on the County defendants' objection (ECF Nos. 142-145, 148), and after a January 11, 2022 hearing, the parties submitted additional briefing. (ECF Nos. 152, 153.)

5

highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [her] discretion." *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (quotations and citations omitted). "[B]ecause motions for disqualification of counsel are non-dispositive," a magistrate judge's decision is "entitled to th[is] more deferential standard of [review]." *JKAYC, LLC v. Noah Bank*, No. 20-CV-943, 2021 WL 4893677, at *3 (E.D.N.Y. Oct. 20, 2021).

## DISCUSSION

A motion to disqualify is "committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 71 (2d Cir. 1990)). "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Because disqualification "invades the sanctity of the attorney-client relationship," it is generally "disfavored in the Second Circuit." *Goodwine v. Lee*, No. 10-CV-6019, 2014 WL 4377855, at *2 (S.D.N.Y. Sept. 3, 2014) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). And because motions to disqualify "are often interposed for tactical reasons," *Evans*, 715 F.2d at 792 (quoting *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), courts require a "high standard of proof to disqualify the non-movant's counsel." *Walker v. Royce*, No. 20-CV-2386, 2021 WL 930348, at *2 (E.D.N.Y. Mar. 11, 2021) (quoting *Ello v. Singh*, No. 05-CV-9625, 2006 WL 2270871, at *2 (S.D.N.Y. Aug. 7, 2006)). However, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

Disqualification is warranted only where "an attorney's conduct tends to taint the underlying trial," *Nyquist*, 590 F.2d at 1246, because "other ethical violations can be left to

6

federal and state disciplinary mechanisms." *Hempstead Video*, 409 F.3d at 132; *see also Walker*, 2021 WL 930348, at *3 (permitting disqualification only if "an attorney's conduct tends to taint the underlying trial" (quoting *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015)). The court's analysis "may be informed by the disciplinary rules governing lawyers in New York, or the standards set by the American Bar Association." *Id.* (internal quotations and alterations omitted); *see also Hempstead Video*, 409 F.3d at 132 ("Such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.").

As Judge Wicks concluded, New York Rule of Professional Conduct 1.7, known as the "concurrent conflict" rule, is the applicable rule. (ECF No. 137 at 1.) Pursuant to Rule 1.7, a lawyer cannot represent a client if "a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." N.Y. Rules Prof'l Conduct 1.7(a), 22 N.Y.C. R.R. § 1200. Rule 1.7 permits a lawyer with a concurrent conflict to represent a client if "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." *Id.* at 1.7(b). The County defendants executed a waiver in August of 2021 (ECF No. 126-18), but ADA Anania has not executed a waiver. (*Id.*)

7

In concluding that counsel's concurrent representation of the County defendants and ADA Anania created "a risk of significant trial taint," Judge Wicks cited ADA Anania's October 2021 testimony that she "credited" Anyosa's statements, including that "the detectives conducting the photo array told him that he identified the correct person." (ECF No. 137 at 9-10.) As Judge Wicks observed, ADA Anania's testimony "cuts *directly* against" the defendants' denial that they told Anyosa he picked the "right guy," making her "more aligned with Plaintiff in this matter than with Defendants." (*Id.*) Judge Wicks explained that "[o]ne can easily imagine" the plaintiff calling ADA Anania at trial and confronting her with her testimony, "placing Defense Counsel in the impossible position of having represented a witness earlier in the proceedings who, now before a jury, is testifying directly against the Defendants." Judge Wicks cited *Blake v. Race*, No. 01-CV-6954 (E.D.N.Y. Jan. 11 2005), which "addressed this precise issue"—a prosecutor's testimony was "directly contrary to the interests" of the defendant-officer, creating a conflict warranting disqualification. (*Id.* at 9-10.)

The defendants challenge Judge Wicks's conclusion that ADA Anania "credited" Anyosa's statements that "the detectives conducting the photo array told him that he identified the correct person." (ECF No. 137 at 9-10.) According to the defendants, the questions posed to the ADA were "so vague that the answers they produce are too ambiguous to support his interpretation of them." (ECF No. 142 at 17.) The defendants say that ADA Anania's testimony about her impressions of Anyosa's statements "included so much more" than whether she believed him; thus, the defendants assert, it is "impossible to discern from her answer" that she believed Anyosa, as Judge Wicks concluded. (*Id.*) In addition, they argue that when ADA Anania said, "Yes. I would say I credited" Anyosa's statements, she did not actually mean that. (ECF No. 142 at 17 ("The answer stretches the meaning of 'credited' too far to interpret it to

8

mean that Ms. Anania believed Mr. Anyosa's statement as true and took a position on it contrary to Det. Lipson.").)

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)). "Under the clear error standard, therefore, a finding that is plausible in light of the full record—even if another is equally or more so—must govern." *JKAYC*, 2021 WL 4893677, at *3 (citing *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017)) (internal quotation marks and alterations omitted).

Judge Wicks's conclusion that ADA Anania testified that she credited Anyosa's statements is not only plausible; it is exactly what she said. The fact that ADA Anania also said that she "didn't go further in perusing that because there were so many other things that pointed to someone else committing the crime" does not alter Judge Wicks's conclusion because ADA Anania also said that she took Anyosa's statements "at face value." Even if I were to consider the additional transcripts of ADA Anania's testimony (ECF Nos. 144, 152-1)—which were not before Judge Wicks—it does not affect my conclusion that Judge Wicks's commonsense interpretation was completely reasonable. The defendants posit other interpretations of what ADA Anania meant when she said that she "credited" Anyosa; for example, they say that her statement was "simply a profession of agnosticism." (ECF No. 142 at 18.) But even accepting the defendants' theories about what ADA Anania might have meant when she testified that she credited Anyosa's statements, Judge Wicks's interpretation was obviously plausible.

The defendants' additional argument—that ADA Anania could not be questioned about trial about her impressions of Anyosa's credibility (ECF No. 142 at 5, 7, 19)—is not a basis for reversing Judge Wicks's decision under Rule 72. "[U]nder the 'contrary to law' standard of

9

review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure." *JKAYC*, 2021 WL 4893677, at *3 (citing *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)); *see also Weiner*, 2014 WL 2048381, at *3 (explaining that the "contrary to law" standard is met when an order "fails to apply or misapplies relevant statutes, case law, or rules of procedure."). The defendants have not established that Judge Wicks failed to apply or misapplied the law. Moreover, it is impossible to predict at this stage what ADA Anania might say at trial, and whether there are circumstances under which her opinion about Anyosa's statements might be relevant. *See United States v. Huawei Techs. Co.*, No. 18-CR-457, 2020 WL 903007, at *3 (E.D.N.Y. Feb. 25, 2020) (explaining that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" (quoting *Wheat v. United States*, 486 U.S. 153, 162 (1988))). As Judge Wicks found, her testimony that she credited Anyosa put her "at odds" with the County defendants. (ECF No. 137 at 9.)[4]

---

[4] The two cases upon which the defendants rely—*Schultz v. Thomas* and *Holmes v. City of Chicago*—do not compel a different result, and not just because they are out-of-circuit decisions. (ECF No. 142 at 20.) In *Schultz v. Thomas*, the Seven Circuit ruled that the state court judge who tried the underlying state criminal trial should not have been permitted to testify about his credibility findings at the subsequent civil trial on the plaintiff's claims, because it "unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them." *Schultz v. Thomas*, 832 F.2d 108, 110 (7th Cir. 1987). In *Holmes v. City of Chicago*, the District Court for the Northern District of Illinois ruled that "the reasoning and impressions of credibility of the Impound Hearing Officer, the IG, and the ASAs are not admissible" because "[a]llowing reference to their opinions about the credibility of Defendant would invade the province of the jury in assessing the credibility of testifying witnesses." No. 09-CV-2481, 2016 WL 6442117, at *17 (N.D. Ill. Nov. 1, 2016) (citing *Schultz*, 832 F.2d at 110-11). Of course, Judge Wicks was not making an evidentiary ruling, as the courts were in *Schultz* and *Thomas*. In any event, the cases are different. ADA Anania, unlike the judge in *Schultz* or the official in *Thomas*, reinvestigated the case against the plaintiff, and recommended to the court that it be dismissed. At a trial, she could be questioned about her investigation and decision. *See Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) ("Plaintiffs were not required to prove their innocence to win on their claims at trial. However, the evidence of their innocence provides an important backdrop for their claims at trial.").

10

Finally, I reject the defendants' claim that Judge Wicks's citation to *Blake v. Race* was "contrary to law" because the facts in *Blake* are different. (ECF No. 142 at 5, 21-23.) Like the plaintiff here, Blake brought a 1983 action against police officers for, among other things, false arrest and malicious prosecution, claiming that they withheld *Brady* material from the prosecution, resulting in his wrongful conviction, which the Brooklyn District Attorney ultimately moved to vacate. *Blake*, ECF No. 33. The prosecutor who tried the case was prepared to state in an affidavit that he was never informed of the allegedly exculpatory information, but then refused to sign the affidavit after he was assigned an attorney who also represented the defendants. *Blake*, ECF No. 75 at 3. Blake moved to disqualify the defendants' counsel from representing the ADA because there was a non-waivable conflict of interest. *Id.* at 11-19.

The Honorable Cheryl L. Pollak held that it was "very likely that the ADA will testify that the [exculpatory information] was clearly relevant and exculpatory and that the officers should have known that this impeachment evidence was subject to disclosure under *Brady*. This testimony would be directly contrary to the interests of [one of the defendant-officers]." *Id.* at 13. Judge Pollak also found that there was "the potential that at trial [the defendant-officers] may testify that they were in fact aware of the information and did disclose this information to the prosecutor. As counsel for plaintiff has argued, plaintiff is entitled to know what the prosecutor was told and by whom, what he knew and what he was obligated to do with the information." *Id.* Judge Pollak observed that the defendants' counsel could be a witness based on his interaction with the prosecutor, that it was "axiomatic that an attorney cannot simultaneously represent his client as an advocate and serve as a witness at the same trial," and that "any cross-examination of the ADA, suggesting that defendants' counsel attempted to

11

suppress or distort the ADA's testimony, would clearly taint the trial." *Id.* at 14-17.  As Judge Wicks found, the *Blake* analysis is applicable to aspects of this case.  His reliance on this case was not "clearly erroneous" by any measure.  (*See* ECF No. 142 at 23.)[5]

## CONCLUSION

The Court affirms Judge Wicks's decision to disqualify Sokoloff Stern LLP from representing the defendants in this matter.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 4, 2022

---

[5] Materials submitted after Judge Wicks's decision puts the case in a different light than it was before Judge Wicks.  For example, ADA Anania's role went beyond the reinvestigation; she also supervised the original prosecution of the plaintiff.  (*See* ECF Nos. 153-1 (describing how she supervised the plaintiff's 2009 prosecution, and advised the lead prosecutor how to question a key witness).)  In addition, these materials show that the defendants plan to challenge the genesis of the reinvestigation.  (*See* ECF No. 153-3 at 4.)  While I do not consider these materials as part of the record because they were not before Judge Wicks when he made his decision, they obviously would not change my ruling.  *See Lopez Espiritu v. Hartman*, No. 16-CV-4623, 2020 WL 93891, at *3 (E.D.N.Y. Jan. 8, 2020) (explaining that courts are "confined to the factual record presented to the magistrate judge when reviewing a magistrate's non-dispositive rulings to determine whether they were clearly erroneous or contrary to law").