UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

JOSIAH GALLOWAY,                          :    Docket No.

                                          :    19-CV-5026 (AMD) (JMW)

                         Plaintiff,         :

                                          :

              -against-             :

                                          :

NASSAU COUNTY; THE INCORPORATED VILLAGE   :
OF HEMPSTEAD; Police Officer STEVEN HOROWITZ,   :
Shield No. 144; Detective MATTHEW ROSS, Shield No.   :
834; Detective CHARLES DECARO, Shield No. 1047;   :
Detective RONALD LIPSON, Shield No. 1296; Detective   :
THOMAS DLUGINSKI, Shield No. 7900; Detective   :
GEORGE DARIENZO, Shield No. 1038; Detective   :
KEVIN CUNNINGHAM, Shield No. 112; Detective   :
Sergeant RICHARD DORSI; Detective JOSEPH P.   :
SORTINO,   :

                                          :

                                          :

                         Defendants.      :

---------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
# COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for County Defendants
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

285318465v.2

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................ 1

STANDARD FOR SUMMARY JUDGMENT ..................................................................... 3

ARGUMENT .......................................................................................................................... 4

I.     PLAINTIFF'S FEDERAL AND STATE LAW CLAIMS FOR MALICIOUS PROSECUTION AND FALSE IMPRISONMENT FAIL AS A MATTER OF LAW ................................................................................... 4

     A.     The County Defendants Did Not Initiate or Continue the Prosecution Against the Plaintiff, and Did Not Act With Malice .............. 4

     B.     The Existence of Probable Cause Precludes Plaintiff's Malicious Prosecution and State Law False Imprisonment Claims ........................... 6

          1.     Probable Cause Was Based on Plaintiff's Identification from Two (2) Photo Arrays ............................................................ 7

          2.     Both the Victim and the Witness Also Positively Identified Plaintiff from a Line-Up .............................................. 9

          3.     Probable Cause Existed Based On the Totality of Circumstances .......................................................................... 9

          4.     The District Attorney's Independent Judgment Breaks the Chain of Causation, and Probable Cause Exists Because Plaintiff was Indicted By a Grand Jury ....................... 11

II.    PLAINTIFF'S DENIAL OF FAIR TRIAL AND DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW ........................................................ 14

     A.     Plaintiff Cannot Rely on Ogletree's Criminal Trial Testimony To Support His Claims ...................................................................... 14

     B.     Plaintiff's Claims of Evidence Suppression/*Brady* Violations Must Fail ........................................................................................ 15

     C.     Plaintiff's Fabrication of Evidence Claims Fail ...................................... 17

D.      Any Claim Premised on Fabricated or False Identifications Fails as the Photo Array and Line-Up Procedures Were Not Unduly Suggestive and Not Constitutionally Defective ........................................ 21

E.      Plaintiff's Defense Counsels Strategy in Opening the Door to Admission of Evidence of the Photo Arrays and Composite Sketch was a Superseding/Intervening Cause Preventing Plaintiff From Pursuing Any Fair Trial Claim Regarding the Photo Array Identifications ........................................................................................... 23

III.    PLAINTIFF'S UNLAWFUL DETENTION CLAIM FAILS ............................. 25

IV.     PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW ............... 27

V.      PLAINTIFF'S CONSPIRACY CLAIM FAILS AS A MATTER OF LAW ....... 29

VI.     PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AND ALL CLAIMS AGAINST  THE COUNTY DEFENDANTS MUST BE DISMISSED AS THEY DID NOT INTENTIONALLY AND DIRECTLY PARTICIPATE IN CONDUCT CONSTITUTING A VIOLATION OF PLAINTIFF'S CIVIL RIGHTS ............................................................................ 30

VII.    THE COUNTY DEFENDANTS ARE SHIELDED FROM ANY LIABILITY BY THE DOCTRINE OF QUALIFIED IMMUNITY ................... 34

A.      Qualified Immunity Shields the County Defendants from Plaintiff's Malicious Prosecution and False Imprisonment Claims .......... 35

B.      Qualified Immunity Shields the County Defendants from Plaintiff's Denial of Fair Trial, Due Process, and Remaining Claims ...................................................................................................... 38

VIII.   THE VILLAGE DEFENDANTS' CROSS-CLAIMS MUST BE DISMISSED ......................................................................................................... 40

CONCLUSION ....................................................................................................................... 40

-ii-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdur Raheem v. Kelly*,
    257 F.3d 122 (2d Cir. 2001)......................................................................21

*Ackerson v. City of White Plains*,
    702 F.3d 15 (2d Cir. 2012).......................................................................35

*Alicea v. City of N.Y.*,
    2016 U.S. Dist. LEXIS 58860 (S.D.N.Y. May 2, 2016)..........................31

*Alvarado v. City of N.Y.*,
    453 F. App'x 56 (2d Cir. 2011) ..................................................................9

*Amato v. Hartnett*,
    926 F. Supp. 2d 416 (S.D.N.Y. 2013)......................................................29

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).....................................................................................3

*Annunziata v. City of N.Y.*,
    2008 U.S. Dist. LEXIS 42097 (S.D.N.Y. May 28, 2008)........................15

*Barnes v. City of N.Y.*,
    2021 U.S. Dist. LEXIS 14861 (E.D.N.Y. Jan. 26, 2021) ..................19, 36

*Bellamy v. City of N.Y.*,
    914 F.3d 727 (2d Cir. 2019)................................................................16, 17

*Bermudez v. City of N.Y.*,
    790 F.3d 368 (2d Cir. 2015)................................................................13, 14

*Berry v. Marchinkowski*,
    137 F. Supp. 3d 495 (S.D.N.Y. 2015).....................................................40

*Bouche v. City of Mt. Vernon*,
    2013 U.S. Dist. LEXIS 11424 (S.D.N.Y. Jan. 28, 2013)........................37

*Boyd v. City of N.Y.*,
    336 F.3d 72 (2d Cir. 2003)..........................................................................6

*Breeden v. City of N.Y.*,
    2014 U.S. Dist. LEXIS 4165 (E.D.N.Y. Jan. 13, 2014) ...........................5

285318465v.2

*Burgess v. DeJoseph*,
    725 F. App'x 26 (2d Cir. 2018) ........................................................................7

*Butler v. Hesch*,
    2020 U.S. Dist. LEXIS 49437 (N.D.N.Y. Mar. 23, 2020).....................................40

*Caldarola v. Calabrese*,
    298 F.3d 156 (2d Cir. 2002)......................................................................19, 35

*Campbell v. McCarthy*,
    2020 U.S. Dist. LEXIS 151413 (S.D.N.Y. Aug. 19, 2020)...........................22, 28

*Carson v. Lewis*,
    35 F. Supp. 2d 250 (E.D.N.Y. 1999) ................................................................11

*Castro v. Cty. of Nassau*,
    739 F. Supp. 2d 153 (E.D.N.Y. 2010) ..............................................................40

*Celestin v. City of N.Y.*,
    581 F. Supp. 2d 420 (E.D.N.Y. 2008) .....................................................7, 29, 30

*Cerrone v. Brown*,
    246 F.3d 194 (2d Cir. 2001).............................................................................34

*City of Canton v. Harris*,
    489 U.S. 378 (1988).........................................................................................28

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986).........................................................................................27

*Connick v. Thompson*,
    563 U.S. 51 (2011)...........................................................................................27

*Coolick v. Hughes*,
    699 F.3d 211 (2d Cir. 2012).............................................................................35

*Creighton v. City of N.Y.*,
    2017 U.S. Dist. LEXIS 21194 (S.D.N.Y. Feb. 14, 2017).....................................18

*Curley v. Vill. of Suffern*,
    268 F.3d 65 (2d Cir. 2001).............................................................................7, 9

*Dash v. Montas*,
    2020 U.S. Dist. LEXIS 56475 (E.D.N.Y. Mar. 31, 2020).................................20, 31

*Davenport v. City of N.Y.*,
    2017 U.S. Dist. LEXIS 160412 (E.D.N.Y. Sept. 28, 2017).................................18

*DeCarlo v. Fry*,
    141 F.3d 56 (2d Cir. 1998)......................................................................28

*Delamota v. City of N.Y.*,
    2016 U.S. Dist. LEXIS 68130 (E.D.N.Y. May 23, 2016)
    *aff'd,* 683 F. App'x 65 (2d Cir. 2017)..............................................24, 26

*Devenpeck v. Alford*,
    543 U.S. 146 (2004).............................................................................7

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)..........................................................................34

*Drummond v. Castro*,
    522 F. Supp. 2d 667 (S.D.N.Y. 2007).......................................................7

*Dufort v. City of N.Y.*,
    874 F.3d 338 (2d Cir. 2017).............................................................6, 17

*Edwards v. Cnty. of Nassau*,
    2022 U.S. Dist. LEXIS 57456 (E.D.N.Y. Mar. 29, 2022).............................20

*Escalera v. Lunn*,
    361 F.3d 737 (2d Cir. 2004).............................................................35, 37

*Escobar v. City of N.Y.*,
    766 F. Supp. 2d 415 (E.D.N.Y. 2011) .......................................................28

*Fappiano v. City of N.Y.*,
    2014 U.S. Dist. LEXIS 179584 (E.D.N.Y. Dec. 31, 2014),
    *aff'd,* 640 F. App'x 115 (2016).........................................12, 15, 16, 18

*Fields v. New York*,
    2021 U.S. Dist. LEXIS 159927 (E.D.N.Y. Aug. 24, 2021)........................22, 38

*Galgano v. Cty. of Putnam*,
    2018 U.S. Dist. LEXIS 169725 (S.D.N.Y. Sept. 28, 2018)...........................38

*Gallimore v. Feliciano*,
    2015 U.S. Dist. LEXIS 80379 (S.D.N.Y. June 19, 2015).............................22

*Ganek v. Leibowitz*,
    874 F.3d 73 (2d Cir. 2017).....................................................................38

*Gaston v. City of N.Y.*,
    851 F. Supp. 2d 780 (S.D.N.Y. 2012)....................................................7, 8

*Glassman v. City of N.Y.*,
  557 F. App'x 97 (2d Cir. 2014) ...........................................................................27

*Gonzalez v. Portuondo*,
  2001 U.S. Dist. LEXIS 10698 (S.D.N.Y. July 30, 2001) .........................................17

*Greene v. City of N.Y.*,
  2017 U.S. Dist. LEXIS 37243 (E.D.N.Y. Mar. 15, 2017)
  *aff'd*, 742 F. App'x 532 (2d Cir. 2018)..............................................................15, 29

*Hamilton v. City of New York*,
  2019 U.S. Dist. LEXIS 56606 (E.D.N.Y. Mar. 19, 2019) .....................................24

*Harewood v. Braithwaite*,
  64 F. Supp. 3d 384 (E.D.N.Y. 2014) ...................................................................25

*Harlen Assocs. v. Inc. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001)...................................................................................4

*Hicks v. Marchman*,
  719 F. App'x 61 (2d Cir. 2018) ...........................................................................27

*Hoyos v. City of N.Y.*,
  999 F. Supp. 2d 375 (E.D.N.Y. 2013) ..................................................................13

*Jean-Laurent v. C.O. Wilkinson*,
  438 F. Supp. 2d 318 (S.D.N.Y. 2006) *aff'd* 461 F. App'x 18 (2d Cir. 2012).........................31

*Jeffreys v. City of N.Y.*,
  426 F.3d 549 (2d Cir. 2005).................................................................................20

*Jenkins v. City of N.Y.*,
  478 F.3d 76 (2d Cir. 2007)..............................................................................22, 29

*Johnson v. City of N.Y.*,
  2017 U.S. Dist. LEXIS 81359 (S.D.N.Y. May 26, 2017).......................................26

*Johnson v. City of N.Y.*,
  940 F. Supp. 631 (S.D.N.Y. 1996) ........................................................................35

*Jovanovic v. City of N.Y.*,
  2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010),
  *aff'd*, 486 F. App'x 149 (2d Cir. 2012)........................................................13, 19, 37

*Keith v. City of N.Y.*,
  2014 U.S. Dist. LEXIS 166469 (S.D.N.Y. Dec. 1, 2014) .........................6, 7, 29, 36

285318465v.2

*Little v. City of N.Y.*,
487 F. Supp. 2d 426 (S.D.N.Y. 2007) .................................................................7

*Loria v. Gorman*,
306 F.3d 1271 (2d Cir. 2002) ...........................................................................31

*Lucente v. Cty. of Suffolk*,
980 F.3d 284 (2d Cir. 2020) .............................................................................28

*Malley v. Briggs*,
475 U.S. 335 (1986) ..........................................................................................35

*Manganiello v. City of N.Y.*,
612 F.3d 149 (2d Cir. 2010) ..............................................................4, 5, 6, 12

*Mara v. Rilling*,
921 F.3d 48 (2d Cir. 2019) ................................................................8, 22, 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................3

*Matthews v. City of N.Y.*,
889 F. Supp. 2d 418 (E.D.N.Y. 2012) ...............................................................30

*Mazza v. City of N.Y.*,
1999 U.S. Dist. LEXIS 13192 (E.D.N.Y. July 13, 1999) ...................................7

*McGrier v. City of N.Y.*,
2019 U.S. Dist. LEXIS 38688 (S.D.N.Y. Mar. 11, 2019) ...................................5

*Miner v. Clinton Cty.*,
541 F.3d 464 (2d Cir. 2008) ...............................................................................3

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ....................................................................................27, 28

*Morse v. Fusto*,
804 F.3d 538 (2d Cir. 2015) .........................................................................17, 18

*Newton v. City of N.Y.*,
566 F. Supp. 2d 256 (S.D.N.Y. 2008) ...............................................................28

*Norwood v. Mason*,
524 F. App'x 762 (2d Cir. 2013) .........................................................................7

*Nunez v. Diedrick*,
2017 U.S. Dist. LEXIS 77332 (S.D.N.Y. May 18, 2017) ..................................36

285318465v.2

*O'Brien v. City of Yonkers*,
   2013 U.S. Dist. LEXIS 43551 (S.D.N.Y. Mar. 22, 2013) ...................................7, 12

*Oregon v. Mathiason*,
   429 U.S. 492 (1977)..........................................................................................39

*Outlaw v. City of Hartford*,
   884 F.3d 351 (2d Cir. 2018)...............................................................................35

*Panetta v. Crowley*,
   460 F.3d 388 (2d Cir. 2006)...........................................................................6, 19

*Parisi v. Suffolk Cnty.*,
   2009 U.S. Dist. LEXIS 112388 (E.D.N.Y. Nov. 30, 2009)...................................12

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)..........................................................................................28

*People v. Green*,
   14 A.D.3d 578 (2d Dep't 2005) ....................................................................22, 29

*People v. Griffin*,
   109 A.D. 740 (1st Dep't 2013) *leave to appeal denied* 22 N.Y.3d 1199 (2014)..............22, 29

*People v. Thomas*,
   187 A.D.3d 949 (2d Dep't 2020) *leave to appeal denied* 36 N.Y.3d 976 (2020) ............23, 28

*Perry v. New Hampshire*,
   565 U.S. 228 (2012)..........................................................................................21

*Piper v. Portuonodo*,
   82 F. App'x 51 (2d Cir. 2003) ...........................................................................22

*Poe v. Leonard*,
   282 F.3d 123 (2d Cir. 2002)...............................................................................35

*Poux v. Cnty. of Suffolk*,
   2012 U.S. Dist. LEXIS 41196 (E.D.N.Y. Mar. 23, 2012) ...................................7, 12

*Poventud v. City of N.Y.*,
   750 F.3d 121 (2d Cir. 2014)...............................................................................16

*Provost v. City of Newburgh*,
   262 F.3d 146 (2d Cir. 2001)...............................................................................31

*R.G. Group, Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984).................................................................................3

285318465v.2

*Raffaele v. City of N.Y.*,
   242 F. Supp. 3d 152 (E.D.N.Y. 2017) ...................................................................3

*Ramchair v. Conway*,
   601 F.3d 66 (2d Cir. 2010) ..............................................................................14

*Redd v. N.Y.S. Div. of Parole*,
   678 F.3d 166 (2d Cir. 2012) ..............................................................................3

*Ribot v. City of N.Y.*,
   2017 U.S. Dist. LEXIS 15691 (S.D.N.Y. Feb. 3, 2017) ............................................9

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F.3d 123 (2d Cir. 1997) ........................................................................17, 30

*Rizk v. City of N.Y.*,
   462 F. Supp. 3d 203 (E.D.N.Y. 2020) .................................................................30

*Robinson v. Artus*,
   664 F. Supp. 2d 247 (W.D.N.Y. 2007) ...............................................................21

*Rodriguez v. City of N.Y.*,
   2018 U.S. Dist. LEXIS 87553 (S.D.N.Y. May 24, 2018) .........................................31

*Roe v. City of Waterbury*,
   542 F.3d 31 (2d Cir. 2008) ..............................................................................27

*Rohman v. N.Y.C. Transit Auth.*,
   215 F.3d 208 (2d Cir. 2000) ...........................................................................4, 5

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir. 2011) ..............................................................................3

*Roldan v. Artuz*,
   78 F. Supp. 2d 260 (S.D.N.Y. 1999) ..................................................................21

*Rounseville v. Zahl*,
   13 F.3d 625 (2d Cir. 1994) ...............................................................................6

*Russo v. City of Bridgeport*,
   479 F.3d 196 (2d Cir. 2007) ........................................................................25, 26

*Savino v. City of N.Y.*,
   331 F.3d 63 (2d Cir. 2003) ..............................................................................12

*Selvon v. City of N.Y.*,
   2020 U.S. Dist. LEXIS 208902 (E.D.N.Y. Nov. 9, 2020) ........................................29

*Sessoms v. Cnty. of Suffolk*,
  2023 U.S. Dist. LEXIS 75545 (E.D.N.Y. May 1, 2023) ..........................................7

*Smalls v. Collins*,
  10 F.4th 117 (2d Cir. 2021) ..........................................17

*Smolicz v. Borough/Town of Naugatuck*,
  281 Fed. Appx. 32 (2d Cir. 2008) ..........................................18

*Stallings v. Heath*,
  2012 U.S. Dist. LEXIS 30293 (S.D.N.Y. Mar. 7, 2012) ..................................23, 29

*Stansbury v. Wertman*,
  721 F.3d 84 (2d Cir. 2013)..........................................7, 8, 9, 10

*Thomas v. Mason*,
  2023 U.S. Dist. LEXIS 54585 (N.D.N.Y. Mar. 30, 2023)..................................39

*Thompson v. City of N.Y.*,
  603 F. Supp. 2d 650 (S.D.N.Y. 2009)..........................................9

*Toliver v. City of N.Y.*,
  2013 U.S. Dist. LEXIS 175670 (S.D.N.Y. Dec. 10, 2013),
  *adopted by* 2014 U.S. Dist. LEXIS 17227 (S.D.N.Y. Feb. 11, 2014) ..................................31

*Townes v. City of N.Y.*,
  176 F.3d 138 (2d Cir. 1999)..........................................11

*United States v. Amato*,
  2006 U.S. Dist. LEXIS 43366 (E.D.N.Y. June 27, 2006) ..................................15

*United States v. Anderson*,
  929 F.2d 96 (2d Cir. 1991)..........................................39

*United States v. Barro*,
  2013 U.S. Dist. LEXIS 108665 (E.D.N.Y. 2013)..........................................20

*United States v. Brown*,
  167 F. Supp. 3d 447 (W.D.N.Y. 2016) ..........................................18

*United States v. Concepcion*,
  983 F.2d 369 (2d Cir. 1992)..........................................21

*United States v. Jarvis*,
  560 F.2d 494 (2d Cir. 1977)..........................................18

*United States v. Leonardi*,
  623 F.2d 746 (2d. Cir. 1980), *cert denied,* 447 U.S. 928 (1980)..........................................18

285318465v.2

*United States v. Levy*,
   217 F. Supp. 3d 643 (E.D.N.Y. 2016) ................................................................20

*United States v. Thai*,
   29 F.3d 785 (2d Cir. 1994)..................................................................................18, 21

*United States v. Zackson*,
   6 F.3d 911 (2d Cir. 1993) ....................................................................................16

*Valentin v. City of Rochester*,
   783 F. App'x 97 (2d Cir. 2019) ...........................................................................16

*Velazquez v. Poole*,
   614 F. Supp. 2d 284 (E.D.N.Y. 2007) ...............................................................21

*Virgil v. Town of Gates*,
   455 F. App'x 36 (2d Cir. 2012) ...........................................................................9

*W. World Ins. Co. v. Stack Oil, Inc.*,
   922 F.2d 118 (2d Cir. 1990)................................................................................4

*Walston v. City of N.Y.*,
   289 F. Supp. 3d 398 (E.D.N.Y. 2018) *aff'd*, 754 F. App'x 65 (2d Cir. 2019)........................35

*Webb v. Goord*,
   340 F.3d 105 (2d Cir. 2003)...............................................................................29

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996).................................................................................4

*White v. Frank*,
   855 F.2d 956 (2d Cir. 1988)...............................................................................11

*Williams v. City of N.Y.*,
   2003 U.S. Dist. LEXIS 19078 (S.D.N.Y. Oct. 23, 2003) .................................11, 12

*Williams v. City of N.Y.*,
   2012 U.S. Dist. LEXIS 19207 (E.D.N.Y. Feb. 15, 2012)................................36, 37

*Williams v. City of N.Y.*,
   2016 U.S. Dist. LEXIS 74084 (S.D.N.Y. June 7, 2016)............................23, 28, 36

*Wilson v. Bantum*,
   1993 U.S. Dist. LEXIS 5924 (E.D.N.Y. Apr. 28, 1993) ...................................18

*Wray v. City of N.Y.*,
   490 F.3d 189 (2d Cir. 2007)................................................................................24, 27

*Wright v. Smith*,
   21 F.3d 496 (2d Cir. 1994)................................................................................31

*Zalaski v. City of Hartford*,
   723 F.3d 382 (2d Cir. 2013)...........................................................................35

*Zalewski v. Nappi*,
   2016 U.S. Dist. LEXIS 194725 (E.D.N.Y. Sept. 1, 2016).....................................37

*Zellner v. Summerlin*,
   494 F.3d 344 (2d Cir. 2007)...........................................................................34

**Statutes**

42 U.S.C. § 1983 ............................................................................................ *passim*

**Other Authorities**

Fourth Amendment ...................................................................................2, 4, 13, 25

Fourteenth Amendment ...................................................................................8, 14

Fed. R. Civ. P. § 56(a) ........................................................................................3

Fed. R. Evid. § 804(b)(1) .....................................................................................15

Local Rule § 56.1 ........................................................................................... *passim*

## INTRODUCTION

Defendants Nassau County (the "County"), Nassau County Police Department ("NCPD") Detectives Charles Decaro ("Decaro"), Thomas Dluginski ("Dluginski") and George Darienzo ("Darienzo"), retired Detectives Matthew Ross ("Ross") and Ronald Lipson ("Lipson"), and retired Detective Sergeant Richard Dorsi ("Dorsi") (collectively, the "County defendants"), respectfully submit this memorandum of law in support of their motion for summary judgment.

## PRELIMINARY STATEMENT

This is a wrongful conviction case based on mistaken identification. The plaintiff, Josiah Galloway, was convicted of the attempted murder of Jorge Anyosa ("Victim") following a jury trial in 2009. On May 15, 2008, the Victim and witness Wilmer Hernandez ("Witness"), both of whom did not know the plaintiff, argued with a suspect, face to face, for several minutes before that same suspect shot the Victim in the face. After plaintiff was arrested by members of the Village of Hempstead Police Department ("HPD") for an unrelated robbery, the Victim and the Witness both positively identified the plaintiff as the perpetrator of the May 15, 2008 crime from two separately administered photo arrays, and at a court-ordered line-up. As a result of plaintiff's criminal defense attorney's conduct and judgment at the criminal trial, a composite sketch of the suspect and the two positive photo array identifications, which the Nassau County District Attorney's Office ("NCDA") did not intend to introduce, were admitted into evidence. Plaintiff was convicted and was sentenced to imprisonment for 25 years.

In early July 2018, an individual came forward and provided "information [that] led [NCDA] to additional witnesses who were unknown at the time of the [plaintiff's criminal] trial." Rule 56.1, ¶353. On September 13, 2018, the Supreme Court of the State of New York, Nassau County, vacated plaintiff's conviction based on newly discovered evidence, dismissed the

indictment in the interest of justice, and plaintiff was released from custody. The Conviction Integrity Unit of the NCDA stated, on the record in open court, "[a]t the time of [plaintiff's criminal] trial, any and all exculpatory evidence was provided by the prosecution to the defense including any discrepancies between the perpetrator's description and [plaintiff]. These discrepancies were thoroughly explored by the [plaintiff's criminal defense] attorney and argued to the jury." *Id.* at ¶354. Since plaintiff's convictions were vacated on September 13, 2018, no one has been arrested, prosecuted or convicted of shooting the Victim on May 15, 2008. *Id.* at ¶356.

After the dismissal of various claims, including claims asserted against previously named individual defendants, plaintiff's fourth-amended complaint ("FAC") alleges the following claims for relief: (i) a § 1983 malicious prosecution claim against HPD Detectives Steven Horowitz, Kevin Cunningham and Joseph Sortino, Decaro, Darienzo, Lipson, and Dluginski); (ii) a § 1983 claim alleging fabrication of evidence, denial of fair trial and *Brady* violations against all individually named defendants; (iii) a state law *respondeat superior* claim for false imprisonment and malicious prosecution against the County and the Village; (iv) a § 1983 conspiracy claim against all individually named defendants; (v) a Fourth Amendment unlawful pre-trial detention claim against all individually named defendants; (vi) a § 1983 claim for "failure to intervene" asserted against all individually named defendants; and (vii) a *Monell* claim against the County.

This is a federal civil rights case. Plaintiff's innocence is not at issue. The identity of a possible, but unconfirmed individual who was never questioned, arrested, or convicted for shooting the Victim, is irrelevant and not at issue. The issue here is whether plaintiff was denied a fair trial thereby violating his civil rights.

Plaintiff's conclusory and highly speculative claims are unsupported by any admissible evidence, and there are no genuine disputes of material fact. Assuming *arguendo* that plaintiff

was misidentified, *that does not establish that any of the defendants violated his civil rights*.  The evidence and facts (when not mischaracterized to fit plaintiff's narrative) demonstrates just that – that none of the County defendants violated plaintiff's civil rights, and therefore are entitled to summary judgment.  A full statement of the pertinent facts and procedural history are set forth in detail in the accompanying joint statement of undisputed facts submitted by the defendants pursuant to Rule 56.1 of the Local Rules of the Eastern District of New York. ("Rule 56.1").  As will be set forth more fully herein, all claims against the County defendants should be dismissed.

## STANDARD FOR SUMMARY JUDGMENT

Where there are "no genuine dispute[s] as to any material fact," defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Redd v. N.Y.S. Div. of Parole,* 678 F.3d 166, 173 (2d Cir. 2012).  A fact is "material" when it "might affect the outcome of the suit under governing law." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists when the "evidence is such that a reasonable jury could [have] return[ed] a verdict for the [plaintiff]." *Miner v. Clinton Cty.,* 541 F.3d 464, 471 (2d Cir. 2008).  When defendants meet their initial burden by making an evidentiary showing suggesting that no material factual issues remain, the burden shifts to plaintiff to produce evidence raising a material question of fact. *Id.*

Plaintiff must set forth "concrete particulars showing that a trial is needed" on those facts. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir. 1984).  He "must do more than simply show….some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  He must "identify probative evidence on the record from which a reasonable factfinder could find in [his] favor." *Raffaele v. City of N.Y.*, 242 F. Supp. 3d 152, 156 (E.D.N.Y. 2017).  Conclusory assertions by plaintiff are not sufficient to defeat a

summary judgment motion. *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990).

"[M]ere speculation and conjecture is insufficient to preclude the granting of the [summary judgment] motion." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).  A "scintilla of evidence" cannot defeat this motion. *Liberty Lobby,* 477 U.S. at 252.

## ARGUMENT

**I. PLAINTIFF'S FEDERAL AND STATE LAW CLAIMS FOR MALICIOUS PROSECUTION AND FALSE IMPRISONMENT FAIL AS A MATTER OF LAW**

To prevail on a § 1983 malicious prosecution claim, a plaintiff must show a violation of his Fourth Amendment rights in addition to the "elements of a malicious prosecution claim under state law." *Manganiello v. City of N.Y.,* 612 F.3d 149, 161 (2d Cir. 2010).  Under New York law, to establish a malicious prosecution claim, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.*  Furthermore, to allege a claim under federal law, a plaintiff must also demonstrate that there was "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.,* 215 F.3d 208, 215 (2d Cir. 2000).  To prevail on a New York State false imprisonment claim, plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir. 1996) (internal citation omitted).

A. <u>The County Defendants Did Not Initiate or Continue the Prosecution Against the Plaintiff, and Did Not Act With Malice.</u>

Plaintiff's malicious prosecution claims must fail because there is no evidence that any of the County defendants initiated the prosecution against the plaintiff, or acted with actual malice.

The element of "[i]nitiation in this context is a term of art." *Rohman*, 215 F.3d at 217.  To initiate a prosecution, "a defendant must do more than report the crime or give testimony" (*Manganiello*, 612 F.3d at 163) and must have "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217.  Plaintiff must establish that a defendant "distorted the process by which plaintiff was brought to trial, such as by creating false information and forwarding it to prosecutors or by withholding relevant and material information from prosecutors." *McGrier v. City of N.Y.*, 2019 U.S. Dist. LEXIS 38688, at *11 (S.D.N.Y. Mar. 11, 2019).  A defendant has not initiated the prosecution when he reports the results of his investigation to "prosecutors and allow[s] them to decide whether to charge" an individual with a crime. *Id.* at *12-13; *Breeden v. City of N.Y.*, 2014 U.S. Dist. LEXIS 4165, at *31 (E.D.N.Y. Jan. 13, 2014) ("an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding") (citation omitted).

None of the County defendants "initiated" the prosecution against the plaintiff.  Darienzo and Lipson did not speak with any prosecutor on the day the plaintiff was arrested or charged, and played no role in deciding the charges brought against him. Rule 56.1, ¶¶176-77.  Dluginski, Ross and Dorsi were either not working when plaintiff was arrested, were not involved with his arrest processing, or were not involved in the investigation at the time of arrest. *Id.* at ¶¶59, 126, 147, 168, 178-79, 209.  Decaro's actions of relaying the results of the investigation to prosecutors in the Early Case Assessment Bureau ("ECAB"), and faxing the paperwork for prosecutors review and approval of charges, does not amount to "initiation." *Id.* at ¶¶170-74.  Moreover, as further demonstrated below in Point I.B.4, none of the County defendants continued the prosecution as evidenced by the ADA Larocca's and ADA Schalk's handling and involvement in the case. *Id.* at ¶¶184-202, 207, 224-27, 290-301.

In addition, none of the County defendants acted with actual malice.[1]  To find "actual malice" as a motivation for a defendant's actions to prosecute, plaintiff must establish that each defendant "must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Keith v. City of N.Y.*, 2014 U.S. Dist. LEXIS 166469, at *60-61 (S.D.N.Y. Dec. 1, 2014) (citation omitted). The record is simply devoid of any evidence demonstrating that any County defendant acted with actual malice or had an improper motive during the investigation into the Victim's shooting.

B.  The Existence of Probable Cause Precludes Plaintiff's Malicious Prosecution and State Law False Imprisonment Claims.

Probable cause is a complete defense to a malicious prosecution claim and a state law false imprisonment claim. *See Manganiello,* 612 F.3d at 161-62.  Here, there are a plethora of grounds for probable cause, which remains "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (internal citations omitted).  "[P]robable cause … is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (citation and internal quotation omitted); *see also Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003) (probable cause requires facts and circumstances supporting reasonable belief that a prosecution "could succeed.")

The existence of probable cause "depends on the totality of the circumstances of each case, and is not susceptible to precise definition or quantification into percentages." *Dufort v. City of N.Y.*, 874 F.3d 338, 348 (2d Cir. 2017) (internal citations and quotations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known

---

[1] As demonstrated in Point I.B.1-4, since probable cause existed, none of the defendants acted with actual malice.

to the arresting officer at the time of the arrest" (*Devenpeck v. Alford,* 543 U.S. 146, 152 (2004)) and officers are "entitled to rely on the allegations of fellow police officers." *Sessoms v. Cnty. of Suffolk*, 2023 U.S. Dist. LEXIS 75545, at *7 (E.D.N.Y. May 1, 2023).  Officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," (*Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)) and after establishing probable cause, "an officer is not required to continue investigating, sifting and weighing information." *Celestin v. City of N.Y.*, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) (citation omitted).

Inconsistencies or discrepancies between the physical descriptions of the suspect of a crime and the individual ultimately charged will not dissipate the existence of probable cause.[2]  There is no requirement to prove plaintiff's version of events wrong before his arrest, and the failure to interview witnesses, conduct a more thorough investigation, or to credit the victim's version of events over another witness, does not undermine probable cause. *Curley*, 268 F.3d at 70; *Poux v. Cnty. of Suffolk*, 2012 U.S. Dist. LEXIS 41196, at *26 (E.D.N.Y. Mar. 23, 2012) (collecting cases); *Mazza v. City of N.Y.*, 1999 U.S. Dist. LEXIS 13192, at *15-16 (E.D.N.Y. July 13, 1999).

1. <u>Probable Cause Was Based on Plaintiff's Identification from Two (2) Photo Arrays.</u>

A "positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest." *Burgess v. DeJoseph,* 725 F. App'x 26, 39 (2d Cir. 2018) (summary order) quoting *Celestin*, 581 F. Supp. 2d at 431.  "New York courts routinely hold that a victim's photo identification of a person provides the police with probable cause to arrest that person, even where the identification may not be 100% reliable." *Norwood v. Mason,* 524 F. App'x 762, 765

---

[2] *See O'Brien v. City of Yonkers*, 2013 U.S. Dist. LEXIS 43551, at *34 (S.D.N.Y. Mar. 22, 2013); *Drummond v. Castro*, 522 F. Supp. 2d 667, 675 (S.D.N.Y. 2007) (probable cause existed despite inconsistencies in victim's "statements regarding the events surrounding the crime and the identity of the shooter"); *Keith*, 2014 U.S. Dist. LEXIS 166469, at *47-49 (5 inch height difference [between 5'9" and 6'2"] does not negate probable cause in view of positive identification); *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013) (probable cause existed with 4 inch height difference); *Gaston v. City of N.Y.*, 851 F. Supp. 2d 780, 789 (S.D.N.Y. 2012) (lack of plaintiff having an accent does not dissipate probable cause); *Little v. City of N.Y.*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007).

-7-

(2d Cir. 2013) (summary order); *see also Gaston*, 851 F. Supp. 2d at 790-91 (collecting cases).

"[E]ven if the facts [underlying a photo identification] could admit a finding of suggestive procedures—which they cannot—that conclusion does not mean that [the photo] identification cannot inform probable cause determinations." *Mara v. Rilling,* 921 F.3d 48, 74-75 (2d Cir. 2019). Although, as demonstrated below, the photo arrays administered here were not unduly suggestive, "the due process limits […] for the use of identifications tainted by suggestive procedures 'concern[] the admissibility of identifications at criminal trials, *not whether an identification can support probable cause to arrest*' a suspect." *Id*., quoting *Stansbury*, 721 F.3d at 91 n.7 (emphasis added). The critical question for "determining whether an identification can support probable cause, is not whether the identification procedure was suggestive, but whether it was so defective that, as a matter of law, probable cause could not reasonably be based on it." *Id.* (internal quotations omitted). Even when an identification procedure is deemed "highly improper," when there is no suggestion, coercion, or evidence that a witness had motive to lie, the identification is not so flawed that it could not contribute to probable cause. *See Stansbury*, 721 F.3d at 91, n.7.[3]

Here, probable cause existed because the Victim and the Witness positively identified plaintiff from two (2) separate and properly conducted photo arrays. Rule 56.1, ¶¶142, 159. Lipson created two (2) photo arrays with a less than one (1) year old photograph of plaintiff from September of 2007. Rule 56.1, ¶¶96, 113-15. Lipson used a computer system and included five (5) photos of males that had similar characteristics to the plaintiff in the photo arrays, and even placed plaintiff's photograph in a different position in each array to keep them as fair as possible. *Id.* at ¶¶116-20. Lipson did not coerce or suggest to the Victim or the Witness to select a particular photograph from the array, nor did the Victim or Witness feel pressured or compelled to do so. *Id.*

---

[3] *See* Point II.D for fair photo identification process and line-up procedure pursuant to the Fourteenth Amendment.

at ¶¶140-41, 158-59, 163-64, 188, 282-83.  At the time that the Victim and Witness selected the plaintiff, they did so for a simple reason:  they confidently believed that he was the person that they argued with at the Train Station, who shot the Victim about 20 minutes later. *Id.* at ¶¶139-46, 158-64, 186-88, 315.  These two (2) positive photo array identifications alone, which were neither suggestive nor defective, demonstrates ample probable cause. *See Stansbury*, 721 F.3d at 95.

2.  <u>Both the Victim and the Witness Also Positively Identified Plaintiff from a Line-Up.</u>

Although the inquiry can end here, the selections of the plaintiff from a properly conducted line-up further demonstrates the existence of probable cause.  An eyewitness identifying a suspect from a line-up is sufficient to "warrant a person of reasonable caution in the belief" that the offense was committed by the suspect. *Alvarado v. City of N.Y.*, 453 F. App'x 56, 58 (2d Cir. 2011) (summary order) (citation omitted).  Here, when the Victim and the Witness both selected plaintiff from a line-up – which they viewed separately – they were not coerced or requested to select a particular person, nor did they feel pressured or compelled to do so. Rule 56.1, ¶¶232-71, 284-87. ADA Larocca was present to ensure that the line-up was conducted in a manner as fair as possible, as was plaintiff's counsel who had no objection. *Id.* at ¶¶216-29.  "There is no doubt that th[ese] identification[s] out of a line-up…bolstered the [defendants'] probable cause determination." *Ribot v. City of N.Y.*, 2017 U.S. Dist. LEXIS 15691, at *10 (S.D.N.Y. Feb. 3, 2017).  Thus, the Witness and Victim's selection of plaintiff from a line-up bolsters the existence of probable cause.

3.  <u>Probable Cause Existed Based On the Totality of Circumstances.</u>

Probable cause exists "[w]hen information is received from a putative victim or an eyewitness." *Curley*, 268 F.3d at 70.  Identification of the suspect by a single victim or eyewitness, by itself, can constitute probable cause to prosecute. *See Virgil v. Town of Gates,* 455 F. App'x 36, 38 (2d Cir. 2012); *Thompson v. City of N.Y.*, 603 F. Supp. 2d 650 (S.D.N.Y. 2009) (finding

probable cause based on single witness's identifications of plaintiff in lineup and photo array); *see also Stansbury*, 721 F.3d at 95.  Here, on June 5, 2008, plaintiff was placed in custody by HPD officers for an unrelated robbery crime, which he admitted to committing at his deposition over ten (10) years later. Rule 56.1, ¶¶84-85, 152-54.  Subsequently, after investigation, plaintiff was arrested for the shooting of the Victim on June 6, 2008. *Id.* at ¶¶84-85, 184.

The probable cause to arrest consisted of: i) eyewitness observations of the Witness and the Victim, who both had multiple interviews with detectives and prosecutors (*id.* at ¶¶13-34); ii) a composite sketch of the suspect, created with the assistance of, and confirmed by, the Victim, resembling the plaintiff (*id.* at ¶¶61-75, 100-08); iii) the two (2) positive photo array identifications (*id.* at ¶¶139-46, 158-64); and iv) multiple written statements of the Witness and the Victim (*id.* at ¶¶145, 162, 180-81).  Although not needed, Ogletree's interview and his signed written statement[4] (*id.* at ¶¶127-35) and plaintiff's corroborating statements (*id.* at ¶151), also contributed to the existence of probable cause.  There was a mountain of evidence demonstrating probable cause to arrest, which was further bolstered by two positive line-up identifications. *Id.* at ¶¶232-71.

There is nothing in the record casting doubt on the Victim's or Witness's accounts of what transpired, their observations, and their positive photo array identifications, which were independently vetted by multiple prosecutors. Rule 56.1, ¶¶186-91, 291-94, 320-23.  Ogletree's signed written statement, that the plaintiff told Ogletree he went to Maryland because "it was getting hot up here" and that he had to "shoot a cab driver over by the chicken place on Jackson," was corroborated by the fact that the shooting took place within one block of Jackson Street, with a chicken restaurant one block away, and plaintiff's statements that he went to Baltimore a few weeks earlier. *Id.* at ¶¶133, 135.  Thus, the County defendants had ample probable cause to arrest.

---

[4] As demonstrated below in Point II.A, plaintiff is unable to rely on Ogletree's prior criminal testimony, and any alleged coercion of Ogletree's written statement is irrelevant.

As argued above, any argument regarding the discrepancies or inconsistencies between plaintiff and the suspect is irrelevant as it does not dissipate probable cause. Multiple prosecutors were aware of these differences, but continued the prosecution regardless. Rule 56.1, ¶¶189-91, 293-94. Plaintiff's criminal defense attorney was aware of, and extensively cross-examined the Victim, the Witness and numerous detectives, at both the pre-trial hearing and the criminal trial, about the same differences and inconsistencies plaintiff is now claiming were the basis for violating his constitutional rights. *Id.* at ¶¶279, 320-22.

4. The District Attorney's Independent Judgment Breaks the Chain of Causation, and Probable Cause Exists Because Plaintiff was Indicted By a Grand Jury.

A prosecutor's independent judgment is an intervening cause that absolves an officer from liability. *See White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988). A claim for malicious prosecution is within the judicial phase of a prosecution, which is shaped by the district attorney, and the chain of causation is broken once the prosecutor brings criminal charges. *See Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999). The chain of causation is broken once the prosecutor brings criminal charges. *See Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999) (chain of causation broken by prosecutor's exercise of independent judgment). To establish otherwise, plaintiff must prove than a defendant deliberately misled the prosecutor; absent such proof, a prosecutor's direct involvement constitutes a superseding cause absolving the officer of liability. *See Williams v. City of N.Y.*, 2003 U.S. Dist. LEXIS 19078, at *18 (S.D.N.Y. Oct. 23, 2003); *Townes*, 176 F.3d at 147.

Here, the prosecutor's involvement from the ECAB stage broke the chain of causation absolving the County defendants' from liability. Rule 56.1, ¶¶170-73. Subsequently, ADA Larocca was assigned the case, analyzed the evidence, spoke with the detectives, independently interviewed the Victim and the Witness, and although aware of differences between the perpetrator and the plaintiff, presented the case to the Grand Jury regardless. *Id.* at ¶¶184-95. He continued to exercise

-11-

his independent judgment by submitting an application to the Court requesting plaintiff to participate in a line-up, which he was present for, oversaw, and ensured that it was conducted fairly, as well as handling the pre-trial hearing where the County Court found probable cause to arrest and that the identification procedures were properly conducted. *Id.* at ¶¶201-27, 276-87. Once ADA Schalk was assigned, he reviewed the evidence, interviewed the detectives, investigated and discredited plaintiff's alleged alibi, and interviewed Ogletree, who acknowledged that his statement was accurate and not coerced. *Id.* at ¶¶290-301. ADA Schalk independently interviewed the Victim and the Witness, both of whom confirmed their certainty that the plaintiff was the person they argued with, and that shot the Victim. *Id.* at ¶315. Since there is no evidence that a prosecutor was deliberately misled, the prosecutors' independent judgment and involvement in plaintiff's prosecution absolves the County defendants' from liability for their actions.

Moreover, an indictment by a grand jury creates a rebuttable presumption of probable cause. *See Manganiello*, 612 F.3d at 162. This presumption is rebutted "only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotations and citations omitted). The mere fact that evidence itself is unreliable is insufficient to dismiss a grand jury indictment, the prosecutor has no duty and is not required to present exculpatory evidence to the grand jury, and there is no requirement to present inconsistencies of witness's observations to the grand jury.[5]

It is important to note that with respect to rebutting the presumption of probable cause as a result of a grand jury indictment in reference to a malicious prosecution claim:

> [i]n order for a plaintiff to recover, the alleged fabrication must be both material, i.e., likely to influence a jury's decision, and the legally cognizable

---

[5] *See Poux*, 2012 U.S. Dist. LEXIS 41196, at *28; *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003); *Parisi v. Suffolk Cnty.*, 2009 U.S. Dist. LEXIS 112388, at *10 (E.D.N.Y. Nov. 30, 2009); *Williams*, 2003 U.S. Dist. LEXIS 19078, at *18-22; *Fappiano v. City of N.Y.*, 2014 U.S. Dist. LEXIS 179584, at *36-37 (E.D.N.Y. Dec. 31, 2014), *aff'd*, 640 F. App'x 115 (2016); *O'Brien*, 2013 U.S. Dist. LEXIS 43551, at *50-55.

> cause of the post-arraignment deprivation of liberty. It is particularly critical to distinguish between an alleged fabrication that precipitated the sequence of events that resulted in the deprivation of liberty from other charges of fabrication of evidence….The availability of a cause of action based solely on a claim of fabrication, without the materiality and causation requirements, would unduly deter prosecutors' exercise of discretion to dismiss or abandon cases for a broad array of reasons having nothing to do with the defendant's guilt or claimed fabrication.

*Jovanovic v. City of N.Y.*, 2010 U.S. Dist. LEXIS 144388, at *23-24 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 486 F. App'x 149 (2d Cir. 2012) *citing Richardson v. City of N.Y.*, 2006 U.S. Dist. LEXIS 69577, at *21 n.4 (E.D.N.Y. Sept. 27, 2006) (quotation marks and internal citations omitted).

Although plaintiff alleges that the defendants "orchestrat[ed] intentional misidentifications and pressur[ed] and mislead[]" the Victim, and failed to disclose exculpatory *Brady* material (*see* **Exhibit A**, ¶86), the record is devoid of evidence to support this claim. The allegation that Ogletree was coerced, and written statement fabricated, is irrelevant to a probable cause inquiry since the plaintiff was indicted with no evidence regarding Ogletree presented to the Grand Jury. Rule 56.1, ¶¶195, 198. Any claim of failure to investigate plaintiff's alibi cannot rebut the presumption of probable cause as his alibi notice was served *after* the indictment was secured. *Id.* at ¶199. The observations and positive photo array identifications of the Victim and Witness alone provided probable cause, which was unequivocally supported by the procurement of an indictment. *Id.* at ¶¶139-46, 158-64, 184-200. Thus, there is no evidence to rebut the presumption of probable cause.

"[E]ven where plaintiff alleges, as here, that [a] malicious prosecution is based on fabricated evidence, the existence of probable cause independent of the fabricated evidence is a defense to [the malicious prosecution] claim. To hold otherwise would untether the malicious prosecution claim from its Fourth Amendment roots." *Hoyos v. City of N.Y.*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (internal quotations and citations omitted). In *Bermudez v. City of N.Y.*, a plaintiff filed a lawsuit claiming malicious prosecution, arguing that the indictment was the

-13-

product of suppressed evidence because the officers failed to disclose that suggestive identification procedures were used and that they coerced witnesses. 790 F.3d 368 (2d Cir. 2015). The Second Circuit upheld the District Court's dismissal of the malicious prosecution claim, holding that "even if [the officers] coerced witnesses and used improper identification procedures, these actions did not proximately cause the loss of [plaintiff's] due process rights because [the prosecutor] separately decided to use the evidence at trial." *Id.* at 374. Moreover, the Second Circuit held that since the prosecutor interviewed witnesses who testified at the grand jury, "[e]ven if the [prosecutor] had been misled about the overly suggestive photo identification and array procedures and about the alleged [witness] coercion, [his interviews of the grand jury witnesses] provided [the prosecutor] with probable cause to prosecute [the plaintiff]." *Id.* at 377.

*Bermudez* is directly on point with plaintiff's prosecution here. Although probable cause existed on its own, as demonstrated above, ADA Larocca made an independent determination of probable cause prior to presenting the case to the Grand Jury. Thus, ADA Larocca's independent determination of probable cause, and the procurement of an indictment, is fatal to plaintiff's malicious prosecution and false imprisonment claims. *See Bermudez*, 790 F.3d at 374.

## II.  PLAINTIFF'S DENIAL OF FAIR TRIAL AND DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW

For a plethora of reasons, plaintiff's denial of fair trial and due process claims must be dismissed.[6] *See Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (a fair trial claim is a civil claim alleging violations of a criminal defendant's 14th Amendment due process rights).

### A.  Plaintiff Cannot Rely on Ogletree's Criminal Trial Testimony To Support His Claims.

Plaintiff's FAC is riddled with assertions that the County defendants fabricated evidence by "manufacturing a statement and forcing Mr. Ogletree to adopt it" and that Ogletree was coerced

---

[6] *See* **Exhibit A**, ¶¶93-101 (Section 1983 Fabrication of Evidence/Denial of Fair Trial and *Brady* Violations).

8230766v.1

(*see* **Exhibit A**, ¶¶94-95), which even if true does not preclude the granting of summary judgment. However, plaintiff cannot rely on Ogletree's testimony from plaintiff's criminal trial as it is inadmissible evidence, and there is no admissible support for plaintiff's assertions in the record.

Pursuant to Fed. R. Evid. 804(b)(1), in order to admit prior testimony, plaintiff "has the burden to show by the preponderance of the evidence that (1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding; and (3) that that party had the same motive and opportunity to examine the witness." *United States v. Amato*, 2006 U.S. Dist. LEXIS 43366, at *2 (E.D.N.Y. June 27, 2006). It is clear that the County and the six (6) individually named County defendants were neither parties to the plaintiff's criminal trial, nor did they have the same opportunity or motive to cross-examine Ogletree as the prosecutor did during the trial. *See Greene v. City of N.Y.*, 2017 U.S. Dist. LEXIS 37243, at *55-56 (E.D.N.Y. Mar. 15, 2017) *aff'd*, 742 F. App'x 532 (2d Cir. 2018) (prior witness testimony from plaintiff's post-trial criminal proceedings inadmissible in § 1983 action since the defendants in the civil case were not parties to the post-trial proceedings); *Annunziata v. City of N.Y.*, 2008 U.S. Dist. LEXIS 42097, at *28-36 (S.D.N.Y. May 28, 2008) (finding witness testimony from plaintiff's criminal trial not admissible in § 1983 case since the trial prosecutor and the defendants (NYC and detective) in the civil case were neither the same parties nor in privity with each other, and did not have the same motive to cross-examine the witness as the prosecutor did at trial). Therefore, Ogletree's trial testimony is inadmissible evidence and cannot be used to support plaintiff's claims.

B.  Plaintiff's Claims of Evidence Suppression/*Brady* Violations Must Fail.

A fair trial claim "where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant" is "essentially a civil claim seeking damages for a *Brady* violation." *Fappiano,* 640 F. App'x at 118. When a police officer withholds "exculpatory or

impeaching evidence…they may be held liable under § 1983 for violating the disclosure requirements of *Brady v. Maryland*." *Bellamy v. City of N.Y.*, 914 F.3d 727, 751 (2d Cir. 2019). If plaintiff fails to provide sufficient evidence, rising above speculation, to support a reasonable inference of wrongful conduct, his *Brady* claim must fail. *See Fappiano,* 640 F. App'x at 118.

A *Brady* violation contains three elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Fappiano,* 640 F. App'x at 118 (internal citation and quotations omitted). Indeed, the Second Circuit has repeatedly emphasized (without concluding) that to succeed on a *Brady* claim, a plaintiff must show intentional misconduct by law enforcement. *See Valentin v. City of Rochester,* 783 F. App'x 97, 99 (2d Cir. 2019) (summary order); *see also Bellamy,* 914 F.3d at 751, n. 23.

Any argument that the County defendants withheld or intentionally suppressed any exculpatory evidence fails. Evidence is not deemed to have been suppressed if the defense "either knew or should have known of the essential facts permitting him to take advantage of [that] evidence" and had sufficient opportunity to use the information. *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir. 1993) (citation omitted). "To establish prejudice, a plaintiff must show the [nondisclosed] evidence was material; i.e., whether the 'evidentiary suppression undermines confidence in the outcome of the trial.'" *Fappiano,* 640 F. App'x at 118 quoting *Leka v. Portuondo,* 257 F.3d 89, 104 (2d Cir. 2001). Plaintiff "must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different" and that had the withheld information been disclosed "he would have been acquitted based on reasonable doubt or convicted on a lesser charge." *Bellamy,* 914 F.3d at 751; *Poventud v. City of N.Y.*, 750 F.3d 121, 134-35 (2d Cir. 2014). To be considered material "more is required than just the mere possibility

-16-

that the undisclosed evidence might have helped the defense or even affected the outcome of the trial." *Gonzalez v. Portuondo,* 2001 U.S. Dist. LEXIS 10698, at \*15 (S.D.N.Y. July 30, 2001).

Here, any *Brady* claim fails. As demonstrated *supra* at Point II.A, Ogletree's testimony is not admissible, but even it were, it is clear that plaintiff's criminal defense attorney was aware of the purported "coercion", which Ogletree first alleged on the stand testifying at his childhood friend's trial, evidencing that it was not suppressed. Rule 56.1, ¶¶309-14, 326. There was sufficient opportunity to use this information as it was disclosed on February 18, 2009, and plaintiff's attorney cross-examined Ogletree the following day. *Id.* In any event, this information was not "material" and not prejudicial to the plaintiff since the jury heard Ogletree's testimony on this issue, and it did not affect the outcome of the trial or influence the jury verdict in the plaintiff's favor. *See Bellamy,* 914 F.3d at 751; *see also Smalls v. Collins,* 10 F.4th 117, 132 (2d Cir. 2021).

C. Plaintiff's Fabrication of Evidence Claims Fail.

A plaintiff may bring a § 1983 due process claim asserting "the right to have one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution." *Dufort,* 874 F.3d at 355. A fair trial claim may also arise when an officer creates "false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). To prevail on a fair trial claim based on fabricated information, plaintiff must demonstrate: "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Smalls,* 10 F.4th at 132 (internal quotations and citation omitted). To the extent plaintiff is alleging fabrication of evidence by omission, "[i]nformation may be 'false' if material omissions render an otherwise true statement false." *Morse v. Fusto,* 804 F.3d 538, 547 (2d Cir. 2015). Plaintiff must

demonstrate that the omission is "both material and made knowingly." *Id.*

There is no evidence in the record to support any claim for fabrication of evidence. With respect to plaintiff's claim that any of the County defendants tampered with witness testimony (*see* **Exhibit A**, ¶¶97-99), "[i]n order to survive summary judgment on a witness tampering claim, a plaintiff must offer some proof of witness tampering. In many cases, this proof comes in the form of a recantation from a tampered-with witness." *Fappiano*, 2014 U.S. Dist. LEXIS 179584, at *71. Here, after extensive discovery, "there is no evidence from which a reasonable jury could infer that [a defendant] was in any way connected to" tampering with any witness testimony or was involved in suborning perjury. *Id* at *75. Plaintiff's assertion that the Victim was told that he selected the right person *after* he positively identified the plaintiff from a photo array (the second positive photo array clearly establishing probable cause), is based on inadmissible evidence, the notes of the CIU ADA Anania (*see* **Exhibit A**, ¶¶40, 72, 98-99), and was clearly refuted by admissible evidence from Lipson and the Victim himself.[7] Both the Witness and the Victim were

---

[7] At his deposition, more than twelve (12) years later, the Victim never testified that any County defendant told him that he selected "the right guy", but instead testified that he does not remember the detective saying that. Rule 56.1, ¶¶163-64. The admissible evidence clearly demonstrates that Lipson did not tell the Victim that he selected "the right guy" after he selected plaintiff from the photo array, even after plaintiff's counsel did his best to coerce the Victim at his deposition into testifying as such. Assuming *arguendo*, even if this was accepted as true, it does not amount to tampering of a witness and it is not a genuine dispute of material fact as it does not amount to a violation of plaintiff's constitutional rights. This allegation would not taint the photo array presented to the Victim, does not dissipate probable cause, and analyzing the evidence in this case, does not taint any subsequent identification procedure. *See United States v. Leonardi*, 623 F.2d 746, 754-55 (2d. Cir. 1980), *cert denied,* 447 U.S. 928 (1980); *Wilson v. Bantum*, 1993 U.S. Dist. LEXIS 5924, at *11 (E.D.N.Y. Apr. 28, 1993). Any argument that this allegation falsely assured the Victim causing him to misidentify plaintiff has no merit. The Witness unequivocally denies any officer confirmed his selection of the plaintiff's photograph from the array, which was in a different position in the array where Victim selected the plaintiff, and both were confident in their selection. Rule 56.1, ¶¶139-46, 158-64, 186-88, 315. Thus, this allegation will not preclude a subsequent identification procedure. *See United States v. Thai*, 29 F.3d 785, 810 (2d Cir. 1994); *United States v. Brown*, 167 F. Supp. 3d 447, 451 (W.D.N.Y. 2016) citing *Leonardi*, 623 F.2d at 755 (requiring exclusion whenever post-identification communications occur "would be incompatible with other necessary police procedures which indirectly signal a witness that he has selected the person under investigation … [such as] a witness may be asked to give a sworn statement, or else to appear before a grand jury, or to aid the police in other ways, all of which might confirm the 'correctness' of … [the] choice."); *United States v. Jarvis*, 560 F.2d 494 (2d Cir. 1977); *Wilson*, 1993 U.S. Dist. LEXIS 5924, at *11. In any event, the absence of this alleged information does not amount to fabricated evidence as it was not material and would not have precluded any identification procedure. *See Davenport v. City of N.Y.*, 2017 U.S. Dist. LEXIS 160412, at *47-53 (E.D.N.Y. Sept. 28, 2017); *Creighton v. City of N.Y.*, 2017 U.S. Dist. LEXIS 21194, at *86-88 (S.D.N.Y. Feb. 14, 2017); *Smolicz v. Borough/Town of Naugatuck*, 281 Fed. Appx. 32, 32-33 (2d Cir. 2008) (omitted information from a warrant application was not material).

confident in their selection of the plaintiff from the photo arrays. Rule 56.1, ¶¶139-46, 158-64, 186-88, 315. They both had a clear view of the perpetrator's face when they argued with him, face to face, for several minutes, and subsequently when the Victim was shot. *Id.* at ¶¶17-23, 29-32. Both the Victim and Witness did not know the plaintiff, demonstrating the reliability and veracity of their identifications of him as they had no motive to lie. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002) (information provided by "an identified bystander with no apparent motive to falsify" has "a peculiar likelihood of accuracy"); *Barnes v. City of N.Y.*, 2021 U.S. Dist. LEXIS 14861, at *11 (E.D.N.Y. Jan. 26, 2021) (witness who identified the plaintiff "was incentivized to provide information to [detective-defendant] in exchange for leniency in his own prosecution"). No one pressured them into selecting plaintiff from either the photo arrays or at the line-up, again demonstrating the reliability of their identifications of the plaintiff. *Id.* at ¶¶137-46, 157-69, 186-188, 232-71, 282-87, 315.

Any argument that the signed felony complaints constitutes "fabricated evidence" has no merit. ADA Larocca was aware that the plaintiff never confessed to shooting the Victim, but that he made statements and admissions to other crimes. *Id.* at ¶¶148-54, 192. These felony complaints would never have influenced a jury's verdict and did not cause plaintiff to suffer any deprivation of liberty as they were never introduced to, or referenced in, the Grand Jury or at trial. *Id.* at ¶¶197, 292. In addition, any argument that the alleged "coercion" of Ogletree amounts to fabricated evidence fails for the same reason – Ogletree's written statement was never introduced to the Grand Jury, the statement was never admitted into evidence at trial, and it had no influence on the jury's verdict, who heard Ogletree's testimony on this issue, with the jury convicting the plaintiff regardless. *Id.* at ¶¶198, 309-14, 326; *see also Jovanovic*, 486 F. App'x at 152 ("[plaintiff] cannot show causation–i.e., that the alleged fabrication of evidence led to a deprivation of his liberty").

-19-

In fact, even if Ogletree's trial testimony were admissible, it is riddled with inconsistencies[8] and does not meet the threshold demonstrating his statement was involuntary or was the result of coercion. *See Dash v. Montas*, 2020 U.S. Dist. LEXIS 56475, at \*26-31 (E.D.N.Y. Mar. 31, 2020) (although plaintiff and officer gave different accounts about what transpired during a post-arrest interview, court granted officer summary judgment due to plaintiff's implausible and inconsistent version of events); *Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005); *United States v. Levy,* 217 F. Supp. 3d 643 (E.D.N.Y. 2016) (confession not involuntary where police lie to a suspect); *United States v. Barro,* 2013 U.S. Dist. LEXIS 108665, at \*8 (E.D.N.Y. 2013) (officer saying he would call CPS if both the defendant and his wife were arrested is not coercive). A witness's mere signing of a statement does not amount to coercion or that the statement was a false statement. *See Edwards v. Cnty. of Nassau*, 2022 U.S. Dist. LEXIS 57456, at \*24-25 (E.D.N.Y. Mar. 29, 2022). Ogletree's testimony is unreliable as it does not provide details for how his will was overborne, but only asserts, in conclusory fashion, that his statement was "coerced" without naming the detectives involved, thus supporting the reliability of the detectives. Rule 56.1, ¶¶127-33, 309-14. As there is no evidence to support that any witness was tampered with, and no evidence to support any claim for fabrication of evidence, plaintiff's denial of fair trial and due process claims fail.

---

[8] At trial, Ogletree's claim of coercion is conclusory, and he did not identify which defendants were involved. *See* **Exhibit D**, p. 262-274, 297-331 (325:14-17). When asked what he told the detectives about a shooting of a cab driver, Ogletree first testified "I didn't tell them anything" and then testified "I told them what they told me to tell them." *Id.* at 266:18-25. Ogletree testified that the detectives did not make anything up (*id*. at 302:13-21), but then testified that they made everything up. *Id.* 303:24-304:3. He testified that the statement he signed was false (*id*. at 270:14-271:3), but then testified that bits and pieces of his statement are true and it is in fact what he told the detectives. *Id.* at 299:19-300:9. Initially, Ogletree testified that the detectives put the sketch in front of him and said that the plaintiff was trying to blame him for the shooting (*id.* at 267:13-17), but later testified that the detectives told him the sketch looked like the plaintiff (*id.* at 300:20-301:15), and then testified "[the detectives] never asked me about being involved in the shooting of the cab driver." *Id.* 325:20-326:9. Ogletree stated that at the time they were arrested, plaintiff's hair was in an afro and kind of "poofy", when the record clearly shows plaintiff did not have an afro at the time of arrest. *Id.* at 301:13-302:12. Ogletree testified that plaintiff had taken his girlfriend's car on his own and driven it while Ogletree was not around (*id.* at 311:3-14), but then testified that the plaintiff never took this car on his own. *Id.* at 330:3-14. Ogletree testified that he had never been arrested for gun possession (*id.* at 316:3-7), but then testified he was "charged with three robberies and two gun charges" (*id.* at 319:19-23), with the record clearly demonstrating he was previously arrested for possessing a firearm. *See* **Exhibit TTT**, p. 1, 3; *see also* **Exhibit UUU**.

D.  Any Claim Premised on Fabricated or False Identifications Fails as the Photo Array and Line-Up Procedures Were Not Unduly Suggestive and Not Constitutionally Defective.

A defendant has a due process right not to be the object of suggestive identification procedures that create "a very substantial likelihood of irreparable misidentification." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). As the Supreme Court noted, "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012).  To determine if a pre-trial identification procedure was impermissibly suggestive, the Court must consider the totality of the circumstances, first determining "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." *Abdur Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).  If they were not suggestive, the inquiry ends as there is no violation of due process. *Id.*  If the procedures are found to be suggestive, the Court must then determine "whether the identification was nonetheless independently reliable." *Id.*

Here, none of the identification procedures were unduly suggestive.  Detectives need not scour for, and there is no requirement that, photographs in a photo array or line-up participants be identical in appearance. *See Velazquez v. Poole*, 614 F. Supp. 2d 284, 324 (E.D.N.Y. 2007); *see also Roldan v. Artuz*, 78 F. Supp. 2d 260, 271 (S.D.N.Y. 1999) (gathering cases); *see also Robinson v. Artus*, 664 F. Supp. 2d 247, 259 (W.D.N.Y. 2007) citing *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977).  Here, the photo arrays and line-up in this case contained six (6) black males, which on their own establishes that the identifications were not unduly suggestive. Rule 56.1, ¶¶113-24, 214-31*; United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994).  Any argument that each of the six (6) black males may have different skin complexions does not render the identification procedures unduly suggestive. *See Roldan*, 78 F. Supp. 2d at 273 (gathering cases); *Robinson*, 664 F. Supp. 2d at 259; *Velazquez*, 614 F. Supp. 2d at 323-24.  The inclusion of plaintiff's less than

-21-

one (1) year old arrest photograph in the photo arrays is not unduly suggestive. *See People v. Griffin*, 109 A.D. 740 (1st Dep't 2013) *leave to appeal denied* 22 N.Y.3d 1199 (2014); *Gallimore v. Feliciano*, 2015 U.S. Dist. LEXIS 80379, at *16-17 (S.D.N.Y. June 19, 2015) (use of an old photograph in photo array is not suggestive).   The fact that plaintiff's photograph may have portrayed him to have a slightly different hair style does not amount to a suggestive procedure. *See Mara*, 921 F.3d at 74 ( "showing a witness the same photograph of a suspect in two different arrays [with the photographs of the suspect taken 3 years apart] is not unduly suggestive … it necessarily follows that showing a witness markedly different photographs of a suspect, without doing or saying anything to urge identification, is not unduly suggestive").   Any conclusory allegation that the Witness or the Victim were told that there was a suspect in custody prior to an identification procedure, or that they were informed of the suspect's name, is not suggestive or a due process violation. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93-94 (2d Cir. 2007) (identification procedure unduly suggestive where witness learned suspect's name); *Piper v. Portuonodo*, 82 F. App'x 51, 52 (2d Cir. 2003); *Fields v. New York*, 2021 U.S. Dist. LEXIS 159927 (E.D.N.Y. Aug. 24, 2021); *People v. Green*, 14 A.D.3d 578, 579-80 (2d Dep't 2005).

Here, the photo arrays on their own are not suggestive, both the Victim and the Witness were not pressured to make a selection, and both were confident in their selection of plaintiff. Rule 56.1, ¶¶137-46, 157-69.[9]   In addition, the line-up did not violate the plaintiff's rights and was not unduly suggestive.   Any argument that the fillers were not the same age as the plaintiff, or that participants were seated due to differences in the plaintiff's and fillers heights, does not render the line-up unduly suggestive. *See Campbell v. McCarthy*, 2020 U.S. Dist. LEXIS 151413 at *21-31 (S.D.N.Y. Aug. 19, 2020) (in 2011, line-up with 22 year old plaintiff and multiple fillers in their

---

[9] As demonstrated below in Point II.E, Mr. Brewington's conduct and judgment was an intervening cause resulting in the admission of the photo arrays as evidence at trial, thus barring recovery for any claim related to the photo arrays.

mid-to-late thirties, and having all participants seated due to 8-inch height differences, was not unduly suggestive); *Stallings v. Heath*, 2012 U.S. Dist. LEXIS 30293, at *33-51 (S.D.N.Y. Mar. 7, 2012) (2007 line-up with fillers ranging 2 to 8 inches taller than suspect not suggestive since all participants were seated). Although plaintiff asserts that the seated line-up was done to "conceal" his height, there is no evidence to support this claim; in fact, the evidence demonstrates the opposite – that the participants were seated to ensure a fair line-up. Rule 56.1, ¶¶221-24; *People v. Thomas*, 187 A.D.3d 949, 950 (2d Dep't 2020) *leave to appeal denied* 36 N.Y.3d 976 (2020) "to conceal differences between the appearances of the lineup fillers and defendant by having participants seated during the lineups and wearing hats, and by having them hold blankets to cover any visible body marks" was not suggestive or defective); *Williams v. City of N.Y.*, 2016 U.S. Dist. LEXIS 74084, at *10-12 (S.D.N.Y. June 7, 2016) (2013 line-up not defective when participants wore hats and held garbage bag in front of their faces and bodies to simulate the bandana covering suspects face). Here, the line-up was not suggestive, the Victim and the Witness were not pressured to make a selection, and both were confident in their selection of the plaintiff. Rule 56.1, ¶¶229-71. The use of hats, to have all participants seated, to have plaintiff sit on phone books, and the use of sheets draped across all participants, under the supervision of ADA Larocca and in the presence of plaintiff's attorney, who did not object, were done for one purpose – to ensure that the line-up was fair and that the plaintiff did not stand out from the other participants. *Id.* at ¶¶215-31.

E. Plaintiff's Defense Counsels Strategy in Opening the Door to Admission of Evidence of the Photo Arrays and Composite Sketch was a Superseding/Intervening Cause Preventing Plaintiff From Pursuing Any Fair Trial Claim Regarding the Photo Array Identifications.

While the identification procedures here were not suggestive, assuming *arguendo*, a suggestive identification is not a constitutional violation; a constitutional violation may occur when a suggestive identification is admitted at trial and, as a result, impairs a criminal defendant's

right to a fair trial. *See Wray v. City of N.Y.*, 490 F.3d 189, 193 (2d Cir. 2007). However:

> [a] plaintiff may not recover damages for an unduly suggestive identification if there is an intervening cause of that damage – such as the decision of the prosecutors to offer, or the trial judge to admit, the evidence, that is, unless the plaintiff can show evidence that the officer misled or pressured the prosecution or the trial judge, the prosecutor's subsequent decision to offer the identification into evidence or the judge's decision to permit it as evidence cuts off a plaintiff's claim for recovery.

*See Delamota v. City of N.Y.*, 2016 U.S. Dist. LEXIS 68130, at *14-15 (E.D.N.Y. May 23, 2016) *aff'd*, 683 F. App'x 65, 67 (2d Cir. 2017) ("[h]ere, there is a clear and independent intervening actor – the trial court – that admitted the identification evidence.").

Here, the admission of the photo arrays and the composite sketch into evidence at the criminal trial was solely due to plaintiff's defense counsel's strategy and judgment. If not for plaintiff's trial counsel's comments and assertions that the NCDA was hiding evidence (the sketch and photo arrays), they would never have been introduced or elicited by the prosecutor at trial, and the trial court would have never have admitted said evidence. Rule 56.1, ¶¶304-08, 329-330. Even if the photo arrays were suggestive, plaintiff's counsel's conduct, and the trial court's subsequent decision to admit this evidence, was an intervening cause. *Id.* Since this evidence was not admitted as a result of the prosecutor or the trial judge being misled, but instead due to plaintiff's trial counsel's judgment, plaintiff is barred from pursuing any claim related to the photo arrays.

Plaintiff may oppose this argument by relying on *Hamilton v. City of New York*, 2019 U.S. Dist. LEXIS 56606, at *51-56 (E.D.N.Y. Mar. 19, 2019), which is without merit. In *Hamilton*, the Court found that the plaintiff's criminal defense attorney's strategy to not attack the validity of an identification, even though he knew of the alleged fabrication, was not an intervening cause. To the contrary, here, plaintiff's defense counsel's conduct and decision to open the door, was the catalyst and sole reason behind the trial court's decision to admit the photo arrays into evidence at

-24-

trial. Rule 56.1, ¶¶304-08, 329-30.  It could never have been foreseen that the photo arrays would be admitted at plaintiff's trial, as they were to be used solely for investigation purposes, and not to be used as evidence at trial. *Id.*  This intervening cause cuts off plaintiff's claim for recovery.

## III.  PLAINTIFF'S UNLAWFUL DETENTION CLAIM FAILS

The Fourth Amendment protects against "a sustained detention stemming directly from the law enforcement officials refusal to investigate available exculpatory evidence." *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007). To prevail on this claim, plaintiff must establish "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id.* at 205 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  The relevant factors to consider for this claim include: "(1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior." *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 402 (E.D.N.Y. 2014) (quoting *Russo*, 479 F.3d at 209-10).

In *Russo*, the plaintiff was arrested for and charged with a gas station robbery, and was detained for 217 days before the charges against him were dismissed. *Russo*, 479 F.3d at 199-203. A security camera recorded the crime, and the video, which was in the exclusive possession of the police, showed the assailant's left and right forearms, both of which were free of tattoos. *Id.* at 199-200.  Russo had "prominent tattoos on his forearms" pre-dating his arrest. *Id.* at 200. However, the officers falsely told Russo the video showed the assailant had tattoos. *Id.*  Russo's attorneys repeatedly sought production of the video, but an officer "actively hid" it. *Id.* at 201, 210. After the video was finally produced, the prosecutor reviewed it and clearly saw that the assailant

had no tattoos. *Id.* at 201. The next day, after verifying that Russo's tattoos pre-dated the robbery, the prosecutor requested a *nolle prosequi*, and the court dismissed the case against Russo. *Id.* The Second Circuit reversed the district court's grant of summary judgment to the defendant-officers involved in the above events, concluding that the officers' misrepresentation of the assailant's tattoos, improper storage and active hiding of the security camera footage, and failure to watch the footage to see if it was exculpatory-even while it was in their exclusive possession-"shocked the conscience" and amounted to a violation of the duty owed to a detainee. *Id.* at 210.

Plaintiff's allegations do not rise, and the record does not demonstrate, that any of the defendants' actions rise to the level of conscience-shocking conduct necessary to prevail on this claim. There is no evidence that any defendant refused to investigate readily available, plainly exculpatory evidence, similar to the video in *Russo*. Not only is the purported coercion of Ogletree based on inadmissible evidence, it was not exculpatory. Plaintiff's claim that the "corruption" of the Victim's identifications was exculpatory and not disclosed has no merit – these identifications were not suggestive, not corrupted, and do not give rise to an inference that exculpatory evidence was withheld. *See Delamota*, 683 F. App'x at 67 (plaintiff alleged "only that [detective] withheld information from the [DA's] office and the grand jury regarding (1) the suggestive nature of the photo array, (2) the fact that Juan Jr. interpreted for his father, and (3) the likelihood that Juan Jr. may have known the plaintiff. As the District Court properly concluded, none of these allegations give rise to an inference that [detective] withheld exculpatory evidence.").

Plaintiff's claim that unidentified defendants failed to disclose "the 2008 tip" is similarly unavailing. *See* **Exhibit A**, ¶¶26, 73, 124. Initially, "by lumping all of the defendants together as 'defendants' and failing to specify or distinguish between them as to the alleged conduct, Plaintiff fails to satisfy the personal-involvement requirement." *Johnson v. City of N.Y.*, 2017 U.S. Dist.

LEXIS 81359 (S.D.N.Y. May 26, 2017) (unlawful detention claim dismissed for failure to satisfy personal-involvement requirement). There is no evidence in the record about this purported tip, that this tip was made in 2008 while the plaintiff was in custody, who made this alleged tip, the "tip line" or the entity that received said tip, which defendants knew of and failed to disclose this purported tip, much less that any defendant deliberately suppressed it. *See Hicks v. Marchman*, 719 F. App'x 61, 64 (2d Cir. 2018) (summary order) (no constitutional right "to have the police conduct an adequate investigation."). Therefore, plaintiff's unlawful detention claim must fail.

## IV. PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW

In the absence of an underlying constitutional violation, there are no grounds to assert § 1983 liability against a municipal entity. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Glassman v. City of N.Y.*, 557 F. App'x 97, 99 (2d Cir. 2014). In that regard, a *Monell* claim is derivative and can only survive if the claim for the underlying violation survives. As demonstrated throughout this memorandum, plaintiff's claims alleging a constitutional violation all fail, and as such, there are no grounds to continue a *Monell* claim against the County.

To prevail on a § 1983 municipal liability claim, plaintiff must show: "(1) actions taken under color or law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality…caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (plaintiff must prove "action pursuant to official municipal policy caused their injury"). Plaintiff must establish: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray*, 490 F.3d at 195 (internal quotations omitted). To satisfy the "policy or custom" prong, plaintiff must demonstrate that: (1) the municipality has a formal policy that it officially promulgated or adopted (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690

(1978)); (2) the official(s) responsible for establishing policy with respect to the subject matter in question took specific action that caused the alleged violation of the plaintiff's rights (*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)); (3) a "persistent and widespread [unlawful] practice by a subordinate municipal employee (or employees) other than a policymaker … so manifest as to imply the constructive acquiescence of senior policy-making officials" (*Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020) (internal quotations omitted)); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact (*City of Canton v. Harris*, 489 U.S. 378, 388 (1988)).

"*Monell* [liability] requires more than isolated incidents to subject the [municipality] to liability," (*Escobar v. City of N.Y.*, 766 F. Supp. 2d 415, 420 (E.D.N.Y. 2011)), and "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). This is particularly true where the alleged unconstitutional conduct "involved only actors below this policy-making level." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (citation omitted).

Plaintiff's *Monell* claim is not based on the County's failure to train or supervise. *See* **Exhibit A**, ¶¶129-33. Plaintiff does not assert and the record is devoid of evidence to demonstrate incidents of unconstitutional conduct by County police officers related to the administration of identification procedures. *Id.* Instead, plaintiff claims that the County had certain policies in 2008 regarding identification procedures, although, at the time, as discussed *supra* at Point II.D, all of these claimed policies were neither unconstitutionally defective nor unduly suggestive. *See Thomas*, 187 A.D.3d at 950 (seated line-up, wearing hats, blankets over participants bodies); *Williams*, 2016 U.S. Dist. LEXIS 74084, at *10-12 (2013 line-up, wearing hats, garbage bag held in front of participants faces and bodies); *Campbell*, 2020 U.S. Dist. LEXIS 151413, at *21-31

(2011 seated line-up, plaintiff more than 10 years younger than multiple fillers); *Stallings*, 2012 U.S. Dist. LEXIS 30293, at *33-51; *Selvon v. City of N.Y.*, 2020 U.S. Dist. LEXIS 208902 at *7 (E.D.N.Y. Nov. 9, 2020) (2009 line-up, wearing hats); *Green*, 14 A.D.3d at 579-80; *Jenkins*, 478 F.3d at 93-94; *Mara*, 921 F.3d at 74 (2012-2013, multiple photo arrays where different photographs of plaintiff included in the arrays presented to the witness was not suggestive); *Keith*, 2014 U.S. Dist. LEXIS 166469 at *51-55; *Griffin*, 109 A.D. at 740 (old photo used in photo array).

Plaintiff cannot demonstrate that any of these policies were unconstitutional, or that these policies were a moving force in plaintiff's constitutional deprivation.  In 2008, the NCPD's policy regarding photo array and line-up procedures were neither unduly suggestive nor constitutionally defective. Rule 56.1, ¶¶332-50.  Therefore, plaintiff's *Monell* claim must be dismissed.

## V.   PLAINTIFF'S CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

To maintain an action for civil conspiracy pursuant to § 1983, a plaintiff is required to show: "1) an agreement between two or more state actors or between a state actor and a private entity; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal causing damages" and also prove there was an actual deprivation of a constitutional right. *Celestin*, 581 F. Supp. 2d at 434.  Plaintiff must demonstrate, through factual substantiation, an agreement or a meeting of the minds existed rather than rely on vague or conclusory allegations. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

After the close of extensive discovery, there is no evidence of an agreement, or overt act taken, between the NCPD detectives and FPD officers to work together to violate plaintiff's constitutional rights.  Any argument that plaintiff intends to make is speculative, conclusory, and will not satisfy plaintiff's burden to point to specific facts demonstrating a genuine issue for trial. *See Greene*, 2017 U.S. Dist. LEXIS 37243, at *90; *Amato v. Hartnett,* 926 F. Supp. 2d 416, 440

(S.D.N.Y. 2013) (granting summary judgment where "[p]laintiff has not included any allegations or competent evidence to show that the individual Defendants 'acted in a willful manner, culminating in an agreement' that violated his rights secured by the Constitution.") (internal citation omitted).  In addition, as discussed *supra* at Point I.B.1-4, the existence of probable cause invalidates plaintiff's conspiracy claim since there has been no deprivation of a constitutional right. *See Celestin*, 581 F. Supp. 2d at 434-35.  Thus, plaintiff's conspiracy claim fails.

## VI. PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AND ALL CLAIMS AGAINST THE COUNTY DEFENDANTS MUST BE DISMISSED AS THEY DID NOT INTENTIONALLY AND DIRECTLY PARTICIPATE IN CONDUCT CONSTITUTING A VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

Since plaintiff's rights were not violated, there was no opportunity for any defendant to intervene.  Failure to intervene claims are "contingent upon the disposition of the primary claims underlying the failure to intervene claim" (*Matthews v. City of N.Y.,* 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012)), and since plaintiff has failed to substantiate any of his primary claims, this claim must be dismissed.  In addition, when an individual is held under a theory of direct participation, he cannot also be held liable under a theory of failure to intervene. *See Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020).  Since plaintiff alleges that all individual County defendants' are liable under a direct theory of participation for fabricating evidence and evidence suppression (Count 2), conspiracy (Count 6), and unlawful pre-trial detention (Count 7), plaintiff is barred from making any claims against those individual defendants for failing to intervene. *Id.*

To establish a failure to intervene claim, plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [plaintiff's] clearly established statutory or constitutional rights," (2) it was "objectively unreasonable for [the officer] to believe that his fellow officers' conduct did not violate those rights" and (3) that the officer had a "realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. *Ricciuti,* 124 F.3d at 129. Even if an officer

was present at the precinct and interacted with the plaintiff, said officer cannot be held liable for failing to intervene unless said officer was present for a constitutional violation and had a realistic opportunity to intervene. *Alicea v. City of N.Y.*, 2016 U.S. Dist. LEXIS 58860 (S.D.N.Y. May 2, 2016) (no evidence sergeant, who spoke with plaintiff in cell area, was present when another officer injured plaintiff); *Rodriguez v. City of N.Y.*, 2018 U.S. Dist. LEXIS 87553, at *11 (S.D.N.Y. May 24, 2018); *Toliver v. City of N.Y.*, 2013 U.S. Dist. LEXIS 175670 (S.D.N.Y. Dec. 10, 2013), *adopted by* 2014 U.S. Dist. LEXIS 17227 (S.D.N.Y. Feb. 11, 2014); *Jean-Laurent v. C.O. Wilkinson,* 438 F. Supp. 2d 318 (S.D.N.Y. 2006) *aff'd* 461 F. App'x 18 (2d Cir. 2012); *Dash*, 2020 U.S. Dist. LEXIS 56475, at *31-35 (summary judgment granted for officer present when plaintiff wrote confession, but not present when another officer allegedly forced plaintiff to confess).

In addition, to prevail on a § 1983 claim, plaintiff must demonstrate the defendants' "personal involvement in the alleged constitutional deprivations…" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted).  Where there is no evidence that individually named defendants intentionally and directly participated in conduct that violates plaintiff's constitutional rights, the claims against them must be dismissed. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).  Plaintiff must also prove the defendant's actions are the proximate cause of his injuries. *See Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002).

As demonstrated below, there is no dispute that all of the County defendants, individually: 1) did not observe any violation of plaintiff's rights; and 2) did not have a realistic opportunity to intervene.  In addition, none of the County defendants intentionally and directly participated in conduct that violated plaintiff's constitutional rights, and no evidence that any County defendants' actions proximately caused any injury to plaintiff.  Thus, all failure to intervene claims against the County defendants fail, and all County defendants should be dismissed as named defendants.

**Dorsi and Ross**

Ross' sole involvement was conducting the line-up, which was ordered by the court and done under the supervision of ADA Larocca, and in the presence of both ADA Larocca and plaintiff's defense attorney, and discussing whether all participants should wear hats, which is not suggestive or a violation of plaintiff's rights. Rule 56.1, ¶¶208-72.  Other than his minimal interaction of providing instructions to the Victim and Witness when they viewed the line-up, Ross did not speak with either of them. *Id.*  Dorsi's involvement was even more limited, as he was present for and observed the line-up, but did not interact with the Victim or Witness. *Id.*  Dorsi and Ross did not speak with either the plaintiff or Ogletree at the Armory. *Id.* at ¶¶90-109, 127-34, 148-55, 209.  They did not respond to the scene of the shooting, were not involved with the creation of, or present for the administration of, the photo arrays presented to the Victim and Witness, and were not involved with the investigation that led to plaintiff's arrest. *Id.* at ¶¶59, 126, 147, 168.

**Dluginski**

Although Dluginski was the investigating detective who responded to the scene of the shooting, his involvement was limited.  Dluginski was present for and assisted in conducting the line-up, which was not unduly suggestive. Rule 56.1 ¶¶212-271, 284-87.  Dluginski was not present when the plaintiff and Ogletree were taken in to custody, and did not speak with either of them at the Armory. *Id.* at ¶¶155, 178-79.  He was also not involved with the creation of, or present for the administration of, the photo arrays. *Id.* at ¶¶126, 147, 168.

**Darienzo**

Although Darienzo accompanied Decaro to the Armory, his involvement was also limited. While Darienzo was present for the initial interview of Ogletree, he was not present when Ogletree signed his written statement. Rule 56.1, ¶¶127-33.  He did not respond to the scene of the shooting,

-32-

and was not involved with the creation of, or present for the administration of, the photo arrays. *Id.* at ¶¶59, 126, 147, 168. Darienzo did not speak with a prosecutor when plaintiff was charged, and did not play any role in deciding what charges would be brought against the plaintiff. *Id.* at ¶176. Darienzo's sole involvement with the line-up was to ensure that the Witness was separated from everyone else involved, and retrieved a statement after the Witness viewed the line-up; he was not present when the Victim or the Witness viewed the line-up. *Id.* at ¶¶238-39, 251-63.

### Decaro

Although Decaro interacted with Ogletree at the Armory, his involvement was also limited. Even though Ogletree's trial testimony is inadmissible, his purported "coercion" claim is merely conclusory, unreliable, and does not rise to a level that the plaintiff's rights were violated. Rule 56.1, ¶¶127-33, 309-14. Decaro forwarded the results of his investigation to the NCDA, which reviewed the paperwork and approved the charges against the plaintiff. *Id.* at ¶¶170-74. He was not involved with the investigation prior to June 6, 2008, was not involved with the creation of, or present for the administration of, the photo arrays, not present for or involved with the line-up, and did not have any interaction with the Victim of the Witness. *Id.* at ¶¶59, 109, 126, 147, 168, 273.

### Lipson

Lipson's involvement was also limited – he was the sole County defendant involved with the creation of and administration of the photo arrays. Rule 56.1 ¶¶113-26, 136-47, 156-69. Other than administering the photo arrays, Lipson did not speak with the Victim or the Witness. *Id.* at ¶¶59, 273. While Lipson was present when Ogletree signed his written statement, there is no evidence to support that he was present for any purported coercion, just that he was present when the statement was signed. *Id.* at ¶¶133, 309-14. Lipson did not respond to the scene of the shooting, and was not present for or involved with the line-up. *Id.* at ¶¶59, 273.

8230766v.1

## VII.  THE COUNTY DEFENDANTS ARE SHIELDED FROM ANY LIABILITY BY THE DOCTRINE OF QUALIFIED IMMUNITY

All the County defendants are shielded by the doctrine of qualified immunity.  A police officer is protected from liability for his discretionary actions if either "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (citation and internal quotation marks omitted).  First, qualified immunity will protect an officer if there is no clearly established law addressing the challenged conduct. As the Supreme Court has reiterated:

> Clearly established law means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful… To be clearly established… the rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply… The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.  The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This requires a high degree of specificity.  We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.  A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal citations and quotations omitted).  The ultimate question of "whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court" and "has its principal focus on the on the particular facts of the case." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

Second, notwithstanding a violation of a clearly established right, an officer is also entitled to qualified immunity if it "was objectively reasonable for him to believe that his actions did not

violate this right." *Johnson v. City of N.Y.*, 940 F. Supp. 631, 636 (S.D.N.Y. 1996) (citation omitted). The standard is objective, "asking not whether the defendant officer acted in good faith or what he himself knew or believed, but rather what would have been known to or believed by a reasonable police officer in the defendant's position." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) (citation omitted). The doctrine of qualified immunity is deliberately forgiving and gives police officers "breathing room to make reasonable but mistaken judgments without fear of potentially disabling liability." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quotations and citations omitted). Officers are "not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Coolick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012) (citations omitted).

A. Qualified Immunity Shields the County Defendants from Plaintiff's Malicious Prosecution and False Imprisonment Claims.

Even where probable cause does not exist, an officer is entitled to qualified immunity if "there was 'arguable probable cause' to arrest." *Ackerson v. City of White Plains,* 702 F.3d 15, 21 (2d Cir. 2012) quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause" exists where "it [is] objectively reasonable for the officer to believe that probable cause exist[s]" or "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* An officer is entitled to qualified immunity if his mistake as to what the law requires is reasonable, or if he reasonably but mistakenly concluded that probable cause existed. *See Poe v. Leonard,* 282 F.3d 123, 133 (2d Cir. 2002); *Caldarola*, 298 F.3d at 162; *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Thus, the test for "qualified immunity is more favorable to the officers than the one for probable cause; arguable probable cause will suffice." *Escalera*, 361 F.3d at 743; *Walston v. City of N.Y.*, 289 F. Supp. 3d 398 (E.D.N.Y. 2018) *aff'd*, 754 F. App'x 65 (2d Cir. 2019) (arguable probable cause is a lower standard than probable cause).

Since, as discussed *supra* at Point I.B.1-4, there was abundant probable cause to arrest the plaintiff, all the County defendants are entitled to qualified immunity.  Both the Victim and the Witness unequivocally identified the plaintiff in separate photo arrays[10] and from at a line-up. Rule 56.1, ¶¶140-41, 158-59, 163-64, 188, 282-83.  They both identified the plaintiff as the person they argued with and shot the Victim, not that he "looked like" the perpetrator; even if that were the case, there would be at least arguable probable cause. *See Keith*, 2014 U.S. Dist. LEXIS, at *40-42. There is no evidence to give any County defendant, or any reasonable police officer, a reason to doubt the multiple positive identifications, which were independently vetted by prosecutors. *See Nunez v. Diedrick*, 2017 U.S. Dist. LEXIS 77332, at *15-20 (S.D.N.Y. May 18, 2017) (2010, officer entitled to qualified immunity based on identifications from one witness); *Barnes*, 2021 U.S. Dist. LEXIS 14861, at *12-15 (2013, officer not entitled to qualified immunity on false arrest claim due to single photo identification from an uncredible witness, but malicious prosecution claim dismissed due to prosecutor's independent judgment).

Even if an identification procedure is suggestive, it can still support probable cause and entitle an officer to qualified immunity. *See Williams*, 2016 U.S. Dist. LEXIS 74084 (2013, officers entitled to qualified immunity and had at least arguable probable cause when they advised witness that they knew who committed the crime prior to presenting the photo array, where the array depicted 2 of the 6 men to have their hair in braids).  In *Williams v. City of N.Y.*, 2012 U.S. Dist. LEXIS 19207 (E.D.N.Y. Feb. 15, 2012), in a line-up in 2009, the plaintiff was the only person with his head covered wearing a "do-rag," and the fillers did not match the description of the suspect's height and build.  Even though the line-ups were suggestive, it was no more suggestive

---

[10] Although the admissible evidence establishes that Lipson never confirmed the Victim's selection *after* he identified the plaintiff from the photo array, in 2008, there was no clearly established law suggesting that this allegation was unlawful or would constitute a violation of an individual's civil rights.

than a "show-up" or presenting the witness with a single photograph, and the Court held that the officers had at least arguable probable cause and were entitled to qualified immunity. *Id.* at *24-25. In *Zalewski v. Nappi*, 2016 U.S. Dist. LEXIS 194725 (E.D.N.Y. Sept. 1, 2016), this Court found that officers were entitled to qualified immunity. In *Zalewski*, the officers had at least arguable probable cause based on a show-up identification by a witness, who "may have identified [the plaintiff] based on his sweatshirt rather than his face." *Id.* at *8-18. Here, Lipson did not coerce or suggest to the Victim or the Witness to select a particular photograph from the array, nor did they feel pressured or compelled to do so, and their positive identifications of the plaintiff establish, at the very least, arguable probable cause. Rule 56.1, ¶¶140-41, 158-59, 163-64, 188.

Although Ogletree's testimony is inadmissible, his recantation on the stand and the purported coercion of his statement will still not preclude a finding of probable cause. *See Jovanovic*, 2010 U.S. Dist. LEXIS 144388, at *22, n.3 (since video not shown to grand gury, it has no "relevance with respect to a determination of whether [plaintiff] has overcome the Grand Jury presumption of probable cause."); *Escalera*, 361 F.3d at 747-78 (officer omitting information from a transcript granted qualified immunity since his actions were irrelevant to probable cause). In *Bouche v. City of Mt. Vernon*, 2013 U.S. Dist. LEXIS 11424 (S.D.N.Y. Jan. 28, 2013), a witness who was in the car with the victim when he was murdered, initially told police that he was unable to identify the shooter. Several months later, after plaintiff was arrested and indicted, the witness claimed he knew who the shooter was, identified the plaintiff from a line-up, but at the criminal trial, recanted his statements and identification of the plaintiff. *Id.* at *28-29. The Court granted summary judgment and held that the officers were entitled to qualified immunity since the grand jury indicted the plaintiff without relying upon this later identification. *Id.* Here, as evidenced by the procurement of an indictment without any evidence regarding Ogletree, along with the

reliability of the identifications, the County defendants are entitled to qualified immunity.

B. Qualified Immunity Shields the County Defendants from Plaintiff's Denial of Fair Trial, Due Process, and Remaining Claims.

Similarly, the defendants are entitled to qualified immunity on plaintiff's fair trial claims. A qualified immunity determination "is made not from the perspective of the courts or lawyers, but from that of a reasonable officer in the defendants' position." *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017). The "[f]abrication of evidence is not objectively reasonable or a subject over which reasonable law enforcement officials could disagree[.]" *Galgano v. Cty. of Putnam*, 2018 U.S. Dist. LEXIS 169725, at *107-09 (S.D.N.Y. Sept. 28, 2018). However, like in *Ganek*, where the Second Circuit granted qualified immunity on a fair trial claim, the Court here "need not decide whether [any] misrepresentation […] was knowingly false" because, even assuming that it was, there is no indication that the plaintiff was denied the right to a fair trial. *Id.* at 82.

Here, none of the identification procedures amount to a violation of the plaintiff's right to a fair trial. None of the actions (or failures to act), by the County defendants violated plaintiff's constitutional rights, it was not clearly established that said actions (or failures to act) in 2008 were unlawful, and it was objectively reasonable for the defendants to proceed as they did. The differences between the plaintiff and description of the perpetrator does not demonstrate that the trial was fundamentally unfair. *See Fields*, 2021 U.S. Dist. LEXIS 159927, at *21. The plaintiff's trial counsel's conduct and judgment was an intervening cause that led to the admission of the photo arrays as evidence at trial, thus barring plaintiff from pursing any claim related to these arrays. Rule 56.1, ¶¶304-08, 329-330. The claimed fabrication of the felony complaints was not material, demonstrated by both prosecutors, who were aware that the plaintiff never confessed to shooting the Victim, but made corroborating statements. *Id.* at ¶¶148-54, 192. Although Ogletree's testimony is inadmissible, his recantation on the stand and purported coercion warrants a finding

that the County defendants are entitled to qualified immunity, as it did not deprive plaintiff the right to a fair trial. The jury heard about the alleged coercion and purported false statement (*which was not admitted into evidence*), and convicted the plaintiff regardless. *Id.* at ¶¶ 198, 309-14, 326.

In any event, even where the Court finds an issue of fact as to whether the officers coerced a suspect into a confession, an officer may still be entitled to qualified immunity on a fabrication of evidence claim. In *Thomas v. Mason*, 2023 U.S. Dist. LEXIS 54585, at *19-40 (N.D.N.Y. Mar. 30, 2023), the court denied the officers motion for summary judgment on plaintiff's right to a fair trial claim based on a question of fact of whether the officers coerced and fabricated plaintiff's statement, but nonetheless found that the officers were entitled to qualified immunity. *Id.* Here, there is not even enough evidence to determine if Ogletree's statement was fabricated or the subject of coercion. All County defendants either deny that this statement was false or the product of coercion, or were not present when Ogletree signed this. Rule 56.1, ¶¶131-33, 155, 313. Ogletree's unreliable inadmissible testimony where he does not identify which defendant was involved and is riddled with inconsistencies, is conclusory and does not meet the threshold to find that his statement was coerced, involuntarily made, or fabricated. *Id.* at ¶¶127-33, 309-14. However, the evidence that we do have demonstrates his statement was in fact not coerced or fabricated.

While the Supreme Court has noted that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it" (*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)), that does not render a statement involuntarily made or the product of coercion. *See United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) (citing cases) (determining if confession is a product of coercion "may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused characteristics, the conditions of interrogation, and the conduct of law enforcement officials."). Here, Ogletree admits to voluntarily signing the *Miranda*

card and being advised of his rights, which on its own demonstrates the voluntariness of the statement and that it was not coerced. Rule 56.1, ¶127; *see also Butler v. Hesch*, 2020 U.S. Dist. LEXIS 49437, at \*51 (N.D.N.Y. Mar. 23, 2020); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 528 (S.D.N.Y. 2015) (collecting cases).  Ogletree admits that he signed the statement, was previously arrested, demonstrating his knowledge of the use of potentially coercive police tactics, never asked to leave or speak with an attorney, and there is no evidence that he was physically intimidated or abused. *See* **Exhibit D**, p. 262-274, 297-331.

Due to the multiple reliable identifications of the plaintiff by the Victim and the Witness, which was the sole basis for the arrest and indictment, none of plaintiff's claims for fabrication evidence are material, the County defendants cannot be held liable. Therefore, all the County defendants are entitled to summary judgment on the independent ground of qualified immunity.

## VIII. THE VILLAGE DEFENDANTS' CROSS-CLAIMS MUST BE DISMISSED

Since there is no right to either contribution of indemnity in a § 1983 action, the Village defendants' cross-claims asserted against the County defendants must be dismissed. *See Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 184-84 (E.D.N.Y. 2010).

## CONCLUSION

For the reasons set forth above, the County defendants' motion should be granted in its entirety.

Dated:    White Plains, New York
July 31, 2023

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for the County Defendants

John A. Vitagliano