UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                         :

**JOSIAH GALLOWAY**,

                        Plaintiff,

                                         **MEMORANDUM DECISION AND ORDER**

              – against –

                                         19-CV-5026 (AMD) (JMW)

**COUNTY OF NASSAU**, *et al.*,

                        Defendants.
----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      Before the Court are the County defendants'[1] and the Village defendants'[2] motions under Federal Rule of Civil Procedure 60(b) and Local Rule 6.3 for reconsideration of and relief from the Court's March 29, 2024 memorandum decision and order denying in part and granting in part the defendants' motions for summary judgment. For the reasons explained below, the Village defendants' motion is granted and the County defendants' motion is denied.

## BACKGROUND

      The Court assumes familiarity with the underlying facts and procedural history of this case, which are discussed in detail in the Court's March 29, 2024 memorandum decision and order denying in part and granting in part the defendants' motions for summary judgment. (*See* ECF No. 220 at 2–14.) The Court granted summary judgment to the County and Village defendants as to the plaintiff's false imprisonment, unlawful detention, conspiracy, and *Monell* claims. The Court denied summary judgment as to the fair trial claims (which the plaintiff

---

[1] The "County defendants" are Nassau County, the NCPD, and Detectives Charles DeCaro, Thomas D'Luginski, George Darienzo, Matthew Ross, and Ronald Lipson.

[2] The "Village defendants" are the Village of Hempstead and Police Officer Steven Horowitz.

advanced under three theories — fabrication of evidence, unduly suggestive identification procedures, and suppression of exculpatory evidence), state and federal malicious prosecution claims, and failure-to-intervene claims. The Court also deferred ruling on qualified immunity pending resolution of the factual disputes in this case.

The following claims remain in this lawsuit: (1) a 42 U.S.C. § 1983 malicious prosecution claim against Police Officer Horowitz and Detectives DeCaro, Darienzo, Lipson, and D'Luginski; (2) a § 1983 fair trial claim alleging fabrication of evidence, unduly suggestive identification procedures, and *Brady* violations against all individually named defendants: Police Officer Horowitz and Detectives Ross, DeCaro, Lipson, D'Luginski, and Darienzo; (3) a New York state law claim for malicious prosecution against Nassau County and the Village of Hempstead; and (4) a § 1983 claim for failure to intervene against all individually named defendants.

Both the County defendants and the Village defendants filed motions for reconsideration. (*See* ECF Nos. 221, 222.)

## LEGAL STANDARD

Rule 60(b) allows the Court to relieve a party from an order in the following circumstances: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *McAnaney v. Astoria Fin. Corp.*, 233 F.R.D.

2

285, 287 (E.D.N.Y. 2005) (citation omitted). "Reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'" *Suarez v. Big Apple Car, Inc.*, No. 15-CV-5330, 2017 WL 9400686, at *1 (E.D.N.Y. Dec. 1, 2017) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). "However, a party cannot 'rel[y] on different facts and alternative arguments to seek reconsideration.'" *Id.* (quoting *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07-CV-7983, 2017 WL 4129644, at *8 (S.D.N.Y. Sept. 18, 2017)). Thus, "[a] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of Tr. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) (citing *Zerman v. Jacobs*, 751 F.2d 82, 85 (2d Cir. 1984)).

## DISCUSSION

### I.  The Village Defendants' Motion for Reconsideration

The Village defendants argue that the Court should have granted summary judgment as to Horowitz — the only individually named Village defendant remaining in the lawsuit other than the municipality. (ECF No. 222-1.)  After careful consideration of the submissions, the Court concludes that the Village defendants are correct.

It is undisputed that Horowitz's participation was limited.  He responded to the scene of the Anyosa shooting, was present when the plaintiff was arrested, was present with Lipson when Hernandez looked at the photo array, and testified in the grand jury only about responding to the scene of the Anyosa shooting.  (ECF No. 220 at 4, 8; ECF No. 194-7 at 28–30; Pl. 56.1 ¶ 367.) For purposes of this lawsuit, only the circumstances of the Hernandez photo array are relevant in determining whether there are factual disputes about Horowitz's participation in the alleged constitutional violation.  Specifically, the only question is whether Horowitz or Lipson told Hernandez that "they had the person who was the cause of the incident" before they showed Hernandez the photo array.  (*See* ECF No. 220 at 25 (quoting ECF No. 194-29 at 31).)  Drawing

3

all inferences in favor of the plaintiff, the non-moving party, the Court explained in the summary judgment order that commenting that someone was in custody, standing alone, did not render the photo array identification procedure unduly suggestive. (ECF No. 220 at 26 (collecting cases).)

Accordingly, even if the plaintiff could show at trial that it was Horowitz who told Hernandez that a suspect was in custody before they showed him the photo array, that would not be enough to support fair trial or malicious prosecution claims against Horowitz. Additionally, given Horowitz's limited involvement, the Court finds that Horowitz did not have "a realistic opportunity to intervene and prevent" violations of the plaintiff's constitutional rights that may have occurred at other points during the investigation and prosecution. *Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (affirming dismissal of excessive force and failure-to-intervene claims against a detective who was not present when alleged constitutional violations occurred).

Summary judgment is therefore granted as to all claims against Horowitz — the § 1983 malicious prosecution claim, the § 1983 fair trial claim, and the § 1983 claim for failure to intervene — and Horowitz is dismissed as a defendant in this lawsuit. Because the malicious prosecution claim against Horowitz is dismissed, summary judgment is also proper as to the New York state law claim for malicious prosecution brought against the Village of Hempstead, because no relevant conduct can be attributed to the municipality under a *respondeat superior* theory or otherwise. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015). The Village of Hempstead is thus also dismissed as a defendant in this lawsuit.

**II.     The County Defendants' Motion for Reconsideration[3]**

    **a.     General Challenge to Fair Trial, Malicious Prosecution, and Failure-to-Intervene Claims**

One of the themes the County presses in seeking reconsideration is that the defendants cannot be held liable if they were not physically present for certain conduct. The County argues that:

- Ross cannot be held liable for any alleged constitutional violations that occurred before the line-up. (ECF No. 221-1 at 13.)
- Lipson, DeCaro, and Darienzo cannot be held liable for any alleged constitutional violation associated with the line-up. (*Id.* at 13–14.)
- D'Luginski cannot be held liable for any alleged constitutional violation associated with Ogletree's statement. (*Id.* at 17.)
- Darienzo, D'Luginski, and DeCaro cannot be held liable for any alleged constitutional violation associated with the photo array. (*Id.* at 20.)

These arguments do not address an error in the Court's summary judgment order. As the plaintiff points out, the Court accounted for these unremarkable propositions in its order. (*See* ECF No. 226 at 7.)

The plaintiff claims that each defendant violated his right to a fair trial and posits three theories of liability: fabrication of evidence, unduly suggestive identification procedures, and suppression of exculpatory evidence. But not every theory of liability applies to each defendant, because not every defendant was present for each relevant act underlying certain theories of liability. However, at least one theory of liability applies to each fair trial claim against each County defendant, which is sufficient to survive summary judgment. There is no reason to dismiss an otherwise valid claim even if it was also brought pursuant to an irrelevant theory of liability. *See Johnston v. Cnty. of Sonoma*, No. 10-CV-03592, 2011 WL 855934, at *4 (N.D.

---

[3] The County defendants divide and repeat arguments in different sections of their briefing. For purposes of efficiency and clarity, the Court has reordered and consolidated the arguments.

Cal. Mar. 9, 2011) (rejecting similar argument where "each cause of action" had "a legal basis" even though the plaintiff had also "pleaded certain legal bases for those claims that are not applicable"). Accordingly, there are no fair trial claims that should have been entirely dismissed for the County defendants, and thus no error to correct.[4]

Similarly, the County defendants argue that the defendants cannot be held liable for failing to intervene in acts in which they were not involved or for which they were not present. This point, too, is as obvious as it is correct. Drawing all inferences in the plaintiff's favor, because each defendant was present for at least one alleged violation and *could* have intervened, there are no failure-to-intervene claims to dismiss.

### b. Specific Challenges to the Court's Denial of Summary Judgment on the Fair Trial Claims

#### i. *Magliaro Affidavit*

The County defendants repeat their argument that Lori Magliaro's affidavit is "unreliable," and that "[a]dditional evidence" of the affidavit's unreliability "surfaced on March 13, 2024, . . . as Thomas Liotti, the (former) attorney who drafted and prepared this affidavit, was suspended from the practice of law due [to] his misconduct while acting in his capacity as an attorney." (ECF No. 221-1 at 14–15 (citing *Matter of Liotti*, 2024 N.Y. App. Div. LEXIS 1286, 2024 NY Slip Op. 01310 (2d Dep't Mar. 13, 2024).) Liotti was suspended for making insulting remarks about opposing counsel and a judge in another matter, which has nothing to do with this case or Magliaro's affidavit. *Matter of Liotti*, 2024 N.Y. App. Div. LEXIS 1286. Liotti's suspension is therefore not material and does not warrant granting the defendant's motion. *See Hanover Ins. Co. v. Weirfield Coal, Inc.*, No. 19-CV-04456, 2022 WL 21296023, at *1

---

[4] For these same reasons, there are no malicious prosecution claims to dismiss. Obviously, the defendants cannot be liable for conduct in which they had no involvement, but there are no claims to dismiss entirely.

6

(E.D.N.Y. May 26, 2022) (when a party seeks reconsideration based on new evidence "the new evidence must be of such importance that it probably would have changed the outcome of the prior ruling" (cleaned up)).

The County defendants argue that Magliaro's affidavit contains inadmissible hearsay and that "she is not competent to testify as to the matters asserted in the affidavit." (ECF No. 221-1 at 15.) This argument is without merit. According to Magliaro, Ross made admissions to her, which are not hearsay. (ECF No. 220 at 10–11); *see* Fed. R. Evid. 801(d)(2)(A) (admission of an opposing party is not hearsay).[5]

Accordingly, the Court declines to dismiss the claims related to Magliaro's affidavit.

> ii. *Fair Trial Claim Based on the Line-Up Procedure*

The County defendants argue that the Court was wrong to conclude that "there are disputes of material fact about whether Detective Ross used otherwise acceptable line-up procedures with the intent to conceal the plaintiff's height and deprive him of a fair trial," because the Court also "found that the line-up procedures employed were not unduly suggestive." (ECF No. 221-1 at 15–16 (citing ECF No. 220 at 23).) Thus, they say, "Ross should be dismissed as a named defendant in this lawsuit." (*Id.*)

This argument is unpersuasive. The Court found the measures employed in the line-up — having the participants seated, wearing hats, and covered by a sheet, as well as having the plaintiff seated on telephone books to minimize any height differences — were not, by themselves, unduly suggestive. But the plaintiff did not argue that the line-up procedure was designed to single him out. *Compare Roldan v. Artuz*, 78 F. Supp. 2d 260, 272 (S.D.N.Y. 2000)

---

[5] In addition, the County defendants did not make this argument in their summary judgment briefing, and it is therefore not a proper ground for reconsideration. *See Suarez*, 2017 WL 9400686, at *1 (quoting *Nimkoff*, 2017 WL 4129644, at *8).

7

(finding a similar line-up procedure was not unduly suggestive where the plaintiff argued he "appeared drastically different from all of the fillers, he was either taller, and or lighter in complexion, heavier in weight, younger than fillers and [his] hair style was totally different"). Rather, the plaintiff maintains that Ross utilized these measures to conceal the features that demonstrated that he was not the person who shot the victim, thereby ensuring a misidentification.  This is a fair trial claim, whether it is categorized under the unduly suggestive identification standard or the fabrication of evidence standard, and there are disputes of material fact that preclude summary judgment. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) ("Suggestive identification procedures increase the likelihood of misidentification, and it is the likelihood of misidentification which violates a defendant's right to due process." (cleaned up)); *West v. Greiner*, No. 01-CV-1267, 2004 WL 315247, at *5 (E.D.N.Y. Feb. 12, 2004) ("The focus of the [unduly suggestive identification procedure] inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness."); *see also Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021) (a plaintiff bringing a fabrication of evidence claim must show that "(1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions"); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) ("[A]ny information fabricated by an officer can serve as the basis of a claim for a denial of the right to a fair trial." (emphasis omitted)).

Moreover, there are factual disputes about Ross's ability to intervene and the extent to which he made suggestive comments during the line-up procedure.  (*See* ECF No. 220 at 26.)

Accordingly, the Court declines to dismiss the fair trial claim against Ross or to dismiss Ross from this action.

### iii.  Ogletree Statement

The County defendants renew their argument that Ogletree's testimony at the plaintiff's criminal trial would be inadmissible at a trial in this matter, and thus cannot be the basis for denying summary judgment. (ECF No. 221-1 at 18–19; *see* ECF No. 192 at 27–28 (County defendants' summary judgment motion).) The Court has considered this argument and rejected it. (ECF No. 220 at 16–20); *see Maldonado*, 490 F. App'x at 406 ("A Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." (citation omitted)).

### iv.  Comment to Hernandez Before Photo Array

The County defendants argue that "[n]o defendant can be held liable for the alleged statement to Hernandez regarding a suspect in custody prior to viewing the photo array." (ECF No. 221-1 at 21.) As explained earlier, the Court did not find that any defendant could be liable for that statement alone (ECF No. 220 at 25–26); accordingly, there was no error.

The County defendants also argue that the Court erroneously "merge[d] the photo array (taking place on June 6, 2008) and line-up (taking place on August 14, 2008) together" in determining that "there are issues of fact for all identification procedures administered to Hernandez." (ECF No. 221-1 at 21.) The Court did not "merge" these identification procedures; rather, in a separate paragraph, the Court found that, drawing all inferences in favor of the plaintiff, a jury could find that a detective present for the line-up — including Ross or D'Luginski — told Hernandez he selected the "right person," a statement which could have tainted future identification procedures. (ECF No. 220 at 26.) Accordingly, summary judgment is not appropriate.

9

> v. *Other Comments to Hernandez and Anyosa During the Identification Procedures*

Next, the County defendants reiterate their arguments, which the Court also considered and rejected, that the Court should dismiss allegations of suggestive comments to Anyosa and Hernandez during the photo array and the line-up as "mere speculation." (ECF No. 221-1 at 22; *see also* ECF No. 210 at 22 (County defendants' summary judgment reply brief).) They maintain that the Court should reject as speculative Hernandez's deposition testimony that a detective told him that he identified the right person at the line-up. (ECF No. 221-1 at 23.) In addition, the defendants say that the Court "cherrypicked Anyosa's deposition testimony inferring that Lipson allegedly told Anyosa that Hernandez had selected the right person." (*Id.*) In fact, it is not "cherrypicking" to draw all inferences in the nonmovant's favor; that is what the Court must do on summary judgment. *See Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). In any case, the Court already considered these arguments and found them unpersuasive. *See Maldonado*, 490 F. App'x at 406.

The County defendants also argue that "[w]ith respect to the allegation that Lipson told Anyosa that he selected the right guy after Anyosa selected plaintiff from the photo array, ADA Anania's notes, as previously relayed to this Court are inadmissible hearsay that lack[] all guarantees of trustworthiness." (ECF No. 221-1 at 23 (citing ECF No. 210 at 10–11, and ECF No. 192 at 18 n.7).) As the County defendants acknowledge, they already made this argument and were not successful. *See Maldonado*, 490 F. App'x at 406. In any event, the argument is meritless because the Court can consider ADA Anania's notes on summary judgment. *See Murphy v. Metro. Transp. Auth.*, 548 F. Supp. 2d 29, 43–44 (S.D.N.Y. 2008) (the plaintiff "adduced enough evidence to survive [a] summary judgment motion" where he "appear[ed] able

10

to identify and subpoena all of the relevant declarants," and those "individuals may be called at trial to testify").

### vi. Whether Lipson Showed Anyosa Multiple Arrays

In another effort to relitigate an issue the Court decided, the defendants repeat their argument that Anyosa's testimony was "too speculative" to determine whether he saw more than one photo array and did not identify the plaintiff in one of them. (ECF No. 221-1 at 24; *see* Pl. 56.1 ¶ 703 (the defendants' response)); *Maldonado*, 490 F. App'x at 406. The testimony is not speculative. Anyosa testified at the plaintiff's criminal trial that Lipson showed him "two or three" sheets of paper with "six pictures" at a time — in other words, more than one array — and that he identified the plaintiff's photograph in only one array; he made no identifications in the one or two other arrays that Lipson showed him. (ECF No. 194-5 at 456.) His testimony was supported by Lipson's testimony that he put together two different arrays at DeCaro's request, both of which included the plaintiff's photograph. (Def. 56.1 ¶¶ 113–19.) Drawing all inferences in the plaintiff's favor, a jury could find that Anyosa viewed at least two arrays, which included the plaintiff's photograph, and that he did not identify the plaintiff in at least one of them.

The County defendants also argue that Anyosa's failure to identify the plaintiff in a photo array was not material evidence that the prosecution was required to disclose pursuant to *Brady v. Maryland*, 373 U.S. 83, 85 (1963). On the contrary, identification was a critical issue in this case. Evidence that an eyewitness did not identify the plaintiff was at the very least material impeachment evidence. *See Simmons v. Beard*, 590 F.3d 223, 237–38 (3d Cir. 2009) (noting that not disclosing a witness's failure to identify the petitioner in a photo array is a *Brady* violation); *see also Romero v. Beard*, No. 08-CV-0528, 2024 WL 1975475, at *45 (E.D. Pa. May 2, 2024) ("[A] witness's failure to identify a defendant in a photo array is impeachment evidence under

11

*Brady* . . . ." (citing *Simmons*, 590 F.3d at 237–38 (3d Cir. 2009)))). Accordingly, the Court will not revisit its decision.

> vii. *Assessing Reliability of the Identifications*

The Court found that there were material factual disputes about whether various identification procedures — the photographic arrays and the line-ups — were unduly suggestive. The County defendants argue that the Court must also determine whether the witnesses' identifications were nonetheless independently reliable. The short answer is that the identifications were obviously not reliable because the plaintiff was not the shooter, a fact which is undisputed. In any event, analysis of the factors in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972) confirms that the Court cannot find the identifications independently reliable.

A court determining whether an identification is independently reliable despite suggestive identification procedures considers these factors: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of the witness' prior description of the criminal," (4) "the level of certainty demonstrated by the witness at the confrontation," and (5) "the length of time between the crime and the confrontation." *United States v. Haskins*, No. 21-CR-269, 2022 WL 1460277, at *12 (E.D.N.Y. May 9, 2022) (cleaned up). "None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed in light of the totality of the circumstances." *Id.* (citation omitted).

Anyosa and Hernandez had an "opportunity . . . to view the criminal at the time of the crime" or at least shortly before the shooting when, during the first encounter, the shooter drove up behind Anyosa and Hernandez, started honking, argued with them for a few minutes, and

12

drove away. *Id*.; (*see also* Def. 56.1 ¶¶ 17, 22, 24.)[6] But that argument lasted only a few minutes, between midnight and 2:00 a.m. *Compare Neil v. Biggers*, 409 U.S. 188, 194 (1972) (unduly suggestive identification was independently reliable where the victim was with her assailant for almost half an hour, with ample opportunity to face him directly in adequate light).

Anyosa also saw the shooter at 2:00 a.m., when he shot Anyosa in the face. That encounter lasted for a few minutes at most, and the circumstances — getting shot in the face at night — were not conducive to a reliable identification. *See Haskins*, 2022 WL 1460277, at *9, 13 (identification was not independently reliable where the witness's opportunity to view the criminal and degree of attention "were hindered by the presence of the gun" as "eyewitnesses held at gunpoint focus on weapons being pointed at them and thus their recollection of other details becomes less clear" (citing National Research Council, *Identifying the Culprit: Assessing Eyewitness Identification* 93 (2014))).

Lipson showed Anyosa and Hernandez a photo array[7] 22 days after the shooting, on June 6, 2008 — at 3:20 a.m. for Hernandez, and 5:00 a.m. for Anyosa, whose jaw was wired shut as he recovered from surgery. (Def. 56.1 ¶¶ 142–44; Pl. 56.1 ¶¶ 230, 433.) *Compare United States v. Flores*, 855 F. Supp. 638, 639 (S.D.N.Y. 1994) (identifications were independently reliable where "all the identifications occurred within two days of the alleged crime").

As for "the accuracy of the witness' prior description of the criminal," the defendants, as noted above, agree that the plaintiff did not shoot Anyosa, so the identifications were obviously inaccurate. *Haskins*, 2022 WL 1460277, at *12. Anyosa told investigators that the shooter was a 5'10" man between 25 and 30 years old who spoke with an accent and had short black hair. (Pl.

---

[6] The parties do not dispute that the person in this first encounter was the person who shot Anyosa.

[7] As explained above, Anyosa testified at the plaintiff's criminal trial that he looked at more than one photo array.

13

56.1 ¶¶ 196–97.) The plaintiff did not fit that description: He was 21 years old, 5'5" tall, did not speak with an accent and wore his hair in braids. (Pl. 56.1 ¶¶ 287, 379, 517, 633, 663); *see Bolden v. Pesavento*, 623 F. Supp. 3d 897, 917 (N.D. Ill. 2022) (finding a witness's prior identification unreliable where it did not match the description of the suspect).

Although this is sufficient to end the inquiry, there is additional evidence of unreliability, as the parties dispute whether Anyosa looked at more than one array with the plaintiff's picture and failed to identify him. *See Bolden*, 623 F. Supp. 3d at 917–18 (finding witness's prior identification unreliable where under "[t]he fourth factor [regarding] certainty in his identification," the witness "could not identify Bolden in a photo array"); *Raheem*, 257 F.3d at 138–40 (finding witness's prior identification unreliable where the witness "at first identified no one").

In short, drawing all inferences in the plaintiff's favor, the Court cannot conclude that the identifications were independently reliable.

### c. Specific Challenges to the Court's Denial of Summary Judgment on the Malicious Prosecution Claims

#### i. DeCaro and Darienzo

The County Defendants argue that DeCaro and Darienzo are not liable for malicious prosecution because "it was objectively reasonable for them to rely on the representations of their fellow officer" and that probable cause independent of fabricated evidence is a defense to the plaintiff's malicious prosecution claim. (ECF No. 221-1 at 33 & n.19.) This, too, is an attempt to relitigate matters that the Court considered and rejected because material factual disputes preclude finding probable cause independent of fabricated evidence. (ECF No. 220 at 36); *see Maldonado*, 490 F. App'x at 406.

### ii. False Statements Contained in the Felony Complaints

The County defendants argue that the Court "incorrectly found a material factual dispute related to the information — alleged false statement — contained in the felony complaints, but correctly stated at the March 13, 2024 oral argument that this alleged 'false statement never goes anywhere.'" (ECF No. 221-1 at 34 (citations omitted).) This is not accurate. The allegedly false statement at issue is Ogletree's signed statement implicating the plaintiff. (*See* ECF No. 220 at 18–20, 34–35.) The discussion at oral argument was about a different false statement in the felony complaint — that the plaintiff admitted to DeCaro that he shot Anyosa. (*See* ECF No. 221-1 at 53; ECF No. 220 at 7–8.) The Court did not consider this statement in deciding the summary judgment motion because, as the Court observed at oral argument, it did not "go anywhere." Accordingly, this is not a reason to grant summary judgment.

### iii. Probable Cause

The County defendants reiterate their argument that there was probable cause even if the identification procedures in this case were suggestive. (ECF No. 221-1 at 34.) The Court already considered this argument and found it unconvincing. (ECF No. 220 at 36); *see Maldonado*, 490 F. App'x at 406.

### d. Specific Challenge to the Court's Denial of Summary Judgment on the Failure-to-Intervene Claims

The County defendants argue that Darienzo's "involvement in the line-up was limited and confined to keeping Hernandez separate from everyone," and that he "would never had known that the plaintiff's rights were allegedly violated, and thus, could not possibly have had a realistic opportunity to intervene." (ECF No. 221-1 at 14.) As the Court already addressed in the summary judgment order, Hernandez testified in his deposition that unnamed detectives may have told him after he identified the plaintiff in the line-up that he selected the right person, but

15

that he was not completely sure. (*See* ECF No. 220 at 26 (quoting ECF No. 194-29 at 79–80).) It is for the jury to determine whether Darienzo participated in or failed to intervene in this alleged violation.

### e.     Qualified Immunity

The County defendants argue at various points throughout their briefing that the Court should reconsider its decision to defer ruling on qualified immunity until resolution of the factual disputes in this case.

The County defendants argue, without citing the summary judgment order, that "Ross and all the defendants are entitled to qualified immunity for any conduct associated with, or practices utilized during, the line-up." (ECF No. 221-1 at 16–17.) The Court already considered and rejected this argument. (ECF No. 220 at 39–40); *see Maldonado*, 490 F. App'x at 406.

The County defendants also argue, without citing any case law, that "Lipson and all other defendants" are entitled to qualified immunity because "in 2008, there was no clearly established right that a post-identification confirmatory remark by an officer to a witness would violate a person's constitutional rights." (ECF No. 221-1 at 28.) The County defendants state that "[n]either plaintiff nor this Court can cite to any case, with specific similar facts, that demonstrates that this conduct was clearly established in 2008." (*Id.*) The Court held that it was clearly established at the time of this investigation and trial that a reasonable official would have understood that making suggestive comments to witnesses in the process of a photo array or line-up violated the plaintiff's constitutional right to a fair trial. (*See* ECF No. 220 at 40 (citing *Thai*, 29 F.3d at 807, 810, and *Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir. 1981)).)

The County defendants also argue that D'Luginski is entitled to qualified immunity for malicious prosecution because he was "entitled to rely on the allegations of fellow police officers that Hernandez and Anyosa positively identified plaintiff from the photo arrays," which would

16

have established probable cause.  (ECF No. 221-1 at 32.)  As discussed above, the Court cannot determine as a matter of law on this record that a reasonable jury would have to find that probable cause existed.  (ECF No. 220 at 35.)

The County defendants also argue that DeCaro and Darienzo "cannot be held liable for malicious prosecution, and at the very least, are entitled to qualified immunity" because the "plaintiff was indicted with no evidence regarding Ogletree or his statement presented to the grand jury."  (ECF No. 221-1 at 33.)  As the Court already held in denying summary judgment, there is a material factual dispute about whether Darienzo and DeCaro coerced Ogletree's false statement and whether DeCaro, who spoke to prosecutors in ECAB and signed the felony complaint, forwarded it to the prosecutors without alerting them to the coercive circumstances surrounding the statement.  And the Court found that a reasonable jury could find that the indictment was procured by police conduct undertaken in bad faith.  Accordingly, the Court will not reconsider the deferral of the qualified immunity ruling pending resolution of factual disputes.

## CONCLUSION

For these reasons, the County's motion for reconsideration is denied, and the Village defendants' motion for reconsideration is granted.  Horowitz and the Village of Hempstead are dismissed as defendants in this case.

In light of the Court's decision to dismiss parties from this case, the deadline for the parties to file a joint pretrial order is extended to July 15, 2024.

**SO ORDERED.**

                                                                    s/Ann M. Donnelly

                                                                    ANN M. DONNELLY
                                                                    United States District Judge

Dated:  Brooklyn, New York
           June 11, 2024